## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ALLIED SYSTEMS HOLDINGS, INC., | Case No. 12-11564 (CSS) |
| Alleged Debtor. | |
| In re: | Chapter 11 |
| ALLIED SYSTEMS, LTD. (L.P.), | Case No. 12-11565 (CSS) |
| Alleged Debtor. | |
| | **Hearing Date:  TBD** <br> **Objection Deadline: TBD** |

## MOTION OF ALLEGED DEBTORS TO TRANSFER VENUE OF THESE CASES TO THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION

Pursuant to 28 U.S.C. §§ 1404 and 1412, and Rule 1014 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), Alleged Debtors Allied Systems Holdings, Inc. and Allied Systems, Ltd. respectfully move this Court for entry of an order substantially in the form attached hereto as <u>Exhibit A</u>, transferring venue of these cases to the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division (the "**Georgia Bankruptcy Court**").  In support of this Motion (the "**Transfer Motion**"), Alleged Debtors show as follows.

### FACTUAL OVERVIEW

1.      On May 17, 2012 (the "**Petition Date**"), BDCM Opportunity Fund II, LP, Black Diamond CLO 2005-1 Adviser, L.L.C., and Spectrum Investment Partners LP (collectively, the "**Petitioning Creditors**") filed involuntary Chapter 11 petitions against Allied Systems Holdings, Inc. ("**Allied Holdings**") and one of its operating subsidiaries, Allied Systems, Ltd.

("**Allied Systems**" and together with Allied Holdings, the "**Alleged Debtors**").   The circumstances and the Petitioning Creditors motives leading to the filing of these petitions are set forth in the *Alleged Debtors' Response to Petitioning Creditors' Motion Pursuant to Del. Bankr. L.R. 9006-1(e) for an Order Shortening Time for Notice of the Hearing to Consider the Expedited Motion of Petitioning Creditors for the Appointment of a Trustee Pursuant to 11 U.S.C. §§ 105(A), 1104(a)(1) and 1104(a)(2)* filed herewith.

2.      As set forth in the *Declaration of Scott Macaulay* filed herewith, Alleged Debtor Allied Holdings is the ultimate parent of about 20 other companies (collectively, "**Allied**") including the other Alleged Debtor, Allied Systems.  Allied Holdings is a privately held Delaware corporation headquartered in Atlanta, Georgia.  Allied Holdings has three direct subsidiaries:  Allied Automotive Group, Inc., a Georgia corporation, Axis Group, Inc. also a Georgia corporation, and Haul Insurance Limited, which is a captive insurance company incorporated under the laws of the Cayman Islands.  Allied Systems, the other Alleged Debtor, is a Georgia limited partnership and is a subsidiary of the Georgia corporation Allied Automotive Group, Inc.

3.      Alleged Debtor Allied Holdings, a Delaware corporation, itself does not engage in business operations.  Instead, Allied's major line of business is carried out by Georgia corporation Allied Automotive Group, Inc. and its direct and indirect subsidiaries (collectively the "**Allied Automotive Group**").  This major line of business, known in the industry as "car-haul," is the transport of light vehicles, such as automobiles, sport-utility vehicles and light trucks, from manufacturing plants, ports, auctions, and railway distribution points to automobile dealerships in the United States and Canada.  The trips are generally what are known in the

industry as "short hauls," with each averaging less than two hundred miles. Allied's major customers are automobile manufacturers.

4.     Allied does not own any real estate or other tangible assets located in Delaware and has no creditors doing business with it from Delaware. Upon information and belief, no Allied employees reside in Delaware. Allied's headquarters is located in Atlanta, Georgia (with a small satellite office in Detroit, Michigan). Allied currently has 73 employees working out of its Atlanta headquarters and another 55 employees working out of its Atlanta-area terminal in Georgia. Allied owns and leases real estate in Georgia. No member of the board of directors of any Allied entity resides in Delaware. One member of the board of directors splits his residence between Georgia and Michigan.

5.     Allied Automotive Group transports light vehicles by means of tractor trailers (the "**Rigs**") specially designed for transporting light vehicles. As of the end of 2011, Allied owned about 2400 Rigs, which operated out of about 44 terminals, most of which were leased, and which were located in the United States and Canada. Its revenues in 2011 were $342.7 million.

6.     Allied Automotive Group's drivers and most of its terminal employees are unionized. These employees (the "**Teamster Employees**") are members of local unions affiliated with the International Brotherhood of Teamsters (the "**Teamsters**"), which negotiates on behalf of the local unions and their members.

7.     Allied's much smaller line of business is carried out by one of its Georgia subsidiary corporations Axis Group, Inc. and its direct and indirect subsidiaries (collectively the "**Axis Group**"). The Axis Group is also headquartered in Atlanta. This line of business includes arranging for and managing vehicle distribution services, automobile inspections, auction and yard management services, vehicle tracking, vehicle accessorizing, and dealer preparation

RLF1 6046620v.2

services for the automotive industry in the United States and Canada, and providing yard management services in Mexico. The Axis Group operates from 39 terminals located in the United States, Canada, and Mexico.

8.    Allied, including the Alleged Debtors, was reorganized in Chapter 11 cases (collectively the "**Original Chapter 11 Case**") that were filed in the Northern District of Georgia on July 31, 2005 and that resulted in a joint plan of reorganization (the "**Allied Plan of Reorganization**"), which was confirmed by now-Chief Bankruptcy Judge C. Ray Mullins and became effective in May 2007.[1]  As a result of the reorganization, Allied's then unsecured creditors became the shareholders of Allied Holdings.

9.    Although the Original Chapter 11 Case is ready to be closed (indeed, a motion for a final decree was recently filed), at this point it remains an open and pending case in the Georgia Bankruptcy Court before Judge Mullins.

10.    In the Original Chapter 11 Case, Allied's goals were to (1) increase revenue by increasing customer pricing, (2) deleverage by conversion of debt into equity, and (3) reduce labor costs through reductions in compensation and changes in work rules with respect to the Teamsters Employees and through shared sacrifice from non-union employees.

11.    These goals were largely achieved, with significant aid from two private equity funds, Yucaipa American Alliance Fund I, LP and Yucaipa Alliance (Parallel Fund I, L.P. (collectively, "**Yucaipa**"). During the original Chapter 11 Case, Yucaipa, among other things, (1) acquired about two-thirds of a series of unsecured notes that Allied had issued in the principal

---

[1]    Allied Systems Holdings, Inc. is the successor by merger with Allied Holdings, Inc., which was the ultimate Allied parent when the Original Chapter 11 Case was filed. When the Allied Plan of Reorganization became effective, Allied Systems Holdings, Inc. was created as a subsidiary of Allied Holdings, Inc., which was merged into Allied Systems Holdings, Inc., the surviving corporation. Thus, in connection with the Original Chapter 11 Case, the terms "Allied" and "Debtors" exclude Allied Systems Holdings, Inc. and include Allied Holdings, Inc. Also, in connection with the Original Chapter 11 Case, the term "Debtors" includes certain indirect Allied subsidiaries that no longer exist. Certain indirect Allied subsidiaries formed under the law of Mexico and Bermuda were not Debtors.

4

amount of $150 million; (2) was the catalyst for obtaining an agreement with the Teamsters for concessions (**"Labor Modifications"**) reducing wages of Allied's Teamster Employees by 15% for a three-year period; (3) financed the acquisition of Rigs for Allied's use; (4) supported a plan to convert general unsecured debt into equity; and (5) aided Allied in securing the exit financing (the **"Exit Financing"**) essential to its reorganization.

12.    Yucaipa and the Teamsters joined the Debtors as proponents of the Allied Plan of Reorganization. As of the Effective Date of the Allied Plan of Reorganization, Allied Holdings created Allied Systems Holding, Inc. as a subsidiary and merged into it. As provided in the Allied Plan of Reorganization, the outstanding stock of Allied Holdings, Inc. was canceled and Allied Systems Holdings, Inc. issued new common stock to Allied's general unsecured creditors, with Yucaipa becoming the owner of about 63% of the equity. Also as of the Effective Date, Allied's Exit Financing and the Labor Modifications became effective.

13.    Allied currently has about 1835 employees, of which about 1062 are Teamster Employees.

14.    Although Allied's parent entity, Alleged Debtor Allied Holdings, is incorporated in Delaware, its principal place of business is located in Atlanta, Georgia. Both the chief administrative officer and chief financial officer of Allied Holdings reside in Georgia. Likewise, almost all key employees and outside counsel for Allied are located in Georgia.

15.    As discussed below, under the totality of circumstances, the convenience of the parties and the interest of justice warrant the prompt transfer of venue of these cases to the Georgia Bankruptcy Court.

RLF1 6046620v.2

## RELIEF REQUESTED

16.    The Alleged Debtors respectfully request that this Court enter an order, substantially in the form attached hereto, (i) transferring venue of these cases to the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, (ii) staying the adjudication of all motions and other matters pending in these Chapter 11 cases until the relief requested in this Transfer Motion has been adjudicated and the proper venue of these Chapter 11 cases has been determined on a final basis and (iii) granting Alleged Debtors such other and further relief as is just and proper.

## ARGUMENT AND CITATION OF AUTHORITY

### I.    The Standard for Transfer of Venue.

17.    Under 28 U.S.C. § 1412 and Fed. R. Bankr. P. 1014, this Court may "transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412; *In re Harnischfeger Indus., Inc.*, 246 B.R. 421, 435 (Bankr. N.D. Ala. 2000) ("Because the criteria under § 1412 is phrased in the disjunctive, the bankruptcy case or proceeding is transferable upon a sufficient showing of *either* the interest of justice *or* the convenience of the parties.") (emphasis added).  It is well established that courts have broad discretion to find that the "interest of justice" requires a change of venue, and the determination of whether venue may be changed is made on a case-by-case basis. *See In re Laguardia Assocs., L.P.*, 316 B.R. 832, 837 (Bankr. E.D. Pa. 2004) ("'the interest of justice' component of § 1412 is a broad and flexible standard which must be applied on a case-by-case basis.  It contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness. . . .") (*quoting In re Manville Forest Products Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990)).  *See also*

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citing *Van Dusen* v. *Barrack*, 376

U.S. 612, 622 (1964) (motions to transfer are determined on an "individualized, case-by-case

consideration of convenience and fairness"); *In re Enron Corp.*, 274 B.R. 327, 349 (Bankr.

S.D.N.Y. 2002) ("The interest of justice prong is a broad and flexible standard that is applied

based on the facts and circumstances of each case.  In evaluating the interest of justice, the Court

must consider what will promote the efficient administration of the estate, judicial economy,

timeliness and fairness.").

18.    In determining whether to transfer venue of a particular case, the Third Circuit has

identified factors to determine whether "on balance the litigation would more conveniently

proceed and the interests of justice be better served by transfer to a different forum." *Jumara v.*

*State Farm Insurance Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (determining standard for transfer of

venue under 28 U.S.C. § 1404); *see also In re Innovative Commun. Co., LLC*, 358 B.R. 120, 126

(Bankr. D. Del. 2006) (applying the *Jumara* test to approve a transfer of venue of Chapter 11

proceedings under 28 U.S.C. § 1412 and Fed. R. Bankr. P. 1014).  These factors include:

> 1) plaintiff's choice of forum; 2) defendant's forum preference; 3) whether the
> claim arose elsewhere; 4) the location of books and records and/or the possibility
> of viewing premises if applicable; 5) the convenience of the parties as indicated
> by their relative physical and financial condition; 6) the convenience of the
> witnesses, but only to the extent that the witnesses may actually be unavailable for
> trial in one of the fora; 7) the enforceability of the judgment; 8) practical
> considerations  that would make the trial easy, expeditious, or inexpensive; 9) the
> relative administrative difficulty in the two fora resulting from congestion of the
> courts' dockets; 10) the public policies of the fora; 11) the familiarity of the judge
> with applicable state law; and 12) the local interest in deciding local controversies
> at home.

7

*Giuliano v. Harko, Inc. (In re NWL Holdings, Inc.)*, 2011 Bankr. LEXIS 580 (Bankr. D. Del. Feb. 24, 2011) (*citing Jumara*, 55 F.3d at 879-80).[2]

A)    The Convenience of the Parties Requires that these Chapter 11
       Cases be Transferred to the Georgia Bankruptcy Court.

19.    Application of the first six *Jumara* factors to the facts at hand demonstrates that venue should be transferred to the Georgia Bankruptcy Court for the convenience of the parties. Although the Petitioning Creditors filed these cases in the Bankruptcy Court for the District of Delaware, they have not indicated a strong forum preference to date. However, the Alleged Debtors strongly prefer the forum of the Georgia Bankruptcy Court for all of the reasons set forth herein. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ Moreover, the Alleged Debtors' strong preference for the Georgia Bankruptcy Court is also evidenced by the fact that Allied chose the Northern District of Georgia for its still pending Original Chapter 11 Case. *In re Rehoboth Hospitality, LP*, 2011 WL 5024267, *3 (Bankr. D. Del. Oct. 19, 2011) ("Generally, there is a presumption in favor of maintaining the debtor's choice of forum.").

---

[2]    In addition to the *Jumara* factors listed here, certain courts have examined six factors to determine whether a motion to transfer venue should be approved: (1) proximity of creditors of every kind to the court; (2) proximity of the debtor; (3) proximity of witnesses who are necessary to the administration of the estate; (4) the location of the debtor's assets; (5) the economic administration of the estate; and (6) the necessity for ancillary administration in the event of liquidation. *Matter of Commonwealth Oil Refining Co., Inc.*, 596 F.2d 1239 (5th Cir. 1979), *cert. denied* 444 U.S. 1045 (1980). Many of these factors overlap with the *Jumara* factors. Furthermore, *Matter of Commonwealth* "was decided under the Bankruptcy Act of 1898 when the test for determination of venue 'applied significantly heightened legal standards than called for under current law.'" *In re Innovative Commun.*, 358 B.R. at 126 (*quoting In re Shorts Auto Parts of Warren, Inc.*, 136 B.R. 30, 38 (Bankr. N.D.N.Y. 1991)).

8

20.     Also, the Petitioning Creditors' claims against the Alleged Debtors are linked more closely to Georgia than to Delaware, as the Petitioning Creditors were aware that the Alleged Debtors were located and conducted operations in Georgia. Accordingly, the Petitioning Creditors were aware of the nexus of the Alleged Debtors to Georgia. *See In re Innovative Commun.*, 358 B.R. at 126 (approving venue transfer to the U.S. Virgin Islands because, among other reasons, lenders making loans to companies that operate in the U.S. Virgin Islands are aware of the nexus of those companies to the U.S. Virgin Islands).

21.     Furthermore, the Alleged Debtors' books, records, and headquarters are located in Atlanta, Georgia. With respect to the proximity of the Alleged Debtors to the Georgia Bankruptcy Court, Allied Systems is a Georgia corporation, and both Alleged Debtors maintain their principal place of business is Georgia. Virtually all of the officers and key employees of Allied reside in Atlanta. Outside corporate and bankruptcy counsel for Allied Holdings is located in Georgia. All of these facts are, of course, well known to the Petitioning Creditors.

22.     The mere fact that Allied Holding is incorporated in Delaware is not a compelling factor for retaining venue. *See., e.g., In re Innovative Commun.*, 358 B.R. at 127-28; *In re Malden Mills Indus., Inc.*, 361 B.R. 1, 9-10 (Bankr. D. Mass. 2007) (transferring case from Delaware to Massachusetts because "[o]ther than the [d]ebtor being incorporated [in Delaware] and the presumed stalking horse bidder . . . wanting the cases filed there, there is no other apparent connection to Delware."); *In re B.L. of Miami, Inc.*, 294 B.R. 325, 331 (Bankr. D. Nev. 2003) (holding that while the debtor was incorporated in Nevada, because its assets and primary place of business was in Florida, "this factor weighs heavily in favor of transfer to Florida."); *In re Commonwealth Oil Refining Co.*, 596 F.2d 1239, 1248 (5th Cir. Tex. 1979) (interpreting this

RLF1 6046620v.2

factor and holding that "[t]he concern is with the corporation's employees who must appear in court . . . ."). *See In re Commonwealth Oil Refining Co.*, 596 F.2d 1239, 1248 (5th Cir. 1979).

23.     Moreover, while Allied's creditors are spread over a wide geographic area, Allied does not believe that any of its creditors interact with Allied from locations in Delaware.

> B)      The Interest of Justice Requires That These Chapter 11 Cases be
>          Transferred to the Georgia Bankruptcy Court.

24.     The last six *Jumara* factors show that, in the interest of justice, venue should be transferred the Georgia Bankruptcy Court.   Most critically, the practical and economic considerations weigh heavily in favor of transferring venue to the Georgia Bankruptcy Court. *See In re Qualteq, Inc.*, 2012 Bankr. LEXIS 503 (Bankr. D. Del. Feb. 16, 2012) (finding that the economic administration of the estate is the most important factor in the venue transfer analysis). The Alleged Debtors' travel and logistical delays and costs would be substantially decreased by allowing the case to proceed in the Georgia Bankruptcy Court.   The Alleged Debtors' headquarters house the majority of the books and records, employees, assets, and other evidence that may become relevant in the bankruptcy case.  Transferring venue to the Georgia Bankruptcy Court would eliminate the difficulties and costs involved with transporting these people and items to the Delaware Bankruptcy Court.  *See In re Innovative Commun. Co., LLC*, 358 B.R. 120, 128 (Bankr. D. Del. 2006).

25.     Furthermore, transferring these Involuntary Petitions to the Georgia Bankruptcy Court, where they would probably, under the rules of case assignment, be administered by a Bankruptcy Judge (Judge Mullins) who is already familiar with Allied and most of the rest of the parties in interest, would be the most economically efficient option for the Alleged Debtors. "Justice strongly favors transferring this case to the forum wherein the debtor is located."

RLF1 6046620v.2

*Sunarhauserman,* 131 B.R. at 363; *see also In re Vital Link Lodi,* 240 B.R. at 20 (proximity of debtor to bankruptcy court favors transfer).

26.    Ultimately, given the Alleged Debtors' ties to Georgia, venue should be transferred to the Georgia Bankruptcy Court because there is a "local interest in deciding local controversies at home." *In re Amendt,* 169 Fed. Appx. 93, 97 (3d Cir. Pa. 2006).  As set forth herein, the Alleged Debtors have strong ties to Georgia, the Georgia Bankruptcy Court has institutional knowledge of the business operations of the Alleged Debtors, and therefore the interests of justice are served by permitting these Chapter 11 cases to be transferred to the Georgia Bankruptcy Court.

## II.    Proceedings in these Chapter 11 Cases Should be Stayed Pending Adjudication of Venue.

27.    Transfer of venue of these Chapter 11cases to the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division is appropriate under Fed. R. Bankr. P. 1014(b), which provides that:

> If petitions commencing in cases under the Code are filed in different districts by or against (1) the same debtor . . ., on motion filed in the district in which the petition filed first is pending and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the court may determine, in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed. Except as otherwise ordered by the court in the district in which the petition filed first is pending, the proceedings on the other petitions shall be stayed by the courts in which they have been filed until determination is made.

Fed. R. Bankr. 1014(b).

28.    Both of the Alleged Debtors, Allied Holdings (successor by merger to Allied Holdings, Inc.) and Allied Systems are debtors in the Chapter 11 cases pending in the Northern District of Georgia, Atlanta Division. *See In re Allied Holdings, Inc.,* Case No. 05-12515-CRM

11

(Bankr. N.D. Ga., Aug. 1 2005).    Therefore, petitions against the same debtor have been commenced in different districts, triggering the application of Fed. R. Bankr. P. 1014(b).

29.    Furthermore, the proceeding before the Georgia Bankruptcy Court is still "pending" under Fed. R. Bankr. P. 1014(b).    Although a plan has been confirmed and consummated in the Georgia Bankruptcy Court proceeding, a case is "pending" within Fed. R. Bankr. P. 1014(b) "until the final decree enters and the case is closed." *In re Wilson*, 154 Bankr. 769, 771 n.3 (Bankr. M.D. Ala. 1993); *see also In re Emerson Radio Corp.*, 52 F.3d 50, 54 (3d Cir. 1995) (approving the transfer of a bankruptcy case to another district where an affiliated bankruptcy had been filed and a plan confirmed, and noting that the plain language of Fed. R. Bankr. 1014(b) indicates that a proceeding may be transferred so long as the affiliated case remains open even if the a plan has been confirmed and the proceedings largely resolved); *Krystal Cadillac-Oldsmobile-GMC Truck, Inc. v. GMC*, 232 B.R. 622, 626 (E.D. Pa. 1999) ("It should be noted that a bankruptcy case is considered to still be pending until such time as the estate has been fully administered, the court has discharged the trustee and closed the case.") (*citing In re Emerson*, 52 F.3d at 54).

30.    For all of the reasons set forth above, the interest of justice and the convenience of the parties are best served by transferring these proceedings to the Georgia Bankruptcy Court. Accordingly, Fed. R. Bankr. P. 1014(b) requires that all proceedings on the petitions filed in this Court by the Petitioning Creditors should be stayed until the Georgia Bankruptcy Court has made a final determination on venue.    The Alleged Debtors respectfully submit that all matters, including any motions filed by the Petitioning Creditors in these Chapter 11 cases, should be stayed pending final determination by the courts of the proper venue for these proceedings.

RLF1 6046620v.2

## CONCLUSION

31.    In sum, the majority of the factors weigh in favor of transferring venue to the Georgia Bankruptcy Court.    Accordingly, for the reasons stated above, the Alleged Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A, transferring venue of this case to the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

Dated: May 21, 2012
    Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
E-mail: collins@rlf.com
E-mail: samis@rlf.com

-and-

Jeffrey W. Kelley (GA Bar No. 412296)
Ezra H. Cohen (GA Bar No. 173800)
TROUTMAN SANDERS LLP
Bank of America Plaza
600 Peachtree Street, Suite 5200
Atlanta, Georgia 30308-2216
Telephone No.:    (404) 885-3000
Facsimile No.:    (404) 885-3900
E-Mail: jeffrey.kelley@troutmansanders.com
E-Mail: ezra.cohen@troutmansanders.com

*Counsel for Alleged Debtors*

RLF1 6046620v. 2