## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| ALLIED SYSTEMS HOLDINGS, INC., | : | |
| | : | Case No. 12-11564 (CSS) |
| Alleged Debtor. | : | |
| | : | |

-------------------------------------------------------------------x

| | | |
|---|---|---|
| | : | Chapter 11 |
| In re: | : | |
| | : | Case No. 12-11565 (CSS) |
| ALLIED SYSTEMS, LTD. (L.P.), | : | |
| | : | **Objection Deadline: May 29, 2012 at 5:00 p.m.** |
| Alleged Debtor. | : | **Hearing Date:  May 31, 2012, 2:00 p.m.** |
| | : | **Ref. No. 29** |

-------------------------------------------------------------------x

## OBJECTION OF THE PETITIONING CREDITORS
## TO MOTION OF THE ALLEGED DEBTORS TO TRANSFER VENUE OF THESE
## INVOLUNTARY CASES TO THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION

The Petitioning Creditors, BDCM Opportunity Fund II, LP, ("BDCM"), Black Diamond

CLO 2005-1 Ltd. ("Black Diamond"), and Spectrum Investment Partners, L.P. ("Spectrum"

collectively with BDCM and Black Diamond, "Petitioning Creditors"), by and through their

undersigned counsel, hereby object to the motion of Allied Systems Holdings, Inc. ("Allied") and

Allied Systems, Ltd. (L.P.) ("Systems", collectively with Allied, the "Alleged Debtors") to

transfer venue of the above-captioned involuntary bankruptcy cases (the "Involuntary Cases") to

the Atlanta Division of the Bankruptcy Court for the Northern District of Georgia (the "Georgia

Bankruptcy Court"), dated May 21, 2012 (the "Transfer Motion"), and respectfully represent as

follows:

## PRELIMINARY STATEMENT

1.      The Petitioning Creditors filed involuntary chapter 11 petitions against the Alleged Debtors on May 17, 2012.  It is undisputed that venue of these Involuntary Cases is proper in Delaware because Allied is domiciled in Delaware.  The Alleged Debtors have not responded to the involuntary petitions.  At a status conference before this Court on May 22, 2012, counsel for the Alleged Debtors informed the Court, "it does appear ... subject [to] board approval ... that Allied will likely, in the future, convert these cases to voluntary Chapter 11 cases, but the timing is not ripe today for that."[1]  However, until the Alleged Debtors decide to consent to the orders for relief or there is a trial on the merits on the involuntary petitions, the Alleged Debtors are not subject to court supervision.  It is an untenable and unstable situation for both the Alleged Debtors and their creditors.

2.      The Petitioning Creditors object to the Transfer Motion on two grounds.  First, the Transfer Motion is procedurally defective because it is premature to address venue until an order for relief is entered.  Second, the Transfer Motion is substantively objectionable because the Alleged Debtors' arguments in favor of the Georgia Bankruptcy Court are not sufficient to meet the Alleged Debtors' burden of showing, by a preponderance of the evidence that such a transfer would be "in the interests of justice or for the convenience of the parties."

3.      Both the Bankruptcy Rules and principles of judicial economy require that this Court first address whether an order for relief should be entered before addressing a request to transfer venue.  Rule 1011(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides a short and exclusive list of permitted responses to an involuntary petition, and Bankruptcy Rule 1011(e) unambiguously states "that no other pleading shall be permitted."  A

---

[1] Transcript of Status Conference, May 22, 2012 at 12:1-6.  A copy is attached hereto as Exhibit A.

request for a transfer of venue is not on the list of responses permitted by Rule 1011(b), and is thus prohibited until an order for relief is entered. Further, it makes little sense to undertake a hearing on venue until an order for relief has been entered, either on consent or after a hearing on the merits. Finally, a venue dispute now would prevent the Court from consideration of the "contested petition at the earliest practicable time." Bankruptcy Rule 1013(a).

4.      The Transfer Motion should be denied because venue is appropriate in this District. Given the national and international scope of the Alleged Debtors' businesses, the location of their assets, the geographical location of the Alleged Debtors' creditors, professionals and major parties-in-interest, the Petitioning Creditors' decision to commence involuntary chapter 11 cases in Delaware, is in conformity with the venue provisions of 28 U.S.C. § 1408, should not be disturbed.

5.      As shown below, the Alleged Debtors' arguments in favor of the Georgia Bankruptcy Court are not sufficient to satisfy the Alleged Debtors' burden of showing, by a preponderance of the evidence, that such a transfer would be "in the interests of justice or for the convenience of the parties." For these reasons, the Petitioning Creditors request that the Court deny the Transfer Motion in its entirety.

## BACKGROUND

6.      Allied is incorporated in Delaware, having filed its certificate of incorporation with the Secretary of State of Delaware on May 8, 2007. Allied and its direct and indirect subsidiaries are providers of distribution and transportation services to the automotive industry, specializing in the delivery of new vehicles from automobile manufacturing plants to automobile dealerships in the United States and Canada.

7.      On July 31, 2005, Allied Holdings, Inc. and certain of its direct and indirect subsidiaries commenced voluntary chapter 11 bankruptcy cases in the Georgia Bankruptcy Court

that resulted in a plan of reorganization ("Plan"), which was confirmed in May 2007 and became effective soon thereafter. *In re Allied Holdings Inc.*, Case No. 05-12515 (the "Georgia Bankruptcy Case").

8.      According to statements filed by the Alleged Debtors, Allied was specifically excluded as a "Debtor" under the Plan in the Georgia Case. (Declaration of Scott Macaulay, dated May 21, 2012 [D.I. 30] ¶ 8 n.1) ("Macaulay Decl.") ("Thus, in connection with the Original Chapter 11 Case, the terms "Allied" and "Debtors" exclude Allied Systems Holdings, Inc. and include Allied Holdings Inc.").

9.      On April 24, 2012, the debtors in the Georgia Bankruptcy Case filed an application for a final decree closing the case. *In re Allied Holdings Inc.*, Case No. 05-12515 [D.I. 4182]. On May 21, 2012, the United States Trustee filed a statement of no objection to entry of the final decree. *Id.* [D.I. 4184]. The Alleged Debtors concede "the Original Chapter 11 Case is ready to be closed." (Macaulay Decl. ¶ 8).

10.     On May 17, 2012, the Petitioning Creditors filed involuntary petitions against the Alleged Debtors. No trustee or examiner has yet to be appointed in these cases. The Alleged Debtors have not filed an answer or responsive pleading to the involuntary petitions, although the Alleged Debtors have indicated that they are planning to either consent to the entry of orders for relief or file voluntary chapter 11 bankruptcy cases. (Transfer Motion ¶ 19); Transcript of Status Conference, May 22, 2012 at 12:1-6.[2]

---

[2] The Alleged Debtors assert without any basis that the Petitioning Creditors were "well aware" of a potential voluntary filing. (Transfer Motion ¶ 19). The Alleged Debtors have never advised the Petitioning Creditors of a an intent to file a case nor can they point to any evidence supporting such an assertion nor does the Transfer Motion state that they informed the Petitioning Creditors of such a potential voluntary filing. Rather, the Alleged Debtors are the ones that have long been aware of the Petitioning Creditors' desire to resolve the Alleged Debtors' financial issues outside of the bankruptcy process.

**ARGUMENT**

**I.    The Relief Requested in the Transfer Motion is Prohibited Until an Order for Relief is Entered.**

11.    The Alleged Debtors seek entry of an order from the Court (i) transferring these cases to the Georgia Bankruptcy Court "in the interest of justice or for the convenience of the parties," and (ii) staying the adjudication of all motions and other matters until the "relief requested in this Transfer Motion has been adjudicated and the proper venue of these Chapter 11 cases has been determined on a final basis."  (Transfer Motion ¶ 16).  Importantly, the Alleged Debtors do not argue that Delaware is an improper venue for these Involuntary Cases.

12.    The relief requested by the Alleged Debtors is clearly prohibited by Bankruptcy Rule 1011 which provides a short and exclusive list of responses that may be filed to an involuntary petition.  A request to transfer venue is not on that list.  Bankruptcy Rule 1011 states in relevant part:

> *Rule 1011. Responsive Pleading or Motion in Involuntary and Cross-Border Cases*
>
> *(b) Defenses and objections; When presented.* Defenses and objections to the petition shall be presented in the manner prescribed by Rule 12 F. R. Civ. P. and shall be filed and served within 21 days after service of the summons, except that if service is made by publication on a party or partner not residing or found within the state in which the court sits, the court shall prescribe the time for filing and serving the response.
>
> *(e) Other pleadings.* No other pleadings shall be permitted, except that the court may order a reply to an answer and prescribe the time for filing and service.

13.    Bankruptcy Rule 1011(b) authorizes the Alleged Debtors to do only two things -- either (a) file an answer contesting the petition, or (b) make a motion asserting defenses and objections to the petitions as provided for under Rule 12 of the Federal Rules of Civil Procedure ("Federal Rules" or "FRCP").  Further, Bankruptcy Rule 1011(e) unambiguously states that "no

other pleading shall be permitted." *See In re David J. Ross*, 135 B.R. 230, 233 (Bankr. E.D. Pa 1991) (scope of a debtor's answer to an involuntary petition is limited to those issues which address the merits of granting involuntary relief); COLLIER ON BANKRUPTCY ¶ 1011.05 (16th ed. 2012) ("In general, the involuntary petition … and the responsive answer or motions filed by the debtor … are the only pleadings permitted").

      14.    The relief sought in the Transfer Motion is not prescribed by FRCP 12:

> *(b) How to Present Defenses.* Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficient process; (5) insufficient service of process; (6) failure to state a claim upon which relief can be granted; and (7) failure to join a party under Rule 19.

      15.    Federal Rule 12(b) provides grounds for dismissal of a case, including dismissal for "improper venue." The Transfer Motion neither requests dismissal for improper venue nor does it assert any other defenses or objections to the petitions as provided in FRCP 12(b). Because the Alleged Debtors' motion to transfer is not permitted under FRCP 12(b), it is prohibited by Bankruptcy Rule 1011(e). Therefore, the Transfer Motion is prohibited until an order for relief is entered either on consent or after a hearing on the merits. *See In re Raytech Corp.*, 222 B.R. 19, 22 n.1 (Bankr. D. Conn. 1998) (venue transfer motion premature until court first determines whether the case would be administered in that court).

      16.    Further, consideration of the Transfer Motion prior to entry of an order for relief or trial on the merits of the involuntary would prevent "consideration of the contested petition at the earliest possible practicable time" as required by Bankruptcy Rule 1013. Bankruptcy Rule 1013(a) ("The court shall determine the issues of a contested petition *at the earliest practicable*

*time* and forthwith enter an order for relief, dismiss the petition, or enter any other appropriate order") (emphasis supplied).

17.     Finally, if the relief sought in the Transfer Motion was granted, the Petitioning Creditors would be denied the right to litigate, if necessary, the involuntary petition in the jurisdiction of their choice. *See In re PWS Holding Corp.*, 1998 Bankr. LEXIS 549, *4-5 (Bankr. D. Del. Apr. 28, 1998) (SLR) ("when venue is proper, a debtor's/plaintiff's choice of forum is to be accorded substantial weight and deference").

18.     The Federal Rules require that the Alleged Debtors must wait until after an order for relief is entered in these cases before they can request a transfer of venue under Bankruptcy Rule 1014.  The Alleged Debtors have indicated in papers and before this Court that they were planning a voluntary chapter 11 filing or are "likely" to consent to the entry of orders for relief in the within cases.  (Transfer Motion ¶ 19).  Until the Alleged Debtors commit to a plan of action or a judicial determination on the propriety of the involuntary petitions is made, the Transfer Motion must be denied.

## II.     Venue is Proper in Delaware Pursuant to 28 U.S.C. § 1408.

19.     Venue in chapter 11 cases is governed by section 1408 of title 28 of the United States Code.  Pursuant to § 1408(1), the venue of a chapter 11 case is proper when the case is commenced in the district in which the debtor is domiciled or maintains its principal place of business. *See In re Segno Communications, Inc.*, 264 B.R. 501, 506, 511 (Bankr. N.D. Ill. 2001) (debtor's state of incorporation was proper venue for involuntary case).  A corporation is domiciled in the state where it is incorporated. *See Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 226 (1957) (equating terms "resident" and "domicile" in respect of corporations to state of incorporation).  As a Delaware corporation, Allied is domiciled in

Delaware.

20.     The Alleged Debtors do not dispute that venue is proper in Delaware.  Having

chosen to incorporate in Delaware, and reap the attendant benefits, Allied must now live with the

rights and responsibilities that come with its choice.  Instead, the Alleged Debtors cite to a string

of cases for the argument that the "mere fact that Allied [Systems Holding, Inc.] is incorporated

in Delaware is not a compelling factor for retaining venue."  (Transfer Motion ¶ 22).  The

Alleged Debtors are incorrect: in each of the cases they cite, the balancing of equities were

wholly distinguishable and therefore are not applicable to our case.  *E.g., In re Innovative*

*Commcn's Co.*, 358 B.R. 120 (Bankr. D. Del. 2006) (debtors owned companies that operated

telephone, newspaper and other public communication vehicles, thereby giving the U.S. Virgin

Islands a great public interest in being the venue for the case); *In re B.L. of Miami, Inc.*, 294 B.R

325, 331 (Bankr. D. Nev. 2003) (debtor's primary asset, a nightclub, was subject of extensive

state court litigation in Florida, the outcome of which would have had a large effect on the

administration of the debtor's estate); *In re Malden Mills Indus., Inc.*, 361 B.R. 1, 10 (Bankr. D.

Mass. 2007) (counsel opposing transfer "made no attempt to deal with the traditional factors,"

while the movant's counsel "discussed them at length").

21.     This Court and others have found the domicile or place of incorporation entirely

sufficient to support venue on its own.  In *In re PWS Holding Corp.*, this Court found that it was

entirely "just" that the chapter 11 case be prosecuted in the state of incorporation of only one of

the family of corporations that had filed petitions.  *See* 1998 Bankr. LEXIS 549, *14 (Bankr. D.

Del. Apr. 28, 1998) ("[i]t is undisputed that American businesses which choose to operate in a

corporate form may choose their state of incorporation. With the choice of citizenship comes

various rights and responsibilities").  In *In re Segno Communications*, the alleged debtor was a

dissolved Illinois corporation, whose principal place was business was in Indiana. *See* 264 B.R. 501 (Bankr. N.D. Ill. 2001). Despite these facts, the bankruptcy court concluded that the petitioning creditors' choice of venue, based solely on the alleged debtor's state of incorporation, was proper and permitted the case to proceed in Illinois. *Id.* at 506, 511.

### III.    Transfer of the Alleged Debtors' Involuntary Cases Would Neither Be in the Interest of Justice Nor for the Convenience of the Parties.

#### A.    The Alleged Debtors Fail to Show that Transferring Venue is Warranted by a Preponderance of the Evidence.

22.    A bankruptcy court may transfer venue of a bankruptcy case "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412; Bankruptcy Rule 1014(a)(1). The Alleged Debtors bear the burden of demonstrating by a preponderance of the evidence that a transfer of venue is necessary to achieve the statutory purposes of the Bankruptcy Code. *See PWS,* 1998 Bankr. LEXIS 549 at *4-5.

23.    When venue is proper, deference is given to the venue selection and should only be changed based on a strong showing that the interest of justice or convenience of the parties would be served by transfer. *See id.* ("when venue is proper, a debtor's/plaintiff's choice of forum is to be accorded substantial weight and deference") (citing *In re Del. and Hudson Railway Co.*, 96 B.R. 469 (D. Del 1988)); *In re Enron Corp*, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002) ("Transferring venue of a bankruptcy case is not to be taken lightly."); *In re Walbridge*, 51 B.R. 137, 139 (Bankr. D. Mass. 1985) ("Where a transfer would merely shift the inconvenience from one party to the other or where after the balancing all the factors, the equities lean but slightly in favor of the movant the ... choice of forum should not be disturbed.")

(omission in original) (citing Moore's Federal Practice ¶ 145(5) at 1616, n.5 (2d ed. 1979)).  The

Alleged Debtors have not made any such a showing.[3]

24.    Although the standard in the applicable rule and statute allows for significant

discretion, courts have adopted six factors, among others, to guide the use of that discretion.  The

six factors are:

(a)    proximity of creditors of every kind to the court;

(b)    proximity of the debtor;

(c)    proximity of witnesses who are necessary to the administration of the estate;

(d)    location of the debtors' assets;

(e)    economic administration of the estate;

(f)    necessity for ancillary administration in the event of liquidation.

*Matter of Commonwealth Oil Refining Co.,* 596 F.2d 1239, 1247 (5th Cir. 1979); *see also In re*

*Safety-Kleen Corporation,* 2001 Bankr. LEXIS 1296, *6-7 (D.Del. 2001); *PWS,* 1998 Bank.

LEXIS 549 at *5.[4]

---

[3] The Alleged Debtors cite *In re Rehoboth Hospitality, LP,* 2011 WL 5024267, *3 (Bankr. D. Del. Oct. 19, 2011) in support of the argument that there is a presumption in favor of maintaining the debtor's choice of forum.  (Transfer Motion ¶ 19).  However, the Alleged Debtors' reliance on this proposition and case is misplaced for two reasons.

First, such a presumption necessarily presumes that the debtor was the one that first selected the venue, i.e., that there is a presumption in maintaining the debtor's choice of forum.  Second, *Rehoboth* only confirms that any presumption in favor of a debtor's choice of venue may be overcome.  In *Rehoboth,* this Court granted a creditors' motion to transfer venue of the case to Texas even though the debtor, which owned and operated a single hotel in Texas, chose to file its voluntary petition in Delaware.  There, the creditor presented compelling evidence and satisfied its evidentiary burden; here, as presented below, the Alleged Debtors have presented no convincing evidence in support of its burden.

[4] The Alleged Debtors' reliance on the factors articulated in *Jumara v. State Farm Insurance Company* (an underinsured motorist case governed by Pennsylvania law) is misplaced because *Jumara* was decided under the general federal venue transfer statute, 28 U.S.C. § 1404(a), not the specific statute dealing with transfer of venue in bankruptcy cases, 28 U.S.C. § 1412. *See Jumara v. State Farm Insurance Company,* 55 F.3d 873 (3d Cir. 1995). While motions to transfer venue generally turn on similar issues, the test articulated with respect to bankruptcy venue statute more properly focuses on the interest of the estate and its creditors rather than only on the interest of the plaintiff and defendants.

**B.    Proximity of Court to Parties-in-Interest Supports Venue in Delaware.**

(a)    *Creditors, Debtors and Other Parties-in-Interest*

25.    The Alleged Debtors have not demonstrated either significant (in amount or number) creditor presence in Georgia or that the convenience of the Alleged Debtors' creditors and other parties-in-interest would be best served by transfer of venue to the Georgia Bankruptcy Court.    While the Petitioning Creditors do not have the benefit of the Alleged Debtors' statements or schedules, the Alleged Debtors by their own admission, acknowledge that because of its "international presence ... its creditors are spread over a wide geographic area" and not concentrated in Georgia.    (Macaulay Decl. ¶ 17).    Further, the Alleged Debtors admit that because 60% of their business is tied to American automobile manufacturers, their creditors are more heavily concentrated in Michigan, not Georgia.    (*Id.* ¶ 17).

26.    In addition to the many customers, vendors, and creditors in Michigan, many of the Alleged Debtors' major creditors are not located in Georgia, and upon information and belief, Allied's chief executive officer and Allied's chairman of the board of directors, do not reside in Georgia.    More specifically,

- The Pension Benefit Guaranty Corporation ("PBGC") one of Allied's largest creditors, is located in Washington, D.C.;[5]

- The International Brotherhood of Teamsters (the "Teamsters") is headquartered in Washington D.C. and has locations across the United States;[6]

---

[5] Pension Benefit Guaranty Corp., http://www.pbgc.gov/about/pg/other/pbgc-office-locations.html (last visited May 29, 2012). The PBGC has previously appeared in the Georgia Bankruptcy Case and listed the PBGC's Office of the General Counsel located in Washington, DC as its principal contact information.

[6] Teamsters, http://www.teamster.org/?splash=off (last visited May 29, 2012). Several Teamster entities appeared in the Georgia Bankruptcy Case and listed counsel or locations in the following cities: (1) Central Pennsylvania Teamsters Pension Fund c/o Stevens & Lee in Philadelphia, PA; (2) International Brotherhood of Teamsters c/o Previant Goldberg in Milwaukee, WI; (3) New England Teamsters and Trucking Industry Pension Funds in Boston, MA; (4) Teamsters Pension Fund of Philadelphia & Vicinity c/o Stevens & Lee in Philadelphia, PA; (5) Teamsters Union 25 Health Services & Insurance Plan in Charlestown, MA; and (6) Western Conference of Teamsters Pension Fund c/o Reid, Pendersen, McCarthy, *et al.* in Seattle, WA.

- Yucaipa American Alliance Fund I, LP and Yucaipa American Alliance (Parallel) Fund I, LP (collectively, "Yucaipa"), the alleged largest lender and controlling shareholder, has offices in New York and California;

- The Petitioning Creditors have offices in New York and Connecticut;

- The CIT Group/Business Credit, Inc., another major secured lender, is headquartered in New Jersey;[7]

- Derex Walker, the Chairman of the Alleged Debtors' Board of Directors, resides in California; and

- Mark Gendregske, the Alleged Debtors' Chief Executive Officer, either resides in Michigan or has a home in Michigan where he spends significant time.

27.    The Alleged Debtors' argument that venue should be transferred based on the proximity of the Alleged Debtors to the Georgia Bankruptcy Court is equally unconvincing. (Transfer Motion ¶ 21).  A debtor's employees are rarely required to participate in chapter 11 cases.  Even if these cases were to proceed in Delaware, the vast majority of the Alleged Debtors' management and other key employees will not often, if ever, be required to travel to Delaware to testify or otherwise appear in Court.  The Alleged Debtors' other employees, the majority of whom are unionized drivers and terminal employees (approximately 1062 out of 1835 people), operate out of the numerous terminals owned by Allied located across the United States and Canada.  (Macaulay Decl. ¶¶ 5, 6).  Thus, it appears from the Alleged Debtors' papers that only 128 of 1835 employees or approximately seven percent of its workforce is located in Georgia. (Macaulay Decl. ¶¶ 5, 6, 17);  see Pic 'N Pay Stores, Inc., Case No. 96-182 (PJW), bench decision at 16 (Bankr. D. Del. Mar. 8, 1996) ("my experience suggest[s] that rank and file employees do not participate in a bankruptcy proceeding").[8]

---

[7] CIT, http://www.cit.com/contact-us/index.htm (last visited May 29, 2012).

[8] A copy of the Pic 'N Pay bench decision is attached hereto as Exhibit B.

28.    Rather, practice shows that it is the professionals who are routinely required to appear in court. *See In re Safety-Kleen Corp.*, Case No. 00-2303 (PJW), bench decision at 48 (Bankr. D. Del. July 11, 2000) ("the vast majority of activities in this court involve lawyering and only a very, very limited number of principals have to appear on very, very limited occasions ");[9] *Enron*, 274 B.R. at 347 ("While substantially all of the Debtors' officers are located in Houston, most will not be required to attend hearings before this Court. Rather, the certain participants in the proceedings before this Court will be the professionals retained in these cases."). To that end, it appears that the professionals engaged to date have offices in or around the Northeast corridor:

- The Alleged Debtors' lead counsel, Troutman Sanders LLP, has offices in New York, Washington D.C. and New Jersey as well as Georgia.

- Yucaipa's lead counsel, Latham & Watkins, LLP has offices in New York and Washington, D.C.

- The Petitioning Creditors' lead counsel, Schulte Roth & Zabel LLP, has offices in New York and Washington D.C.

29.    Finally, as a practical matter, any travel costs incurred by the Alleged Debtors' management, counsel and other professionals will ultimately be borne by the bankruptcy estates and their creditors. In effect, the Alleged Debtor's secured creditors are underwriting any costs the Alleged Debtors will incur in travelling to Delaware. The lenders, however, must bear their own costs.

30.    Based upon the foregoing, the proximity of creditors prong does not support the Transfer Motion.

---

[9] A copy of the *Safety-Kleen* bench decision is attached hereto as Exhibit C.

C.    **Location of the Alleged Debtors' Assets Offers Little Weight to Venue Transfer Analysis.**

31.    The Alleged Debtors have failed to show that the location of their assets supports transfer of venue to Georgia.   The Alleged Debtors' business is national and international in scope.  Thus, the location of their assets offers little, if any weight, to the venue transfer analysis. *See, e.g., Pic 'N Pay*, bench decision at 4 ("Unlike the number of reported decisions in this district and elsewhere and unreported decisions in this district which resulted in a transfer of venue, this case does not involve a debtor whose principal asset is commercial real estate located in a district other than this one."); *PWS*, 1998 Bankr. LEXIS 549 at *12-13 (denying transfer of venue, recognizing that "bankruptcy practice and jurisdiction reflect American business" and that "most American businesses (certain those with assets and liabilities counted in the hundreds of millions of dollars) are truly interstate in practice, national in character" thereby diminishing the importance of the 'convenience' factor).

32.    Even if the location of Alleged Debtors' assets favored Georgia as the appropriate venue, (which it does not), courts have found that the location of the Alleged Debtors' assets is not a significant factor in deciding whether venue should be transferred where, as here, the goal of the Chapter 11 case is rehabilitation, not liquidation.  *See Enron*, 274 B.R. at 347-48 ("The location of the assets is not as important where the ultimate goal is rehabilitation rather than liquidation.... [W]hile a debtor's location and the location of its assets are often important considerations in single asset real estate cases, these factors take on less importance in a case where a debtor has assets in various locations.") (internal citation omitted);  *Commonwealth Oil*, 596 F.2d at 1248 (location of the debtor's assets has greater weight in liquidation proceeding).

33.    Likewise, the location of the principal place of business is not conclusive.  In *Safety-Kleen*, Judge Walsh denied a request to transfer venue to South Carolina despite the fact

that the debtor's corporate headquarters, assets, books, records and employees were located there.

*See* Case No. 00-2303 (PJW), bench decision. There, Judge Walsh concluded that:

> [t]he issue of convenience of the parties is not where the headquarters may be or what operations come out of those headquarters... [The principals] don't have to move out of South Carolina [to Delaware] to continue the cash management system, to continue the day-to-day management and operations, and none of that has anything in particular to do with appearances in this court.... [R]arely do we have extended hearings in this court which would require any significant dislocation from one's operating services in a headquarters.

*Id.* at 47-48. Similarly in *Pic 'N Pay*, transfer was denied even where there was "no doubt" that the debtor's contacts in North Carolina were "much more significant" than those within Delaware and debtor had most of its stores in the Southeast (including over 100 of approximately 800 stores in North Carolina) and most of the debtor's assets and landlords were located in the Southeast. *See* Case No. 96-182 (PJW), bench decision at 3-5, 7.

34.    The fact that the Alleged Debtors' books and records are located in Georgia is also of minor relevance to the venue transfer analysis. With modern technology that information, which is ordinarily computerized, can be readily transported electronically. *See In re Enron Corp.*, 284 B.R. 376 (Bankr. S.D.N.Y. 2002) (financial data can be easily transported from Houston to New York if there was a need for the information).[10]

35.    The objective of the present cases, if an order for relief is entered, is reorganization and not liquidation. (Transfer Motion ¶ 8). Thus, the location of the Alleged Debtors' assets and its headquarters have little significance to the venue transfer analysis.

---

[10] Indeed, in a state court action pending in the New York Supreme Court, the Court directed Yucaipa, the Alleged Debtors' purported largest lender and controlling shareholder, to share with the Petitioning Creditors, within 72 hours, two years of financial information that Yucaipa had caused Allied to withhold from other lenders. *BDCM Opportunity Fund II LP v. Yucaipa Am. Alliance Fund I, LP*, Case No. 65105/2012, Transcript of 2/28/2012 Hearing at 3:6-23; 6:11 - 7:13 (a copy is attached hereto as Exhibit D). The Alleged Debtors were able to comply with the electronic transfer.

**D.    The Alleged Debtors Failed to Show that Transfer to the Georgia Bankruptcy Court would Promote the Efficient and Economic Administration of these Cases.**

36.     The Alleged Debtors have failed to show by a preponderance of the evidence that transfer of these cases to the Georgia Bankruptcy Court would promote the efficient and economic administration of the Alleged Debtors' involuntary cases.    The vast majority of negotiations concerning financing and reorganization will take place among the legal and financial advisors retained in these cases.  Experience shows that these negotiations can and will take place telephonically, through in person meetings in mutually convenient locations, and via e-mail.  The location of the Court in which the cases are pending is generally not relevant.

37.     The Alleged Debtors also rely on the argument that assignment of these cases to Judge Mullins of the Georgia would be the "most economically efficient option for the Alleged Debtors." (Transfer Motion ¶ 25).  However, the Alleged Debtors' acknowledge that there is no guaranty that Judge Mullins would be assigned to these cases.   (Transfer Motion ¶ 25) ("transferring these Involuntary Petitions to the Georgia Bankruptcy Court, where they would probably, under the rules of case assignment, be administered by a [*sic*] Bankruptcy Judge (Judge Mullins) who is already familiar with Allied and most of the rest of the parties-in-interest....") (emphasis supplied).

████Even if Judge Mullins were to be assigned to these cases, the Plan in the Georgia Case was confirmed five years ago and thus the Georgia Bankruptcy Court, like the Delaware Court, would need to be educated by counsel on changes to the Alleged Debtors' capital structure, business operations, as well as the events resulting in the Alleged Debtors need for Chapter 11 relief ████████████████████████████████████
████████████████████████████████████████████████
████████████████████████

E.      **Transfer to the Georgia Bankruptcy Court is Not Necessary for Ancillary Administration.**

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████

IV.   **The Alleged Debtors Improperly Rely on Bankruptcy Rule 1014(b).**

A.      **The Alleged Debtors Elevate Form Over Substance to Conclude that the Georgia Bankruptcy Case is Still Open.**

40.     The Alleged Debtors' argument that the Georgia Bankruptcy Case is still pending elevates form over substance and should be given little weight in the venue transfer analysis. Bankruptcy Rule 1014(b) states in relevant part:[11]

> If petitions commencing cases under the Code … are filed in different districts by, regarding, or against (1) the same debtor …

---

[11] While the Alleged Debtors rely on Bankruptcy Rule 1014(b) to support their venue transfer request (arguing that the Georgia Bankruptcy Case is still technically open), the Alleged Debtors have actually failed to comply with Bankruptcy Rule 1014(b). Technical compliance would have required that the Transfer Motion be filed in the Georgia Bankruptcy Court.

> on motion filed in the district in which the petition filed first is pending and after hearing on notice to the petitioners, the United States Trustee, and other entities as directed by the court, **the court may determine**, in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed. (emphasis supplied).

41.    A confirmation order was entered in the Georgia Bankruptcy Case in 2007, over five years ago.    On April 24, 2012, the debtors in the Georgia Bankruptcy Case filed an Application for Final Decree.    *In re Allied Holdings, Inc.*, Case No. 05-12515-CRM (Bankr. N.D. Ga., Aug. 1, 2005) [D.I. 4182].    The United States Trustee filed a Statement of No Objection to the final decree on May 21, 2012. The Alleged Debtors concede in their papers "the [Georgia Bankruptcy Case] is ready to be closed (indeed, a motion for a final decree was recently filed)." (Transfer Motion ¶ 9).

42.    Bankruptcy Rule 1014(b) is permissive and requires the Court to evaluate the same standard (and therefore the same analysis) for transfer as in Bankruptcy Rule 1014(a).    As set forth above, the Alleged Debtors' have failed to meet their burden of showing that transfer would be "in the interests of justice or for the convenience of the parties."

**B.    Allied Systems Holding, Inc. is not a "Debtor" under Bankruptcy Rule 1014(b).**

43.    The Alleged Debtors argue that "[b]oth of the Alleged Debtors, [Allied Systems Holdings, Inc.] and Allied Systems [Ltd. (L.P.)] are debtors in the Chapter 11 cases pending in the Northern District of Georgia, Atlanta Division.    Therefore, petitions against the same Debtor have been commenced in different districts, triggering the application of Fed. R. Bank. P. 1014(b)." (Transfer Motion ¶ 28).

44.    The Alleged Debtors' argument is contradicted by their acknowledgement that Allied was specifically excluded from the Plan confirmed in the Georgia Bankruptcy Case:

> Allied Systems Holdings, Inc. is the successor by merger with Allied Holdings, Inc., which was the ultimate parent when the Original Chapter 11 Case was filed. When the Allied Plan of Reorganization became effective, Allied Systems Holdings, Inc. was created as a subsidiary of Allied Holdings, Inc. which was merged into Allied Systems Holdings, Inc., the surviving corporation. **Thus, in connection with the Original Chapter 11 Case, the terms "Allied" and Debtors" exclude Allied Systems Holdings, Inc. and include Allied Holdings Inc.** Also, in connection with the Original Chapter 11 Case, the term "Debtors" includes certain indirect Allied subsidiaries that no longer exist. Certain indirect Allied subsidiaries formed under the law of Mexico and Bermuda were not Debtors.

(Transfer Motion at 4, n.1) (emphasis supplied).  Under the Bankruptcy Code a "debtor" means a "person ... concerning which a case under this title has been commenced." 11 U.S.C. § 101(33). Allied is not a debtor since it was formed post confirmation and is not a "person concerning which a case under this title has been commenced." Thus, Allied should not be considered a "debtor" pursuant Bankruptcy Rule 1014(b).

45.    Finally, while the Alleged Debtors may argue that Allied Systems Ltd. (L.P.) was a debtor in a prior pending proceeding, the test under Bankruptcy Rule 1014(b) is nevertheless permissive ("the court may determine"), and for the reasons set forth above venue of these cases should remain in Delaware.

## CONCLUSION

46.    The Alleged Debtors have failed to sustain their burden to show by a preponderance of the evidence that a transfer of venue is "in the interests of justice or for the convenience of the parties."  Rather, the only thing the Alleged Debtors have shown is that transfer to the Georgia Bankruptcy Court might be more convenient for the Alleged Debtors and their counsel. That, however, is not the criteria.  Thus, the Petitioning Creditors' choice of proper venue in Delaware should not be disturbed. *See In re Enron Corp,* 274 B.R. 327, 343 (Bankr.

S.D.N.Y. 2002) (where transfer would merely shift the inconvenience from one party to the other, choice of venue should not be disturbed).

WHEREFORE, the Petitioning Creditors request that the Court (i) deny the relief requested in the Transfer Motion, and (ii) grant such other and further relief as is proper.

Dated: May 29, 2012
      Wilmington, Delaware

LANDIS RATH & COBB LLP

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4500

—and—

Adam C. Harris
Robert J. Ward
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

*Attorneys for BDCM Opportunity Fund II, LP,
Black Diamond CLO 2005-1 Ltd, and
Spectrum Investment Partners, L.P.*