Page 1

1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3    Case No. 12-11564-CSS

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6    ALLIED SYSTEMS HOLDINGS, INC.

7              Debtors.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9

10                   United States Bankruptcy Court

11                   824 North Market Street

12                   Wilmington, Delaware

13

14                   August 20, 2013

15                   4:42 PM

16   B E F O R E :

17   HON CHRISTOPHER S. SONTCHI

18   U.S. BANKRUPTCY JUDGE

19

20   ECR OPERATOR:  LESLIE MURIN

21

22

23

24

25

1    HEARING RE:   Status Conference

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:   Melissa Looney, CET**D-607

Page 3

```
1    A P P E A R A N C E S :

2    TROUTMAN SANDERS, LLP

3          Attorneys for the Debtors

4          Bank of America Plaza

5          600 Peachtree Street, Suite 5200

6          Atlanta, Georgia 30308

7

8    BY:  JEFFREY W. KELLEY, ESQ. (TELEPHONIC)

9          MICHAEL E. JOHNSON, ESQ. (TELEPHONIC)

10

11   RICHARDS, LAYTON & FINGER, P.A.

12          Attorneys for the Debtors

13          One Rodney Square

14          920 North King Street

15          Wilmington, Delaware 19801

16

17   BY:  ROBERT STEARN, JR. ESQ. (TELEPHONIC)

18          MARK COLLINS, ESQ. (TELEPHONIC)

19          CHRIS SAMIS, ESQ. (TELEPHONIC)

20

21

22

23

24

25
```

1  A P P E A R A N C E S  CONT'D:

2  LATHAM & WATKINS, LLP

3       Attorneys for Yucaipa, et al.

4       355 South Grand Avenue

5       Los Angeles, California 90071

6

7  BY:  ROBERT A. KLYMAN, ESQ. (TELEPHONIC)

8       RUSSELL SAUER, ESQ. (TELEPHONIC)

9

10  SCHULTE, ROTH & ZABEL, LLP

11       Attorney for Black Diamond

12       919 Third Avenue

13       New York, New York 10022

14

15  BY:  ADAM C. HARRIS, ESQ. (TELEPHONIC)

16

17  KING & SPALDING, LLP

18       Attorneys for Jack Cooper

19       1180 Peachtree Street

20       Atlanta, Georgia 30309

21

22  BY:  JESSE H. AUSTIN, III, ESQ. (TELEPHONIC)

23       PAUL FERDINANDS, ESQ. (TELEPHONIC)

24

25

1   A P P E A R A N C E S CONT'D:

2   SIDLEY AUSTIN

3        Attorney for the Unsecured Creditors

4        787 Seventh Avenue

5        New York, New York 10019

6

7   BY:  MICHAEL BURKE, ESQ.

8

9   COHEN WEISS & SIMON LLP

10       Attorney for the Teamsters

11       330 West 42nd Street

12       New York, NY 10036

13

14  BY:  RICHARD SELTZER, ESQ.

15

16  ALSO APPEARING TELEPHONICALLY:

17  MARIA A. SAWCZUK

18  MARK SHAPIRO

19  ABIGAIL SNOW

20  CARL STAPEN

21  ROBERT STARK

22  JONATHAN D. SUNCHEIMER

23  MIKE TESTMAN

24  TIMOTHY TUREK

25  DEREX WALKER

1   TELEPHONIC APPEARANCES CONT'D:

2   ELIZABETH WELLER

3   RICHARD EHRLICH

4   BRIAN GREER

5   BOB GRIFFIN

6   WILLIAM A. HAZELTINE

7   FREDERICK D. HOLDEN JR.

8   ADAM LANDIS

9   ERIC CARLSON

10   DANIEL W. LINNA

11   MIKE RIGGS

12   SOMMER L. ROSS

13   DEREK C. ABBOTT

14   WILLIAM ALLEMAN

15   STEPHEN ANTINELLI

16   EDMON MORTON

17   JOHN BLOUNT

18   STEPHANIE BOND

19   PEG BRICKLEY

20   CHARLES BROWN

21   WILLIAM E. CHIPMAN

22   THEO CIUPITU

23   DAVID L. BUCHBINDER

24

25

1                    P R O C E E D I N G S

2            THE COURT:  Good afternoon.  This is Judge

3    Sontchi.  I missed you guys.  Let's get started.

4            MR. KELLEY:  Good afternoon, Your Honor.  This is

5    Jeff Kelley from Troutman Sanders representing the Debtors

6    along with Mark Collins and Robert Stearn who are also on

7    the line.

8            First of all, the Debtors would like to thank the

9    Court for holding today's status and scheduling conference.

10   The purpose of this conference from our perspective is to

11   provide Your Honor with a brief update concerning the

12   outcome of the auction which was held last Wednesday and

13   Thursday and went very late into the evening both of those

14   days, by the way.  And then to discuss the timing of the

15   sale hearing and the potential intermediate deadlines for

16   the filing of the sale documents relating to the successful

17   bid, the objections to the sale, replies and so forth.

18           It's not -- it's not our desire or intent, Your

19   Honor, to discuss today the merits of the Debtors' selection

20   of the successful bid or the other aspects of the auction

21   and the sale process.  We think that can and should wait

22   until the sale hearing.  Instead, we simply want to discuss

23   the timing of the sale hearing and the intermediate dates

24   between now and then and allow the other interested parties

25   an opportunity to be heard on those matters and answer any

1    questions Your Honor may have.

2            First, as to the update, Your Honor, the Debtors

3    with the assistance of their advisors ran what we believed

4    to be a fair, open and transparent and lengthy auction

5    process last week.  The transcript of that auction was filed

6    by the Debtors earlier today.

7            Notwithstanding protestations in the transcript

8    concerning the conduct of the auction, there were multiple

9    rounds of bids which ended with the Debtors designated a

10   cash and credit bit by an acquisition vehicle designated by

11   the pre-petition bank agent at the direction of the

12   requisite lenders in the amount of $105 million plus assumed

13   liabilities and again that was designated as a successful

14   bid.

15           The next highest bid as determined by the Debtors

16   was submitted by Jack Cooper transport in the amount of $100

17   million cash plus assumed liabilities.  Jack Cooper was of

18   course afforded the opportunity at the auction to top the

19   $105 million requisite lender bid, but did not do so.

20           As part of their bids, neither of these bidders

21   would consent to being designated as a backup bidder.

22   Despite the -- what we think are the best efforts of the

23   Debtors and their advisors in connection with the auction,

24   like most of the other proceedings in these particular

25   cases, Your Honor, the sale hearing promises to be a

1    contested hearing.  This live testimony will certainly span

2    a half day if not longer.  As stated on the record of the

3    auction that we expect at least the Creditors' Committee,

4    the Teamsters Negotiating Committee -- which by the way is

5    one of four members of the Creditors' Committee as Your

6    Honor may be aware -- and Yucaipa.  We expect those three at

7    least to file substantive objections to the proposed sale to

8    the successful bidder.

9            We also understand that the unsuccessful bidder,

10   Jack Cooper Transport will also be filing an objection.  I

11   will note that the Debtors' rights to object to Jack

12   Cooper's standing to be heard at the sale hearing are

13   preserved by the Debtors.

14           As a preview of what will be at issue at the sale

15   hearing, Your Honor, each bidder complains, among other

16   things, that the other bidder did not fully comply with the

17   terms of the bid procedures order.  Also the Committee, the

18   Teamsters and Yucaipa complain, among other things, that the

19   Debtors inappropriately modified the terms of the bid

20   procedures at the auction, that the successful bid should

21   not have been deemed a qualifying bid and that the

22   successful bid was not the highest and best bid submitted in

23   the auction.

24           Your Honor, given the complexity of these cases,

25   the dynamics of the parties involved, the length of the

1    auction, the fact that the sale hearing will have a number

2    of parties participating, the Debtors think -- think that

3    it's in everyone's best interest to adjourn the sale

4    hearing, which is currently set for this Thursday, August

5    22nd for a limited time to allow for the following.

6            First, the sale documents to be finalized and

7    filed in advance of the objection deadline, so that the

8    parties will have a sufficient opportunity to review the

9    sale documents.

10           Second, for the objections to actually be filed.

11           Third, for --

12           THE COURT:  Could you --

13           MR. KELLEY:  I'm sorry, Your Honor?

14           THE COURT:  I'm sorry.  No, no, I'm sorry I got

15   distracted by something.  Could you start over please with

16   the --

17           MR. KELLEY:  Start over with --

18           THE COURT:  -- with the --

19           MR. KELLEY:  -- issue with the reasons for their

20   limited -- the reasons that we need a limited time?

21           THE COURT:  Yes.

22           MR. KELLEY:  Well first the sale documents need to

23   be finalized --

24           THE COURT:  Okay.

25           MR. KELLEY:  -- and filed in advance of the

1    objection deadline so that all the parties will have an

2    opportunity to review them in advance of the sale deadline.

3              Second, to make time for the objections to be

4    actually filed.

5              Third, time for a reply to be submitted by the

6    Debtors.

7              Fourth, limited discovery to be taken because some

8    of the objecting parties have indicated the possibility of

9    wanting to take discovery.

10             Finally, trial exhibits to be discussed among the

11   parties.

12             It is the Debtors' view, Your Honor, that

13   providing sufficient time for these events will lead to a

14   more organized efficient sale hearing and also provide an

15   opportunity for at least some of the objections to be

16   resolved in advance of the sale hearing.

17             Having sufficient time to accomplish these items

18   certainly will streamline the hearing for the Court.  We

19   think would be of great assistance to the Court in preparing

20   for the sale hearing and the trial participants as well.

21             As Your Honor may know, we've been in contact with

22   chambers regarding an adjourned sale hearing date.  We've

23   been provided with this Friday, August 23rd or September

24   17th.

25             I would note Your Honor that the Debtors do have

1    the right under Paragraph 15 of the bid procedures order to

2    adjourn the sale hearing from time to time without further

3    notice to the parties in interest other than by announcement

4    of the adjournment in open court or on the Court's calendar

5    on the date selected.  So we do wish to exercise that right,

6    Your Honor, but we -- since we know the objecting parties

7    may oppose an adjournment for that length of time that is

8    September 17th, we wanted to discuss the length of the

9    adjournment with the Court with all parties on the line.

10            It's for that reason, Your Honor -- and I'm very

11   near the conclusion of my remarks here -- it's for that

12   reason we've asked for this scheduling conference with Your

13   Honor for all of the reasons I mentioned earlier.  The

14   Debtors would like to adjourn the sale hearing for a limited

15   period of time.  In a perfect world we would seek an

16   adjournment for a week or so.  But if the date the Court can

17   first hear us after this week is September 17th at noon, we

18   would like to -- so to move the sale hearing to that date.

19            Your Honor, that concludes my remarks at this

20   point.

21            THE COURT:  Thank you.  Anyone else wish to be

22   heard?

23            MR. KLYMAN:  Your Honor, this is Robert Klyman of

24   Latham Watkins on behalf of Yucaipa if I may be heard?

25            THE COURT:  Yes.

1              MR. KLYMAN:  Your Honor, during the two days of

2     auction that occurred one of the issues that we faced was

3     that despite the (indiscernible - 4:50:30) requiring that

4     bidders come in with a fully (indiscernible - 4:50:37) and

5     executed set of sale documents.  The entity that was

6     designated the winning bid had no documents.

7              There were no documents that were finalized.  We

8     don't know by what date all of the material documents are

9     going to be provided.  There were no financials presented

10    associated with the winning bidder or how the entities are

11    going to be set up by the winning bidder will satisfy the

12    requirements under Section 355 (sounds like) that they can

13    provide adequate assurance of future performance.

14             The bid itself has many complex issues associated

15    with, including the designation or the transfer of the right

16    to credit bid by the agent to a new entity and the fact that

17    the -- that the good faith deposit in part was the right to

18    receive distributions or forgiveness of debt by the first

19    lien lenders as a whole, which Yucaipa believes is not

20    permitted by the credit agreement.

21             We don't know if there was any financial analysis

22    done by the Debtors financial advisor and we are looking

23    forward to getting a full set of documents in connection

24    with the sale which should have been presented last week.

25    Once those documents are fully presented, then Yucaipa and

1    maybe others may want to take some discovery.  Because right

2    now we just have a oral recitation of how the winning bidder

3    is going to set up two entities to take the good assets of

4    Allied and put them in one entity and put the contracts,

5    employees and other liabilities in a totally separate

6    entity.  We have no information about how these two entities

7    will be operated together, what the intercompany dynamics

8    will be, how the rights of the parties in the Bankruptcy

9    case that are going to be participating in this credit bid

10   will be effected by that.  And so we believe there will be

11   depositions of the bidder, of the Debtor, the special

12   committee, and of the financial advisor at a minimum.

13          The other compounding factor here, Your Honor, is

14   that from and after September 2nd through September 16, you

15   not only have Labor Day, but we have the two major Jewish

16   holidays, Rosh Hashanah and Yom Kippur.  And so those of us

17   on the west coast who participate in those holidays having a

18   hearing the day before or the day of is very problematic

19   because I have to be back in Los Angeles by sun down of the

20   applicable day, which is the 4th and the 13th.

21          There is no urgency here, Your Honor, to jam the

22   non-bidding party and the Debtor.  The winning bidder agreed

23   to extend the closing date from October until the end of the

24   year.  The DIP lender has provided that there is an

25   extension of time through the end of the year to close the

1    transaction.  And Yucaipa would respectfully request, Your

2    Honor, that given that the bid procedures were not followed

3    in the least, there were no written documents that were

4    fully executed with financials, that to jam Yucaipa and

5    other parties over Labor Day and these other holidays

6    wouldn't be fair to us.  So we would request a hearing date

7    of the 17th or beyond to give us an adequate opportunity to

8    review all the documents and to prepare for the hearing.

9              THE COURT:  Thank you.

10             Anyone else?

11             UNIDENTIFIED SPEAKER:  Your Honor -- go ahead,

12   Michael.

13             MR. BURKE:  Your Honor, Michael Burke for the

14   Committee.  I won't burden this Court with the recitation of

15   what we believe occurred at the auction.  I simply want to

16   note and if Mr. Austin is on the phone as well, the -- we

17   believe it will be a waste of time in light of the fact that

18   the documents haven't been filed, a waste of this Court's

19   time to obviously have the hearing Thursday or Friday.  But

20   we do have a concern regarding the status of the -- what

21   I'll call the -- backup bidder Jack Cooper, which was not a

22   successful bidder but which was the backup -- was not the

23   successful bidder, but they had agreed not -- well they just

24   said they were not going to be a backup bidder.

25             Now I understand that they will be a backup

1    bidder, but I do not believe that their financing commitment

2    goes out to the 17th and that's why Your Honor we had

3    respectfully requested a date for the sale hearing sometime

4    in between next Thursday and September 17th.  And I'm very

5    conscious obviously of the Labor Day and the Jewish

6    Holidays, but I do think it would be appropriate especially

7    in light of the fact of the financing commitment and

8    possibly the lack of a backup bidder to have the hearing

9    before the 17th.

10          Thank you, Your Honor.

11          THE COURT:  You're welcome.

12          MR. AUSTIN:  Your Honor, this is Jess Austin on

13   behalf of Jack Cooper.  Our opposition to a continuance

14   frankly is opposition to request for any continuance.  The

15   notice had been put out for a hearing for this Thursday.

16   And the fact that the Debtor is saying to this Court that we

17   need more time because we need to get the documents together

18   to file where the previously approved bid procedures which

19   we understand was heavily negotiated and involved Black

20   Diamond Spectrum (ph) actually required the filing of the

21   asset purchase agreement whether it was modified or not at

22   the auction, required that to be filed within two business

23   days of conclusion of the auction, which would have required

24   it to be filed yesterday.

25          So that -- from our perspective, the fact that

```
1    they're asking for additional time to actually do the

2    documentation we think is prime facie evidence of the -- how

3    they did not follow the procedures and waive things that

4    they couldn't waive at the auction, which we believe

5    requires very little discovery if any and can be argued this

6    Thursday as a practical matter.

7              To go out very far and I can state for the record

8    that we have been successful since last week to reinstate

9    our financing commitment at least for this time this week.

10   I don't know and I don't have any understanding from my own

11   client how far out we can go.

12             I note that the further -- each day that passes

13   that people are asking us to still be available where we're

14   the only party that was submitting an all cash bid for the

15   Debtors assets that would keep those assets intact, operate

16   those assets truly as a going concern and be the party that

17   would offer the most jobs for the substantial majority of

18   the company's employees both union and non-union.  Each day

19   that goes by certainly is a cost to my client that is a cost

20   that we may not be able to in any way recoup, because we're

21   having to pay for a financing commitment for an extended

22   period of time.

23             We would -- we oppose here -- we showed up here

24   today to actually oppose any extended request for the

25   auction as the Debtors has made at this point.
```

1          THE COURT:  Okay.  Thank you.

2          MR. HARRIS:  Your Honor it's Adam Harris from

3    Schulte Roth on behalf of Black Diamond Spectrum.  If I may,

4    Your Honor, I will just be a moment which is and to say the

5    following.

6          I think the record of the auction will speak for

7    itself.  Your Honor, it's on file and obviously Your Honor

8    is free to read through that.  It was two days of very

9    extensive discussions both on the record and off the record.

10   And I will -- think it's fair to say that no matter where

11   any form of asset purchase agreement may have started, the

12   modifications that were made orally on that record over the

13   course of two days required substantial revisions to a form

14   that everybody who is on this phone had seen and was very

15   familiar with.

16         Every document with respect to the proffer that

17   was made at the auction and agreed to by the Debtors by New

18   Allied Acquisition Co. LLC, now in the possession f the

19   Debtors and we are simply awaiting their comments.  They are

20   in a form that my clients are prepared to execute as we sit

21   here right now and deliver to everybody else.

22         I will say for Your Honor's benefit, because we

23   were very up front with this, for everybody at the auction

24   there is a provision in the asset purchase agreement which

25   allows the purchaser to designate other entities to purchase

1   -- become effectively the owner of various tools of assets

2   to be the assignee of contracts and to assume certain of the

3   liabilities to be assumed under the terms of the agreement.

4   And we have preliminarily set forth a -- which we did on the

5   record -- an outline of what we would anticipate doing as

6   part of our acquisition.

7           I understand people have issues with it.  We are

8   happy to try and address those issues.  They relate

9   principally to -- in my mind -- providing counter parties

10  with adequate assurance of future performance.  As to each

11  of the entities who may become the counter parties to their

12  contracts.  And we have a discussion that needs to be had

13  with the International Brotherhood of Teamsters relative to

14  their contract and for the record, Your Honor, part of our

15  bid was an agreement by my clients to have their operating

16  company in the future sign the identical agreement with the

17  IBT including all the riders and supplements as to what

18  Allied is currently a party to.

19          So we are happy, Your Honor, to work with whatever

20  schedule the Court finds acceptable here in terms of an

21  adjourn date.  I do not think and I appreciate and have many

22  of the same concerns Mr. Klyman does about this time of year

23  and in particular the Jewish holidays, but I do think that

24  there is a fairly discreet set of issues here that people

25  can focus on and that the work that needs to be done in

1   order to have a hearing on September 17th can get done and

2   that the schedule reset today if the Court's inclined to so

3   do that, should be consistent with that.

4          If it turns out for whatever reason people think

5   they can't get the stuff done by that date, Your Honor, I'm

6   sure is always available to revisit these issues under

7   appropriate circumstances.

8          So with that, Your Honor, we would support the

9   Debtors' request for an extension for a day Your Honor feels

10  is appropriate and which the Court can make itself available

11  for the hearing.  But I don't think that it should be out

12  longer than September 17th at this point in time.

13          Thank you, Your Honor.

14          MR. SELTZER:  Your Honor, Richard Seltzer of Cohen

15  Weiss & Simon LLP for the National Teamster Negotiating

16  Committee.  One of the key issues at a hearing is going to

17  be not just the conduct of the auction, but the Teamsters'

18  objection that by in effect assigning the collective

19  bargaining agreement to a shell operating company away from

20  all the hard assets of the company, the Debtor could be in

21  violation of the collective bargaining agreement.  And so

22  that is going to be a major issue at the hearing.

23          I think and Your Honor is the master of his very,

24  very busy schedule.  If there are any ways that this hearing

25  could be fit in something like the week of September 2nd, I

1    think our own view is that would be preferable.  I have a

2    personal issue that I'm going to be out of the country on a

3    very long arranged trip the 10th through the 24th.  And we

4    also do think, however, it's important to the extent

5    possible keep Jack Cooper as a viable alternative.  We

6    believe it's more than a viable alternative bidder.

7              Thank you.

8              MR. KLYMAN:  Your Honor, this is Robert Klyman one

9    last point if I may.  We are sympathetic to the Jack Cooper

10   financing expiration.  We do not want to lose them as a

11   potential backup bidder.  So of course that needs to be

12   balanced against the calendaring needs of Yucaipa and

13   others, but we do want to have a full opportunity to review

14   documents and if necessary take expedited discovery.  Thank

15   you.

16             MR. KELLEY:  Your Honor, this is Jeff Kelley again

17   for -- with Troutman Sanders.  I really don't have much to

18   add, although maybe the Court has an understanding of the

19   situation that the Debtor is in, in this particular

20   situation.  And all of the reason that have been given I

21   think point to the fact that the Debtor believes that the

22   wise exercise of its discretion given to it I think under

23   the sale order to adjourn the hearing.

24             We don't share Mr. Klyman's view that it should go

25   out certainly beyond September 17th.  In fact September 17th

1    is -- if that's when it has to be, so be it.  But we --

2    nothing has been said to change our view that if at all

3    possible, we'd like to do it after this week but before

4    September 17th.

5            THE COURT:  Okay.  Thank you everybody.  I

6    appreciate the input.

7            MR. AUSTIN:  And, Your Honor, before you make your

8    make your ruling -- this is Jess Austin again, for the

9    record.  I do want to make it very clear that while my

10   client has the financing to continue trying to acquire the

11   Debtors' assets under the terms of the bid procedures as

12   announced, neither we nor the current Black Diamond Spectrum

13   bid are technically true backup bidders to each others' bid.

14   That's just -- I wanted the record to be clear on that.

15           THE COURT:  Okay.  Thank you.

16           MR. KELLEY:  And, Your Honor, this is Jeff Kelley

17   one more time.  We very much -- we do appreciate -- the

18   Debtor does appreciate that Jack Cooper has now indicated a

19   willingness to have -- to be there perhaps under their

20   financing, but and we do appreciate that.  But the fact that

21   they have financing timing issues does not sway us in our

22   belief as to what needs to happen with respect to not having

23   the hearing this week.

24           THE COURT:  Okay.  Thank you everybody.  Well,

25   we're talking about a sale hearing here.  And usually this

1    is done about 12 hours after the auction closes.  This has

2    been and continues to be a difficult case.

3            I can't really frankly imagine it requiring the

4    kind of time generally speaking until September 17th, except

5    of course we do have issues to which I am sensitive about

6    religious holidays and civic holidays.  And of course my won

7    schedule dictates what I can do and what I can't do in this

8    context.  So I will continue with the sale hearing -- let me

9    double check on thing.  Sorry I don't mean to be prolonging

10   it.  I will continue the sale hearing to 12 noon on Tuesday,

11   September 10th and you can build a schedule back from that.

12           I understand that that creates the issue of Rosh

13   Hashanah for Thursday and Friday the previous week -- excuse

14   me, Friday and Saturday of the previous week.  So it is what

15   it is.  And also Labor Day is thrown in there.  But the

16   Debtor is -- the Debtors needs come first and the lawyers

17   are to a certain extent superfluous to those needs.  So

18   that's when we'll have the sale hearing.

19           MR. KELLEY:  Thank you, Your Honor.

20           UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

21           MR. BURKE:  Your Honor, just -- again, Michael

22   Burke for the Committee and I understand the 10th is the day

23   you've selected.  What we would like to also do, Your Honor

24   is also scheduled for this Thursday is the 9019 motion that

25   was filed by the Committee, Yucaipa and the insurers. With

1    your Court's -- with Your Honor's permission, we would also

2    like to adjourn the 9019 motion also until the 10th.

3            And Mr. Kelley can correct me if I'm wrong, but I

4    believe that means there would be nothing on the calendar

5    for Thursday.

6            MR. KELLEY:  I'm not aware of anything else.

7            THE COURT:  So the settlement hearing will get --

8    will get continued as well until September 10th.

9            MR. BURKE:  Yes, Your Honor.  Please.

10           THE COURT:  All right.  Mr. Kelley may not have

11   the agenda in front of him or not, but, you know, obviously

12   if nothing is going forward, nothing is going forward and

13   the hearing will be cancelled.  But just let Ms. Gassey (ph)

14   know.

15           MR. BURKE:  We will do that, Your Honor.

16           THE COURT:  Okay. All right.  Thank you very much.

17           (Chorus of thank you)

18           THE COURT:  All right.  We are adjourned.  Thank

19   you.

20           UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

21           UNIDENTIFIED SPEAKER:  Thank you for your time.

22       (Whereupon these proceedings were concluded at 5:09

23   p.m.)

24

25

1                              RULINGS

2                                             PAGE     LINE

3   Sale Hearing Adjourned to

4   September 10, 2013                          22       24

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                C E R T I F I C A T I O N

2

3    I, Melissa Looney, certify that the foregoing transcript is

4    a true and accurate record of the proceedings.

5    **Melissa**    Digitally signed by Melissa
     Looney
     DN: cn=Melissa Looney, o, ou,
6    **Looney**    email=digital1@veritext.com,
     c=US
     Date: 2013.08.21 17:26:15 -04'00'
7    _____

8    Melissa Looney

9    AAERT Certified Electronic Transcriber CET**D-607

10

11   Veritext

12   200 Old Country Road

13   Suite 580

14   Mineola, NY 11501

15

16   Date:  August 21, 2013

17

18

19

20

21

22

23

24

25