# Exhibit A

**In The Matter Of:**

*Bankruptcy Court for the District of Delaware*
*In Re: Allied Systems Holding*

---

*Auction*
*September 11, 2013*

---

*Wilcox & Fetzer, Ltd.*
*1330 King Street*
*Wilmington, DE   19801*
*email: depos@wilfet.com, web: www.wilfet.com*
*phone:  302-655-0477, fax:  302-655-0497*



Original File auction091113allied.es.TXT
Min-U-Script® with Word Index

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE


In re                          )Chapter 11
                               )
ALLIED SYSTEMS HOLDING,        )
                               )Case No. 12-11564 CSS
                               )
        Debtor.                )



                    Richards, Layton & Finger
                    One Rodney Square - 3rd Floor
                    Wilmington, Delaware

                    Wednesday, September 11, 2013
                    2:00 p.m.




    -- TRANSCRIPT OF AUCTION PROCEEDINGS --




                    WILCOX & FETZER
            Registered Professional Reporters
    1330 King Street -  Wilmington, Delaware 19801
                    (302) 655-0477
                    www.wilfet.com


WILCOX & FETZER LTD
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

1                    (JC Exhibits 1, 2, 3, 4, 5, 6, 7,

2   8 and 9 were marked for identification.)

3                    MR. KELLEY:  Okay.  We will go on

4   the record now.  This is the recommencement of

5   the Allied auction as ordered by Judge Sontchi

6   this past Monday, the 9th of September, at the

7   request or I should say motion of the

8   committee, joined in by the debtors.

9                    Before I go forward I think the

10  court reporter would like to have those ladies

11  or gentlemen who think that they are going to

12  speak during the auction to identify themselves

13  now, and say who you represent and/or are with.

14                    That will include the people on

15  the phone.  We will do on the phone after the

16  people in room.  Again, all we are asking for

17  is those individuals who think that they are

18  going to speak during the auction to identify

19  themselves, and then, of course, any time you

20  speak during the auction make sure that you

21  identify yourself at that time as well.

22                    So for the record, I'm Jeff

23  Kelley with Troutman Sanders, representing the

24  debtors.

```
 1              MR. COLLINS:  I'm Mark Collins of

 2   Richards, Layton & Finger, on behalf of the

 3   debtors.

 4              MR. STARK:  My name is Robert

 5   Stark, from Brown Rudnick, representing the

 6   Special Committee of the Board of Directors.

 7              MR. BURKE:  Michael Burke,

 8   representing the Official Committee of

 9   Unsecured Creditors.

10              MR. CIANTRA:  Thomas Ciantra,

11   Cohen, Weiss and Simon, representing the

12   Teamsters Negotiating Committee.

13              MR. HARRIS:  Adam Harris,

14   Schulte, Roth & Zabel, representing New Allied

15   Acquisition Co., as well Black

16   Diamond/Spectrum.

17              MR. KLYMAN:  Robert Klyman,

18   Latham & Watkins, on behalf of Yucaipa.

19              MR. AUSTIN:  I'm Jess Austin of

20   King & Spalding, on behalf of Jack Cooper

21   Holdings Corporation, and at least for part of

22   the initial opening my partner, Paul

23   Ferdinands, and Theo Ciupitu, may speak.

24              MR. KELLEY:  What about on the
```



```
 1   phone?  I'm sorry, we have one more in the

 2   room.

 3                  MS. MELNIK:  Selinda,

 4   S-E-L-I-N-D-A, Melnik, M-E-L-N-I-K, DLA Piper,

 5   for the Canadian Auto Workers, Canada, CAW

 6   Canada.

 7                  MR. ANTONELLI:  And Steve

 8   Antonelli with Rothschild for the debtors.

 9                  MR. STEARN:  Bob Stearn,

10   Richards, Layton & Finger, for the debtors.

11                  MR. KELLEY:  Hearing nobody else

12   in the room, anybody on the phone that thinks

13   they intend to speak during the auction?

14                  MR. HALDON:  This is Frederick

15   Haldon, Orrick, Herrington & Sutcliffe, for

16   Vascar Limited.  But I have no present

17   intention to speak, but might.

18                  MR. KELLEY:  Thank you.

19                  MR. WAXMAN:  This is Jeff Waxman

20   on behalf of General Motors.  General Motors

21   has no intention of speaking other than to

22   simply state that it is restating its position

23   that it stated at the original auction with

24   respect to not being permitted to bid as a
```



1    qualified bidder.

2                    MR. KELLEY:  Thank you, Mr.

3    Waxman.  Anybody else on the phone?

4                    As we stated at the beginning of

5    the first session of the auction on August

6    14th, this auction is going to be conducted, as

7    again, stated by Judge Sontchi this past

8    Monday, in accordance with the bid procedures

9    set forth and attached to Judge Sontchi's order

10   of June 21st, as modified by the debtor in its

11   discretion, to the extent such modifications

12   are permitted in the bid procedures and the bid

13   procedures order.

14                   With that, the reason that we are

15   recommencing the auction is that the debtors

16   received an offer from Jack Cooper Transport

17   this past Friday, September 6th.

18                   At this time I would like to ask

19   Mr. Austin, who is here representing Jack

20   Cooper Transport, to state for the record what

21   that offer is and identify the documents

22   evidencing that offer.

23                   MR. COLLINS:  If I may, Jeff.

24                   MR. KELLEY:  Please do.



1          MR. COLLINS:  One thing we would

2  like, as per Judge Sontchi's order, for each of

3  the two qualified bidders to confirm that they

4  have not engaged in any collusion with any

5  other qualified bidder regarding the bid

6  procedures, the auction, or any proposed

7  transaction relating to the assets.

8          MR. AUSTIN:  This is Jess Austin

9  on behalf of Jack Cooper Holdings Corp., which

10  I'll refer to as Jack Cooper.

11          As I speak, we can confirm there

12  has been absolutely no collusion, deals,

13  promises, frankly there has been no real

14  discussions whatsoever, between Jack Cooper and

15  the Black Diamond/Spectrum bidders or their

16  designated purchasers.

17          MR. HARRIS:  Adam Harris on

18  behalf of New Allied Acquisition, Black Diamond

19  and Spectrum.  We would confirm the same.

20          MR. COLLINS:  Thank you.

21          MR. KELLEY:  Mr. Austin.

22          MR. AUSTIN:  For the record, I'm

23  Jess Austin from the firm of King & Spalding on

24  behalf of Jack Cooper Holdings Corporation.

1              As Mr. Kelley indicated, on

2    September the 6th, on behalf of our client, we

3    submitted to the debtor a revised bid for

4    substantially all of the debtors' assets,

5    having an ascribed value of purchase price of

6    $135 million, plus designating some real estate

7    that would be left behind that we would not be

8    acquiring as a purchased asset.

9              Since that time we have been in

10   discussions with, communications with the

11   debtors and their representatives to address

12   certain questions and comments and revisions

13   that were requested to the proposed asset

14   purchase agreement schedules and exhibits that

15   were submitted on September 6th.

16              As a result of those discussions

17   and negotiations, we are prepared to submit at

18   this time revised documents, the purpose of

19   which will be to show the various changes that

20   were made at the request of the debtors in an

21   attempt to, what we believe has been successful

22   in, matching certain provisions of Jack

23   Cooper's proposed asset purchase agreement with

24   the prior deemed successful bid presented by

1    the Black Diamond and Spectrum.

2                    The bid remains at, proposal

3    remains at a purchase price of $135, which is

4    comprised of $100 million from a second lien

5    term loan, committed dollars there; $25 million

6    which will be drawn off of the Jack Cooper's

7    existing revolver; and issuance of $10 million

8    face amount of Jack Cooper's current 9.25

9    percent senior secured notes.

10                    MR. KLYMAN:  Robert Klyman on

11   behalf of Yucaipa.  Can you just repeat those

12   numbers.

13                    MR. AUSTIN:  $100 million which

14   is committed financing from MSD Capital; $25

15   million which we can draw off or Jack Cooper

16   can draw off its existing asset based loan

17   facility; and $10 million face amount of Jack

18   Cooper's 9.25 percent notes due in 2020.

19                    As the document I'm getting ready

20   to identify in a minute as Jack Cooper's

21   Exhibit 1, and as a result of and in connection

22   with the limits on our financing commitment

23   from MSD, this offer will remain outstanding

24   until 11:59 p.m. on Wednesday, September 18th,



1    in hopes that by that time the Bankruptcy Court

2    can determine Jack Cooper's bid to be the

3    highest or best bid for the debtors' assets.

4                    MR. COLLINS:  Mark Collins.

5    Jess, if I may interrupt one moment.  Can you

6    confirm, when you say outstanding, do you mean

7    that the bid is binding and irrevocable through

8    that time period?

9                    MR. AUSTIN:  Yes.

10                    MR. COLLINS:   Thank you.

11                    MR. AUSTIN:  We would note that

12    in connection with our bid, and, Robert, to a

13    certain extent in response to your questions

14    about the purchase price components, based on

15    information which the debtors have previously

16    provided to Jack Cooper, the excess land, which

17    is located I believe in Windsor, Ontario, we

18    understand has an ascribed fair market value of

19    approximately $3.4 million.

20                    With that, I would like to

21    formally present for the auction what we have

22    had marked, and it is going to be JC 1, but it

23    will be Jack Cooper Exhibit No. 1, which is a

24    transmittal letter from myself to Mr. Kelley

1    and Mr. Collins, which will be submitting of

2    the documents I'm getting ready to identify.

3                    Jack Cooper Exhibit No. 2 is a

4    revised asset purchase agreement which reflects

5    the negotiations and discussions with the

6    debtors' representatives.  We have dated it as

7    of September the 11th.

8                    Jack Cooper's Exhibit No. 3 is a

9    black-line of the asset purchase agreement

10   showing changes, black-line changed pages and

11   changes made from the asset purchase agreement

12   which was submitted on September the 6th.

13                    Jack Cooper Exhibit No. 4 is a

14   full and complete set of schedules and exhibits

15   which accompany the September 11th and newly

16   submitted asset purchase agreement.

17                    Jack Cooper Exhibit No. 5 is a

18   black-line showing the limited changes to the

19   schedules and statements -- excuse me -- the

20   schedules and exhibits from the schedule and

21   exhibits submitted on September the 6th.

22                    Jack Cooper's Exhibit No. 6 is a

23   letter from MSD Credit Opportunity Fund, L.P.,

24   to Jack Cooper, which is an amendment to an

1  amended and restated commitment letter, which,

2  among other things, does the following:

3                One, it extends the prior

4  commitment to provide the $100 million

5  financing to and through 11:59 p.m. on

6  September 18th, 2013, as I earlier noted, to

7  what our bid would stay outstanding.

8                It makes additional revisions to

9  the condition precedent in the prior asset

10  purchase agreement -- excuse me -- commitment

11  letter.

12                And it has attached as exhibits

13  confirmation that certain documents that had to

14  be in form and substance satisfactory to MSD

15  have, indeed, been completed, and they are

16  attached in form and substance satisfactory to

17  MSD.

18                These include also copies of the

19  amendments to the Wells Fargo Capital Finance

20  asset-based loan facility, consenting to this

21  transaction at the values that have been

22  submitted.

23                I will note to you that there is

24  a reference in the commitment letter, the



1    amendment to the commitment letter, to the

2    asset purchase agreement in all of the exhibits

3    and schedules being attached as Exhibit D.

4                    Exhibit D is not attached, but I

5    can represent that it is the documents which we

6    have previously identified and marked as

7    Exhibits 2 and I think 4.  We thought we had

8    killed enough trees at this point.

9                    Exhibit E is a letter.

10                   (The next 11 lines have been

11   deemed by counsel to be confidential and are

12   enclosed in a sealed binder at the end of the

13   transcript.)

14                   MR. AUSTIN:  Jack Cooper

15   Exhibit No. 7, so we have a full and complete

16   record, is a copy of the prior September 6

17   amended and restated commitment letter from MSD

18   Capital relative to the $100 financing that is

19   committed for this transaction.

20                   Even though Jack Cooper was not

21   obligated to do so, Exhibit No. 8, Jack Cooper

22   Exhibit No. 8, and we have previously provided

23   this to the debtors, is a copy, redacted

24   version, of the amended and restated fee letter

1    from MSD because it has certain provisions in

2    there that are relevant to this transaction.

3                    The last document is Jack Cooper

4    Exhibit No. 9.  It is a draft of a notice of

5    filing adequate assurance package.  It is

6    providing the information which was similar to

7    and modeled off of the actual adequate

8    assurance package which was filed by Black

9    Diamond and Spectrum, and for a full record we

10   are providing that at this time.

11                   We have previously provided that

12   information along with Jack Cooper's 10-K

13   financial statements for its year ended

14   December 31, 2012, and its financial quarter

15   for the period ending June 30, 2013, as well as

16   had additional financial discussions and

17   conversations between our financial advisers

18   and the debtors' financial advisers as we have

19   attempted to provide information about Jack

20   Cooper's ability to assure adequate assurance

21   of future performance in connection with

22   executory contracts and any assumed leases.

23                   That is our submission.  We are

24   prepared to answer any questions relative to



```
 1    the changes in the asset purchase agreement.
 2                    I can state on the record two
 3    things at this point relative to the bond
 4    component of, the note component of the
 5    purchase price at this time.  Those notes, and
 6    we are able to provide some level of
 7    information to that, is those notes appear to
 8    be trading at 104.5 percent, so they appear to
 9    be trading above par.
10                    And, secondly, with respect to
11    the changes in the contract itself, if there
12    are questions my partner Mr. Ferdinands will
13    answer those questions, but I can state on the
14    record that one of the major changes which we
15    made was to conform the Jack Cooper asset
16    purchase agreement in connection with the same
17    provisions that were under the Black
18    Diamond/Spectrum asset purchase agreement
19    relative to Canadian employees and Canadian
20    law, we have conformed our contract to match
21    the provisions in the Black Diamond/Spectrum
22    contract, and we will be so bound by whatever
23    is the impact of Canadian law with respect to
24    the Canadian employees.
```



```
 1                    MR. KELLEY:  Thank you, Mr.
 2   Austin.
 3                    I did notice that the asset
 4   purchase agreement is not signed, but it is my
 5   understanding that Jack Cooper Transport is
 6   prepared to execute the asset purchase
 7   agreement at the auction, if requested; is that
 8   correct?
 9                    MR. AUSTIN:  That is absolutely
10   correct.  And I can also state that we have
11   had, whether we have the actual board
12   resolution or not, but we have full board
13   approval and authority to enter into this
14   contract.
15                    MR. KELLEY:  At this time do any
16   of the parties have any questions about the
17   presentation that's been made?
18                    MR. HARRIS:  Quickly, Adam Harris
19   on behalf of New Allied Acquisition.
20                    Jess, do you have an extra set of
21   the full set of documents you just handed to
22   the debtors?  Because we haven't seen them.
23                    MR. AUSTIN:  Yes, we can get
24   them.
```



```
1                    MR. KLYMAN:  We would like to see
2    them too.
3                    MR. AUSTIN:  For the record, we
4    have extra sets of the documents we can provide
5    to people.
6                    MR. HARRIS:  Thanks.  Just a
7    couple of questions.  One is, with respect to
8    Canada, and I asked you this question before,
9    and I know what you told me before, but if you
10   could confirm for the record, that there seems
11   to be some language in the asset purchase
12   agreement which gives you discretion with
13   respect to taking the employees in Canada and
14   the business in Canada.  Can you confirm on the
15   record that you, in fact, will be employing all
16   the employees in Canada and taking them as
17   transferred employees?
18                    MR. AUSTIN:  The answer is yes.
19   In fact, what is the section?
20                    MR. RIGGS:  6.1.
21                    MR. AUSTIN:  Section 6.1 of the
22   agreement provides for that.
23                    MR. HARRIS:  And in conjunction
24   with that, based upon that representation, you
```



1  will also be taking the both prepetition and

2  any postpetition severance obligations, and

3  health and welfare obligations associated with

4  that?

5            MR. AUSTIN:  We understand that

6  may well be part of the obligations we would be

7  picking up.

8            MR. RIGGS:  The answer is yes.

9            MR. HARRIS:  I like your answer

10  better than his.

11            And what, if any, notice has been

12  sent out to counterparties on contracts with

13  respect to your revised bid so as to allow them

14  to inquire or deal with objections prior to a

15  hearing on the 17th, if your commitment letter

16  terminates on the 18th?

17            MR. AUSTIN:  We would have to

18  confer with the debtor about that.  We have not

19  sent out any such notice.

20            MR. HARRIS:  Okay.  And just for

21  clarity, you haven't changed the provision in

22  the asset purchase agreement capping the HSR

23  reimbursement at $3 million, right?

24            MR. AUSTIN:  That is correct on

1  an interim basis.  But, obviously, if we

2  prevail, I believe our obligation is to pay a

3  hundred percent.

4                    (Discussion off the record.)

5                    MR. CIUPITU:  I believe it is in

6  section 8.15 of the APA, if we can go and look

7  at it, it is basically capped at 3 million,

8  which clearly should cover all the costs.

9                    MR. HARRIS:  And prior to today,

10  have the parties taken any action to actually

11  seek HSR approvals?

12                    MR. AUSTIN:  No.

13                    MR. HARRIS:  And where is the

14  company, in your view, on your ability to get

15  HSR approvals prior to December 31st outside

16  date?

17                    MR. CIUPITU:  High, very high

18  likelihood we believe we will get it, yes.

19                    MR. HARRIS:  Under the terms of

20  your indenture for the nine and a quarter

21  percent senior secured notes, is there any

22  restriction on issuing additional notes if

23  there is an event of default under that

24  indenture?



```
 1                    MR. CIUPITU:  If there is an

 2   event of default?

 3                    MR. HARRIS:  Yes.

 4                    MR. CIUPITU:  Yes, but we are not

 5   in an event of default.

 6                    MR. HARRIS:  But your obligation

 7   to issue those notes is contingent, it is

 8   future obligation, right?

 9                    You would issue them at closing

10   or in connection with payment of liquidated

11   damages, you would do it at some point in the

12   future, right?

13                    MR. CIUPITU:  Correct.  But,

14   again, this is a bond, right, so there is no

15   maintenance covenants, there is no risk of any

16   defaults.

17                    MR. HARRIS:  I'm just asking the

18   question.

19                    MR. CIUPITU:  I'm just answering.

20                    MR. AUSTIN:  I understand.

21                    MR. HARRIS:  I don't have any

22   other questions for now.

23                    MR. KELLEY:  Does anybody else

24   have any questions about the presentation that
```



1   Mr. Austin made?

2                   If not, the debtors would like to

3   take a short break to, very short break, you

4   need not leave the room, to make sure we have

5   got our mental and written checklist covered

6   before we make our announcement on highest and

7   best with respect to this particular offer.

8                   (A recess was taken from 2:44

9   p.m. until 3:37 p.m.)

10                  MR. KELLEY:  Okay.  Everybody, we

11  are ready to go back on the record.  Again,

12  this is Jeff Kelley for the debtors.

13                  After consultation with our

14  consultation parties, Yucaipa, and the

15  Creditors' Committee, and after consultation

16  with the Special Committee of the Board of

17  Directors of debtors, the debtors declared the

18  Cooper bid that was presented by Mr. Austin as

19  the highest or best bid of the auction to this

20  point.  Unless anybody has any questions or

21  comments at this point, I would like to go back

22  off the record.

23                  MR. HARRIS:  Go ahead, Jess.

24                  MR. AUSTIN:  My only comment --



1  Jess Austin for Jack Cooper -- is that in our

2  exhibits which we submitted in connection with

3  our asset purchase agreement included the

4  schedules and exhibits, both the clean and

5  black-line, we deem that information to be

6  confidential, and I believe the debtor does

7  also, and we would ask that that not be as a

8  general rule publicly disseminated.

9            MR. KELLEY:  I should have been

10  clear.  Before turning the bid process back

11  over to New Allied Acquisition Corporation, we

12  would like to go off the record for a

13  discussion among the debtors and others.

14            MR. HARRIS:  Adam Harris for New

15  Allied and on behalf of Black Diamond/Spectrum.

16            Before you go off the record,

17  Jeff, as everybody in the room knows, there

18  have been substantial amount of objections

19  filed to the sale so far, in particular to

20  approval of the bid of New Allied Acquisition

21  Corp., and we are here to participate in this

22  auction and we intend to do so on a go forward

23  basis, understanding that to the extent we

24  continue to bid here and are deemed to be

1    highest and best, many of the objections that

2    have been raised so far would likely continue

3    to be prosecuted by the parties that have filed

4    them.

5                    As a result of that, and in our

6    capacity as requisite lenders with the ability

7    to consent, whose consent is likely required in

8    order to do a sale along the lines of the bid

9    submitted by Jack Cooper, we would request the

10   opportunity to meet with Jack Cooper by

11   ourselves to see whether we can resolve, come

12   to terms that would resolve many of those

13   objections, and also result in a higher value

14   in a bid for the benefit of the estate and its

15   creditors.

16                   And I would ask the creditors'

17   committee, the IBT, the company, and Yucaipa to

18   state on the record whether they would allow us

19   to have that meeting.

20                   MR. KLYMAN:  Robert Klyman of

21   Latham on behalf of Yucaipa.

22                   We would be happy to participate

23   in such a meeting, in an open forum, but we are

24   not supportive of the meeting as described by

1  Mr. Harris.

2               MR. KELLEY:  The debtors, the

3  debtors are supportive of the meeting.  We have

4  or would suggest and request, in fact, on the

5  condition that the meeting include one

6  representative from debtors' counsel.

7               MR. BURKE:  This is Michael Burke

8  for the Committee.

9               We concur with the debtors'

10 position that we encourage the meeting to take

11 place.  However, we would require as a

12 condition that there be a debtor representative

13 at that meeting.

14               MR. CIANTRA:  This is Thomas

15 Ciantra for the Teamsters Negotiation

16 Committee.  We would concur in the debtors'

17 position on that.

18               MR. HARRIS:  Adam Harris for

19 Black Diamond/Spectrum.

20               Jeff, when we go off the record

21 maybe you can confer with the other parties to

22 see whether you can come up with an agreed

23 position on this.

24               MR. KELLEY:  Yes.



```
 1              MR. HARRIS:  So that we can
 2    figure out whether such a meeting, which we
 3    think could result in a possible outcome that
 4    benefits everybody, can be held.
 5              MR. KELLEY:  This is Jeff Kelley
 6    again, for the record.
 7              I need to make a clarifying
 8    remark.  Apparently, I need to consult with
 9    counsel for the Special Committee of the
10    debtors before I can give a definitive answer
11    in terms of what the debtors' position is.
12              MR. HARRIS:  Okay.  So why don't
13    we go off the record, if nobody else has
14    anything, and you guys can confer and do what
15    you want to do.  Let us know.
16              MR. KELLEY:  Thank you.
17              (Recess was taken from 3:42 p.m.
18    until 11:28 p.m.)
19              MS. TERRANOVA:  This is Marisa
20    Terranova from Richards, Layton & Finger.
21              I'm just going on the record to
22    say that we are adjourning until tomorrow
23    morning at 10:00 a.m.
24              (Proceedings conclude at 11:32
```



```
 1   p.m.)

 2                 - - - - - - - -

 3                 E X H I B I T S

 4   JC EXHIBITS                              MARKED

 5   Exhibit 1 - 9/11/13 Austin transmittal

 6   letter                                      2

 7   Exhibit 2 - Revised Asset Purchase

 8   Agreement                                   2

 9   Exhibit 3 - Black-line Asset Purchase

10   Agreement                                   2

11   Exhibit 4 - Full set of schedules/exhibits

12   accompanying 9/11 newly submitted Asset

13   Purchase Agreement (not included in

14   transcript)                                 2

15   Exhibit 5 - Black-line changes to

16   schedules/exhibits (not included in

17   transcript)                                 2

18   Exhibit 6 - MSD Credit Opportunity

19   Fund, L.P., letter (included in transcript

20   except for Exhibit E thereto)               2

21   Exhibit 7 - Prior September 6 amended and

22   restated commitment letter from

23   MSD Capital                                 2

24   JC EXHIBITS                              MARKED
```



1   Exhibit 8 - Redacted version of the

2   amended and restated fee letter from MSD 2

3   Exhibit 9 - Draft of notice of filing

4   adequate assurance package                    2

5

6             (Exhibits 4 and 5, and Exhibit E to

7   Exhibit 6 were retained by Mr. Collins.)

8

9

10  CERTIFICATE OF REPORTER              PAGE 27

11

12

13

14

15

16

17

18

19

20

21

22

23

24



1   State of Delaware     )
                          )
2   New Castle County     )

3

4

5               CERTIFICATE OF REPORTER

6

7           I, Eleanor J. Schwandt, Registered

8   Merit Reporter and Notary Public, do hereby

9   certify that the foregoing record, pages 1 to

10  26 inclusive, is a true and accurate transcript

11  of my stenographic notes taken on September 11,

12  2013, in the above-captioned matter.

13

14           IN WITNESS WHEREOF, I have hereunto

15  set my hand and seal this 12th day of

16  September, 2013, at Wilmington.

17

18

19

20  _Eleanor Schwandt_

21                 Eleanor J. Schwandt

22

23

24



**$**

**$10 (2)** 8:7,17
**$100 (4)** 8:4,13
    11:4 12:18
**$135 (2)** 7:6 8:3
**$25 (2)** 8:5,14
**$3 (1)** 17:23
**$3.4 (1)** 9:19

**A**

**ability (3)** 13:20
    18:14 22:6
**able (1)** 14:6
**above (1)** 14:9
**absolutely (2)**
    6:12 15:9
**accompany (1)**
    10:15
**accompanying (1)**
    25:12
**accordance (1)** 5:8
**acquiring (1)** 7:8
**Acquisition (5)**
    3:15 6:18
    15:19 21:11,20
**action (1)** 18:10
**actual (2)** 13:7
    15:11
**actually (1)** 18:10
**Adam (5)** 3:13
    6:17 15:18
    21:14 23:18
**additional (3)**
    11:8 13:16
    18:22
**address (1)** 7:11
**adequate (4)**
    13:5,7,20
    26:4
**adjourning (1)**
    24:22
**advisers (2)**
    13:17,18
**Again (5)** 2:16
    5:7 19:14

20:11 24:6
**agreed (1)** 23:22
**agreement (20)**
    7:14,23 10:4,
    9,11,16 11:10
    12:2 14:1,16,
    18 15:4,7
    16:12,22
    17:22 21:3
    25:8,10,13
**ahead (1)** 20:23
**Allied (7)** 2:5
    3:14 6:18
    15:19 21:11,
    15,20
**allow (2)** 17:13
    22:18
**along (2)** 13:12
    22:8
**amended (5)**
    11:1 12:17,
    24 25:21 26:2
**amendment (2)**
    10:24 12:1
**amendments (1)**
    11:19
**among (2)** 11:2
    21:13
**amount (3)** 8:8,
    17 21:18
**and/or (1)** 2:13
**announcement (1)**
    20:6
**ANTONELLI (2)**
    4:7,8
**APA (1)** 18:6
**Apparently (1)**
    24:8
**appear (2)** 14:7,8
**approval (2)**
    15:13 21:20
**approvals (2)**
    18:11,15
**approximately (1)**
    9:19
**ascribed (2)** 7:5
    9:18
**asset (21)** 7:8,13,

23 8:16 10:4,
9,11,16 11:9
12:2 14:1,15,
18 15:3,6
16:11 17:22
21:3 25:7,9,12
**asset-based (1)**
    11:20
**assets (3)** 6:7
    7:4 9:3
**associated (1)**
    17:3
**assumed (1)**
    13:22
**assurance (4)**
    13:5,8,20
    26:4
**assure (1)** 13:20
**attached (5)** 5:9
    11:12,16 12:3,
    4
**attempt (1)** 7:21
**attempted (1)**
    13:19
**auction (14)** 2:5,
    12,18,20 4:13,
    23 5:5,6,15
    6:6 9:21 15:7
    20:19 21:22
**August (1)** 5:5
**Austin (28)** 3:19,
    19 5:19 6:8,8,
    21,22,23 8:13
    9:9,11 12:14
    15:2,9,23
    16:3,18,21
    17:5,17,24
    18:12 19:20
    20:1,18,24
    21:1 25:5
**authority (1)**
    15:13
**Auto (1)** 4:5

**B**

back (3) 20:11,
21 21:10

**Bankruptcy (1)** 9:1
**based (3)** 8:16
    9:14 16:24
**basically (1)** 18:7
**basis (2)** 18:1
    21:23
**beginning (1)** 5:4
**behalf (12)** 3:2,
    18,20 4:20
    6:9,18,24 7:2
    8:11 15:19
    21:15 22:21
**behind (1)** 7:7
**benefit (1)** 22:14
**benefits (1)** 24:4
**best (4)** 9:3
    20:7,19 22:1
**better (1)** 17:10
**bid (21)** 4:24
    5:8,12,12 6:5
    7:3,24 8:2 9:2,
    3,7,12 11:7
    17:13 20:18,
    19 21:10,20,
    24 22:8,14
**bidder (2)** 5:1 6:5
**bidders (2)** 6:3,15
**binder (1)** 12:12
**binding (1)** 9:7
**Black (9)** 3:15
    6:15,18 8:1
    13:8 14:17,21
    21:15 23:19
**black-line (5)**
    10:9,10,18
    21:5 25:9,15
**Board (4)** 3:6
    15:11,12 20:16
**Bob (1)** 4:9
**bond (2)** 14:3
    19:14
**both (2)** 17:1
    21:4
**bound (1)** 14:22
**break (2)** 20:3,3
**Brown (1)** 3:5
**Burke (4)** 3:7,7
    23:7,7

**Bankruptcy (1)** 9:1

**business (1)**
    16:14

**C**

**can (21)** 6:11
    8:11,15,16
    9:2,5 12:5
    14:2,13 15:10,
    23 16:4,14
    18:6 22:11
    23:21,22 24:1,
    4,10,14
**Canada (6)** 4:5,6
    16:8,13,14,16
**Canadian (5)** 4:5
    14:19,19,23,24
**capacity (1)** 22:6
**Capital (4)** 8:14
    11:19 12:18
    25:23
**capped (1)** 18:7
**capping (1)** 17:22
**CAW (1)** 4:5
**certain (5)** 7:12,
    22 9:13 11:13
    13:1
**CERTIFICATE (1)**
    26:10
**changed (2)**
    10:10 17:21
**changes (8)** 7:19
    10:10,11,18
    14:1,11,14
    25:15
**checklist (1)** 20:5
**CIANTRA (4)**
    3:10,10
    23:14,15
**Ciuputu (7)** 3:23
    18:5,17 19:1,
    4,13,19
**clarifying (1)** 24:7
**clarity (1)** 17:21
**clean (1)** 21:4
**clear (1)** 21:10
**clearly (1)** 18:8
**client (1)** 7:2

**closing (1)** 19:9
**Co (1)** 3:15
**Cohen (1)** 3:11
**COLLINS (10)**
  3:1,1 5:23
  6:1,20 9:4,4,
  10 10:1 26:7
**collusion (2)** 6:4,
  12
**comment (1)**
  20:24
**comments (2)**
  7:12 20:21
**commitment (9)**
  8:22 11:1,4,
  10,24 12:1,17
  17:15 25:22
**committed (3)** 8:5,
  14 12:19
**committee (10)**
  2:8 3:6,8,12
  20:15,16
  22:17 23:8,16
  24:9
**communications (1)**
  7:10
**company (2)**
  18:14 22:17
**complete (2)**
  10:14 12:15
**completed (1)**
  11:15
**component (2)**
  14:4,4
**components (1)**
  9:14
**comprised (1)** 8:4
**conclude (1)**
  24:24
**concur (2)** 23:9,
  16
**condition (3)** 11:9
  23:5,12
**conducted (1)** 5:6
**confer (3)** 17:18
  23:21 24:14
**confidential (2)**
  12:11 21:6

**confirm (6)** 6:3,
  11,19 9:6
  16:10,14
**confirmation (1)**
  11:13
**conform (1)** 14:15
**conformed (1)**
  14:20
**conjunction (1)**
  16:23
**connection (6)**
  8:21 9:12
  13:21 14:16
  19:10 21:2
**consent (2)** 22:7,
  7
**consenting (1)**
  11:20
**consult (1)** 24:8
**consultation (3)**
  20:13,14,15
**contingent (1)**
  19:7
**continue (2)**
  21:24 22:2
**contract (4)**
  14:11,20,22
  15:14
**contracts (2)**
  13:22 17:12
**conversations (1)**
  13:17
**Cooper (24)** 3:20
  5:16,20 6:9,
  10,14,24 8:15
  9:16,23 10:3,
  13,17,24
  12:14,20,21
  13:3 14:15
  15:5 20:18
  21:1 22:9,10
**Cooper's (10)**
  7:23 8:6,8,18,
  20 9:2 10:8,
  22 13:12,20
**copies (1)** 11:18
**copy (2)** 12:16,
  23

**Corp (2)** 6:9
  21:21
**Corporation (3)**
  3:21 6:24
  21:11
**costs (1)** 18:8
**counsel (3)**
  12:11 23:6
  24:9
**counterparties (1)**
  17:12
**couple (1)** 16:7
**course (1)** 2:19
**court (2)** 2:10 9:1
**covenants (1)**
  19:15
**cover (1)** 18:8
**covered (1)** 20:5
**Credit (2)** 10:23
  25:18
**Creditors (2)** 3:9
  22:15
**Creditors' (2)**
  20:15 22:16
**current (1)** 8:8**

**D**

**damages (1)**
  19:11
**date (1)** 18:16
**dated (1)** 10:6
**deal (1)** 17:14
**deals (1)** 6:12
**debtor (5)** 5:10
  7:3 17:18
  21:6 23:12
**debtors (19)** 2:8,
  24 3:3 4:8,10
  5:15 7:11,20
  9:15 12:23
  15:22 20:2,12,
  17,17 21:13
  23:2,3 24:10
**debtors' (8)** 7:4
  9:3 10:6
  13:18 23:6,9,
  16 24:11

**December (2)**
  13:14 18:15
**declared (1)**
  20:17
**deem (1)** 21:5
**deemed (3)** 7:24
  12:11 21:24
**default (3)** 18:23
  19:2,5
**defaults (1)** 19:16
**definitive (1)**
  24:10
**described (1)**
  22:24
**designated (1)**
  6:16
**designating (1)** 7:6
**determine (1)** 9:2
**Diamond (3)** 6:18
  8:1 13:9
**Diamond/Spectrum (6)**
  3:16 6:15
  14:18,21
  21:15 23:19
**Directors (2)** 3:6
  20:17
**discretion (2)**
  5:11 16:12
**Discussion (2)**
  18:4 21:13
**discussions (5)**
  6:14 7:10,16
  10:5 13:16
**disseminated (1)**
  21:8
**DLA (1)** 4:4
**document (2)**
  8:19 13:3
**documents (7)**
  5:21 7:18
  10:2 11:13
  12:5 15:21
  16:4
**dollars (1)** 8:5
**draft (2)** 13:4
  26:3
**draw (2)** 8:15,16
**drawn (1)** 8:6

**due (1)** 8:18
**during (4)** 2:12,
  18,20 4:13

**E**

**earlier (1)** 11:6
**else (4)** 4:11
  5:3 19:23
  24:13
**employees (5)**
  14:19,24
  16:13,16,17
**employing (1)**
  16:15
**enclosed (1)**
  12:12
**encourage (1)**
  23:10
**end (1)** 12:12
**ended (1)** 13:13
**ending (1)** 13:15
**engaged (1)** 6:4
**enough (1)** 12:8
**enter (1)** 15:13
**estate (2)** 7:6
  22:14
**Even (1)** 12:20
**event (3)** 18:23
  19:2,5
**Everybody (3)**
  20:10 21:17
  24:4
**evidencing (1)**
  5:22
**except (1)** 25:20
**excess (1)** 9:16
**excuse (2)** 10:19
  11:10
**execute (1)** 15:6
**executory (1)**
  13:22
**Exhibit (26)** 8:21
  9:23 10:3,8,
  13,17,22 12:3,
  4,9,15,21,22
  13:4 25:5,7,9,
  11,15,18,20,

21 26:1,3,6,7

**Exhibits (13)** 2:1
7:14 10:14,20,
21 11:12 12:2,
7 21:2,4 25:4,
24 26:6

**existing (2)** 8:7,
16

**extends (1)** 11:3

**extent (3)** 5:11
9:13 21:23

**extra (2)** 15:20
16:4

---

**F**

**face (2)** 8:8,17

**facility (2)** 8:17
11:20

**fact (3)** 16:15,
19 23:4

**fair (1)** 9:18

**far (2)** 21:19
22:2

**Fargo (1)** 11:19

**fee (2)** 12:24
26:2

**Ferdinands (2)**
3:23 14:12

**figure (1)** 24:2

**filed (3)** 13:8
21:19 22:3

**filing (2)** 13:5
26:3

**Finance (1)** 11:19

**financial (5)**
13:13,14,16,
17,18

**financing (4)** 8:14,
22 11:5 12:18

**Finger (3)** 3:2
4:10 24:20

**firm (1)** 6:23

**first (1)** 5:5

**following (1)** 11:2

**form (2)** 11:14,
16

**formally (1)** 9:21

---

**forth (1)** 5:9

**forum (1)** 22:23

**forward (2)** 2:9
21:22

**frankly (1)** 6:13

**Frederick (1)** 4:14

**Friday (1)** 5:17

**full (6)** 10:14
12:15 13:9
15:12,21 25:11

**Fund (2)** 10:23
25:19

**future (3)** 13:21
19:8,12

---

**G**

**General (3)** 4:20,
20 21:8

**gentlemen (1)**
2:11

**gives (1)** 16:12

**guys (1)** 24:14

---

**H**

**HALDON (2)**
4:14,15

**handed (1)** 15:21

**happy (1)** 22:22

**HARRIS (25)**
3:13,13 6:17,
17 15:18,18
16:6,23 17:9,
20 18:9,13,19
19:3,6,17,21
20:23 21:14,
14 23:1,18,18
24:1,12

**health (1)** 17:3

**Hearing (2)** 4:11
17:15

**held (1)** 24:4

**Herrington (1)**
4:15

**High (2)** 18:17,
17

**higher (1)** 22:13

---

**highest (4)** 9:3
20:6,19 22:1

**Holdings (3)** 3:21
6:9,24

**hopes (1)** 9:1

**HSR (3)** 17:22
18:11,15

**hundred (1)** 18:3

---

**I**

**IBT (1)** 22:17

**identification (1)**
2:2

**identified (1)** 12:6

**identify (6)** 2:12,
18,21 5:21
8:20 10:2

**impact (1)** 14:23

**include (3)** 2:14
11:18 23:5

**included (4)** 21:3
25:13,16,19

**indeed (1)** 11:15

**indenture (2)**
18:20,24

**indicated (1)** 7:1

**individuals (1)**
2:17

**information (6)**
9:15 13:6,12,
19 14:7 21:5

**initial (1)** 3:22

**inquire (1)** 17:14

**intend (2)** 4:13
21:22

**intention (2)** 4:17,
21

**interim (1)** 18:1

**interrupt (1)** 9:5

**into (1)** 15:13

**irrevocable (1)** 9:7

**issuance (1)** 8:7

**issue (2)** 19:7,9

**issuing (1)** 18:22

---

**J**

---

**Jack (33)** 3:20
5:16,19 6:9,
10,14,24 7:22
8:6,8,15,17,
20 9:2,16,23
10:3,8,13,17,
22,24 12:14,
20,21 13:3,12,
19 14:15 15:5
21:1 22:9,10

**JC (4)** 2:1 9:22
25:4,24

**Jeff (7)** 2:22
4:19 5:23
20:12 21:17
23:20 24:5

**Jess (7)** 3:19
6:8,23 9:5
15:20 20:23
21:1

**joined (1)** 2:8

**Judge (4)** 2:5
5:7,9 6:2

**June (2)** 5:10
13:15

---

**K**

**KELLEY (21)** 2:3,
23 3:24 4:11,
18 5:2,24
6:21 7:1 9:24
15:1,15 19:23
20:10,12 21:9
23:2,24 24:5,
5,16

**killed (1)** 12:8

**King (2)** 3:20
6:23

**KLYMAN (7)** 3:17,
17 8:10,10
16:1 22:20,20

**knows (1)** 21:17

---

**L**

**ladies (1)** 2:10

**land (1)** 9:16

---

**language (1)**
16:11

**last (1)** 13:3

**Latham (2)** 3:18
22:21

**law (2)** 14:20,23

**Layton (3)** 3:2
4:10 24:20

**leases (1)** 13:22

**least (1)** 3:21

**leave (1)** 20:4

**left (1)** 7:7

**lenders (1)** 22:6

**letter (14)** 9:24
10:23 11:1,11,
24 12:1,9,17,
24 17:15 25:6,
19,22 26:2

**level (1)** 14:6

**lien (1)** 8:4

**likelihood (1)**
18:18

**likely (2)** 22:2,7

**Limited (2)** 4:16
10:18

**limits (1)** 8:22

**lines (2)** 12:10
22:8

**liquidated (1)**
19:10

**loan (3)** 8:5,16
11:20

**located (1)** 9:17

**look (1)** 18:6

**LP (2)** 10:23
25:19

---

**M**

**maintenance (1)**
19:15

**major (1)** 14:14

**makes (1)** 11:8

**many (2)** 22:1,12

**Marisa (1)** 24:19

**Mark (2)** 3:1 9:4

**marked (5)** 2:2
9:22 12:6

---

25:4,24

**market (1)** 9:18
**match (1)** 14:20
**matching (1)** 7:22
**may (4)** 3:23
5:23 9:5 17:6
**maybe (1)** 23:21
**mean (1)** 9:6
**meet (1)** 22:10
**meeting (8)**
22:19,23,24
23:3,5,10,13
24:2
**MELNIK (2)** 4:3,4
**M-E-L-N-I-K (1)**
4:4
**mental (1)** 20:5
**Michael (2)** 3:7
23:7
**might (1)** 4:17
**million (11)** 7:6
8:4,5,7,13,15,
17 9:19 11:4
17:23 18:7
**minute (1)** 8:20
**modeled (1)** 13:7
**modifications (1)**
5:11
**modified (1)** 5:10
**moment (1)** 9:5
**Monday (2)** 2:6
5:8
**more (1)** 4:1
**morning (1)** 24:23
**motion (1)** 2:7
**Motors (2)** 4:20,
20
**MSD (10)** 8:14,
23 10:23
11:14,17
12:17 13:1
25:18,23 26:2
**myself (1)** 9:24

**N**

**name (1)** 3:4
**need (3)** 20:4

24:7,8

**Negotiating (1)**
3:12
**Negotiation (1)**
23:15
**negotiations (2)**
7:17 10:5
**New (6)** 3:14
6:18 15:19
21:11,14,20
**newly (2)** 10:15
25:12
**next (1)** 12:10
**nine (1)** 18:20
**nobody (2)** 4:11
24:13
**note (3)** 9:11
11:23 14:4
**noted (1)** 11:6
**notes (7)** 8:9,18
14:5,7 18:21,
22 19:7
**notice (5)** 13:4
15:3 17:11,19
26:3
**numbers (1)** 8:12

**O**

**objections (4)**
17:14 21:18
22:1,13
**obligated (1)**
12:21
**obligation (3)**
18:2 19:6,8
**obligations (3)**
17:2,3,6
**obviously (1)** 18:1
**off (10)** 8:6,15,
16 13:7 18:4
20:22 21:12,
16 23:20 24:13
**offer (5)** 5:16,21,
22 8:23 20:7
**Official (1)** 3:8
**one (7)** 4:1 6:1
9:5 11:3

14:14 16:7
23:5
**only (1)** 20:24
**Ontario (1)** 9:17
**open (1)** 22:23
**opening (1)** 3:22
**Opportunity (3)**
10:23 22:10
25:18
**order (4)** 5:9,13
6:2 22:8
**ordered (1)** 2:5
**original (1)** 4:23
**Orrick (1)** 4:15
**others (1)** 21:13
**ourselves (1)**
22:11
**out (3)** 17:12,19
24:2
**outcome (1)** 24:3
**outside (1)** 18:15
**outstanding (3)**
8:23 9:6 11:7
**over (1)** 21:11

**P**

**package (3)** 13:5,
8 26:4
**PAGE (1)** 26:10
**pages (1)** 10:10
**par (1)** 14:9
**part (2)** 3:21
17:6
**participate (2)**
21:21 22:22
**particular (2)**
20:7 21:19
**parties (5)** 15:16
18:10 20:14
22:3 23:21
**partner (2)** 3:22
14:12
**past (3)** 2:6 5:7,
17
**Paul (1)** 3:22
**pay (1)** 18:2
**payment (1)**

19:10

**people (3)** 2:14,
16 16:5
**per (1)** 6:2
**percent (5)** 8:9,
18 14:8 18:3,
21
**performance (1)**
13:21
**period (2)** 9:8
13:15
**permitted (2)**
4:24 5:12
**phone (5)** 2:15,
15 4:1,12 5:3
**picking (1)** 17:7
**Piper (1)** 4:4
**place (1)** 23:11
**Please (1)** 5:24
**plus (1)** 7:6
**pm (7)** 8:24
11:5 20:9,9
24:17,18 25:1
**point (5)** 12:8
14:3 19:11
20:20,21
**position (5)** 4:22
23:10,17,23
24:11
**possible (1)** 24:3
**postpetition (1)**
17:2
**precedent (1)** 11:9
**prepared (3)** 7:17
13:24 15:6
**prepetition (1)**
17:1
**present (2)** 4:16
9:21
**presentation (2)**
15:17 19:24
**presented (2)**
7:24 20:18
**prevail (1)** 18:2
**previously (4)**
9:15 12:6,22
13:11
**price (4)** 7:5 8:3

9:14 14:5

**prior (8)** 7:24
11:3,9 12:16
17:14 18:9,15
25:21
**procedures (4)**
5:8,12,13 6:6
**Proceedings (1)**
24:24
**process (1)** 21:10
**promises (1)** 6:13
**proposal (1)** 8:2
**proposed (3)** 6:6
7:13,23
**prosecuted (1)**
22:3
**provide (4)** 11:4
13:19 14:6
16:4
**provided (3)** 9:16
12:22 13:11
**provides (1)**
16:22
**providing (2)**
13:6,10
**provision (1)**
17:21
**provisions (4)**
7:22 13:1
14:17,21
**publicly (1)** 21:8
**purchase (23)** 7:5,
14,23 8:3
9:14 10:4,9,
11,16 11:10
12:2 14:1,5,
16,18 15:4,6
16:11 17:22
21:3 25:7,9,13
**purchased (1)** 7:8
**purchasers (1)**
6:16
**purpose (1)** 7:18

**Q**

**qualified (3)** 5:1
6:3,5

**quarter (2)** 13:14
  18:20
**Quickly (1)** 15:18

**R**

**raised (1)** 22:2
**ready (3)** 8:19
  10:2 20:11
**real (2)** 6:13 7:6
**reason (1)** 5:14
**received (1)** 5:16
**recess (2)** 20:8
  24:17
**recommencement (1)**
  2:4
**recommencing (1)**
  5:15
**record (21)** 2:4,
  22 5:20 6:22
  12:16 13:9
  14:2,14 16:3,
  10,15 18:4
  20:11,22
  21:12,16
  22:18 23:20
  24:6,13,21
**redacted (2)**
  12:23 26:1
**refer (1)** 6:10
**reference (1)**
  11:24
**reflects (1)** 10:4
**regarding (1)** 6:5
**reimbursement (1)**
  17:23
**relating (1)** 6:7
**relative (4)** 12:18
  13:24 14:3,19
**relevant (1)** 13:2
**remain (1)** 8:23
**remains (2)** 8:2,3
**remark (1)** 24:8
**repeat (1)** 8:11
**reporter (2)** 2:10
  26:10
**represent (2)**
  2:13 12:5

**representation (1)**
  16:24
**representative (2)**
  23:6,12
**representatives (2)**
  7:11 10:6
**representing (6)**
  2:23 3:5,8,11,
  14 5:19
**request (4)** 2:7
  7:20 22:9 23:4
**requested (2)**
  7:13 15:7
**require (1)** 23:11
**required (1)** 22:7
**requisite (1)** 22:6
**resolution (1)**
  15:12
**resolve (2)** 22:11,
  12
**respect (7)** 4:24
  14:10,23 16:7,
  13 17:13 20:7
**response (1)** 9:13
**restated (5)** 11:1
  12:17,24
  25:22 26:2
**restating (1)** 4:22
**restriction (1)**
  18:22
**result (5)** 7:16
  8:21 22:5,13
  24:3
**retained (1)** 26:7
**revised (5)** 7:3,
  18 10:4 17:13
  25:7
**revisions (2)** 7:12
  11:8
**revolver (1)** 8:7
**Richards (3)** 3:2
  4:10 24:20
**RIGGS (2)** 16:20
  17:8
**right (4)** 17:23
  19:8,12,14
**risk (1)** 19:15
**Robert (5)** 3:4,

17 8:10 9:12
  22:20
**room (5)** 2:16
  4:2,12 20:4
  21:17
**Roth (1)** 3:14
**Rothschild (1)** 4:8
**Rudnick (1)** 3:5
**rule (1)** 21:8

**S**

**sale (2)** 21:19
  22:8
**same (2)** 6:19
  14:16
**Sanders (1)** 2:23
**satisfactory (2)**
  11:14,16
**schedule (1)**
  10:20
**schedules (6)**
  7:14 10:14,
  19,20 12:3
  21:4
**schedules/exhibits (2)**
  25:11,16
**Schulte (1)** 3:14
**sealed (1)** 12:12
**second (1)** 8:4
**secondly (1)**
  14:10
**section (3)** 16:19,
  21 18:6
**secured (2)** 8:9
  18:21
**seek (1)** 18:11
**seems (1)** 16:10
**Selinda (1)** 4:3
**S-E-L-I-N-D-A (1)**
  4:4
**senior (2)** 8:9
  18:21
**sent (2)** 17:12,19
**September (12)**
  2:6 5:17 7:2,
  15 8:24 10:7,
  12,15,21 11:6

12:16 25:21
**session (1)** 5:5
**set (5)** 5:9
  10:14 15:20,
  21 25:11
**sets (1)** 16:4
**severance (1)**
  17:2
**short (2)** 20:3,3
**show (1)** 7:19
**showing (2)**
  10:10,18
**signed (1)** 15:4
**similar (1)** 13:6
**Simon (1)** 3:11
**simply (1)** 4:22
**Sontchi (2)** 2:5
  5:7
**Sontchi's (2)** 5:9
  6:2
**sorry (1)** 4:1
**Spalding (2)** 3:20
  6:23
**speak (7)** 2:12,
  18,20 3:23
  4:13,17 6:11
**speaking (1)** 4:21
**Special (3)** 3:6
  20:16 24:9
**Spectrum (3)**
  6:19 8:1 13:9
**STARK (2)** 3:4,5
**state (6)** 4:22
  5:20 14:2,13
  15:10 22:18
**stated (3)** 4:23
  5:4,7
**statements (2)**
  10:19 13:13
**stay (1)** 11:7
**STEARN (2)** 4:9,9
**Steve (1)** 4:7
**submission (1)**
  13:23
**submit (1)** 7:17
**submitted (9)** 7:3,
  15 10:12,16,
  21 11:22 21:2

22:9 25:12
**submitting (1)**
  10:1
**substance (2)**
  11:14,16
**substantial (1)**
  21:18
**substantially (1)**
  7:4
**successful (2)**
  7:21,24
**suggest (1)** 23:4
**supportive (2)**
  22:24 23:3
**sure (2)** 2:20
  20:4
**Sutcliffe (1)** 4:15

**T**

**Teamsters (2)**
  3:12 23:15
**term (1)** 8:5
**terminates (1)**
  17:16
**terms (3)** 18:19
  22:12 24:11
**TERRANOVA (2)**
  24:19,20
**Thanks (1)** 16:6
**Theo (1)** 3:23
**thereto (1)** 25:20
**Thomas (2)** 3:10
  23:14
**though (1)** 12:20
**thought (1)** 12:7
**today (1)** 18:9
**told (1)** 16:9
**tomorrow (1)**
  24:22
**trading (2)** 14:8,9
**transaction (4)**
  6:7 11:21
  12:19 13:2
**transcript (4)**
  12:13 25:14,
  17,19
**transferred (1)**

16:17

**transmittal (2)**
9:24 25:5

**Transport (3)**
5:16,20 15:5

**trees (1)** 12:8

**Troutman (1)** 2:23

**turning (1)** 21:10

**two (2)** 6:3 14:2

**U**

**under (3)** 14:17
18:19,23

**Unless (1)** 20:20

**Unsecured (1)** 3:9

**up (2)** 17:7
23:22

**upon (1)** 16:24

**V**

**value (3)** 7:5
9:18 22:13

**values (1)** 11:21

**various (1)** 7:19

**Vascar (1)** 4:16

**version (2)** 12:24
26:1

**view (1)** 18:14

**W**

**Watkins (1)** 3:18

**WAXMAN (3)**
4:19,19 5:3

**Wednesday (1)**
8:24

**Weiss (1)** 3:11

**welfare (1)** 17:3

**Wells (1)** 11:19

**whatsoever (1)**
6:14

**whose (1)** 22:7

**Windsor (1)** 9:17

**Workers (1)** 4:5

**written (1)** 20:5

**Y**

**year (1)** 13:13

**Yucaipa (5)** 3:18
8:11 20:14
22:17,21

**Z**

**Zabel (1)** 3:14

**1**

**1 (5)** 2:1 8:21
9:22,23 25:5

**10:00 (1)** 24:23

**104.5 (1)** 14:8

**10-K (1)** 13:12

**11 (1)** 12:10

**11:28 (1)** 24:18

**11:32 (1)** 24:24

**11:59 (2)** 8:24
11:5

**11th (2)** 10:7,15

**14th (1)** 5:6

**17th (1)** 17:15

**18th (3)** 8:24
11:6 17:16

**2**

**2 (13)** 2:1 10:3
12:7 25:6,7,8,
10,14,17,20,
23 26:2,4

**2:44 (1)** 20:8

**2012 (1)** 13:14

**2013 (2)** 11:6
13:15

**2020 (1)** 8:18

**21st (1)** 5:10

**27 (1)** 26:10

**3**

**3 (4)** 2:1 10:8
18:7 25:9

**3:37 (1)** 20:9

**3:42 (1)** 24:17

**30 (1)** 13:15

**31 (1)** 13:14

**31st (1)** 18:15

**4**

**4 (5)** 2:1 10:13
12:7 25:11
26:6

**5**

**5 (4)** 2:1 10:17
25:15 26:6

**6**

**6 (6)** 2:1 10:22
12:16 25:18,
21 26:7

**6.1 (2)** 16:20,21

**6th (5)** 5:17 7:2,
15 10:12,21

**7**

**7 (3)** 2:1 12:15
25:21

**8**

**8 (4)** 2:2 12:21,
22 26:1

**8.15 (1)** 18:6

**9**

**9 (3)** 2:2 13:4
26:3

**9.25 (2)** 8:8,18

**9/11 (1)** 25:12

**9/11/13 (1)** 25:5

**9th (1)** 2:6