# **Exhibit B**

**In The Matter Of:**

*Bankruptcy Court for the District of Delaware*
*In Re: Allied Systems Holding*

---

*Auction*
*September 12, 2013*

---

*Wilcox & Fetzer, Ltd.*
*1330 King Street*
*Wilmington, DE   19801*
*email: depos@wilfet.com, web: www.wilfet.com*
*phone:  302-655-0477, fax:  302-655-0497*



Original File auction091213allied.es.txt

Min-U-Script® with Word Index

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

In re                          )Chapter 11
                               )
ALLIED SYSTEMS HOLDING,        )
                               )Case No. 12-11564 CSS
                               )
        Debtor.                )

                    Richards, Layton & Finger
                    One Rodney Square - 3rd Floor
                    Wilmington, Delaware

                    Thursday, September 12, 2013
                    10:00 a.m.

    -- TRANSCRIPT OF AUCTION PROCEEDINGS --

                    WILCOX & FETZER
          Registered Professional Reporters
  1330 King Street -  Wilmington, Delaware 19801
                    (302) 655-0477
                    www.wilfet.com



W&F
WILCOX & FETZER LTD
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

1          MR. KELLEY:   Okay.   Good morning

2    everybody.   We are going to go back on the

3    record.

4          Again, this is Jeff Kelley,

5    counsel for the debtors.   The bid that we have

6    on the table, which has been deemed highest and

7    best by the debtors, is the bid that was

8    presented by Mr. Austin yesterday and

9    identified through various exhibits.

10          At this point I would like to

11    turn the bidding over to Mr. Harris on behalf

12    of New Allied Acquisition Corporation.

13          MR. HARRIS:   Thanks, Jeff.   Adam

14    Harris for Schulte, Roth & Zabel, on behalf of

15    New Allied Acquisition.

16          First, I just want to say thank

17    you to all the parties, both for your patience

18    and for the accommodation that was extended

19    yesterday, in particular, frankly, to the folks

20    from JCT.

21          We did, with the consent of the

22    designated parties, have a series of

23    conversations yesterday in an effort to try and

24    reach a resolution here that would address the

```
 1   concerns voiced in many of the objections that
 2   have been filed to the bid that's on the table
 3   right now.
 4                I thought those conversations
 5   were very productive and constructive, and,
 6   with the benefit of some additional time and
 7   some creativity, might come to a resolution
 8   that was acceptable to everybody or most
 9   parties.  But, unfortunately, we are not there
10   now.
11                And I'm not foreclosing the
12   possibility that that could happen, but again,
13   by the dictates of recommencement of the
14   auction this morning at 10:00 o'clock, as set
15   forth by the debtors, we are here and prepared
16   to submit a revised bid.  So I would like to
17   basically address that.
18                All the modifications I'm going
19   to talk about are off the asset purchase
20   agreement that's been filed with the Court.  So
21   the parties all know what that agreement says.
22   Hopefully they are familiar with it.  So if
23   there is any questions about it I'm happy to
24   answer at the end.
```



1                    There have been some
2    modifications relative to treatment of the
3    Canadian severance and a few other minor
4    things.  But I believe the JCT guys are
5    familiar with that as well.  So I'm not going
6    to address those here.
7                    The first change we are going to
8    make to our agreement, which is really designed
9    to address the concerns of the Teamsters
10   National Negotiating Committee as expressed
11   through their objections on the record of the
12   last auction and in independent conversations,
13   relating to arguable violations of the existing
14   contract that they have with Allied and the
15   successorship issues, is that we are going to
16   agree to have our lease co., the asset co.,
17   become a party to the NMATA, and all the
18   supplements and riders, so that effectively the
19   assets that are going into our leasing company
20   will be at risk for obligations that are under
21   the collective bargaining agreement on a
22   go-forward basis.
23                    The second part is, and similar
24   to what I just said with respect to the U.S.,



```
 1   in Canada we will agree that our leasing
 2   company up there is, in fact, a statutory
 3   successor to Allied for purposes of Canadian
 4   labor law, which is the extent of my knowledge
 5   about Canadian labor law.
 6                    The third piece is that we are
 7   going to increase the purchase price under our
 8   contract to $140 million by increasing the
 9   claim contribution component of that bid.
10                    Those are the modifications that
11   we are prepared to make for purposes of our bid
12   this morning.
13                    MR. KELLEY:  Thank you, Mr.
14   Harris.  You may have questions from some of
15   the constituents.
16                    MR. COLLINS:  One question.  Mark
17   Collins for the record.
18                    You talked about lease co.
19   becoming a party to the labor agreements.
20   Under your current structure you have a number
21   of entities.  Can you explain that?
22                    MR. HARRIS:  Sure.  So we have an
23   entity that's called, I believe it is New
24   Allied Lease Co.  It is the direct subsidiary
```



```
 1    of Access Lease Co. Holdings.  That is the U.S.
 2    entity that we had designated to become the
 3    owner of all of the rigs and the real estate.
 4    That is the entity that I'm referring to who
 5    would become a party to the NMATA and the
 6    supplements and riders, along with obviously
 7    the operating company.
 8                    MR. COLLINS:  Okay.
 9                    MR. HARRIS:  And then for Lease
10    Co. Canada would be the statutory successor I
11    described.
12                    MR. COLLINS:  Right.  Okay.
13    Thank you.
14                    MR. AUSTIN:  This is Jess Austin
15    on behalf of Jack Cooper Holdings Corp.
16                    I have one question for
17    clarification.  Adam, your 140 bid, $140
18    million bid, where you increased the credit bid
19    component, my question relates to, is the
20    estimate of what that credit bid piece would be
21    roughly 97 million?  If you assume the DIP is
22    fully drawn and the $13 million for the
23    wind-down budget?
24                    MR. HARRIS:  I haven't calculated
```



```
 1   it out, Jess, to be honest with you.  You are
 2   talking about the net distributable value to
 3   lenders?
 4                   MR. AUSTIN:  I'm trying to figure
 5   out, you have got a cash component of the bid.
 6                   MR. HARRIS:  Right.
 7                   MR. AUSTIN:  That would be enough
 8   to pay the DIP loan and the wind-down.
 9                   MR. HARRIS:  And up to ten
10   million of additional costs.  But, yeah.
11                   MR. AUSTIN:  I was just trying to
12   get a rough cut on what the credit bid piece
13   was.
14                   MR. HARRIS:  It is the
15   differential between whatever is necessary to
16   pay those costs and $140 million.
17                   MR. AUSTIN:  Thank you.
18                   MR. KLYMAN:  For the record,
19   Robert Klyman, Latham & Watkins, for Yucaipa.
20                   Based on what you have said, this
21   bid still contemplates, in essence, a pledge of
22   the other first lien debt for the good faith
23   deposit and for the liquidated damages
24   provision?
```



1          MR. HARRIS:  All other provisions

2   of our contract as filed with the Court would

3   stay in place.  But to answer your question

4   specifically, yes.

5          MR. KLYMAN:  Can you let us know

6   what section of the credit agreement gives the

7   New Allied Acquisition Company the right to

8   actually use other first lien lenders' debt in

9   that way?

10          MR. HARRIS:  Robert, I'm not

11   going to litigate an issue with you here in an

12   auction.

13          A the Bankruptcy Court you have

14   raised your objections.  We have a reply which

15   we will file to your objection, if and when

16   that becomes necessary.

17          Suffice it to say, we are

18   extraordinarily comfortable, as I believe the

19   company is, with the analysis and the powers of

20   the first lien agent through its agents to

21   submit and go through with this bid.

22          MR. COLLINS:  Okay.

23          MR. BURKE:  Michael Burke for the

24   Official Committee of Unsecured Creditors.



```
 1                    Adam, very quickly.  I believe I
 2   know the answer, but you said that all other
 3   conditions of the contract remain the same, so
 4   the conditions precedent to the obligation of
 5   the purchasers, there is no changes there,
 6   correct?
 7                    MR. HARRIS:  We have not
 8   contemplated changes, no.
 9                    MR. BURKE:  Thanks.
10                    MR. KELLEY:  Any other questions?
11                    We will go off the record.  We
12   need to, the debtors need to consult with
13   themselves, obviously, the Special Committee is
14   what I mean by that, and also the consultation
15   parties.
16                    We will try to come back on the
17   record as quickly as we can.  We recognize the
18   time constraints of the day.  We need to finish
19   by 5:00 o'clock today.  Hopefully before then.
20                    (Recess taken at 10:07 a.m. until
21   4:40 p.m.)
22                    MR. KELLEY:  We are going back on
23   the record for the auction again.  This is Jeff
24   Kelley for the debtor.
```



1                     Since Black Diamond and Spectrum,

2     I should say now New Allied Acquisition Company

3     made their $140 million bid earlier in the

4     auction, there have been some continuing

5     discussions, with the knowledge of the

6     consultation parties and the other

7     constituencies here in the auction, which have

8     led to a resolution that appears to, hopefully,

9     I think it does resolve almost all the

10    objections that have been filed, if not all of

11    them.

12                    At this time I would like to turn

13    the auction over to Mr. Harris to make an

14    announcement as to what is going on with

15    respect to his latest bid.

16                    MR. HARRIS:  This is Adam Harris

17    from Schulte, Roth & Zabel, on behalf of New

18    Allied Acquisition Co., Black Diamond and

19    Spectrum.

20                    As Jeff indicated, since we

21    submitted our bid earlier this morning, and, as

22    I indicated at that time, we were hopeful that

23    while the company was obviously considering the

24    bid, we submitted that the parties, including

1    the consultation parties, would continue to

2    discuss a transaction that would address many

3    of the objections that were filed and that

4    could result in an economic conclusion that

5    would be acceptable to the requisite lenders,

6    as well as to JCT as the other proposed buyer.

7                      I am happy to report that, as a

8    result of those discussions and the hard work

9    of many of the professionals in the room, a

10   transaction, or two transactions, I should say,

11   have been negotiated, one by JCT and one which

12   will be a bid by an entity to be formed by the

13   requisite lenders, which will not be called New

14   Allied Acquisition Co.

15                      MR. STEARN:  Called Lowboy

16   Acquisition Co.

17                      MR. HARRIS:  That are

18   complementary, will result in I believe a sale

19   of all, or substantially all, the assets of the

20   estate.

21                      These transactions were

22   effectively negotiated together.  They are in

23   large part, because of the division of the

24   assets, mutually dependent, interdependent, and

1    while there is no affirmative conditionality of

2    one on the other in terms of approval, from the

3    perspective of the requisite lenders, our

4    agreement to go forward with this is, in fact,

5    dependent on the representations we have

6    received from the company of their intention to

7    pursue approval of these transactions together,

8    to advise the Court of the relationship and the

9    fact that these were negotiated in effect as

10   one comprehensive deal from the estate's

11   perspective, in order to achieve a sale of all,

12   or substantially all, the assets and a

13   resolution of the assets in the estate.

14                    I would like the parties to know

15   that were that not to have been the case, we

16   were prepared to continue to bid and to put

17   additional bids potentially on the table, but,

18   understanding the objections that are out

19   there, the various issues that were presented,

20   and understanding particularly the importance

21   of bringing resolution to the case for the

22   benefit of the company's stability and its

23   future, we chose to go down the path that we

24   did and take the deal that's been presented.

```
1              So actually I'll turn it over to
2    Jess Austin to present the JCT side, and then
3    I'll follow up and present the side for the
4    requisite lenders, if that's okay.
5              MR. AUSTIN:  For the record, this
6    is Jess Austin for Jack Cooper Holdings
7    Corporation.
8              I would join in the, at least,
9    comments from Mr. Harris that the transactions
10   which will be at least noted on the record have
11   been the result of negotiations, discussion
12   among all the parties that have participated in
13   this auction.
14             From Jack Cooper's standpoint, we
15   certainly can reconfirm and it is our
16   perspective that there has been no collusion,
17   there is no undisclosed deals, no undisclosed
18   side letters, and from our perspective, we have
19   been participating in these discussions and
20   negotiations, as well as the presentation for
21   our revised proposal, in a full arm's length
22   manner.  As a result, we think we have all been
23   participating in good faith.
24             I recognize that Mr. Harris'
```



1  perspective on how these deals came together is

2  there may have been some level of linkage.   It

3  is still our understanding that the transaction

4  which we will describe can proceed on its own,

5  even though the two deals may proceed in tandem

6  and in parallel, but that ultimate approval of

7  the Jack Cooper transaction is not dependent

8  upon the ultimate approval of the supplemental

9  transaction with New Allied, or whatever the

10  entity may be, even though we are trying to all

11  get it done by next Tuesday at the sale hearing

12  scheduled before Judge Sontchi.

13            With that, Jack Cooper when we

14  began the auction, I guess it was yesterday

15  morning, it seems like a long time from now --

16            MR. ANTONELLI:   Afternoon,

17  actually.

18            MR. AUSTIN:   -- afternoon is

19  correct, Jack Cooper presented a bid that had a

20  $135 million purchase consideration.   That bid

21  stands subject to three modifications which I

22  will be stating on the record.

23            $135 million purchase price

24  remains as was set forth in the asset purchase



1    agreement presented.  The structure of the

2    consideration in the form of cash and notes

3    remains the same.

4                    Our asset purchase agreement

5    remains the same, subject to these

6    modifications:

7                    Jack Cooper will be, we will be

8    submitting revised schedule of excluded owned

9    real property, and we will be specifically

10   excluding from the purchased assets property

11   generally described as excess land located at

12   1790 Provincial Road, Windsor, Ontario; other

13   real property located at 1790 Provincial Road,

14   Windsor, Ontario; real property located at 83

15   Nickerson Road, Ashland, Massachusetts; certain

16   real property located at 1500 Winder Highway,

17   Dacula, Georgia; certain real property located

18   at 19550 Smoky Road, Marysville, Ohio; real

19   property located at 355 Old Highway 67,

20   Midlothian, Texas; property located at 6151

21   Colonel Talbot Road, London, Ontario; and real

22   property located at 6301 and 6302 Wyoming

23   Avenue, Dearborn, Michigan.

24                    In addition, Jack Cooper will, by



1    way of either, I don't know where it falls in,

2    but we think it would fall in other excluded

3    assets, we will be excluding the leased

4    property generally referred to as at Brooklyn

5    Marine Terminal, and it is involving 67.25

6    acres at the South Brooklyn Marine Terminal, in

7    the Borough of Brooklyn, New York, New York.

8                        And the third modification will

9    be that Jack Cooper will exclude 50 lowboys, to

10   be chosen by the sellers, within 30 days of the

11   execution date of the asset purchase agreement,

12   other than those lowboys currently being used

13   in the debtors' operations for hauling

14   purposes.

15                       We will substitute, whether it is

16   the, we think primarily the schedules to

17   address these.  We may have to put in a defined

18   term relative to the lowboys, excluded lowboys.

19                       But they will be the

20   modifications to the asset purchase agreement,

21   from a substantive basis, by the assets being

22   excluded.

23                       With that, that would be the bid,

24   the revised bid submitted by Jack Cooper for

1   all, or substantially all, of the debtors'

2   assets except for those that we specifically

3   excluded.

4                    MR. COLLINS:  Jess, it is Mark

5   Collins.  Can you confirm that JCT has the

6   financial commitment necessary to consummate

7   these three advised transactions?

8                    MR. AUSTIN:  I apologize.  I

9   meant to say that up front.  Yes, I can confirm

10  on the record that Jack Cooper has the

11  requisite consent from its lenders.  We have it

12  in the form of an e-mail that we are able to

13  present today.  I think it is being printed at

14  this point.  But we have the requisite consent

15  for these changes to the asset purchase

16  agreement.

17                    Now, the debtor, I will ask in

18  turn that if the debtor is prepared to

19  ultimately decide and determine that Jack

20  Cooper's bid is the highest and best bid for

21  the assets which we have agreed to both buy and

22  otherwise leave behind, we too will need some

23  confirmation that this transaction is

24  ultimately consented to and agreed to by a



```
 1   number of people that would like to then ask

 2   some questions on the record.

 3                   MR. COLLINS:  Okay.  Any

 4   questions for Jess Austin before we go back to

 5   Mr. Harris?

 6                   MR. HARRIS:  It is Adam Harris.

 7   Sorry.  Jess, just -- sorry.

 8                   Just two clarifications, Jess.

 9                   MR. AUSTIN:  Sure.

10                   MR. HARRIS:  One is with respect

11   to the Windsor, Ontario properties, I guess

12   there is two parcels there, 1790 and 1791

13   Provincial Road.  I wasn't sure I caught

14   necessarily --

15                   MR. AUSTIN:  It was determined as

16   we were going through our own schedules and

17   discussions with the company that technically

18   there is no 1791 Provincial Road.  That it is

19   all 1790 Provincial Road.

20                   MR. HARRIS:  It is intended to be

21   the entire parcel --

22                   MR. AUSTIN:  Yes.

23                   MR. HARRIS:  -- people have been

24   referring to as 1790 and 1791?
```



```
 1                    MR. AUSTIN:   It is intended to be
 2   that parcel.
 3                    MR. HARRIS:   And with respect to
 4   the designation of the lowboys, I think you
 5   referred to designated by the sellers, but that
 6   would be actually designated by the requisite
 7   lenders.
 8                    MR. AUSTIN:   That's fine.
 9                    MR. HARRIS:   Those were --
10                    MR. AUSTIN:   And I was also
11   advised, as you were getting ready to ask
12   questions, that apparently we did not write in
13   the schedule the qualification about in
14   operations.
15                    MR. HARRIS:   That's fine.
16                    MR. AUSTIN:   We presume you
17   wouldn't be taking them off the road, the ones
18   that are actually running down the road, but
19   leave that to you.
20                    MR. COLLINS:   Okay.
21                    MR. HARRIS:   Adam Harris from
22   Schulte Roth on behalf of Black
23   Diamond/Spectrum as requisite lenders.
24                    As I indicated, we have a
```



1    complementary bid to the bid by Jack Cooper.

2    The requisite lenders, through an entity to be

3    formed by them, will be credit bidding the sum

4    of $5 million for each of the excluded

5    properties and the lowboys that Mr. Austin just

6    referred to, other than Ashland.

7                    I won't bother going back through

8    or repeating them all.

9                    MR. COLLINS:  Okay.

10                   MR. HARRIS:  In addition to the

11   initial credit bid, upon the subsequent

12   disposal of those properties, we will provide

13   the estate back with an additional credit for

14   the net proceeds realized upon those

15   dispositions, after we get through the first

16   5 million, which is the upfront payment, if you

17   will.

18                   In respect of each disposition we

19   will notify the company of the terms of the

20   sale and the means by which the sale has been

21   conducted, as well as an affirmation as to

22   whether the sale was or was not made to an

23   affiliate or insider of our entity.

24                   If at the expiration of six



```
 1   months from closing we have not disposed of all
 2   the properties, we will prepare and provide to
 3   debtors' estate an appraisal of the remaining
 4   properties, conducted by a recognized broker in
 5   the locale where the property is located.
 6                   And that will be the basis for
 7   what I'll call the final debt forgiveness
 8   number that would be associated with this
 9   transaction.
10                   I'm being asked to remind
11   everybody, when I talk about the proceeds, it
12   is net.  It is net proceeds, so it is net of
13   the costs, carry costs and expenses incurred,
14   is what we would be crediting back.
15                   If there are any disputes under
16   our asset purchase agreement at the end of the
17   day, we, like everybody else, consent to
18   bankruptcy court jurisdiction to review those.
19                   Have I missed anything?
20                   MR. COLLINS:  Just one
21   confirmation, that you will provide the estate
22   with advanced notice of such proposed
23   transaction in a reasonable amount of time for
24   us to assess that transaction, and, if we have
```

```
 1   concerns to raise them with you, and if not,

 2   with the bankruptcy court.

 3                  MR. HARRIS:  Well, understanding

 4   that we are happy to give you notice, give you

 5   a copy of the sale contract, understanding that

 6   your only issue, if you will, is the magnitude

 7   of the debt relief, not any right to interfere

 8   with the sale.  If we choose to sell something

 9   for a dollar, we could sell it for a dollar.

10   We just need to give you debt relief of an

11   amount equal to what the fair market value of

12   the property was, as you deem it to be.  But

13   you can't stop us from selling things.

14                  MR. COLLINS:  Right.  But the

15   purpose would be that if we don't reach

16   agreement on what the debt forgiveness is, we

17   would bring it before the Bankruptcy Court for

18   resolution.

19                  MR. HARRIS:  That's agreed.

20                  MR. BURKE:  Michael Burke for the

21   committee.

22                  Adam, I'm sure it is not an

23   issue, but in providing the debtor with

24   advanced notice, the committee would also like
```



1    to receive that notice.  Is that acceptable?

2                    MR. HARRIS:  To the extent you

3    still exist, yes.  Not you personally but...

4                    MR. STARK:  And, Adam, just to

5    tamp this down a third time, when we are

6    judging sale price and appraisal, the appraisal

7    will be done at fair market value?

8                    MR. HARRIS:  The appraisal will

9    be done by a recognized broker in the locale,

10   based upon the way brokers generally do

11   appraisals for property of that type.

12                    MR. STARK:  Right.  But the

13   precep of value, the principle of determining

14   what the value would be fair market value,

15   whether it be real estate --

16                    MR. HARRIS:  Fair salable value.

17   Not fire salable.  Fair market value.

18                    MR. KELLEY:  Jeff Kelley.

19                    Adam, a question for you.  Please

20   state your understanding of the ownership of

21   the entity to be formed to own this real

22   estate, lowboys, and possibly the Brooklyn

23   terminal lease.

24                    MR. HARRIS:  Right, so the entity



1   is going to be formed by the agents, collateral

2   agent of the first lien credit agreement, and

3   the initial ownership will be the lenders under

4   the first lien creditor agreement who hold

5   valid and enforceable first lien debt claims.

6                   MR. COLLINS:   One final

7   question --

8                   MR. KLYMAN:   Adam, Robert Klyman.

9                   There is a lot of paper moving,

10  and I'm sure you just said something that

11  interested me.   So would you mind repeating

12  that, about lenders holding claim?

13                  MR. HARRIS:   Lenders holding

14  valid and enforceable first lien debt claims.

15                  MR. KLYMAN:   Well, I missed the

16  whole context.   Does that involve the equity?

17                  MR. HARRIS:   Sorry.   The question

18  that Jeff Kelley raised was who would own, who

19  would be the equity owners of the vehicle

20  that's being created to own this real estate.

21  And my answer, as I told you earlier, was that

22  the equity would be owned by, initially by

23  those lenders holding valid and enforceable

24  first lien debt claims.



```
1                    MR. KLYMAN:  And for those rare
2    lenders to whom there may be an objection to
3    the validity of their claim, what happens to
4    their pro rata equity percentage in the
5    interim?
6                    MR. HARRIS:  It will be reserved
7    by the agent, with all attendant rights flowing
8    to it, pending resolution of the dispute.
9                    MR. KLYMAN:  And are there
10   limitations on distribution of the real
11   property or the tranche two affiliates?
12                   MR. HARRIS:  Are there
13   limitations on distribution -- I mean the
14   property, the property belongs to the entity
15   and it is going to need to -- it will sell it
16   in a manner that is appropriate under the
17   guidance and governance of its managing
18   members, I suppose.
19                   MR. KLYMAN:  Okay.  Well, we want
20   to make sure that if our claim is disputed we
21   get appropriate notice of any of those
22   transactions, of any of the dispositions, just
23   like the debtors or the committee would.
24                   MR. HARRIS:  I understand.
```



```
 1                    MR. KLYMAN:  Is that a yes,
 2   that's okay?  Or you understand my request?
 3                    MR. HARRIS:  I understand your
 4   request.
 5                    MR. KLYMAN:  So you are not
 6   contending that you would give us notice of
 7   disposition of assets with the same reasonable
 8   notice that you are giving to the debtor and
 9   committee?
10                    MR. HARRIS:  Robert, I haven't
11   said yes.  I haven't said no.  Frankly, I
12   hadn't thought about it or whether we would
13   need to, we would need to or we would want to
14   give notice of any disposition to each and
15   every equityholder at that point.  I just
16   haven't gotten that far.
17                    MR. KLYMAN:  What is the game
18   plan for documenting the lender/creditor
19   arrangement between now and the time of the
20   hearing?
21                    MR. HARRIS:  We are going to talk
22   to the debtors about that.  If we can get a
23   full-blown sale agreement done, we will.  If
24   not, we will have a detailed term sheet and we
```



1    will work off that and ask the Court to approve

2    that as the terms upon which the sale will be

3    done.

4                   MR. COLLINS:  Anything else,

5    Robert?

6                   MR. KLYMAN:  That's it for now.

7    Thank you.

8                   MR. NESTOR:  It is Mike Nestor.

9                   Did you say Ashland was not

10   included?  Not included in the --

11                  A VOICE:  Isn't Ashland being

12   sold?

13                  A VOICE:  It is not included in

14   either deal.

15                  MR. BURKE:  Michael Burke for the

16   committee.

17                  Adam, I just want to understand,

18   again, the forgiveness of debt portion in

19   connection with the sale of the excluded

20   assets.  So as I understand it, it is 5 million

21   credit bid now, and then whatever the sale

22   proceeds are for each particular property, net

23   the carrying costs?

24                  MR. HARRIS:  Correct.  With the



```
 1   first credit not occurring until after we have
 2   received 5 million of net proceeds.
 3                    MR. BURKE:  Understood.
 4                    MR. KLYMAN:  Adam, one other
 5   question.  I'm sorry, I forgot to ask this.
 6                    In terms of the costs of either
 7   hiring an appraiser, maintaining the property
 8   or paying taxes, what is the allocation of
 9   those rights among the first lien lenders to
10   participate in and what is the return?
11                    MR. HARRIS:  I don't know what
12   the return is yet.  Whatever we do, we will be
13   -- every lender in the facility will be given
14   the opportunity to participate ratably.
15                    Depending on how we structure it,
16   Robert, there may be some backstop fee payable
17   to somebody who is willing to commit to the
18   whole facility.
19                    Again, we haven't gotten that
20   level of detail because we haven't figured out
21   the total costs we anticipate having to carry
22   for these properties.  That's something that
23   needs to get done.
24                    But we intend to treat all of the
```



1   lenders fairly, obviously.  And, you know,

2   don't take it personally, but lenders whose

3   claims are disputed will be entitled to

4   participate but may be subject to clawback,

5   similar to what we had in our term sheet for

6   the $60 million second lien facility in our

7   original bid.

8                    MR. KELLEY:  Are there any other

9   questions or comments?

10                   All right then.  The debtors,

11  after consultation with the Special Committee

12  -- is somebody going to say something?

13                   The debtors, after consultation

14  with the Special Committee, deem both of these

15  bids as the highest and best bids for the

16  respective assets, and at this time we would

17  suspend the auction, pending completion and

18  execution of final documentation.

19                   MR. AUSTIN:  Before the auction

20  is suspended, as it relates to the Jack Cooper

21  bid, we would like to have confirmed on the

22  record the following from Black Diamond and

23  Spectrum group, both in its individual

24  capacities as the requisite lenders, we would

1  like them to confirm that, one, they consent

2  and agree to Jack Cooper being deemed the

3  successful bidder for the assets under the

4  asset purchase agreement which we have

5  discussed as modified; that they consent and

6  agree certainly as requisite lenders and

7  individually under Section 363(f)(2) that the

8  assets can be sold to Jack Cooper; that in

9  connection with such consent they will direct

10 the agent on the first lien credit facility,

11 and to extent it has drag-along rights, with

12 respect to the second lien credit facility to

13 release liens, claims, encumbrances and

14 interest as necessary to effect the

15 transaction, with those liens, claims and

16 encumbrances we recognize would attach to the

17 proceeds paid by Jack Cooper; and that they

18 will not prosecute or present objections to the

19 sale of the assets to Jack Cooper; with respect

20 to ultimately the committee and Yucaipa, we

21 would also ask that they, along with Black

22 Diamond and Spectrum, confirm that they all

23 support the proposal to sell assets to Jack

24 Cooper and that all of the parties will work to



1    and will not otherwise interfere, impede the

2    efforts to close the transaction with Jack

3    Cooper, including supporting, obtaining HSR

4    approval for Jack Cooper.

5                    MR. KLYMAN:  Jeff, this is Robert

6    Klyman.  I apologize, with the connection I

7    didn't hear everything.  But if you are asking

8    that Yucaipa supports this transaction to Jack

9    Cooper, Yucaipa supports the transaction to

10   Jack Cooper.

11                   MR. BURKE:  Michael Burke for the

12   committee.

13                   First off, understanding, as was

14   stated on the record, that the Jack Cooper

15   transaction is not contingent on the closing of

16   the supplemental requisite lender transaction,

17   the committee supports the debtors'

18   determination that the Jack Cooper bid, along

19   with the supplemental transaction, represent

20   the highest and best bids received for the

21   assets.

22                   Similarly, the committee would

23   like to first thank the professionals in

24   getting a consensual sale of substantially all



1   the assets of the debtor which will lead to an

2   ultimate conclusion in these Chapter 11 cases.

3              Most notably, the committee would

4   like to thank the debtor, the Special Committee

5   and its professionals in conducting a fair and

6   open auction.

7              Similarly, while the committee

8   reserves all rights and approves of the or

9   consents to the Jack Cooper and the

10  supplemental transaction, that is with its

11  rights to review the sale order and any sale

12  documentation.

13             So to put it succinctly, Jess,

14  the committee would support the sale to Jack

15  Cooper subject to review of the sale order and

16  the sale documentation.

17             MR. AUSTIN:   That's acceptable.

18             MR. BURKE:   Same for you, Adam.

19  If you accept.

20             MR. HARRIS:   I was beginning to

21  feel a little left out.   No question.

22             Jess, in response to your

23  request, as I said in my opening remarks, we

24  view the transactions that have been deemed by



1   the company to be highest and best to have been

2   negotiated as effectively complementary and a

3   unitary transaction of a sale of certain assets

4   to two different parties.

5                    And while there is no affirmative

6   tie between the two, clearly, our approach to

7   today and to the negotiation of this

8   transaction was dependent upon the agreement of

9   the debtors, and, Michael, the committee,

10  frankly, to both prosecute and support the

11  approval of both these transactions when

12  presented to the judge this coming Tuesday.

13                   And in the context of that

14  understanding and the agreement of the company

15  to prosecute that and diligently pursue it, and

16  with the Committee's support, we are prepared

17  to give you the representations that you have

18  asked for, if I remember all of them.

19                   We would ask you also, and just

20  to confirm that you would be withdrawing

21  prosecuting any objection to our portion of the

22  sale, I think that probably makes sense.

23                   Michael has already put that on

24  the record as to the committee.

```
 1                    And we would also ask -- that's
 2   okay.
 3                    So, with that, we are prepared to
 4   make the representations that you have asked
 5   for, and hopefully we can all work together to
 6   get this all done at a hearing this coming
 7   Tuesday.  And, obviously, we need to work on
 8   the sale order.  Subject to seeing that, we
 9   obviously have been in conversation with the
10   company about the disposition of the proceeds
11   and distribution of that money upon
12   consummation.
13                    MR. AUSTIN:  To respond, Adam --
14                    MR. KLYMAN:  I'm sorry, Adam.  I
15   didn't hear the last part of that.  Do you mind
16   saying that again.
17                    MR. HARRIS:  Sure, Robert.  We
18   obviously need to review the proposed sale
19   order with respect to the JCT transaction,
20   principally as it relates to issues relating to
21   the disbursement of the proceeds from that
22   sale.  Obviously, the portions of those
23   proceeds need to be used for specific purposes,
24   portions of which need to still be agreed
```

1   between the requisite lenders and the company,

2   but the remaining proceeds, we are in

3   discussions with the company about having those

4   disbursed out to the agent for the benefit of

5   the lenders at the closing.  So --

6              MR. KLYMAN:  I'm sorry, I didn't

7   mean to talk over you.  Just to be clear,

8   Yucaipa reserves all its rights to the

9   disposition of the proceeds and with respect to

10  the Black Diamond credit bid portion of the

11  transaction.  We haven't seen any of the

12  documents and we don't know how our equity

13  interests or disbursements are going to be

14  treated.

15             MR. HARRIS:  That was just a

16  reservation of rights.  I don't think it

17  requires a response, at least not from me.

18             MR. AUSTIN:  Adam, I can, based

19  on your representation, and in response to my

20  request, we will not be prosecuting our

21  objections as we move forward on Tuesday.

22             I want it clear, and I certainly

23  would like to make sure it is an understanding,

24  I appreciate your perspective about the unitary

1  aspects of the transaction, but certainly from

2  Jack Cooper's standpoint, we have to move

3  forward because, among other reasons, we have

4  some limitations under our existing financing.

5            So I want to make sure that

6  whatever happens, if you can't get your

7  documents done or if you have ultimate

8  objection, we can still move forward with our

9  hearing on Tuesday.

10            MR. HARRIS:  Jess, there is no

11  conditionality that would prelude that.

12            MR. AUSTIN:  Right.

13            MR. HARRIS:  What I mean to say,

14  maybe in not so clear a way, is that we are

15  operating on the good faith and representations

16  of the company and the means and manner by

17  which this deal has been negotiated to be fully

18  and fairly told to the judge, how it was put

19  together, why it was put together, and why it

20  makes sense, and why the company exercised its

21  business judgment and feels that both deals are

22  appropriate and should be approved.

23            So long as we are moving forward

24  on that basis, I'll take the company at its

1   word and not condition this, and that's the

2   basis upon which we agreed to in effect not tie

3   them.

4               MR. AUSTIN:  Lastly, I have

5   available, I've identified them, we will put

6   formal exhibit numbers on them, but Exhibit No.

7   10 would be the changed pages to the asset

8   purchase agreement to reflect the modifications

9   which I have stated on the record a minute ago

10  or earlier.

11              Exhibit Number 11 is changed

12  pages to the seller disclosure schedules which

13  accompany the Jack Cooper asset purchase

14  agreement.  As with the earlier seller

15  disclosure schedules, we would ask that these

16  be maintained in confidence and not made as a

17  public disclosure.

18              My only last question is for

19  clarification, is that if I understood, Jeff,

20  you correctly, you were saying the auction

21  would be suspended rather than closed, and at

22  least we want to be clear that at this point,

23  for purposes of determining the highest and

24  successful bid for the assets Jack Cooper is

1   purchasing, is that for purposes of those

2   auctions and the bidding it is deemed closed.

3                    So we, I guess, don't run a risk

4   that someone else might come in and try and

5   reopen the auction between now and next

6   Tuesday, since it allegedly has happened in

7   this case before.

8                    MR. KELLEY:  The auction is only

9   being suspended for the purposes of final

10  documentation of the successful bids that we

11  have announced, that have been announced on the

12  record.

13                   Do you have that e-mail about the

14  financing approval that you referenced earlier,

15  Mr. Austin?

16                   MR. AUSTIN:  Yes.  The question

17  was, do I have the e-mail, the answer is yes.

18  And we are submitting this as Exhibit No. 12.

19                   MR. COLLINS:  Okay.

20                   MR. WADSWORTH:  Since there is a

21  pregnant pause, although nobody asked, and

22  despite the fact that we are the hair in the

23  flea on the tail of the dog, with respect to

24  certain issues that we distributed recently



1    that are still outstanding, and subject to --

2                    MR. KELLEY:  Would you identify

3    yourself for the record.

4                    MR. WADSWORTH:  I apologize.  I

5    got excited to finally say something.  My name

6    is Barry Wadsworth.  I'm in-house counsel for

7    the Canadian Auto Workers Uniport.

8                    Subject to taking a look at the

9    sale order and the sale documents, we also are

10   very happy with the outcome here.  And subject

11   to those certain issues that we brought

12   forward, we probably will not be objecting on

13   the sale day, Tuesday.

14                    MR. COLLINS:  Thank you.

15                    MR. WADSWORTH:  Thanks for that

16   opportunity.

17                    MR. WAXMAN:  This is Jeff Waxman

18   on behalf of General Motors.

19                    I have one question.  Which party

20   is taking the accounts receivable, including

21   the one that is allegedly owed by General

22   Motors, to the debtor?

23                    MR. KELLEY:  That would be Jack

24   Cooper.



```
 1                    MR. WAXMAN:   Okay.   I don't know
 2    that this necessarily resolves General Motors'
 3    objection, but it at least allows GM to know
 4    each request going forward, and hopefully our
 5    issues will be resolved shortly.
 6                    MR. KELLEY:   Thank you.
 7                    MR. VITALE:   Joseph Vitale from
 8    Cohen, Weiss and Simon, L.L.P., as counsel to
 9    Teamsters Negotiating Committee.
10                    Although no one asked, the
11    teamsters had filed its own separate objection,
12    and enjoins in the committee's statement of
13    support, with the reservations that the
14    committee has raised, subject to documentation.
15                    A VOICE:   Of both deals?
16                    MR. VITALE:   Yes, of both deals.
17                    MR. COLLINS:   Thank you.
18                    MR. KELLEY:   Thank you.   Is there
19    anybody else that wishes to be heard or ask any
20    questions?
21                    With that, we will suspend the
22    auction for the limited purposes I previously
23    stated.   Thank you everybody.
24                    (JC Exhibits 10, 11 and 12 were
```

```
 1   marked for identification.)

 2                 (Proceedings conclude at 5:20

 3   p.m.)

 4                 - - - - - - - -

 5                 E X H I B I T S

 6   JC EXHIBITS                           MARKED

 7   Exhibit 10 - 9/12/13 Revised Asset

 8   Purchase Agreement                       41

 9   Exhibit 11 - Changed pages to the seller

10   disclosure schedules (not included in

11   transcript)                              41

12   Exhibit 12 - 9/12/13 MSD consent email   41

13

14   (Exhibit 11 retained by Mr. Kelley.)

15

16   CERTIFICATE OF REPORTER                   42

17

18

19

20

21

22

23

24
```



```
1   State of Delaware)
                     )
2   New Castle County)

3

4

5                CERTIFICATE OF REPORTER

6

7            I, Eleanor J. Schwandt, Registered

8   Merit Reporter and Notary Public, do hereby

9   certify that the foregoing record, pages 1 to

10  41 inclusive, is a true and accurate transcript

11  of my stenographic notes taken on September 12,

12  2013, in the above-captioned matter.

13

14           IN WITNESS WHEREOF, I have hereunto

15  set my hand and seal this 12th day of

16  September, 2013, at Wilmington.

17

18

19

20

21                    Eleanor J. Schwandt

22

23

24
```



**W&F**

**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

**$**

**$13 (1)** 6:22
**$135 (2)** 14:20, 23
**$140 (4)** 5:8 6:17 7:16 10:3
**$5 (1)** 20:4
**$60 (1)** 29:6

**A**

**able (1)** 17:12
**accept (1)** 32:19
**acceptable (4)** 3:8 11:5 23:1 32:17
**Access (1)** 6:1
**accommodation (1)** 2:18
**accompany (1)** 37:13
**accounts (1)** 39:20
**achieve (1)** 12:11
**Acquisition (7)** 2:12,15 8:7 10:2,18 11:14, 16
**acres (1)** 16:6
**actually (5)** 8:8 13:1 14:17 19:6,18
**Adam (16)** 2:13 6:17 9:1 10:16 18:6 19:21 22:22 23:4,19 24:8 27:17 28:4 32:18 34:13, 14 35:18
**addition (2)** 15:24 20:10
**additional (4)** 3:6 7:10 12:17 20:13
**address (6)** 2:24

3:17 4:6,9 11:2 16:17
**advanced (2)** 21:22 22:24
**advise (1)** 12:8
**advised (2)** 17:7 19:11
**affiliate (1)** 20:23
**affiliates (1)** 25:11
**affirmation (1)** 20:21
**affirmative (2)** 12:1 33:5
**Afternoon (2)** 14:16,18
**Again (6)** 2:4 3:12 9:23 27:18 28:19 34:16
**agent (5)** 8:20 24:2 25:7 30:10 35:4
**agents (2)** 8:20 24:1
**ago (1)** 37:9
**agree (4)** 4:16 5:1 30:2,6
**agreed (5)** 17:21, 24 22:19 34:24 37:2
**agreement (22)** 3:20,21 4:8, 21 8:6 12:4 15:1,4 16:11, 20 17:16 21:16 22:16 24:2,4 26:23 30:4 33:8,14 37:8,14 41:8
**agreements (1)** 5:19
**allegedly (2)** 38:6 39:21
**Allied (10)** 2:12, 15 4:14 5:3, 24 8:7 10:2, 18 11:14 14:9
**allocation (1)** 28:8

**allows (1)** 40:3
**almost (1)** 10:9
**along (3)** 6:6 30:21 31:18
**although (2)** 38:21 40:10
**among (3)** 13:12 28:9 36:3
**amount (2)** 21:23 22:11
**analysis (1)** 8:19
**announced (2)** 38:11,11
**announcement (1)** 10:14
**anticipate (1)** 28:21
**ANTONELLI (1)** 14:16
**apologize (3)** 17:8 31:6 39:4
**apparently (1)** 19:12
**appears (1)** 10:8
**appraisal (4)** 21:3 23:6,6,8
**appraisals (1)** 23:11
**appraiser (1)** 28:7
**appreciate (1)** 35:24
**approach (1)** 33:6
**appropriate (3)** 25:16,21 36:22
**approval (7)** 12:2, 7 14:6,8 31:4 33:11 38:14
**approve (1)** 27:1
**approved (1)** 36:22
**approves (1)** 32:8
**arguable (1)** 4:13
**arm's (1)** 13:21
**arrangement (1)** 26:19
**Ashland (4)**

15:15 20:6 27:9,11
**aspects (1)** 36:1
**assess (1)** 21:24
**asset (12)** 3:19 4:16 14:24 15:4 16:11,20 17:15 21:16 30:4 37:7,13 41:7
**assets (21)** 4:19 11:19,24 12:12,13 15:10 16:3,21 17:2,21 26:7 27:20 29:16 30:3,8,19,23 31:21 32:1 33:3 37:24
**associated (1)** 21:8
**assume (1)** 6:21
**attach (1)** 30:16
**attendant (1)** 25:7
**auction (16)** 3:14 4:12 8:12 9:23 10:4,7, 13 13:13 14:14 29:17, 19 32:6 37:20 38:5,8 40:22
**auctions (1)** 38:2
**Austin (29)** 2:8 6:14,14 7:4,7, 11,17 13:2,5, 6 14:18 17:8 18:4,9,15,22 19:1,8,10,16 20:5 29:19 32:17 34:13 35:18 36:12 37:4 38:15,16
**Auto (1)** 39:7
**available (1)** 37:5
**Avenue (1)** 15:23

**B**

**back (7)** 2:2 9:16,22 18:4 20:7,13 21:14
**backstop (1)** 28:16
**Bankruptcy (4)** 8:13 21:18 22:2,17
**bargaining (1)** 4:21
**Barry (1)** 39:6
**Based (3)** 7:20 23:10 35:18
**basically (1)** 3:17
**basis (5)** 4:22 16:21 21:6 36:24 37:2
**become (3)** 4:17 6:2,5
**becomes (1)** 8:16
**becoming (1)** 5:19
**began (1)** 14:14
**beginning (1)** 32:20
**behalf (6)** 2:11, 14 6:15 10:17 19:22 39:18
**behind (1)** 17:22
**belongs (1)** 25:14
**benefit (3)** 3:6 12:22 35:4
**best (5)** 2:7 17:20 29:15 31:20 33:1
**bid (35)** 2:5,7 3:2,16 5:9,11 6:17,18,18,20 7:5,12,21 8:21 10:3,15, 21,24 11:12 12:16 14:19, 20 16:23,24 17:20,20 20:1, 1,11 27:21 29:7,21 31:18 35:10 37:24
**bidder (1)** 30:3
**bidding (3)** 2:11

20:3 38:2
bids (5) 12:17 29:15,15 31:20 38:10
Black (6) 10:1, 18 19:22 29:22 30:21 35:10
Borough (1) 16:7
both (9) 2:17 17:21 29:14, 23 33:10,11 36:21 40:15,16
bother (1) 20:7
bring (1) 22:17
bringing (1) 12:21
broker (2) 21:4 23:9
brokers (1) 23:10
Brooklyn (4) 16:4, 6,7 23:22
brought (1) 39:11
budget (1) 6:23
BURKE (11) 8:23, 23 9:9 22:20, 20 27:15,15 28:3 31:11,11 32:18
business (1) 36:21
buy (1) 17:21
buyer (1) 11:6

C

calculated (1) 6:24
call (1) 21:7
called (3) 5:23 11:13,15
came (1) 14:1
Can (12) 5:21 8:5 9:17 13:15 14:4 17:5,9 26:22 30:8 34:5 35:18 36:8
Canada (2) 5:1

6:10
Canadian (4) 4:3 5:3,5 39:7
capacities (1) 29:24
carry (2) 21:13 28:21
carrying (1) 27:23
case (3) 12:15, 21 38:7
cases (1) 32:2
cash (2) 7:5 15:2
caught (1) 18:13
certain (5) 15:15, 17 33:3 38:24 39:11
certainly (4) 13:15 30:6 35:22 36:1
CERTIFICATE (1) 41:16
change (1) 4:7
changed (3) 37:7, 11 41:9
changes (3) 9:5, 8 17:15
Chapter (1) 32:2
choose (1) 22:8
chose (1) 12:23
chosen (1) 16:10
claim (4) 5:9 24:12 25:3,20
claims (6) 24:5, 14,24 29:3 30:13,15
clarification (2) 6:17 37:19
clarifications (1) 18:8
clawback (1) 29:4
clear (4) 35:7,22 36:14 37:22
clearly (1) 33:6
close (1) 31:2
closed (2) 37:21 38:2
closing (3) 21:1 31:15 35:5

co (9) 4:16,16 5:18,24 6:1, 10 10:18 11:14,16
Cohen (1) 40:8
collateral (1) 24:1
collective (1) 4:21
COLLINS (17) 5:16,17 6:8, 12 8:22 17:4, 5 18:3 19:20 20:9 21:20 22:14 24:6 27:4 38:19 39:14 40:17
collusion (1) 13:16
Colonel (1) 15:21
comfortable (1) 8:18
coming (2) 33:12 34:6
comments (2) 13:9 29:9
commit (1) 28:17
commitment (1) 17:6
Committee (22) 4:10 8:24 9:13 22:21,24 25:23 26:9 27:16 29:11, 14 30:20 31:12,17,22 32:3,4,7,14 33:9,24 40:9, 14
Committee's (2) 33:16 40:12
company (18) 4:19 5:2 6:7 8:7,19 10:2, 23 12:6 18:17 20:19 33:1,14 34:10 35:1,3 36:16,20,24
company's (1) 12:22

complementary (3) 11:18 20:1 33:2
completion (1) 29:17
component (3) 5:9 6:19 7:5
comprehensive (1) 12:10
concerns (3) 3:1 4:9 22:1
conclude (1) 41:2
conclusion (2) 11:4 32:2
condition (1) 37:1
conditionality (2) 12:1 36:11
conditions (2) 9:3, 4
conducted (2) 20:21 21:4
conducting (1) 32:5
confidence (1) 37:16
confirm (5) 17:5, 9 30:1,22 33:20
confirmation (2) 17:23 21:21
confirmed (1) 29:21
connection (3) 27:19 30:9 31:6
consensual (1) 31:24
consent (8) 2:21 17:11,14 21:17 30:1,5, 9 41:12
consented (1) 17:24
consents (1) 32:9
consideration (2) 14:20 15:2
considering (1) 10:23

constituencies (1) 10:7
constituents (1) 5:15
constraints (1) 9:18
constructive (1) 3:5
consult (1) 9:12
consultation (5) 9:14 10:6 11:1 29:11,13
consummate (1) 17:6
consummation (1) 34:12
contemplated (1) 9:8
contemplates (1) 7:21
contending (1) 26:6
context (2) 24:16 33:13
contingent (1) 31:15
continue (2) 11:1 12:16
continuing (1) 10:4
contract (5) 4:14 5:8 8:2 9:3 22:5
contribution (1) 5:9
conversation (1) 34:9
conversations (3) 2:23 3:4 4:12
Cooper (28) 6:15 13:6 14:7,13, 19 15:7,24 16:9,24 17:10 20:1 29:20 30:2,8,17,19, 24 31:3,4,9, 10,14,18 32:9, 15 37:13,24 39:24

Cooper's (3)
  13:14 17:20
  36:2
copy (1) 22:5
Corp (1) 6:15
Corporation (2)
  2:12 13:7
correctly (1) 37:20
costs (7) 7:10,
  16 21:13,13
  27:23 28:6,21
counsel (3) 2:5
  39:6 40:8
Court (8) 3:20
  8:2,13 12:8
  21:18 22:2,17
  27:1
created (1) 24:20
creativity (1) 3:7
credit (13) 6:18,
  20 7:12 8:6
  20:3,11,13
  24:2 27:21
  28:1 30:10,12
  35:10
crediting (1)
  21:14
creditor (1) 24:4
Creditors (1) 8:24
current (1) 5:20
currently (1)
  16:12
cut (1) 7:12

**D**

Dacula (1) 15:17
damages (1) 7:23
date (1) 16:11
day (3) 9:18
  21:17 39:13
days (1) 16:10
deal (4) 12:10,
  24 27:14 36:17
deals (6) 13:17
  14:1,5 36:21
  40:15,16
Dearborn (1)

15:23
debt (10) 7:22
  8:8 21:7 22:7,
  10,16 24:5,14,
  24 27:18
debtor (8) 9:24
  17:17,18
  22:23 26:8
  32:1,4 39:22
debtors (9) 2:5,7
  3:15 9:12
  25:23 26:22
  29:10,13 33:9
debtors' (4)
  16:13 17:1
  21:3 31:17
decide (1) 17:19
deem (2) 22:12
  29:14
deemed (4) 2:6
  30:2 32:24
  38:2
defined (1) 16:17
dependent (4)
  11:24 12:5
  14:7 33:8
Depending (1)
  28:15
deposit (1) 7:23
describe (1) 14:4
described (2)
  6:11 15:11
designated (4)
  2:22 6:2 19:5,
  6
designation (1)
  19:4
designed (1) 4:8
despite (1) 38:22
detail (1) 28:20
detailed (1) 26:24
determination (1)
  31:18
determine (1)
  17:19
determined (1)
  18:15
determining (2)

23:13 37:23
Diamond (5) 10:1,
  18 29:22
  30:22 35:10
Diamond/Spectrum (1)
  19:23
dictates (1) 3:13
different (1) 33:4
differential (1)
  7:15
diligently (1)
  33:15
DIP (2) 6:21 7:8
direct (2) 5:24
  30:9
disbursed (1) 35:4
disbursement (1)
  34:21
disbursements (1)
  35:13
disclosure (4)
  37:12,15,17
  41:10
discuss (1) 11:2
discussed (1) 30:5
discussion (1)
  13:11
discussions (5)
  10:5 11:8
  13:19 18:17
  35:3
disposal (1) 20:12
disposed (1) 21:1
disposition (5)
  20:18 26:7,
  14 34:10 35:9
dispositions (2)
  20:15 25:22
dispute (1) 25:8
disputed (2)
  25:20 29:3
disputes (1) 21:15
distributable (1)
  7:2
distributed (1)
  38:24
distribution (3)
  25:10,13

34:11
division (1) 11:23
documentation (5)
  29:18 32:12,
  16 38:10 40:14
documenting (1)
  26:18
documents (3)
  35:12 36:7
  39:9
dog (1) 38:23
dollar (2) 22:9,9
done (8) 14:11
  23:7,9 26:23
  27:3 28:23
  34:6 36:7
down (3) 12:23
  19:18 23:5
drag-along (1)
  30:11
drawn (1) 6:22

**E**

earlier (6) 10:3,
  21 24:21
  37:10,14 38:14
economic (1) 11:4
effect (3) 12:9
  30:14 37:2
effectively (3)
  4:18 11:22
  33:2
effort (1) 2:23
efforts (1) 31:2
either (3) 16:1
  27:14 28:6
else (4) 21:17
  27:4 38:4
  40:19
email (1) 41:12
e-mail (3) 17:12
  38:13,17
encumbrances (2)
  30:13,16
end (2) 3:24
  21:16
enforceable (3)

24:5,14,23
enjoins (1) 40:12
enough (1) 7:7
entire (1) 18:21
entities (1) 5:21
entitled (1) 29:3
entity (10) 5:23
  6:2,4 11:12
  14:10 20:2,23
  23:21,24 25:14
equal (1) 22:11
equity (5) 24:16,
  19,22 25:4
  35:12
equityholder (1)
  26:15
essence (1) 7:21
estate (9) 6:3
  11:20 12:13
  20:13 21:3,21
  23:15,22 24:20
estate's (1) 12:10
estimate (1) 6:20
even (2) 14:5,10
everybody (5) 2:2
  3:8 21:11,17
  40:23
except (1) 17:2
excess (1) 15:11
excited (1) 39:5
exclude (1) 16:9
excluded (7) 15:8
  16:2,18,22
  17:3 20:4
  27:19
excluding (2)
  15:10 16:3
execution (2)
  16:11 29:18
exercised (1)
  36:20
Exhibit (8) 37:6,
  6,11 38:18
  41:7,9,12,14
exhibits (3) 2:9
  40:24 41:6
exist (1) 23:3
existing (2) 4:13

36:4

**expenses (1)**
21:13

**expiration (1)**
20:24

**explain (1)** 5:21

**expressed (1)**
4:10

**extended (1)** 2:18

**extent (3)** 5:4
23:2 30:11

**extraordinarily (1)**
8:18

**F**

**facility (5)** 28:13,
18 29:6 30:10,
12

**fact (4)** 5:2 12:4,
9 38:22

**fair (6)** 22:11
23:7,14,16,17
32:5

**fairly (2)** 29:1
36:18

**faith (3)** 7:22
13:23 36:15

**fall (1)** 16:2

**falls (1)** 16:1

**familiar (2)** 3:22
4:5

**far (1)** 26:16

**fee (1)** 28:16

**feel (1)** 32:21

**feels (1)** 36:21

**few (1)** 4:3

**figure (1)** 7:4

**figured (1)** 28:20

**file (1)** 8:15

**filed (6)** 3:2,20
8:2 10:10
11:3 40:11

**final (4)** 21:7
24:6 29:18
38:9

**finally (1)** 39:5

**financial (1)** 17:6

**financing (2)** 36:4
38:14

**fine (2)** 19:8,15

**finish (1)** 9:18

**fire (1)** 23:17

**First (16)** 2:16
4:7 7:22 8:8,
20 20:15 24:2,
4,5,14,24
28:1,9 30:10
31:13,23

**flea (1)** 38:23

**flowing (1)** 25:7

**folks (1)** 2:19

**follow (1)** 13:3

**following (1)**
29:22

**foreclosing (1)**
3:11

**forgiveness (1)**
21:7 22:16
27:18

**forgot (1)** 28:5

**form (2)** 15:2
17:12

**formal (1)** 37:6

**formed (4)** 11:12
20:3 23:21
24:1

**forth (2)** 3:15
14:24

**forward (7)** 12:4
35:21 36:3,8,
23 39:12 40:4

**frankly (3)** 2:19
26:11 33:10

**front (1)** 17:9

**full (1)** 13:21

**full-blown (1)**
26:23

**fully (2)** 6:22
36:17

**future (1)** 12:23

**G**

**game (1)** 26:17

**General (3)**

39:18,21 40:2

**generally (3)**
15:11 16:4
23:10

**Georgia (1)** 15:17

**given (1)** 28:13

**gives (1)** 8:6

**giving (1)** 26:8

**GM (1)** 40:3

**go-forward (1)**
4:22

**Good (4)** 2:1
7:22 13:23
36:15

**governance (1)**
25:17

**group (1)** 29:23

**guess (3)** 14:14
18:11 38:3

**guidance (1)**
25:17

**guys (1)** 4:4

**H**

**hair (1)** 38:22

**happen (1)** 3:12

**happened (1)**
38:6

**happens (2)** 25:3
36:6

**happy (4)** 3:23
11:7 22:4
39:10

**hard (1)** 11:8

**Harris (51)** 2:11,
13,14 5:14,22
6:9,24 7:6,9,
14 8:1,10 9:7
10:13,16,16
11:17 13:9
18:5,6,6,10,
20,23 19:3,9,
15,21,21
20:10 22:3,19
23:2,8,16,24
24:13,17 25:6,
12,24 26:3,10,

21 27:24
28:11 32:20
34:17 35:15
36:10,13

**Harris' (1)** 13:24

**hauling (1)** 16:13

**hear (2)** 31:7
34:15

**heard (1)** 40:19

**hearing (4)**
14:11 26:20
34:6 36:9

**highest (6)** 2:6
17:20 29:15
31:20 33:1
37:23

**Highway (2)**
15:16,19

**hiring (1)** 28:7

**hold (1)** 24:4

**holding (3)** 24:12,
13,23

**Holdings (3)** 6:1,
15 13:6

**honest (1)** 7:1

**hopeful (1)** 10:22

**Hopefully (5)**
3:22 9:19
10:8 34:5 40:4

**HSR (1)** 31:3

**I**

**identification (1)**
41:1

**identified (2)** 2:9
37:5

**identify (1)** 39:2

**impede (1)** 31:1

**importance (1)**
12:20

**included (4)**
27:10,10,13
41:10

**including (3)**
10:24 31:3
39:20

**increase (1)** 5:7

**increased (1)** 6:18

**increasing (1)** 5:8

**incurred (1)** 21:13

**independent (1)**
4:12

**indicated (3)**
10:20,22
19:24

**individual (1)**
29:23

**individually (1)**
30:7

**in-house (1)** 39:6

**initial (2)** 20:11
24:3

**initially (1)** 24:22

**insider (1)** 20:23

**intend (1)** 28:24

**intended (2)**
18:20 19:1

**intention (1)** 12:6

**interdependent (1)**
11:24

**interest (1)** 30:14

**interested (1)**
24:11

**interests (1)** 35:13

**interfere (2)** 22:7
31:1

**interim (1)** 25:5

**into (1)** 4:19

**involve (1)** 24:16

**involving (1)** 16:5

**issue (3)** 8:11
22:6,23

**issues (6)** 4:15
12:19 34:20
38:24 39:11
40:5

**J**

**Jack (31)** 6:15
13:6,14 14:7,
13,19 15:7,24
16:9,24 17:10,
19 20:1 29:20
30:2,8,17,19,

23 31:2,4,8,
10,14,18 32:9,
14 36:2 37:13,
24 39:23
**JC (2)** 40:24
41:6
**JCT (7)** 2:20
4:4 11:6,11
13:2 17:5
34:19
**Jeff (9)** 2:4,13
9:23 10:20
23:18 24:18
31:5 37:19
39:17
**Jess (11)** 6:14
7:1 13:2,6
17:4 18:4,7,8
32:13,22 36:10
**join (1)** 13:8
**Joseph (1)** 40:7
**Judge (3)** 14:12
33:12 36:18
**judging (1)** 23:6
**judgment (1)**
36:21
**jurisdiction (1)**
21:18

**K**

**KELLEY (16)** 2:1,
4 5:13 9:10,
22,24 23:18,
18 24:18 29:8
38:8 39:2,23
40:6,18 41:14
**KLYMAN (18)**
7:18,19 8:5
24:8,8,15
25:1,9,19
26:1,5,17
27:6 28:4
31:5,6 34:14
35:6
**knowledge (2)**
5:4 10:5

**L**

**labor (3)** 5:4,5,
19
**land (1)** 15:11
**large (1)** 11:23
**last (3)** 4:12
34:15 37:18
**Lastly (1)** 37:4
**latest (1)** 10:15
**Latham (1)** 7:19
**law (2)** 5:4,5
**lead (1)** 32:1
**lease (6)** 4:16
5:18,24 6:1,9
23:23
**leased (1)** 16:3
**leasing (2)** 4:19
5:1
**least (5)** 13:8,10
35:17 37:22
40:3
**leave (2)** 17:22
19:19
**led (1)** 10:8
**left (1)** 32:21
**lender (2)** 28:13
31:16
**lender/creditor (1)**
26:18
**lenders (21)** 7:3
11:5,13 12:3
13:4 17:11
19:7,23 20:2
24:3,12,13,23
25:2 28:9
29:1,2,24
30:6 35:1,5
**lenders' (1)** 8:8
**length (1)** 13:21
**letters (1)** 13:18
**level (2)** 14:2
28:20
**lien (12)** 7:22
8:8,20 24:2,4,
5,14,24 28:9
29:6 30:10,12

**liens (2)** 30:13,
15
**limitations (3)**
25:10,13 36:4
**limited (1)** 40:22
**linkage (1)** 14:2
**liquidated (1)** 7:23
**litigate (1)** 8:11
**little (1)** 32:21
**LLP (1)** 40:8
**loan (1)** 7:8
**locale (2)** 21:5
23:9
**located (9)** 15:11,
13,14,16,17,
19,20,22 21:5
**London (1)** 15:21
**long (2)** 14:15
36:23
**look (1)** 39:8
**lot (1)** 24:9
**Lowboy (1)** 11:15
**lowboys (7)** 16:9,
12,18,18 19:4
20:5 23:22

**M**

**magnitude (1)**
22:6
**maintained (1)**
37:16
**maintaining (1)**
28:7
**makes (2)** 33:22
36:20
**managing (1)**
25:17
**manner (3)**
13:22 25:16
36:16
**many (3)** 3:1
11:2,9
**Marine (2)** 16:5,6
**Mark (2)** 5:16
17:4
**marked (2)** 41:1,6
**market (4)** 22:11

23:7,14,17
**Marysville (1)**
15:18
**Massachusetts (1)**
15:15
**may (8)** 5:14
14:2,5,10
16:17 25:2
28:16 29:4
**maybe (1)** 36:14
**mean (4)** 9:14
25:13 35:7
36:13
**means (2)** 20:20
36:16
**meant (1)** 17:9
**members (1)**
25:18
**Michael (6)** 8:23
22:20 27:15
31:11 33:9,23
**Michigan (1)**
15:23
**Midlothian (1)**
15:20
**might (2)** 3:7
38:4
**Mike (1)** 27:8
**million (14)** 5:8
6:18,21,22
7:10,16 10:3
14:20,23 20:4,
16 27:20 28:2
29:6
**mind (2)** 24:11
34:15
**minor (1)** 4:3
**minute (1)** 37:9
**missed (2)** 21:19
24:15
**modification (1)**
16:8
**modifications (7)**
3:18 4:2 5:10
14:21 15:6
16:20 37:8
**modified (1)** 30:5
**money (1)** 34:11

**months (1)** 21:1
**morning (5)** 2:1
3:14 5:12
10:21 14:15
**most (2)** 3:8 32:3
**Motors (2)** 39:18,
22
**Motors' (1)** 40:2
**move (3)** 35:21
36:2,8
**moving (2)** 24:9
36:23
**MSD (1)** 41:12
**mutually (1)** 11:24

**N**

**name (1)** 39:5
**National (1)** 4:10
**necessarily (2)**
18:14 40:2
**necessary (4)**
7:15 8:16
17:6 30:14
**need (12)** 9:12,
12,18 17:22
22:10 25:15
26:13,13 34:7,
18,23,24
**needs (1)** 28:23
**negotiated (5)**
11:11,22
12:9 33:2
36:17
**Negotiating (2)**
4:10 40:9
**negotiation (1)**
33:7
**negotiations (2)**
13:11,20
**NESTOR (2)**
27:8,8
**net (1)** 7:2
20:14 21:12,
12,12 27:22
28:2
**New (10)** 2:12,
15 5:23 8:7

10:2,17 11:13
14:9 16:7,7
**next (2)** 14:11
38:5
**Nickerson (1)**
15:15
**NMATA (2)** 4:17
6:5
**nobody (1)** 38:21
**notably (1)** 32:3
**noted (1)** 13:10
**notes (1)** 15:2
**notice (8)** 21:22
22:4,24 23:1
25:21 26:6,8,
14
**notify (1)** 20:19
**number (4)** 5:20
18:1 21:8
37:11
**numbers (1)** 37:6

### O

**objecting (1)**
39:12
**objection (6)** 8:15
25:2 33:21
36:8 40:3,11
**objections (8)** 3:1
4:11 8:14
10:10 11:3
12:18 30:18
35:21
**obligation (1)** 9:4
**obligations (1)**
4:20
**obtaining (1)** 31:3
**obviously (8)** 6:6
9:13 10:23
29:1 34:7,9,
18,22
**occurring (1)** 28:1
**o'clock (2)** 3:14
9:19
**off (5)** 3:19 9:11
19:17 27:1
31:13

**Official (1)** 8:24
**Ohio (1)** 15:18
**Old (1)** 15:19
**One (14)** 5:16
6:16 11:11,11
12:2,10 18:10
21:20 24:6
28:4 30:1
39:19,21 40:10
**ones (1)** 19:17
**only (3)** 22:6
37:18 38:8
**Ontario (4)** 15:12,
14,21 18:11
**open (1)** 32:6
**opening (1)** 32:23
**operating (2)** 6:7
36:15
**operations (2)**
16:13 19:14
**opportunity (2)**
28:14 39:16
**order (6)** 12:11
32:11,15 34:8,
19 39:9
**original (1)** 29:7
**otherwise (2)**
17:22 31:1
**out (6)** 7:1,5
12:18 28:20
32:21 35:4
**outcome (1)**
39:10
**outstanding (1)**
39:1
**over (4)** 2:11
10:13 13:1
35:7
**owed (1)** 39:21
**own (6)** 14:4
18:16 23:21
24:18,20 40:11
**owned (2)** 15:8
24:22
**owner (1)** 6:3
**owners (1)** 24:19
**ownership (2)**
23:20 24:3

### P

**pages (3)** 37:7,
12 41:9
**paid (1)** 30:17
**paper (1)** 24:9
**parallel (1)** 14:6
**parcel (2)** 18:21
19:2
**parcels (1)** 18:12
**part (3)** 4:23
11:23 34:15
**participate (3)**
28:10,14 29:4
**participated (1)**
13:12
**participating (2)**
13:19,23
**particular (2)**
2:19 27:22
**particularly (1)**
12:20
**parties (12)** 2:17,
22 3:9,21
9:15 10:6,24
11:1 12:14
13:12 30:24
33:4
**party (4)** 4:17
5:19 6:5 39:19
**path (1)** 12:23
**patience (1)** 2:17
**pause (1)** 38:21
**pay (2)** 7:8,16
**payable (1)** 28:16
**paying (1)** 28:8
**payment (1)**
20:16
**pending (2)** 25:8
29:17
**people (2)** 18:1,
23
**percentage (1)**
25:4
**personally (2)**
23:3 29:2
**perspective (6)**

12:3,11
13:16,18 14:1
35:24
**piece (3)** 5:6
6:20 7:12
**place (1)** 8:3
**plan (1)** 26:18
**Please (1)** 23:19
**pledge (1)** 7:21
**pm (2)** 9:21 41:3
**point (4)** 2:10
17:14 26:15
37:22
**portion (3)** 27:18
33:21 35:10
**portions (1)**
34:22,24
**possibility (1)** 3:12
**possibly (1)** 23:22
**potentially (1)**
12:17
**powers (1)** 8:19
**precedent (1)** 9:4
**precep (1)** 23:13
**pregnant (1)**
38:21
**prelude (1)** 36:11
**prepare (1)** 21:2
**prepared (6)** 3:15
5:11 12:16
17:18 33:16
34:3
**present (4)** 13:2,
3 17:13 30:18
**presentation (1)**
13:20
**presented (6)** 2:8
12:19,24
14:19 15:1
33:12
**presume (1)**
19:16
**previously (1)**
40:22
**price (3)** 5:7
14:23 23:6
**primarily (1)**
16:16

**principally (1)**
34:20
**principle (1)**
23:13
**printed (1)** 17:13
**pro (1)** 25:4
**probably (2)**
33:22 39:12
**proceed (2)** 14:4,
5
**Proceedings (1)**
41:2
**proceeds (11)**
20:14 21:11,
12 27:22 28:2
30:17 34:10,
21,23 35:2,9
**productive (1)** 3:5
**professionals (3)**
11:9 31:23
32:5
**properties (6)**
18:11 20:5,
12 21:2,4
28:22
**property (18)**
15:9,10,13,
14,16,17,19,
20,22 16:4
21:5 22:12
23:11 25:11,
14,14 27:22
28:7
**proposal (2)**
13:21 30:23
**proposed (3)**
11:6 21:22
34:18
**prosecute (3)**
30:18 33:10,
15
**prosecuting (2)**
33:21 35:20
**provide (3)** 20:12
21:2,21
**providing (1)**
22:23
**Provincial (5)**

15:12,13
18:13,18,19
**provision (1)** 7:24
**provisions (1)** 8:1
**public (1)** 37:17
**purchase (14)**
    3:19 5:7
    14:20,23,24
    15:4 16:11,20
    17:15 21:16
    30:4 37:8,13
    41:8
**purchased (1)**
    15:10
**purchasers (1)** 9:5
**purchasing (1)**
    38:1
**purpose (1)** 22:15
**purposes (8)** 5:3,
    11 16:14
    34:23 37:23
    38:1,9 40:22
**pursue (2)** 12:7
    33:15
**put (7)** 12:16
    16:17 32:13
    33:23 36:18,
    19 37:5

## Q

**qualification (1)**
    19:13
**quickly (2)** 9:1,17

## R

**raise (1)** 22:1
**raised (3)** 8:14
    24:18 40:14
**rare (1)** 25:1
**rata (1)** 25:4
**ratably (1)** 28:14
**rather (1)** 37:21
**reach (2)** 2:24
    22:15
**ready (1)** 19:11
**real (12)** 6:3

15:9,13,14,16,
    17,18,21
    23:15,21
    24:20 25:10
**realized (1)** 20:14
**really (1)** 4:8
**reasonable (2)**
    21:23 26:7
**reasons (1)** 36:3
**receivable (1)**
    39:20
**receive (1)** 23:1
**received (3)** 12:6
    28:2 31:20
**recently (1)** 38:24
**Recess (1)** 9:20
**recognize (3)**
    9:17 13:24
    30:16
**recognized (2)**
    21:4 23:9
**recommencement (1)**
    3:13
**reconfirm (1)**
    13:15
**record (18)** 2:3
    4:11 5:17
    7:18 9:11,17,
    23 13:5,10
    14:22 17:10
    18:2 29:22
    31:14 33:24
    37:9 38:12
    39:3
**referenced (1)**
    38:14
**referred (3)** 16:4
    19:5 20:6
**referring (2)** 6:4
    18:24
**reflect (1)** 37:8
**relates (3)** 6:19
    29:20 34:20
**relating (2)** 4:13
    34:20
**relationship (1)**
    12:8
**relative (2)** 4:2

16:18
**release (1)** 30:13
**relief (2)** 22:7,10
**remain (1)** 9:3
**remaining (2)**
    21:3 35:2
**remains (3)**
    14:24 15:3,5
**remarks (1)** 32:23
**remember (1)**
    33:18
**remind (1)** 21:10
**reopen (1)** 38:5
**repeating (2)**
    20:8 24:11
**reply (1)** 8:14
**report (1)** 11:7
**REPORTER (1)**
    41:16
**represent (1)**
    31:19
**representation (1)**
    35:19
**representations (4)**
    12:5 33:17
    34:4 36:15
**request (5)** 26:2,
    4 32:23 35:20
    40:4
**requires (1)** 35:17
**requisite (13)**
    11:5,13 12:3
    13:4 17:11,14
    19:6,23 20:2
    29:24 30:6
    31:16 35:1
**reservation (1)**
    35:16
**reservations (1)**
    40:13
**reserved (1)** 25:6
**reserves (2)** 32:8
    35:8
**resolution (7)**
    2:24 3:7 10:8
    12:13,21
    22:18 25:8
**resolve (1)** 10:9

**resolved (1)** 40:5
**resolves (1)** 40:2
**respect (10)** 4:24
    10:15 18:10
    19:3 20:18
    30:12,19
    34:19 35:9
    38:23
**respective (1)**
    29:16
**respond (1)** 34:13
**response (3)**
    32:22 35:17,
    19
**result (5)** 11:4,8,
    18 13:11,22
**retained (1)** 41:14
**return (2)** 28:10,
    12
**review (4)** 21:18
    32:11,15 34:18
**revised (5)** 3:16
    13:21 15:8
    16:24 41:7
**riders (2)** 4:18
    6:6
**right (10)** 3:3
    6:12 7:6 8:7
    22:7,14 23:12,
    24 29:10 36:12
**rights (7)** 25:7
    28:9 30:11
    32:8,11 35:8,
    16
**rigs (1)** 6:3
**risk (2)** 4:20
    38:3
**Road (10)** 15:12,
    13,15,18,21
    18:13,18,19
    19:17,18
**Robert (8)** 7:19
    8:10 24:8
    26:10 27:5
    28:16 31:5
    34:17
**room (1)** 11:9
**Roth (3)** 2:14

10:17 19:22
**rough (1)** 7:12
**roughly (1)** 6:21
**run (1)** 38:3
**running (1)** 19:18

## S

**salable (2)** 23:16,
    17
**sale (28)** 11:18
    12:11 14:11
    20:20,20,22
    22:5,8 23:6
    26:23 27:2,19,
    21 30:19
    31:24 32:11,
    11,14,15,16
    33:3,22 34:8,
    18,22 39:9,9,
    13
**same (5)** 9:3
    15:3,5 26:7
    32:18
**saying (2)** 34:16
    37:20
**schedule (2)** 15:8
    19:13
**scheduled (1)**
    14:12
**schedules (5)**
    16:16 18:16
    37:12,15 41:10
**Schulte (3)** 2:14
    10:17 19:22
**second (3)** 4:23
    29:6 30:12
**section (2)** 8:6
    30:7
**seeing (1)** 34:8
**seems (1)** 14:15
**sell (4)** 22:8,9
    25:15 30:23
**seller (3)** 37:12,
    14 41:9
**sellers (2)** 16:10
    19:5
**selling (1)** 22:13

sense (2) 33:22
36:20

separate (1)
40:11

series (1) 2:22

set (2) 3:14
14:24

severance (1) 4:3

sheet (2) 26:24
29:5

shortly (1) 40:5

side (3) 13:2,3,
18

similar (2) 4:23
29:5

Similarly (2)
31:22 32:7

Simon (1) 40:8

six (1) 20:24

Smoky (1) 15:18

sold (2) 27:12
30:8

somebody (2)
28:17 29:12

someone (1) 38:4

Sontchi (1) 14:12

Sorry (6) 18:7,7
24:17 28:5
34:14 35:6

South (1) 16:6

Special (4) 9:13
29:11,14 32:4

specific (1) 34:23

specifically (3)
8:4 15:9 17:2

Spectrum (4)
10:1,19
29:23 30:22

stability (1) 12:22

standpoint (2)
13:14 36:2

stands (1) 14:21

STARK (2) 23:4,
12

state (1) 23:20

stated (3) 31:14
37:9 40:23

statement (1)

40:12

stating (1) 14:22

statutory (2) 5:2
6:10

stay (1) 8:3

STEARN (1)
11:15

still (6) 7:21
14:3 23:3
34:24 36:8
39:1

stop (1) 22:13

structure (3) 5:20
15:1 28:15

subject (9) 14:21
15:5 29:4
32:15 34:8
39:1,8,10
40:14

submit (2) 3:16
8:21

submitted (3)
10:21,24
16:24

submitting (2)
15:8 38:18

subsequent (1)
20:11

subsidiary (1)
5:24

substantially (4)
11:19 12:12
17:1 31:24

substantive (1)
16:21

substitute (1)
16:15

successful (3)
30:3 37:24
38:10

successor (2) 5:3
6:10

successorship (1)
4:15

succinctly (1)
32:13

Suffice (1) 8:17

sum (1) 20:3

supplemental (4)
14:8 31:16,
19 32:10

supplements (2)
4:18 6:6

support (5) 30:23
32:14 33:10,
16 40:13

supporting (1)
31:3

supports (3) 31:8,
9,17

suppose (1)
25:18

Sure (9) 5:22
18:9,13 22:22
24:10 25:20
34:17 35:23
36:5

suspend (2)
29:17 40:21

suspended (3)
29:20 37:21
38:9

**T**

table (3) 2:6 3:2
12:17

tail (1) 38:23

Talbot (1) 15:21

talk (4) 3:19
21:11 26:21
35:7

talked (1) 5:18

talking (1) 7:2

tamp (1) 23:5

tandem (1) 14:5

taxes (1) 28:8

Teamsters (3) 4:9
40:9,11

technically (1)
18:17

ten (1) 7:9

term (3) 16:18
26:24 29:5

Terminal (3) 16:5,
6 23:23

terms (4) 12:2
20:19 27:2
28:6

Texas (1) 15:20

Thanks (3) 2:13
9:9 39:15

third (3) 5:6
16:8 23:5

though (2) 14:5,
10

thought (2) 3:4
26:12

three (2) 14:21
17:7

tie (2) 33:6 37:2

today (3) 9:19
17:13 33:7

together (6)
11:22 12:7
14:1 34:5
36:19,19

told (2) 24:21
36:18

total (1) 28:21

tranche (1) 25:11

transaction (22)
11:2,10 14:3,
7,9 17:23
21:9,23,24
30:15 31:2,8,
9,15,16,19
32:10 33:3,8
34:19 35:11
36:1

transactions (8)
11:10,21
12:7 13:9
17:7 25:22
32:24 33:11

transcript (1)
41:11

treat (1) 28:24

treated (1) 35:14

treatment (1) 4:2

try (3) 2:23 9:16
38:4

trying (3) 7:4,11
14:10

Tuesday (7)
14:11 33:12
34:7 35:21
36:9 38:6
39:13

turn (4) 2:11
10:12 13:1
17:18

two (7) 11:10
14:5 18:8,12
25:11 33:4,6

type (1) 23:11

**U**

ultimate (4) 14:6,
8 32:2 36:7

ultimately (3)
17:19,24
30:20

under (9) 4:20
5:7,20 21:15
24:3 25:16
30:3,7 36:4

Understood (2)
28:3 37:19

undisclosed (2)
13:17,17

unfortunately (1)
3:9

Uniport (1) 39:7

unitary (2) 33:3
35:24

Unsecured (1)
8:24

up (4) 5:2 7:9
13:3 17:9

upfront (1) 20:16

upon (8) 14:8
20:11,14
23:10 27:2
33:8 34:11
37:2

use (1) 8:8

used (2) 16:12
34:23

## V

**valid (3)** 24:5,14, 23
**validity (1)** 25:3
**value (8)** 7:2 22:11 23:7,13, 14,14,16,17
**various (2)** 2:9 12:19
**vehicle (1)** 24:19
**view (1)** 32:24
**violations (1)** 4:13
**VITALE (3)** 40:7, 7,16
**VOICE (3)** 27:11, 13 40:15
**voiced (1)** 3:1

## W

**WADSWORTH (4)** 38:20 39:4,6, 15
**Watkins (1)** 7:19
**WAXMAN (3)** 39:17,17 40:1
**way (4)** 8:9 16:1 23:10 36:14
**Weiss (1)** 40:8
**whole (2)** 24:16 28:18
**whose (1)** 29:2
**willing (1)** 28:17
**wind-down (2)** 6:23 7:8
**Winder (1)** 15:16
**Windsor (3)** 15:12,14 18:11
**wishes (1)** 40:19
**withdrawing (1)** 33:20
**within (1)** 16:10
**word (1)** 37:1
**work (5)** 11:8 27:1 30:24

34:5,7
**Workers (1)** 39:7
**write (1)** 19:12
**Wyoming (1)** 15:22

## Y

**yesterday (4)** 2:8, 19,23 14:14
**York (2)** 16:7,7
**Yucaipa (5)** 7:19 30:20 31:8,9 35:8

## Z

**Zabel (2)** 2:14 10:17

## 1

**10 (3)** 37:7 40:24 41:7
**10:00 (1)** 3:14
**10:07 (1)** 9:20
**11 (5)** 32:2 37:11 40:24 41:9,14
**12 (3)** 38:18 40:24 41:12
**140 (1)** 6:17
**1500 (1)** 15:16
**1790 (5)** 15:12, 13 18:12,19,24
**1791 (3)** 18:12, 18,24
**19550 (1)** 15:18

## 3

**30 (1)** 16:10
**355 (1)** 15:19
**363f2 (1)** 30:7

## 4

**4:40 (1)** 9:21

**41 (3)** 41:8,11, 12
**42 (1)** 41:16

## 5

**5 (3)** 20:16 27:20 28:2
**5:00 (1)** 9:19
**5:20 (1)** 41:2
**50 (1)** 16:9

## 6

**6151 (1)** 15:20
**6301 (1)** 15:22
**6302 (1)** 15:22
**67 (1)** 15:19
**67.25 (1)** 16:5

## 8

**83 (1)** 15:14

## 9

**9/12/13 (2)** 41:7, 12
**97 (1)** 6:21