# **<u>EXHIBIT B</u>**

{935.001-W0027820.}

DIRECTION AND DESIGNATION AGREEMENT

This DIRECTION AND DESIGNATION AGREEMENT, dated as of September [▩], 2013, is between and among (a) Black Diamond Commercial Finance, L.L.C. and Spectrum Commercial Finance, LLC, as successor Co-Administrative Agents (the "Co-Administrative Agents"), and Black Diamond Commercial Finance, L.L.C., as successor Collateral Agent (the "Collateral Agent"), under that certain Amended and Restated First Lien Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement, dated as of May 15, 2007 by and among Allied Systems Holdings, Inc. ("Holdings") and Allied Systems, Ltd. (L.P.) ("Systems"), as borrowers, certain of their subsidiaries, as guarantors, Goldman Sachs Credit Partners L.P., as lead arranger and syndication agent, The CIT Group/Business Credit, Inc., in its capacity as administrative agent and collateral agent, and the other lenders party thereto, as lenders (as amended through the Third Amendment thereto dated April 17, 2008, the "First Lien Credit Agreement"), (b) BDCM Opportunity Fund II, LP, Black Diamond CLO 2005-1 LTD, and Spectrum Investment Partners LP, each in their capacity as a Lender under the First Lien Credit Agreement (collectively, the "Signatory Lenders"); and [_____] ("Purchaser"). All capitalized terms used herein and not otherwise defined shall have the meanings set forth in the First Lien Credit Agreement. The Co-Administrative Agents, the Collateral Agent, the Signatory Lenders and Purchaser are sometimes referred to herein each as a "Party," and collectively as the "Parties."

RECITALS

A.    Petition Date.    On May 17, 2012, involuntary petitions were filed against Holdings and Systems in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). On June 10, 2012 (the "Petition Date"), Holdings and Systems consented to the entry of orders for relief and certain of their direct and indirect subsidiaries filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Holdings, Systems and their direct and indirect subsidiaries that are debtors in Chapter 11 cases are collectively referred to herein as the "Debtors." The Debtors' cases have been consolidated for procedural purposes and are being jointly administered under Case No. 12-11564(CSS).

B.    Prepetition Secured Claim.    As of the Petition Date, the Debtors were obligated to the Lenders under the First Lien Credit Agreement in the aggregate principal amount of not less than $244,021,526, together with accrued and unpaid interest, fees, costs and expenses (the "Prepetition Secured Claim"). To secure payment of the Obligations under the First Lien Credit Agreement, the Debtors granted to the Collateral Agent, for the benefit of the Lenders, Liens on all or substantially all of the Debtors' assets (the "Collateral") pursuant to that certain Amended and Restated Pledge and Security Agreement (First Lien) dated as of May 15, 2007, between each of the grantors party thereto and The CIT Group/Business Credit, Inc. as collateral agent (the "Pledge and Security Agreement").

C.    Adequate Protection Claim.    On July 12, 2012, the Court entered the *Final Order Pursuant To 11 U.S.C. §§ 105, 361,362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503(b) And 507(a), Fed.R. Bankr.P. 2002, 4001 And 9014 And Del. Bankr. L.R. 4001-2: (I) Authorizing Debtors To (A) Obtain Postpetition Secured DIP Financing And (B) Use Cash Collateral; (II) Granting Superpriority Liens And Providing For Superpriority Administrative Expense Status; (III)) Granting Adequate Protection To Prepetition Secured Lenders; And (IV)*

*Modifying Automatic Stay* (the "Initial DIP Order"). On June 21, 2013, the Court entered the *Final Order Pursuant To 11 U.S.C. §§ 105, 361,362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503(b) And 507(a), Fed.R. Bankr.P. 2002, 4001 And 9014 And Del. Bankr. L.R. 4001-2: (I) Authorizing Debtors To (A) Obtain Postpetition Secured Replacement DIP Financing And (B) Use Cash Collateral; (II) Granting Superpriority Liens And Providing For Superpriority Administrative Expense Status; (III)) Granting Adequate Protection To Prepetition Secured Lenders; And (IV) Modifying Automatic Stay* (the "Replacement DIP Order"; and together with the Initial DIP Order, the "DIP Orders"). Pursuant to the DIP Orders, the Debtors granted the Collateral Agent, for the benefit of the Lenders, "Adequate Protection Liens," "Adequate Protection Priority Claims," "Supplemental Adequate Protection Liens" and "Supplemental Adequate Protection Priority Claims," equal to the diminution in the value of the Lenders' Collateral.

      D.      Credit Bid Right. The DIP Orders expressly provide that the Co-Administrative Agents, on behalf of the Lenders, shall have the right to credit bid during any sale of the Collateral.

      E.      Sale Process. The Debtors have determined that a sale of all or substantially all of their assets (the "Assets"), including the Collateral, is an appropriate way to maximize the value of the Debtors' estates for the benefit of all of their stakeholders, including the Lenders. On June 21, 2013, the Court entered that certain *Order (A) Approving Bid Procedures, (B) Approving Cure Procedures, (C) Establishing Date For Auction And Approving Related Procedures, (D) Scheduling Sale Hearing And Related Deadlines, (E) Approving Form And Manner Of Notice, And (F) Granting Related Relief* (the "Bid Procedures Order"). Pursuant to the Bid Procedures Order, the Co-Administrative Agents may submit a credit bid at or at any time prior to the Auction (as defined therein). In connection with the Auction, Signatory Lenders, who constitute Requisite Lenders, have concluded that it is in the best interests of the Lenders to submit a credit bid in the form of that certain Asset Purchase Agreement by and among Purchaser, and Allied Systems Holdings, Inc. and certain of its affiliates, as Sellers, dated as of September [ ], 2013 (the "APA") for a portion of the Assets (such assets, the "Purchased Assets" as defined and further described in the APA).

      F.      Exercise of Credit Bid Right. To facilitate acquisition of the Purchased Assets pursuant to the APA, the Signatory Lenders, as the Requisite Lenders, have determined to direct the Co-Administrative Agents and the Collateral Agent, on behalf of the Lenders, to designate Purchaser as their designee and agent and to vest Purchaser with all rights, powers, and authorities to exercise on behalf of the Co-Administrative Agents and the Collateral Agent (as the Co-Administrative Agents' and Collateral Agent's designee and agent) the Co-Administrative Agents' and Collateral Agent's right to credit bid up to the full amount of the Obligations to the fullest extent permitted under the DIP Orders, the Bid Procedures Order, the First Lien Credit Agreement, the Pledge and Security Agreement, Section 363(k) of the Bankruptcy Code and applicable non-bankruptcy law (the "Credit Bid"). The Credit Bid will comprise the consideration for the acquisition of the Purchased Assets, which comprise a portion of the Collateral.

      NOW THEREFORE, in consideration of the foregoing, the Parties hereto acknowledge and agree as follows:

A. **Directions by Requisite Lenders**

To preserve, maintain and maximize the value of the Collateral, and to maximize the recovery for the Lenders, the Signatory Lenders, as the Requisite Lenders, hereby direct the Co-Administrative Agents and Collateral Agent to:

(i) consent to the entry of an order, in form and substance acceptable to the Co-Administrative Agents, authorizing and approving the sale of all or substantially all of the Assets (other than the Purchased Assets) pursuant to the terms of that certain Asset Purchase Agreement by and among Jack Cooper Holding Corp., as purchaser, and Allied Systems Holdings, Inc. and certain of its affiliates, as sellers, dated as of September [ ], 2013 (as amended);

(ii) facilitate acquisition of the Purchased Assets pursuant to the APA and, in connection therewith, designate Purchaser as their designee and agent and vest the Purchaser with rights, powers and authorities to exercise on behalf of the Co-Administrative Agents and the Collateral Agent (as their designee and agent) the right to credit bid up to the full amount of the Obligations to the extent permitted under the DIP Orders, the Bid Procedures Order, the First Lien Credit Agreement, the Pledge and Security Agreement, Section 363(k) of the Bankruptcy Code and applicable non-bankruptcy law; and

(iii) take such other and further actions as may be necessary to implement the transactions contemplated by this Written Direction and the APA.

B. **Designation by Co-Administrative Agents and Collateral Agent of Purchaser as Designee**

(i) The Co-Administrative Agents and Collateral Agent, on behalf of the Lenders, hereby designate Purchaser as their designee and agent and vest the Purchaser with all rights, powers, and authorities to exercise on behalf of the Co-Administrative Agents and Collateral Agent (as their designee and agent) the Co-Administrative Agents' and Collateral Agent's rights to credit bid up to the full amount of the Obligations to the fullest extent permitted under the DIP Orders, the Bid Procedures Order, the First Lien Credit Agreement, the Pledge and Security Agreement, Section 363(k) of the Bankruptcy Code and applicable non-bankruptcy law.

(ii) The Co-Administrative Agents and Collateral Agent, on behalf of the Lenders, hereby designate Purchaser as their designee and agent and vest the Purchaser (and any designated purchaser designated by Purchaser pursuant to the APA with all rights, powers, and authorities to (a) submit, execute, deliver and perform under the APA and documents ancillary thereto on behalf of itself and on behalf of the Co-Administrative Agents

and Collateral Agent (as their designee and agent), including (without limitation) (1) making a Bid (as defined in the Bid Procedures) for the Purchased Assets, (2) executing and delivering the APA, and (3) taking any action contemplated thereby (including exercising designation rights); and (b) credit bid all or any portion of the Obligations on behalf of the Co-Administrative Agents and Collateral Agent (as designee and agent).

(iii)  If for any reason (a) the designation of the Purchaser as the Co-Administrative Agents' and Collateral Agent's designee and agent pursuant to this Agreement is subsequently deemed invalid, or (b) any exercise by the Purchaser of any rights, powers, or authorities conferred upon the Purchaser pursuant to this Agreement is subsequently deemed invalid, then the Co-Administrative Agents and Collateral Agent hereby irrevocably adopt, reaffirm, and ratify any actions taken by the Purchaser pursuant to this Agreement as if such actions had been taken directly by the Co-Administrative Agents and Collateral Agent.

C.  **Distribution of Equity Interests**

Upon the occurrence of the Closing, the Co-Administrative Agents shall cause the equity interests of Purchaser to be distributed to the Lenders under the First Lien Credit Agreement in accordance with the provisions of this Section C.

a.  On or as soon as reasonably practicable after the Closing Date, the Co-Administrative Agents shall distribute to each Lender under the First Lien Credit Agreement validly holding Obligations that are not subject to any pending dispute (including, without limitation, any dispute as to a person's status as a "Lender," any dispute as to the amount of the Obligations held, or any claim for subordination; the "Allowed First Lien Obligations"), such Lender's Pro Rata Share of the issued and outstanding equity interests of Purchaser (which equity interests may be subject to dilution in connection with any Capital Raise described in Section D hereof).

b.  On or as soon as reasonably practicable after the Closing Date, the Co-Administrative Agents shall deposit into a reserve the Pro Rata Share of the equity interests in Purchaser that would otherwise be allocable to any Person claiming to be a Lender, or any Lender whose Obligations are subject to any pending dispute (including, without limitation, any dispute as to the amount of the Obligations held, or any claim for subordination; the "Disputed First Lien Obligations"). The equity interests held in reserve shall be referred to herein as the "Reserved Equity Interests." The Reserved Equity Interests (or the appropriate portion thereof) shall be issued to the Lender entitled thereto upon the entry of a final order of a court of competent jurisdiction determining that Obligations held by such Lender constitute Allowed First Lien Obligations (in whole or in part) (an "Allowance Order"). All Reserved Equity Interests allocable to Obligations that are not determined to be Allowed First Lien Obligations by an Allowance Order shall be cancelled. Pending distribution, the Reserved Equity Interests shall be treated as issued but not outstanding for all matters relating to the governance of Purchaser. If, prior to the entry of an Allowance Order, there is any distribution by Purchaser on account of the equity interests of Purchaser, or any other

action is taken in respect of or having an effect on the equity interests of the Purchaser, the Reserved Equity Interests will be treated identically to all other equity interests in Purchaser so as to assure that the person entitled to such Reserved Equity Interests (if any) shall not receive treatment on account of the Reserved Equity Interests that is less or more favorable than the treatment received by all other holders of equity interests in Purchaser, *provided, however*, that any distributions made on account of any Reserved Equity Interest prior to the entry of an Allowance Order shall also be reserved.

      c.      Notwithstanding anything to the contrary contained herein, (i) any equity interests issued or to be issued on account of any Obligation held by any person other than a Restricted Sponsor Affiliate shall be in the form of voting membership interests ("Class A Interests") and (ii) any equity interests issued or to be issued on account of any Obligation held or purported to be held by any person who is a Restricted Sponsor Affiliate shall be in the form of non-voting membership interests ("Class B Interests"). The Class A Interests and Class B Interests shall be identical in all respects other than as to voting.

**D.**    **Authority to Incur Debt / Raise Capital**

In connection with the ownership, preservation, use, operation, maintenance and disposition of the Purchased Assets after the Closing Date, and to maximize the recovery for the Lenders, the Signatory Lenders (as the Requisite Lenders), the Co-Administrative Agents and Collateral Agent hereby authorize Purchaser to incur debt and/or raise capital (any such transaction, a "Capital Raise") by issuing any form of debt or equity instruments, securities, promissory notes, warrants, or other instruments, on such terms and conditions as may be approved by Purchaser's board of directors or managers (any such debt or equity instruments, securities, promissory notes, warrants, or other instruments, an "Instrument").

      a.      In connection with each Capital Raise, Purchaser shall offer to each Lender that holds, or may be entitled to receive distribution of, Class A Interests or Class B Interests (including any Person who may be entitled to receive a distribution of any Reserved Equity Interests), the opportunity to participate in any Capital Raise in an amount equal to such Person's Pro Rata Share of the total number of Class A Interests and Class B Interests then issued and outstanding (including, for purposes of this calculation, any Reserved Equity Interests), *provided, however*, that any subscribing Lender must subscribe for all, but not less than all, of its Pro Rata Share.

      b.      Notwithstanding the foregoing, if any Person who is a Restricted Sponsor Affiliate subscribes to participate in any Capital Raise and it is later determined by final order of a court of competent jurisdiction that such Restricted Sponsor Affiliate was not a Lender, does not validly hold the amount of Obligations evidenced by the Register, or that such Restricted Sponsor Affiliates' Obligations should be subordinated in whole or in part (such that such person is not entitled to a distribution of any portion of the Reserved Equity Shares), Purchaser shall have the right (but not the obligation) to satisfy in full, redeem, repurchase, or otherwise repay all (or the appropriate portion) of the Instruments held by such Person (a "Restricted Sponsor Affiliate Buyout") by payment of an amount equal to the original principal amount of such Instrument (less (i) in the case of a debt Instrument, any principal payments made on account thereof, or (ii) in the case of an equity Instrument, any

distributions made on account thereof) plus, in the case of a debt Instrument, accrued and unpaid interest thereon (calculated in accordance with the terms thereof; the "Restricted Sponsor Affiliate Buyout Purchase Price"). If Purchaser exercises such right, the Instruments subject to the Restricted Sponsor Affiliate Buyout shall be extinguished and/or canceled and of no further force or effect upon payment of the Restricted Sponsor Affiliate Buyout Purchase Price. If Purchaser does not exercise this right, the Signatory Lenders shall have the right (but not the obligation) to exercise the Restricted Sponsor Affiliate Buyout for an amount equal to the Restricted Sponsor Affiliate Buyout Purchase Price.

c.  Notwithstanding anything to the contrary contained herein:

(i) any Instruments issued or to be issued to any person who is a Restricted Sponsor Affiliate shall be in the form of non-voting Instruments. Such non-voting Instruments shall be identical to the other Instruments issued to Lenders that are not "Restricted Sponsor Affiliates" other than as to voting rights; and

(ii) if any payment or distribution is to be made on account of any Instrument prior to the entry of an Allowance Order that would result in a Restricted Sponsor Affiliate receiving an amount in excess of the Restricted Sponsor Affiliate Buyout Purchase Price, such excess shall be deposited into a reserve by Purchaser and held pending the entry of an Allowance Order.

**E.  Miscellaneous**

1. <u>Confidentiality</u>. The Signatory Lenders, the Co-Administrative Agents, the Collateral Agent and Purchaser shall keep the content of this Direction and Designation Agreement and the identity of all Parties to this Direction and Designation Agreement strictly confidential except that Parties to this Direction and Designation Agreement may disclose such matters to (i) other Parties to this Direction and Designation Agreement and their respective legal and accounting professionals and other internal personnel; (ii) outside auditors; (iii) the Signatory Lenders', Co-Administrative Agents', Collateral Agent's and Purchaser's regulators, and (iv) where required by law, rule or demanded by any regulatory agency. If any Party is served with a subpoena, discovery request, or an official request from a government agency for information regarding the Direction and Designation Agreement or the identity of the Parties to this Direction and Designation Agreement, the Party receiving such subpoena or request shall notify the other Parties within 10 days of receipt. If any Party wishes to oppose the production of such information, it may do so at its own expense. It is understood and agreed by the Parties that money damages may be an insufficient remedy for any breach of this Direction and Designation Agreement by any Party, and the non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach, including, without limitation, an order or judgment of a court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder.

2. <u>Amendments.</u> This Direction and Designation Agreement may be revoked, amended or modified only in a written document signed by Signatory Lenders and reasonably acceptable to the Co-Administrative Agents and Collateral Agent.

3. <u>Effectiveness</u>. This s Direction and Designation Agreement shall become effective on the date executed by the Signatory Lenders, the Co-Administrative Agents, the Collateral Agent and Purchaser.

4. <u>Counterparts.</u> This Direction and Designation Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same agreement. Delivery of an executed counterpart of this Direction and Designation Agreement by facsimile or electronic mail shall be equally as effective as delivery of an original executed counterpart of this Direction and Designation Agreement.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

**DRAFT 9/16/13**

**BLACK DIAMOND COMMERCIAL FINANCE, L.L.C.,**
as Co-Administrative Agent and Collateral Agent

By: _____
    Name: _____
    Title: _____


**SPECTRUM COMMERCIAL FINANCE, LLC,**
as Co-Administrative Agent

By: _____
    Name: Jeffrey A. Schaffer
    Title: Managing Member


**BDCM OPPORTUNITY FUND II, LP,**
As Lender

By: _____
    Name: Stephen H. Deckoff
    Title: _____


**BLACK DIAMOND CLO 2005-1 LTD,**
As Lender

By: _____
    Name: Stephen H. Deckoff
    Title: _____

**SPECTRUM INVESTMENT PARTNERS LP,**
**As Lender**

By: _____
       Name: Jeffrey A. Schaffer
       Title:  Managing Member


[_____]
**as Purchaser**

By: _____
       Name: Stephen H. Deckoff
       Title:  Manager

By: _____
       Name: Jeffrey A. Schaffer
       Title:  Manager____