## Exhibit A

**(Blackline Comparison of the Plan and the Revised Plan)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **ASHINC CORPORATION, *et al.* [1]** | ) | **Case No. 12-11564 (CSS)** |
| | ) | |
| | ) | **Jointly Administered** |
| Debtors. | ) | |

**DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**PROPOSED BY THE DEBTORS, THE COMMITTEE AND THE FIRST LIEN AGENTS**

Mark D. Collins (No. 2981)
Marisa A. Terranova (No. 5396)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone No.: (302) 651-7700
Facsimile No.: (302) 651-7701
E-Mail: collins@rlf.com
E-Mail: terranova@rlf.com

Jeffrey W. Kelley (GA Bar No. 412296)
Matthew R. Brooks (GA Bar No. 378018)
TROUTMAN SANDERS LLP
Bank of America Plaza
600 Peachtree Street, Suite 5200
Atlanta, Georgia 30308-2216
Telephone No.: (404) 885-3000
Facsimile No.: (404) 885-3900
E-Mail: jeffrey.kelley@troutmansanders.com
E-Mail: matthew.brooks@troutmansanders.com

*Attorneys for the Debtors and Debtors in Possession*

- and -

William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
SULLIVAN HAZELTINE ALLINSON LLC
901 North Market Street, Suite 1300
Wilmington, Delaware 19801
Telephone No.: (302) 428-8191
Facsimile No.: (302) 428-8195
E-Mail: whazeltine@sha-llc.com
E-Mail: bsullivan@sha-llc.com

Michael G. Burke
Brian Lohan
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone No.: (212) 839-5200
Facsimile No.: (212) 839-5599
E-Mail: mgburke@sidley.com
E-Mail: blohan@sidley.com

*Attorneys for the Committee*

- and -

---

[1]  The Debtors in these cases, along with the federal tax identification number (or Canadian business number where applicable) for each of the Debtors, are: ASHINC Corporation (f/k/a Allied Systems Holdings, Inc.) (58-0360550); AAINC Corporation (f/k/a Allied Automotive Group, Inc.) (58-2201081); AFBLLC LLC (f/k/a Allied Freight Broker LLC) (59-2876864); ASCCO (Canada) Company (f/k/a Allied Systems (Canada) Company) (90-0169283); ASLTD L.P. (f/k/a Allied Systems, Ltd. (L.P.) (58-1710028); AXALLC LLC (f/k/a Axis Areta, LLC) (45-5215545); AXCCO Canada Company (f/k/a Axis Canada Company) (875688228); AXGINC Corporation (f/k/a Axis Group, Inc.) (58-2204628); Commercial Carriers, Inc. (38-0436930); CTSINC Corporation (f/k/a CT Services, Inc.) (38-2918187); CTLLC LLC (f/k/a Cordin Transport LLC) (38-1985795); F.J. Boutell Driveway LLC (38-0365100); GACS Incorporated (58-1944786); Logistic Systems, LLC (45-4241751); Logistic Technology, LLC (45-4242057); QAT, Inc. (59-2876863); RMX LLC (31-0961359); Transport Support LLC (38-2349563); and Terminal Services LLC (91-0847582).  The location of the Debtors' corporate headquarters and the Debtors' address for service of process is 2302 Parklake Drive, Bldg. 15, Ste. 600, Atlanta, Georgia 30345.

| | |
|---|---|
| Adam G. Landis (No. 3407) | Adam C. Harris |
| Kerri K. Mumford (No. 4186) | Robert J. Ward |
| LANDIS RATH & COBB LLP | SCHULTE ROTH & ZABEL LLP |
| 919 North Market Street, Suite 1800 | 919 Third Avenue |
| Wilmington, Delaware 19801 | New York, NY 10022 |
| Telephone No.: (302) 467-4400 | Telephone No.: (212) ~~756-200~~756-2000 |
| Facsimile No.: (302) 467-4450 | Facsimile No.: (212) 593-5955 |
| E-Mail: landis@lrclaw.com | E-Mail: Adam.Harris@srz.com |
| E-Mail: mumford@lrclaw.com | E-Mail: Robert.Ward@srz.com |

*Attorneys for the First Lien Agents*

Dated: ~~May 4~~June 17, 2015

THE DISCLOSURE STATEMENT WITH RESPECT TO THIS PLAN OF REORGANIZATION HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.  THE PLAN PROPONENTS HAVE SEPARATELY NOTICED A HEARING TO CONSIDER THE ADEQUACY OF THE DISCLOSURE STATEMENT UNDER BANKRUPTCY CODE SECTION 1125.  THE PLAN PROPONENTS RESERVE THE RIGHT TO MODIFY OR SUPPLEMENT THIS PLAN OF REORGANIZATION AND THE ACCOMPANYING DISCLOSURE STATEMENT PRIOR TO AND UP TO THE DATE OF SUCH HEARING.

# TABLE OF CONTENTS

ARTICLE I RULES OF CONSTRUCTION AND DEFINITIONS ........................................................... 1

| | | |
|---|---|---|
| 1.1 | Rules of Construction ........................................................ | 1 |
| 1.2 | Definitions ........................................................ | 2 |

ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS ........................................................ 14

| | | |
|---|---|---|
| 2.1 | Introduction ........................................................ | 14 |
| 2.2 | Unclassified Claims ........................................................ | 14 |
| 2.3 | Unimpaired Class of Claims ........................................................ | 14 |
| 2.4 | Impaired Voting Classes of Claims ........................................................ | 14 |
| 2.5 | Impaired Non-Voting Class of Interests ........................................................ | ~~15~~15 |
| 2.6 | Unimpaired Non-Voting Class of Interests ........................................................ | ~~15~~15 |

ARTICLE III TREATMENT OF CLAIMS AND INTERESTS ........................................................ 15

| | | |
|---|---|---|
| 3.1 | Unclassified Claims ........................................................ | 15 |
| 3.2 | Unimpaired Class of Claims ........................................................ | 15 |
| 3.3 | Impaired Voting Classes of Claims ........................................................ | ~~16~~16 |
| 3.4 | Impaired Non-Voting Class Interests ........................................................ | ~~17~~17 |
| 3.5 | Unimpaired Non-Voting Class Interests ........................................................ | ~~17~~17 |
| 3.6 | Reservation of Rights Regarding Claims and Interests ........................................................ | 17 |

ARTICLE IV ACCEPTANCE OR REJECTION OF THE PLAN ........................................................ 17

| | | |
|---|---|---|
| 4.1 | Impaired Classes Entitled to Vote ........................................................ | 17 |
| 4.2 | Acceptance by an Impaired Class ........................................................ | 17 |
| 4.3 | Presumed Acceptances by Unimpaired Classes ........................................................ | 17 |
| 4.4 | Presumed Rejection by Impaired Voting Class of Interests ........................................................ | 17 |

ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN ........................................................ ~~18~~18

| | | |
|---|---|---|
| 5.1 | Funding of Distributions under the Plan ........................................................ | ~~18~~18 |
| 5.2 | Continued Corporate Existence ........................................................ | 18 |
| 5.3 | New Debtor Governing Documents ........................................................ | 18 |
| 5.4 | Cancellation of Interests ........................................................ | ~~19~~19 |
| 5.5 | Authorization and Issuance of the New Common Stock ........................................................ | ~~19~~19 |
| 5.6 | Directors and Officers of Reorganized Debtors ........................................................ | 19 |
| 5.7 | Corporate Action; Effectuating Documents ........................................................ | 19 |
| 5.8 | Plan Administrator ........................................................ | 19 |
| 5.9 | Revesting of Reorganized Debtor Assets ........................................................ | ~~20~~20 |
| 5.10 | The Litigation Trustee ........................................................ | 20 |
| 5.11 | The Allied Litigation Trust ........................................................ | ~~21~~21 |
| 5.12 | The Litigation Oversight Committee ........................................................ | 21 |
| 5.13 | Joint Prosecution of the Litigation Claims ........................................................ | ~~22~~22 |
| 5.14 | Litigation Proceeds Waterfall ........................................................ | ~~22~~22 |
| 5.15 | Certain Settlements ........................................................ | 22 |
| 5.16 | Exemption From Certain Transfer Taxes ........................................................ | 22 |
| 5.17 | Plan Supplement ........................................................ | ~~23~~23 |
| 5.18 | Committee ........................................................ | 23 |
| 5.19 | Retiree Committee ........................................................ | 23 |

ARTICLE VI TREATMENT OF CONTRACTS AND LEASES ........................................................ 23

| | | |
|---|---|---|
| 6.1 | Rejection of Contracts and Leases ........................................................ | 23 |
| 6.2 | Claims Based of Rejection of Executory Contracts of Unexpired Leases ........................................................ | ~~24~~24 |
| 6.3 | Assumption of Contracts and Leases ........................................................ | 24 |
| 6.4 | Payments Related to the Assumption of Executory Contracts and Unexpired Leases ........................................................ | 24 |
| 6.5 | Extension of Time to Assume or Reject ........................................................ | 25 |

ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS ........................................................25

7.1    Determination of Allowability of Claims and Interests and Rights to Distributions ...................25
7.2    Procedures for Making Distributions to Holders of Allowed Claims .........................................26
7.3    Consolidation for Distribution Purposes Only ..........................................................................26
7.4    Application of Distribution Record Date ...................................................................................27
7.5    Provisions Related to Disputed Claims .....................................................................................27
7.6    Adjustment of Claims Without Objection ..................................................................................28
7.7    Surrender of Cancelled Old Securities ......................................................................................28
7.8    Withholding and Reporting Requirements .........................................................................2828
7.9    Setoffs .....................................................................................................................................28
7.10   Prepayment ..............................................................................................................................28
7.11   No Distribution in Excess of Allowed Amount of Claim ............................................................28

ARTICLE VIII CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN .............29

8.1    Conditions to Confirmation ......................................................................................................29
8.2    Conditions to Effective Date .....................................................................................................29
8.3    Waiver of Conditions ...............................................................................................................30
8.4    Operations of the Debtors Between the Confirmation Date and the Effective Date ....................30
8.5    Effective Date ..........................................................................................................................30

ARTICLE IX RETENTION OF JURISDICTION .......................................................................30

9.1    Scope of Retention of Jurisdiction ............................................................................................30
9.2    Failure of the Bankruptcy Court to Exercise Jurisdiction ..........................................................32

ARTICLE X MISCELLANEOUS PROVISIONS ........................................................................32

10.1   Administrative Expense Claims, Professional Fee Claims and Substantial Contribution Claims ..............32
10.2   Payment of Statutory Fees ........................................................................................................32
10.3   Termination of Retiree Benefit Plans ........................................................................................32
10.4   Successors and Assigns and Binding Effect ...............................................................................32
10.5   Preservation of Subordination Rights ........................................................................................33
10.6   Releases ...................................................................................................................................33
10.7   Discharge of the Debtors ..........................................................................................................34
10.8   Exculpation and Limitation of Liability ....................................................................................34
10.9   Injunction ................................................................................................................................35
10.10  Certain Provisions Relating to Central States, Southeast and Southwest Area Pension Fund and the Pension Benefit
       Guaranty Corporation ..............................................................................................................36
10.11  Term of Injunctions or Stays ....................................................................................................36
10.12  Modifications and Amendments .................................................................................................36
10.13  Substantial Consummation .......................................................................................................36
10.14  Severability of Plan Provisions .................................................................................................36
10.15  Revocation, Withdrawal, or Non-Consummation .......................................................................37
10.16  Notices ....................................................................................................................................37
10.17  Conflicts .............................................................................................................................3939
10.18  Aid and Recognition ................................................................................................................39

DOC ID - 22951909.122951909.9

RLF1 11415540v.7

**DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION**

## INTRODUCTION

The Debtors, the Committee and the First Lien Agents (each defined below) propose this Plan pursuant to Section 1121(a) of the Bankruptcy Code.  Reference is made to the Disclosure Statement (defined below) distributed contemporaneously herewith for a discussion, among other things, of the Debtors' history, business, property, material events in the Chapter 11 Cases (as defined below) and a summary and analysis of the Plan and certain related matters, including risk factors.

No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith and approved by the Bankruptcy Court, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejection of this Plan.  All parties entitled to vote to accept or reject the Plan are encouraged to read the Disclosure Statement and Plan in their entirety before voting.

## ARTICLE I

## RULES OF CONSTRUCTION AND DEFINITIONS

**1.1    Rules of Construction**

(a)    For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms used in the Plan and not otherwise defined in the Plan shall have the meanings ascribed to them in Section 1.2 of the Plan.  Any capitalized term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

(b)    Whenever the context requires, terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

(c)    Any reference in the Plan to (i) a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, or as otherwise specified in this Plan, and (ii) an existing document, exhibit, or other agreement means such document, exhibit, or other agreement as it may have been, or may hereafter be, amended, modified, or supplemented from time to time, as the case may be, and as in effect at any relevant point.

(d)    Unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan.

(e)    The words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan.

(f)    Captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.

(g)    The rules of construction set forth in Bankruptcy Code Section 102 and in the Bankruptcy Rules shall apply.

(h)    References to a specific article, section, or subsection of any statute, rule, or regulation expressly referenced herein shall, unless otherwise specified, include any amendments to or successor provisions of such article, section, or subsection.

(i)    In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**1.2    Definitions**

(1) ~~(a)~~ "**1114 Order**" means the order of the Bankruptcy Court, in form and substance acceptable to the First Lien Requisite Lenders, terminating, on the Effective Date, all of the Retiree Obligations under the Retiree Benefit Plans.

(2) ~~(b)~~ "**2007 Plan of Reorganization**" means the plan of reorganization of the Debtors that was confirmed on May 29, 2007 in the Georgia Bankruptcy Case.

(3) ~~(c)~~ "**2012 Final DIP Order**" means the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503(b) and 507(1), Fed. R. Bankr. P. 2002, 4001 and 9014 and Del. Bankr. L.R. 4001-2: (I) Authorizing Debtors to (A) Obtain Postpetition Secured DIP Financing and (B) Use Cash Collateral; (II) Granting Superpriority Liens and Providing for Superpriority Administrative Expense Status; (III) Granting Adequate Protection to Prepetition Secured Lenders; and (IV) Modifying Automatic Stay* [Docket No. 230], entered on July 12, 2012.

~~(d)    "**2013 Final DIP Order**" means the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503(b) and 507(1), Fed. R. Bankr. P. 2002, 4001 and 9014 and Del. Bankr. L.R. 4001-2: (I) Authorizing Debtors to (A) Obtain Postpetition Secured DIP Financing and (B) Use Cash Collateral; (II) Granting Superpriority Liens and Providing for Superpriority Administrative Expense Status; (III) Granting Adequate Protection to Prepetition Secured Lenders; and (IV) Modifying Automatic Stay* [Docket No. 1324], entered on June 21, 2013.~~

(4) ~~(e)~~ "**Adequate Protection Claims**" means the Adequate Protection Priority Claims and the Supplemental Adequate Protection Priority Claims ~~to the First Lien Lenders and the Second Lien Lenders~~.

(5) ~~(f)~~ "**Adequate Protection Priority Claims**" means the superpriority administrative expense claims granted under Section 364(c)(1) of the Bankruptcy Code pursuant to the 2012 Final DIP Order.

(6) ~~(g)~~ "**Administrative Claim**" means any Administrative Expense Claim other than any AIG Claim.  For the avoidance of doubt, the Northwest Claim, the Central States Administrative Claim and City of New York Administrative Claim are all Administrative Claims.

(7) ~~(h)~~ "**Administrative Expense Claim**" means any Claim for costs and expenses of administration of these Chapter 11 Cases with priority under Section 507(a)(2) of the Bankruptcy Code, including, without limitation, costs and expenses allowed under Section 503(b) of the Bankruptcy Code, the actual and necessary costs and expenses of preserving the Estates of the Debtors, any Claim arising under Section 503(b)(9) of the Bankruptcy Code, any Claim relating to the right of reclamation to the extent afforded such priority under the Bankruptcy Code, any Professional Fee Claims, and any fees or charges assessed against the Estates of the Debtors under 28 U.S.C. § 1930.

(8) ~~(i)~~ "**Administrative Expense Claim Bar Date**" means the date fixed by order(s) of the Bankruptcy Court by which all Persons (other than governmental entities to the extent provided in Section 503(b)(1)(D) of the Bankruptcy Code) asserting an Administrative Expense Claim (other than a Professional Fee Claim, but including any Claim pursuant to Section 503(b) of the Bankruptcy Code) against the Debtors must have filed a Claim or be forever barred from doing so, which date shall be no earlier than five (5) Business Days prior to the first date scheduled for the hearing on Confirmation.

(9) ~~(j)~~ "**AIG Cash Collateral**"  means cash collateral (in the amount of approximately $6,381,880 as reflected in AIG's Summary of Closeout Quotes dated August 15, 2015 and as adjusted thereafter) held by the AIG Entities to secure payment and reimbursement obligations under the U.S. Insurance Program and Canada Insurance Program.  For the avoidance of doubt, the AIG Cash Collateral does not include any amounts owned or posted by Haul Insurance Limited.

(10) (k)"**AIG Claims**" means the Secured Claim asserted by the AIG Entities with respect to amounts allegedly due and to become due pursuant to the U.S. Insurance Program and Canada Insurance Program, the Administrative Expense Claim asserted by the AIG Entities in the amount of $1,234,724.00 pursuant to the AIG Motion and any and all other Claims held by the AIG Entities against the Debtors.

(11) (l)"**AIG Entities**" means National Union Fire Insurance Company of Pittsburgh, PA, AIG Insurance Company of Canada f/k/a Chartis Insurance Company of Canada, and other insurers affiliated with AIG Property Casualty, Inc. f/k/a Chartis Inc.

(12) (m)"**AIG Motion**" means the *Motion of National Union Fire Insurance Company of Pittsburgh, PA, AIG Insurance Company of Canada, and Other Insurers Affiliated with AIG Property Casualty, Inc. to Compel Enforcement of Order Authorizing Assumption of Chartis Insurance Programs, to Allow and Direct Payment of Administrative Expense, and to Grant Related Relief* [Docket No. 2190], filed on January 16, 2014.

(13) (n)"**AIG Settlement**" means the treatment of the AIG Claims as set forth in Section 3.3(c) of the Plan.

(14) (o)"**Allied Automotive**" means AAINC Corporation (f/k/a Allied Automotive Group, Inc.), a Georgia corporation, one of the above-captioned Debtors.

(15) (p)"**Allied Canada**" means ASCCO (Canada) Company (f/k/a Allied Systems (Canada) Company), an entity organized under the laws of Canada, one of the above-captioned Debtors.

(16) (q)"**Allied Freight**" means AFBLLC LLC (f/k/a Allied Freight Broker LLC), a Delaware limited liability company, one of the above-captioned Debtors.

(17) (r)"**Allied Holdings**" means ASHINC Corporation (f/k/a Allied Systems Holdings, Inc.), a Delaware corporation, one of the above-captioned Debtors.

(18) (s)"**Allied Litigation Trust**" means the trust established pursuant to the Litigation Trust Agreement.

(19) (t)"**Allied Systems**" means ASLTD L.P. (f/k/a Allied Systems, Ltd. (L.P.)), a Georgia limited partnership, one of the above-captioned Debtors.

(20) (u)"**Allowed**" means when used with respect to a Claim, all or any portion of a Claim that ~~either~~ (i) is not Disputed, (ii) has been allowed by a Final Order, ~~or~~ (iii) was timely filed, and for which no objection was timely filed, (iv) was listed in the Debtors' schedules as undisputed, and for which no objection was timely filed, or (v) is allowed pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, *provided*, *however*, that all Allowed Claims shall remain subject to all limitations set forth in the Bankruptcy Code, including, in particular, Sections 502 and 510, as applicable.

(21) (v)"**Amended Complaint**" means the *Official Committee of Unsecured Creditors' Amended Complaint for (I) Equitable Subordination, (II) Recharacterization, (III) Breach of Contract, (IV) Specific Performance, (V) Breaches of Fiduciary Duties, (VI) Aiding and Abetting Breaches of Fiduciary Duties, (VII) Avoidance and Recovery of Avoidable Transfers, and (VIII) Disallowance of Certain Claims* [Adv. Pro. Docket No. 76], filed on March 14, 2013 in the adversary proceeding captioned *The Official Committee of Unsecured Creditors of Allied Systems Holdings, Inc. v. Yucaipa American Alliance Fund I, L.P., et al.*, Adv. Pro. No. 13-50530 (CSS).  A copy of the Amended Complaint is attached to the Disclosure Statement as Exhibit DS-3.

(22) (w)"**Assumed Contract**" means any contract or agreement identified on Schedule 6.3 to the Plan Supplement.

(23)  (x)"**Axis**" means AXGINC Corporation (f/k/a Axis Group, Inc.), a Georgia corporation, one of the above-captioned Debtors.

(24)  (y)"**Axis Areta**" means AXALLC LLC (f/k/a Axis Areta, LLC), a Georgia limited liability company, one of the above-captioned Debtors.

(25)  (zz)"**Axis Canada**" means AXCCO Canada Company (f/k/a Axis Canada Company), an entity organized under the laws of Canada, one of the above-captioned Debtors.

(26)  (aa)"**Backstop Fee**" means a fee in the aggregate amount of $900,000.00 payable ~~in accordance with the Litigation Proceeds Waterfall~~ to the Backstop Parties in consideration for their agreement to backstop the commitments for the Litigation Funding Loans.

(27)  (bb)"**Backstop Parties**" means affiliates of Black Diamond Capital Management L.L.C.. and Spectrum Investment Partners, L.P. who have agreed to backstop the commitments for the full amount of the Litigation Funding Loans.

(28)  (cc)"**Bankruptcy Code**" means Sections 101 *et seq.*, of title 11 of the United States Code, as now in effect or hereafter amended and applicable to the Chapter 11 Cases.

(29)  (dd)"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware or such other court as may have jurisdiction over the Chapter 11 Cases or any aspect thereof.

(30)  (ee)"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as now in effect or hereafter amended and applicable to the Chapter 11 Cases.

(31)  (ff)"**Bar Date**" means (i) with respect to entities other than governmental units, August 2, 2013 at 12:00 a.m. (midnight) Eastern Daylight Time, (ii) with respect to governmental units, November 30, 2013 at 12:00 a.m. (midnight) Eastern Standard Time, and (iii) such other date(s) fixed by order(s) of the Bankruptcy Court, by which all Persons, including governmental units, asserting a Claim against the Debtors, must have filed a Proof of Claim or be forever barred from asserting such Claim.

(32)  (gg)"**Bar Date Order**" means that certain order of the Bankruptcy Court entered May 29, 2013 [Docket No. 1208], establishing the Bar Date for filing Proofs of Claim, with only those exceptions permitted thereby.

(33)  (hh) "**Beneficiaries**" means the Litigation Lenders and holders of Allowed First Lien Lender Claims, Allowed Second Lien Lender Claims and Allowed General Unsecured Claims.

(34)  (ii)"**Business Day**" means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York, New York.

(35)  (jj)"**Canada Insurance Program**" shall have the meaning ascribed to it in the AIG Motion.

(36)  (kk)"**Cash**" means legal tender of the United States or equivalents thereof.

(37)  (ll)"**Cash on Hand**" means the cash collateral of the First Lien Lenders held by the Debtors as of the Effective Date of the Plan.

(38)  (mm)"**Causes of Action**" means all claims as defined in section 101(5) of the Bankruptcy Code, causes of action, third-party claims, counterclaims and crossclaims (including, but not limited to, any and all alter ego or derivative claims and any Causes of Action described in the Disclosure Statement) of the Debtors

and/or their Estates that are pending on the Effective Date or may be instituted after the Effective Date against any Person.

(39) (nn)**"Central States"** means Central States Southeast and Southwest Areas Health and Welfare Fund and Central States Southeast and Southwest Pension Fund.

(40) (oo)**"Central States Administrative Claim"** means the Administrative Expense Claim and Priority Claim portions of the Claims asserted by Central States pursuant to Proofs of Claim numbers 540, 542, 543, 545, 547-552, and 557-565 (but not any General Unsecured Claim) and Allowed, by agreement, in the aggregate amount of $270,000.00 pursuant to the Central States Settlement.

(41) (pp)**"Central States Settlement"** means the agreement between the Plan Proponents and Central States to reduce and allow the Central States Administrative Claim in the aggregate amount of $270,000.00.

(42) (qq)**"Chapter 11 Cases"** means the above-captioned, jointly-administered chapter 11 cases of the Debtors pending in the Bankruptcy Court under Case No. 12-11564 (CSS).

(43) (rr)**"CIT"** means the CIT Group/Business Credit, Inc.

(44) (ss)**"City of New York Administrative Claim"** means the Disputed Administrative Expense Claim asserted by The City of New York in the approximate amount of $555,000.00.

(45) (tt)**"Claim"** means a claim as such term is defined in Bankruptcy Code Section 101(5) against the Debtors, whether arising before or after the Petition Date and specifically including an Administrative Expense Claim.

(46) (uu)**"Claims Agent"** means Rust Consulting/Omni Bankruptcy.

(47) (vv)**"Claim Objection Deadline"** means the last day for filing objections to Claims in the Bankruptcy Court, which shall be the latest of (i) sixty (60) days after the Effective Date, (ii) sixty (60) days after the applicable Proof of Claim or Request for Payment is filed (except as otherwise provided in Section 10.1 of the Plan), and (iii) such other later date as is established by order of the Bankruptcy Court upon motion of the Plan Administrator. The Plan Administrator may, in its discretion, move the Bankruptcy Court to enter an order extending the Claim Objection Deadline at any time prior to the expiration of the Claim Objection Deadline.

(48) (ww)**"Claims Register"** means the official claims registers in the Debtors' Chapter 11 Cases maintained by the Claims Agent on behalf of the Clerk of the Bankruptcy Court.

(49) (xx)**"Class"** means a category of holders of Claims or Interests, as described in Article II of the Plan.

(50) (yy)**"Commercial Carriers"** means Commercial Carriers, Inc., a Michigan corporation, one of the above-captioned Debtors.

(51) (zzz)**"Committee"** means the official committee of unsecured creditors formed by the U.S. Trustee to serve in the Chapter 11 Cases.

(52) (aaa)**"Common Stock"** means, collectively, any common equity in Allied Holdings outstanding prior to the Effective Date, including, without limitation, any stock option or other right to purchase the common stock of Allied Holdings, together with any warrant, conversion right, restricted stock unit, right of first refusal, subscription, commitment, agreement, or other right to acquire or receive any such common stock in Allied Holdings that have been fully exercised prior to the Effective Date.

(53) (bbb)**"Common Stockholders"** means the holders of the Common Stock.

(54)  (ccc)"**Confirmation**" means confirmation of the Plan by the Bankruptcy Court pursuant to Bankruptcy Code Section 1129.

(55)  (ddd)"**Confirmation Date**" means the date of entry by the Clerk of the Bankruptcy Court of the Confirmation Order.

(56)  (eee)"**Confirmation Hearing**" means the hearing to consider Confirmation of the Plan under Bankruptcy Code Section 1128.

(57)  (fff)"**Confirmation Order**" means the order entered by the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code Section 1129.

(58)  (ggg)"**Cordin**" means CTLLC LLC (f/k/a Cordin Transport LLC), a Delaware limited liability company, one of the above-captioned Debtors.

(59)  (hhh)"**Cure**" means, in connection with the assumption of an executory contract or unexpired lease, pursuant to and only to the extent required by Bankruptcy Code Section 365(b), (i) the distribution within a reasonable period of time following Effective Date of Cash or such other property (A) as required under the terms of the applicable executory contract or lease, (B) other than as required under the terms of the applicable executory contract or lease, as may be agreed upon by the counterparties and the Debtors, or (C) as may be ordered by the Bankruptcy Court or determined in such manner as the Bankruptcy Court may specify; and/or (ii) the taking of such other actions (A) as required under the terms of the applicable executory contract or lease, (B) other than as required under the terms of the applicable executory contract or lease, as may be agreed upon by the counterparties and the Debtors, or (C) as may be ordered by the Bankruptcy Court or determined in such manner as the Bankruptcy Court may specify.

(60)  (iii)"**CT Services**" means CTSINC Corporation (f/k/a CT Services, Inc.), a Michigan corporation, one of the above-captioned Debtors.

(61)  (jjj)"**Debtors**" means Allied Holdings, Allied Automotive, Allied Freight, Allied Canada, Allied Systems, Axis Areta, Axis Canada, Axis, Commercial Carriers, CT Services, Cordin, F.J., GACS, Logistic Systems, Logistic Technology, QAT, RMX, Transport Support and Terminal Services, including in their capacities as debtors and debtors in possession pursuant to Bankruptcy Code Sections 1107 and 1108.

(62)  (kkk)"**Disclosure Statement**" means the written disclosure statement that relates to the Plan, as amended, supplemented, or otherwise modified from time to time, and that is prepared, approved and distributed in accordance with Bankruptcy Code Section 1125 and Bankruptcy Rule 3018.

(63)  (lll)"**Disputed**" means any Claim or portion thereof which (i) was scheduled as "disputed" in the Schedules or (ii) is subject to an objection filed (or similar challenge to a Claim included in any timely filed adversary proceeding) prior to the Claim Objection Deadline that has not been resolved by settlement or Final Order.

(64)  (mmm)"**Disputed Claims Reserve**" means the reserve fund created pursuant to Section 7.1 of the Plan.

(65)  (nnn)"**Disputed First Lien Obligations**" means the First Lien Obligations allegedly owned by Yucaipa that are the subject of certain of the causes of action set forth in the Estate Claims and the Lender Direct Claims.

(66)  (ooo)"**Disputed First Lien Obligations Escrow**" means the proceeds of the JCT Sale allocable to the Disputed First Lien Obligations that have been deposited into escrow in accordance with the JCT Sale Order and pursuant to the terms of that certain Escrow Agreement, dated as of the 27th day of December, 2013, by and among (a) Allied Holdings (on behalf of itself and each of the other Debtors); (b) the First Lien

Agents; (c) Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P.; and (d) Wilmington Trust, National Association, as Escrow Agent.

(67) (ppp)**"Distribution Date"** means, subject to the provisions of Section 7.1 of the Plan, unless a later date is established by order of the Bankruptcy Court upon motion of the Debtors, the Plan Administrator, or any other party, the later of (a) the Effective Date or as soon as practicable thereafter, (b) the date such Claim becomes an Allowed Claim or as soon as practicable thereafter, or (c) as soon as practicable following a determination by the Plan Administrator that that there is sufficient Cash to make a distribution to the holder of such Claim pursuant to the terms of this Plan, *provided however,* that the Plan Administrator will commence distributions under the Plan to the holders of Allowed First Lien Lender Claims and Allowed General Unsecured Claims no later than the date that is 60 days after the Effective Date of the Plan.

(68) (qqq)**"Distribution Record Date"** means the record date for determining entitlement to receive distributions under the Plan on account of Allowed Claims, which date shall be the Business Day immediately preceding the Effective Date, at 5:00 p.m. prevailing Eastern time on such Business Day.

(69) (rrr)**"Effective Date"** means the Business Day upon which all conditions to the consummation of the Plan as set forth in Section 8.2 of the Plan have been satisfied or waived as provided in Section 8.3 of the Plan, and is the date on which the Plan becomes effective.

(70) (sss)**"Estates"** means the estates of the Debtors in the Chapter 11 Cases, created pursuant to Bankruptcy Code Section 541.

(71) (ttt)**"Estate Claims"** means all claims of the Debtors' Estates asserted in the Amended Complaint and any additional claims of the Debtors' Estates arising out of, or related to, the facts and circumstances described in the Amended Complaint, including defendants not named in the Amended Complaint.

(72) (uuu)**"Filed Claim"** means a Claim evidenced by a Proof of Claim or Request for Payment, as applicable.

(73) (vvv)**"Final Order"** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Cases, or the docket of any such other court, the operation or effect of which has not been stayed, reversed, or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal, petition for certiorari, or seek review or rehearing or leave to appeal has expired and as to which no appeal, petition for certiorari or petition for review or rehearing was filed or, if filed, remains pending or as to which any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing by all Persons possessing such right, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or from which reargument or rehearing was sought or certiorari has been denied, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a Final Order.

(74) (www)**"First Lien Agents"** means Black Diamond Commercial Finance, L.L.C., a Delaware limited liability company, and Spectrum Commercial Finance LLC, a Delaware limited partnership, and their respective successors and assigns.

(75) (xxx)**"First Lien Credit Agreement"** means that certain *Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement*, dated as of March 30, 2007 (as amended by that certain *Limited Waiver and* Amendment *No. 1 to Credit Agreement and Pledge and*

*Security Agreement*, dated as of May 29, 2007, that certain *Amendment No. 2 to Credit Agreement*, dated as of June 12, 2007, and that certain *Amendment No. 3 to Credit Agreement*, dated as of April 17, 2009), made by Allied Systems and Allied Holdings, as borrowers, the other Debtors, as guarantors, the lenders party thereto from time to time, Goldman Sachs Credit Partners L.P., as lead arranger and as syndication agent, and CIT, as administrative agent and as collateral agent.

(76) ~~(yyy)~~**"First Lien Credit Agreement Claims"** means the Secured Claims held by each First Lien Lender pursuant to the First Lien Credit Agreement.

(77) ~~(zzzz)~~**"First Lien Lender Cash Distribution"** means the $2.6 million in Cash to be provided by the Reorganized Debtors for distribution on account of the First Lien Lender Claims pursuant to Section 3.3(a) of the Plan.

(78) ~~(aaaa)~~**"First Lien Lender Claims"** means the First Lien Credit Agreement Claims and the Adequate Protection Claims ~~held by the First Lien Lenders~~.

(79) ~~(bbbb)~~**"First Lien Lender"** means each holder of an Allowed First Lien Lender Claim.

(80) ~~(cccc)~~**"First Lien Obligations"** means obligations arising under the First Lien Credit Agreement.

(81) ~~(dddd)~~**"First Lien Requisite Lender"** means BDCM Opportunity Fund II, LP, Black Diamond CLO 2005-1 Ltd., and Spectrum Investment Partners, L.P., acting jointly, together with their respective successors and assigns.

(82) ~~(eeee)~~**"First Lien Reserves"** means the approximately $13 million of Cash held in reserves by the First Lien Agents for the benefit of the First Lien Lenders.

(83) ~~(ffff)~~**"F.J."** means F.J. Boutell Driveaway LLC, a Delaware limited liability company, one of the above-captioned Debtors.

(84) ~~(gggg)~~**"GACS"** means GACS Incorporated, a Georgia corporation, one of the above-captioned Debtors.

(85) ~~(hhhh)~~**"Georgia Bankruptcy Case"** means the bankruptcy case commenced by the Debtors on July 31, 2005 in the United States Bankruptcy Court for the Northern District of Georgia, captioned *In re Allied Holdings, Inc. and Transport Support LLC*, Case No. 05-12515.

(86) ~~(iiii)~~**"General Unsecured Claim"** shall mean any Claim that is not an Administrative Claim, an AIG Claim, a Priority Tax Claim, a Priority Claim, a First Lien Lender Claim, or a Second Lien Lender Claim.

(87) ~~(jjjj)~~**"GUC Cash Distribution"** means the $3 million in Cash from the Cash on Hand and/or the Winddown Reserve for distribution on account of the General Unsecured Claims pursuant to Section 3.3(c) of the Plan.

(88) ~~(kkkk)~~**"Haul Insurance Limited"** means Haul Insurance Limited, a direct wholly-owned subsidiary of Allied Holdings, a Cayman Islands company.

(89) ~~(llll)~~**"Impaired"** means, with respect to any Claim or Interest, that such Claim or Interest is impaired within the meaning of Bankruptcy Code Section 1124.

(90) ~~(mmmm)~~**"Intercreditor Agreement"** means that certain *Intercreditor Agreement*, dated May 15, 2007, made by and among the First Lien Collateral Agent and the Second Lien Collateral Agent (each as defined therein).

(91) (nnnn)"**Interests**" means collectively the Parent Equity Interests and the Subsidiary Equity Interests.

(92) (oooo)"**Jack Cooper**" means Jack Cooper Holdings Corp. and certain of its affiliates that acquired assets of the Debtors pursuant to the JCT Sale.

(93) (pppp)"**JCT Sale**" means the sale of certain of the Debtors' assets to Jack Cooper that was approved by the Bankruptcy Court pursuant to the JCT Sale Order and consummated on December 27, 2013.

(94) (qqqq)"**JCT Sale Order**" means the *Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of Assets of the Debtors Outside the Ordinary Course of Business, (B) Authorizing the Sale of Assets Free and Clear of all Liens, Claims, Encumbrances and Interests, (C) Authorizing the Assumption and Sale and Assignment of Certain Executory Contracts and Unexpired Leases, and (D) Granting Related Relief* [Docket No. 1837], entered on September 17, 2013.

(95) (rrrr)"**Lender Direct Claims**" means the claims and causes of action set forth in the Lender Direct Complaint.

(96) (ssss)"**Lender Direct Complaint**" means that certain Complaint captioned *BDCM Opportunity Fund II, L.P., et al. v. Yucaipa American Alliance Fund I, L.P., et al., Adv. Proc. No. 14-50971 (CSS)*.  A copy of the Lender Direct Complaint is attached to the Disclosure Statement as Exhibit DS-4.

(97) (tttt)"**Lien**" means a lien as such term is defined in Bankruptcy Code Section 101(37).

(98) (uuuu)"**Litigation Claims**" means the Estate Claims and the Lender Direct Claims.

(99) (vvvv)"**Litigation Funding Loans**" means one or more commitments aggregating $15 million issued by the Litigation Lenders to fund the prosecution of the Litigation Claims.

(100)(wwww)"**Litigation Lender**" means each First Lien Lender (other than Yucaipa) who elects to participate in the Litigation Funding Loan commitments.

(101)(xxxx)"**Litigation Oversight Committee**" means the committee formed pursuant to Section 5.12 of the Plan to, among other things, select the Litigation Trustee, oversee the Allied Litigation Trust, the work of the Litigation Trustee and the prosecution of the Litigation Claims.

(102)(yyyy)"**Litigation Proceeds Waterfall**" means the manner in which the proceeds of any recovery on account of the Litigation Claims are to be distributed as set forth in Section 5.14 of the Plan.

(103)(zzzzz)"**Litigation Trust Agreement**" means that certain agreement made by an among the Debtors, as depositor of the Estate Claims, the First Lien Agents, as depositor of the Lender Direct Claims, the Committee and the Litigation Trustee, establishing and delineating the terms and conditions of the Allied Litigation Trust, substantially in the form to be filed as part of the Plan Supplement.

(104)(aaaaa)"**Litigation Trust Assets**" means the Litigation Claims.

(105)(bbbbb)"**Litigation Trust Expenses**" means the fees and expenses of the Litigation Trustee, including, without limitation, professional fees and expenses incurred in connection with the prosecution of the Litigation Claims.

(106)(ccccc)"**Litigation Trustee**" shall mean that Person selected by the Litigation Oversight Committee to act as the trustee of the Allied Litigation Trust or any of his, her or its successors.

(107)(ddddd)"**Logistic Systems**" means Logistics Systems, LLC, a Georgia limited liability company, one of the above-captioned Debtors.

(108)(eeeee)"**Logistic Technology**" means Logistic Technology, LLC, a Georgia limited liability company, one of the above-captioned Debtors.

(109)(fffff)"**New Boards**" means the initial boards of directors or managers, as applicable, of the Reorganized Debtors.

(110)(ggggg)"**New Common Stock**" means the new common stock of Reorganized Allied Holdings to be authorized and/or issued to the New Common Stockholders pursuant to Section 5.5 of the Plan, with the rights of the holder thereof to be as provided for in the New Debtor Governing Documents.

(111)(hhhhh)"**New Common Stockholder**" means each First Lien Lender who is entitled to and elects, in lieu of receiving its Pro Rata share of the First Lien Lender Cash Distribution, to receive its Pro Rata share of the New Common Stock.

(112)(iiiii)"**New Debtor Governing Documents**" means such certificates or articles of incorporation, bylaws, or such other applicable formation documents of each of the Reorganized Debtors, the forms of which will be included in the Plan Supplement.

(113)(jjjjj)"**Northwest**" means Northwest Administrators, Inc.

(114)(kkkkk)"**Northwest Claim**" means the Administrative Expense Claim and Priority Claim (but not any General Unsecured Claim) asserted in the amount of $93,970.27 by Northwest pursuant to the Northwest Request and Allowed, by agreement, in the amount of $40,000.00 pursuant to the Northwest Settlement.

(115)(lllll)"**Northwest Request**" means the *Application of Northwest Administrators Inc. for Allowance of Administrative Expense Claim* [Docket No. 2292], filed by Northwest on March 3, 2014.

(116)(mmmmm)"**Northwest Settlement**" means the agreement between the Plan Proponents and Northwest to reduce and allow the Northwest Claim in the amount of $40,000.00.

(117)(nnnnn)"**Old Securities**" means the Common Stock and any promissory notes held by any creditor.

(118)(ooooo)"**Parent Equity Interests**" means the legal, equitable, contractual, or other rights of any Person (i) with respect to the Common Stock, or (ii) to acquire or receive any Common Stock.

(119)(ppppp)"**Person**" means any person, individual, firm, partnership, corporation, trust, association, company, limited liability company, joint stock company, joint venture, governmental unit, or other entity or enterprise.

(120)(qqqqq)"**Petition**" means each petition for relief commencing the Chapter 11 Cases.

(121)(rrrrr)"**Petition Date**" means (i) with respect to Allied Holdings and Allied Systems, May 17, 2012, the date that involuntary petitions were filed against Allied Holdings and Allied Systems, and (ii) with respect to the remaining Debtors, June 10, 2012, the date such Debtors filed voluntary petitions in the Bankruptcy Court.

(122)(sssss)"**Plan**" means this plan of reorganization under Chapter 11 of the Bankruptcy Code and all implementing documents contained in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

(123)(ttttt)"**Plan Administrator**" means the Person designated as the Litigation Trustee by the Litigation Oversight Committee in accordance with the Litigation Trust Agreement.

(124)(uuuuu)"**Plan Proponents**" means the Debtors, the Committee and the First Lien Agents.

(125)(vvvvv)"**Plan Supplement**" means the supplement to the Plan, which may be filed in parts pursuant to Section 5.17 of the Plan, containing, without limitation, (i) the identity of the members of the Litigation Oversight Committee; (ii) the Litigation Trust Agreement; (iii) the identity of the members of the New Boards; (iv) the New Debtor Governing Documents; and (v) the proposed Assumed Contracts, if any.

(126)(wwwww)"**Priority Claim**" means a Claim against the Debtors entitled to priority pursuant to Bankruptcy Code Section 507(a), other than a Priority Tax Claim or an Administrative Claim.

(127)(xxxxx)"**Priority Tax Claim**" means a Claim that is entitled to priority pursuant to Bankruptcy Code Section 507(a)(8).

(128)(yyyyy)"**Professional**" means any professional retained in the Chapter 11 Cases by order of the Bankruptcy Court, whether by the Debtors or the Committee, excluding any of the Debtors' ordinary course professionals.

(129)(zzzzzz)"**Professional Fee Claim**" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services rendered from and after the Petition Date and prior to and including the Effective Date, subject to any limitations imposed by order of the Bankruptcy Court.

(130)(aaaaaa)"**Proof of Claim**" means a Proof of Claim filed in accordance with the Bar Date Order.

(131)(bbbbbb)"**Pro Rata**" means, at any time, as applicable, the proportion that (i) the amount of a Claim in a particular Class or Classes (or portions thereof, as applicable) bears to the aggregate amount of all Claims (including Disputed Claims), as applicable, in such Class or Classes, (ii) the amount of an Allowed Claim in a particular Class or Classes (or portions thereof, as applicable) bears to the aggregate amount of all Allowed Claims in such Class or Classes, (iii) the amount of an Allowed Claim in a particular Class or Classes (or portions thereof, as applicable) bears to the aggregate amount of all Claims (including Disputed Claims), as applicable, in such Class or Classes, or (iv) the amount of an Allowed Claim in a particular Class or Classes making an election bears to the aggregate amount of all Allowed Claims in such Class or Classes also making such election, unless the Plan provides otherwise.

(132)(cccccc)"**QAT**" means QAT, Inc., a Florida corporation, one of the above-captioned Debtors.

(133)(dddddd)"**Rejection Damages Claim**" means a Claim arising from the Debtors' rejection of a contract or lease, which Claim shall be limited in amount by any applicable provision of the Bankruptcy Code, including, without limitation, Bankruptcy Code Section 502, subsection 502(b)(6) thereof with respect a Claim of a lessor for damages resulting from the rejection of a lease of real property, subsection 502(b)(7) thereof with respect to a Claim of an employee for damages resulting from the rejection of an employment contract, or any other subsection thereof.

(134)(eeeeee)"**Released Parties**" shall have the meaning set forth in Section 10.5(a10.6(a) of the Plan.

(135)(ffffff)"**Reorganized Allied Holdings**" means reorganized Allied Holdings or its successor on or after the Effective Date

(136)(gggggg)"**Reorganized Allied Holdings Shareholders Agreement**" means the shareholders agreement applicable to the equity interests of Reorganized Allied Holdings to be issued to those First Lien Lenders who have elected to receive such interests in lieu of their Pro Rata share of the First Lien Lender Cash Distribution in accordance with Section 3.3(a) of the Plan, which shareholders' agreement shall be in

form and substance acceptable to each of BDCM Opportunity Fund II, LP, Black Diamond CLO 2005-1 Ltd., and Spectrum Investment Partners, L.P.

(137)(hhhhhh)**"Reorganized Debtor"** means each reorganized Debtor or its successor on or after the Effective Date.

(138)(iiiiii)**"Reorganized Debtors' Assets"** means all assets of the Debtors or the Estates, other than the Estate Claims. Without limitation, the Reorganized Debtors' Assets shall include (a) the Debtors' interest in all Cash on Hand, (b) the Debtors' interest in all proceeds of the Sale, (c) any claim, right or interest of the Debtors in any deposit, prepayment, refund, rebate, abatement or other recovery for Taxes, including existing net operating losses, (d) certain real property held by the Debtors, (e) the right to recover excess cash collateral pledged to secure obligations under certain (i) self-insured workers compensation programs and (ii) bonds issued to governmental agencies and freight brokers to guaranty the Debtors' transportation-related obligations, (f) the Subsidiary Equity Interests, (g) all proceeds of any of the foregoing and all proceeds of any of the foregoing received by any person or entity on or after the Effective Date, (h) all of the Debtors' books and records to the extent the same are not purchased assets pursuant to the Sale, and (i) the attorney-client privilege related or incidental to the assets identified in the foregoing (a) - (h) above.

(139)(jjjjjj)**"Replacement DIP Order"** means the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503(b) and 507(1), Fed. R. Bankr. P. 2002, 4001 and 9014 and Del. Bankr. L.R. 4001-2: (I) Authorizing Debtors to (A) Obtain Postpetition Secured DIP Financing and (B) Use Cash Collateral; (II) Granting Superpriority Liens and Providing for Superpriority Administrative Expense Status; (III) Granting Adequate Protection to Prepetition Secured Lenders; and (IV) Modifying Automatic Stay* [Docket No. 1324], entered on June 21, 2013.

(140)(kkkkkk)**"Request for Payment"** means a request for payment of an Administrative Claim filed with the Bankruptcy Court in connection with the Chapter 11 Cases.

(141)(llllll)**"Retiree Benefit Plans"** means that certain Allied Retiree Benefit Plan, dated as of September 23, 2004 and any retiree death benefit plans or arrangements.

(142)(mmmmmm)**"Retiree Committee"** means the committee of retirees of the Debtors, appointed by the U.S. Trustee on January 8, 2014, pursuant to order of the Bankruptcy Court entered on December 23, 2013.

(143)(nnnnnn)**"Retiree Obligations"** means ~~Allied Holdings'~~ the Debtors' obligations under the Retiree Benefit Plans.

(144)(oooooo)**"RMX"** means RMX LLC, a Delaware limited liability company, one of the above-captioned Debtors.

(145)(pppppp)**"Sale"** means, collectively, the JCT Sale and the SBDRE Sale.

(146)(qqqqqq)**"SBDRE Sale"** means the sale of certain of the Debtors' assets to (a) SBDRE LLC and its affiliates, entities formed by the First Lien Agents, and (b) ATC Transportation LLC, as designee of SBDRE LLC which was approved by the Bankruptcy Court on September 30, 2013 and consummated in part on March 20, 2014 and in part on June 12, 2014.

(147)(rrrrrr)**"SBDRE Sale Order"** means the *Order Under 11 U.S.C. §§ 105(a), 363 and 365 and Fed. R. Bankr. P. 2002, 6004 and 6006 Authorizing and Approving: (I) Sale of Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests; and (II) Assumption and Assignment of Unexpired Lease to an Acquisition Entity Formed by Prepetition First Lien Agents* [Docket No. 1868], entered on September 30, 2013.

(148)(ssssss)"**Schedules**" means the Statements of Financial Affairs and Schedules of Assets and Liabilities filed by the Debtors with the Bankruptcy Court in the Chapter 11 Cases under Bankruptcy Rule 1007, as such Statements of Financial Affairs and Schedules of Assets and Liabilities have been or may be amended or supplemented from time to time.

(149)(tttttt)"**Second Lien Credit Agreement**" means that certain *Second Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement*, dated as of May 15, 2007 (as amended by that certain *Limited Waiver and Amendment No. 1 to Credit Agreement and Pledge and Security Agreement*, dated as of May 29, 2007, as further amended by that certain *Amendment No. 2 to Credit Agreement*, dated as of June 12, 2007, and that certain *Amendment No. 3 to Credit Agreement*, dated as of April 17, 2008), made by Allied Systems and Allied Holdings, as borrowers, the other Debtors, as guarantors, the lenders party thereto from time to time, Goldman Sachs Credit Partners L.P., as lead arranger and as syndication agent, and The Bank of New York Mellon, as administrative agent and as collateral agent.

(150)(uuuuuu)"**Second Lien Credit Agreement Claims**" means the Claims held by each Second Lien Lender pursuant to the Second Lien Credit Agreement.

(151)(vvvvvv)"**Second Lien Lender Claims**" means the Second Lien Credit Agreement Claims and the Adequate Protection Claims held by the Second Lien Lenders.

(152)(wwwwww)"**Second Lien Lender**" means each holder of an Allowed  Second Lien Lender Claim.

(153)(xxxxxx) "**Secured Claim**" means a Claim (i) that is secured by a Lien on property in which the Estates have an interest, which lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, or a Claim that is subject to a valid right of setoff of the creditor of setoff against amounts owed to the Debtors; (ii) to the extent of the value of the holder's interest in the Estates' interest in such property or to the extent of the amount subject to a valid right of setoff, as applicable; and (iii) the amount of which (A) is undisputed by the Debtors or (B) if disputed by the Debtors, such dispute is settled by written agreement between the Debtors or the Plan Administrator and the holder of such Claim or determined, resolved, or adjudicated by Final Order.

(154)(yyyyyy)"**Subsidiary Equity Interests**" means the equity interests in each of the Debtors other than Allied Holdings.

(155)(zzzzzzz)"**Supplemental Adequate Protection Priority Claims**" means the superpriority administrative expense claims granted under section 507(b) of the Bankruptcy Code pursuant to the Replacement DIP Order.

(156)(aaaaaaa)"**Taxes**" means (a) any taxes and assessments imposed by any Governmental Body, including net income, gross income, profits, gross receipts, license, employment, stamp, occupation, premium, alternative or add-on minimum, ad valorem, real property, personal property, transfer, real property transfer, value added, sales, use, environmental (including taxes under Code Section 59A), customs, duties, capital stock, franchise, excise, withholding, social security (or similar), unemployment, disability, payroll, fuel, excess profits, windfall profit, severance, estimated or other tax, including any interest, penalty or addition thereto, whether disputed or not, and any expenses incurred in connection with the determination, settlement or litigation of the Tax liability, (b) any obligations under any agreements or arrangements with respect to Taxes described in clause (a) above, and (c) any transferee liability in respect of Taxes described in clauses (a) and (b) above or payable by reason of assumption, transferee liability, operation of Law, Treasury Regulation Section 1.1502-6(a) (or any predecessor or successor thereof or any analogous or similar provision under Law) or otherwise.

(157)(bbbbbbb)"**Terminal Services**" means Terminal Services LLC, a Delaware limited liability company, one of the above-captioned Debtors.

(158)(ccccccc)"**Transport Support**" means Transport Support LLC, a Delaware limited liability company, one of the above-captioned Debtors.

(159)(ddddddd)"**Unfiled Claim**" means a Claim as to which no Proof of Claim or Request for Payment has been filed.

(160)(eeeeeee)"**Unimpaired**" means, with respect to any Claim, that such Claim is not impaired within the meaning of Bankruptcy Code Section 1124.

(161)(fffffff)"**U.S. Insurance Program**" shall have the meaning ascribed to it in the AIG Motion.

(162)(ggggggg)"**U.S. Trustee**" means the Office of the United States Trustee for the District of Delaware.

(163)(hhhhhhh)"**Winddown Reserve**" means the reserve established by the First Lien Agents upon the consummation of the JCT Sale for the purposes of winding down the Debtors' Estates, as adjusted from time to time.

(164)(iiiiiii)"**Yucaipa**" means Yucaipa American Alliance Find I, L.P., Yucaipa American Alliance (Parallel) Fund I, L.P., Yucaipa American Alliance Fund II, L.P., Yucaipa American Alliance (Parallel) Fund II, L.P., and their respective agents, officers, directors, managers, employees and affiliates.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

**2.1    Introduction**

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.  A Claim or Interest may be and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

**2.2    Unclassified Claims**

In accordance with Bankruptcy Code Section 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified.

**2.3    Unimpaired Class of Claims**

The following Class contains Claims that are not Impaired by the Plan, are deemed to accept the Plan, and are not entitled to vote on the Plan.

*Class 1:  Priority Claims*

**2.4    Impaired Voting Classes of Claims**

The following Classes contain Claims that are Impaired by the Plan and are entitled to vote on the Plan.

*Class 2:  First Lien Lender Claims*

*Class 3:  Second Lien Lender Claims*

*Class 4:  AIG Claims*

*Class 5:  General Unsecured Claims*

**2.5    Impaired Non-Voting Class of Interests**

The following Classes contains Claims and Interests that are Impaired by the Plan and are not entitled to vote on the Plan.

*Class 6:  Parent Equity Interests*

**2.6    Unimpaired Non-Voting Class of Interests**

The following Classes contains Claims and Interests that are Unimpaired by the Plan, are deemed to accept the Plan, and are not entitled to vote on the Plan.

*Class 7:  Subsidiary Equity Interests*

**ARTICLE III**

**TREATMENT OF CLAIMS AND INTERESTS**

**3.1    Unclassified Claims**

**(a)    Administrative Claims**

With respect to each Allowed Administrative Claim, except as otherwise provided for in Section 10.1 of the Plan, on the Effective Date, the holder of each such Allowed Administrative Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim, (A) Cash equal to the unpaid portion of such Allowed Administrative Claim or (B) such different treatment as to which such holder and the Debtors or the Plan Administrator, as applicable, shall have agreed upon in writing; *provided*, *however*, that Allowed Administrative Claims (other than Professional Fee Claims and Claims asserted under Section 503(b)(3) or (b)(4)) with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.  For the avoidance of doubt, (i) Central States shall receive the treatment provided in the Central States Settlement, and (ii) Northwest shall receive the treatment provided in the Northwest Settlement.

**(b)    Priority Tax Claims**

Each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, as shall have been determined by the Debtors or by the Plan Administrator, either (i) on the Effective Date, Cash equal to the due and unpaid portion of such Allowed Priority Tax Claim, (ii) treatment in a manner consistent with Bankruptcy Code Section 1129(a)(9)(C), or (iii) such different treatment as to which such holder and the Debtors or the Plan Administrator, as applicable, shall have agreed upon in writing.

**3.2    Unimpaired Class of Claims**

**(a)    Class 1:  Priority Claims**

On the applicable Distribution Date, each holder of an Allowed Priority Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Claim, either (i) Cash equal to the unpaid portion of such Allowed Priority Claim or (ii) such different treatment as to which such holder and the Debtors or the Plan Administrator, as applicable, shall have agreed upon in writing.

3.3    **Impaired Voting Classes of Claims**

(a)    **Class 2: First Lien Lender Claims**

On the applicable Distribution Date, each holder of an Allowed First Lien Lender Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed First Lien Lender Claim its Pro Rata share of: (i) the beneficial interests in the Allied Litigation Trust payable to holders of Allied First Lien Lender Claims in accordance with the Litigation Proceeds Waterfall, and (ii) the First Lien Lender Cash Distribution, *provided, however*, that each First Lien Lender may elect, in lieu of receipt of its Pro Rata share of the First Lien Lender Cash Distribution, to receive its Pro Rata share of the New Common Stock. Each of the First Lien Lenders comprising the First Lien Requisite Lender has elected to receive shares of New Common Stock in lieu of receiving is Pro Rata distribution of the ~~first~~ First Lien Lender Cash Distribution. In addition, on the Effective Date, the First Lien Agents shall distribute to the holders of Allowed First Lien Lender Claims the First Lien Reserves. For the avoidance of doubt, pursuant to the limitations set forth in the First Lien Credit Agreement, in no event shall Yucaipa be entitled to make the election contemplated in the proviso to clause (ii) of this Section 3.3(a) of the Plan.

Notwithstanding anything to the contrary set forth herein, any distributions that would otherwise be made on account of the Disputed First Lien Obligations by the Debtors or the First Lien Agents shall be made to the Disputed First Lien Obligations Escrow to be held, and ultimately distributed, in accordance with the terms thereof and the JCT Sale Order.

For the avoidance of doubt, the holders of First Lien Lender Claims shall be deemed to waive the right to participate in the GUC Cash Distribution on account of any unsecured portion of a First Lien Lender Claim.

(b)    **Class 3: Second Lien Lender Claims**

Each holder of an Allowed Second Lien Lender Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Second Lien Lender Claim its Pro Rata share of the beneficial interests of the Allied Litigation Trust payable to holders of Allowed Second Lien Lender Claims (calculated on a Pro Rata basis with holders of Allowed General Unsecured Claims) in accordance with the Litigation Proceeds Waterfall, *provided, however*, that any future distribution on account of such beneficial interests shall be turned over to the First Lien Agents for distribution to the First Lien Lenders to the extent required by Sections 4.1 and 4.2 of the Intercreditor Agreement until the First Lien Lenders have been indefeasibly paid in full in Cash.

For the avoidance of doubt, the holders of Second Lien Lender Claims shall be deemed to waive the right to participate in the GUC Cash Distribution on account of any unsecured portion of a Second Lien Lender Claim.

(c)    **Class 4: AIG Claims**

On the Effective Date, pursuant to the AIG Settlement (and subject to the satisfaction of the conditions to effectiveness) the AIG Entities shall receive in full satisfaction, settlement, release, and discharge of and in exchange for all Allowed AIG Claims, (i) the AIG Cash Collateral, and (ii) Cash in the amount of $~~750,000.00~~1,000,000.00. If the conditions to effectiveness of the AIG Settlement are not satisfied (or waived by AIG) the AIG Settlement will not become effective and the AIG Claims will be treated as Disputed.

(d)    **Class 5: General Unsecured Claims**

On the applicable Distribution Dates, each holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed General Unsecured Claim, a Pro Rata share of (a) the GUC Cash Distribution and (b) the beneficial interests of the

Allied Litigation Trust payable to holders of Allowed General Unsecured Claims (calculated on a Pro Rata basis with holders of Allowed Second Lien Lender Claims) in accordance with the Litigation Proceeds Waterfall.

**3.4    Impaired Non-Voting Class Interests**

    **(a)    Class 6: Parent Equity Interests**

        Holders of Parent Equity Interests shall not receive or retain any distribution under the Plan on account of such Interests, and the Common Stock shall be cancelled as set forth in Section 5.4 of the Plan.

**3.5    Unimpaired Non-Voting Class Interests**

    **(a)    Class 7: Subsidiary Equity Interests**

        Holders of Subsidiary Equity Interests shall retain such Subsidiary Equity Interests, subject to any corporate reorganization that may be undertaken by the Debtors or the Reorganized Debtors prior to, on or after the Effective Date.

**3.6    Reservation of Rights Regarding Claims and Interests**

        Except as otherwise explicitly provided in the Plan, nothing shall affect the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Claims or Interests, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment. Similarly, nothing herein shall prejudice or be deemed to prejudice creditors' rights of setoff or recoupment.

<h3 style="text-align:center">ARTICLE IV</h3>

<h3 style="text-align:center">ACCEPTANCE OR REJECTION OF THE PLAN</h3>

**4.1    Impaired Classes Entitled to Vote**

        Holders of Claims in the Impaired Voting Classes of Claims are each entitled to vote as a Class to accept or reject the Plan.  Accordingly, the votes of holders of Claims in Classes 2, 3, 4 and 5 shall be solicited with respect to the Plan.

**4.2    Acceptance by an Impaired Class**

        In accordance with Bankruptcy Code Section 1126(c), and except as provided in Bankruptcy Code Section 1126(e), the Impaired Classes of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

**4.3    Presumed Acceptances by Unimpaired Classes**

        Claims in Class 1 and Subsidiary Equity Interests in Class 7 are Unimpaired under the Plan.  Under Bankruptcy Code Section 1126(f), holders of such Unimpaired Claims and Interests are conclusively presumed to have accepted the Plan, and the votes of such Unimpaired Claim and Interest holders shall not be solicited.

**4.4    Presumed Rejection by Impaired Voting Class of Interests**

        Interests in Class 6 are Impaired under the Plan and not entitled to a distribution under the Plan.  Under Bankruptcy Code Section 1126(g), holders of such Impaired Claims and Interests are conclusively presumed to have rejected the Plan, and the votes of such Impaired Claim and Interest holders shall not be solicited.

# ARTICLE V

# MEANS FOR IMPLEMENTATION OF THE PLAN

**5.1    Funding of Distributions under the Plan**

(a)    **Source of Cash, including the First Lien Lender Cash Distribution and GUC Cash Distribution**

The Cash necessary to fund the First Lien Lender Cash Distribution shall be provided by the Reorganized Debtors.  The Cash necessary to fund the payment of Administrative Claims, Priority Claims, the Cash portion of the AIG Claims and the GUC Cash Distribution will be paid from Cash on Hand held by the Debtors or, if the Debtors do not have sufficient Cash on Hand, by the First Lien Agents from the Winddown Reserve.  The Plan Administrator will make all distributions of Cash, including the First Lien Lender Cash Distribution and the GUC Cash Distribution.

(b)    **First Lien Reserves**

As set forth above, on the Effective Date, the First Lien Agents shall distribute to each holder of an Allowed First Lien Lender Claim such holder's Pro Rata share of approximately $13 million of Cash from the First Lien Reserves as part of the treatment of the holders of Allowed First Lien Lender Claims under the Plan.  Such Cash is currently held by the First Lien Agents, and the First Lien Agents will make this distribution.  The Pro Rata portion of such amount allocable to the Disputed First Lien Obligations shall be made to the Disputed First Lien Obligations Escrow to be held, and ultimately distributed, in accordance with the terms thereof and the JCT Sale Order.

(c)    **Litigation Funding Loans**

Funding for the prosecution of the Litigation Claims shall be provided through the Litigation Funding Loans issued by the Litigation Lenders.  Each First Lien Lender (other than Yucaipa) is entitled to participate in the Litigation Funding Loans up to its Pro Rata share of the First Lien Obligations (calculated without giving effect to any First Lien Obligations allegedly owned by Yucaipa).  The Backstop Parties will backstop the commitments for the full amount of the Litigation Funding Loans.  In consideration for their agreement to backstop the commitments for the Litigation Funding Loans, the Backstop Parties shall receive the Backstop Fee payable in accordance with the Litigation Proceeds Waterfall.

**5.2    Continued Corporate Existence**

The Reorganized Debtors shall continue to exist as of and after the Effective Date as private legal entities, in accordance with the applicable laws of the State of Delaware, the State of Georgia, the State of Florida, the State of Michigan and the applicable jurisdictions in Canada and pursuant to the New Debtor Governing Documents.  Notwithstanding the foregoing, the Debtors or the Reorganized Debtors, as applicable, may engage in any corporate restructuring prior to, on or after the Effective Date, which may include the merger, liquidation or dissolution of one or more of the Debtors or the Reorganized Debtors.

**5.3    New Debtor Governing Documents**

The organizational documents of the Debtors shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code and shall include, among other things, pursuant to Bankruptcy Code Section 1123(a)(6), a provision prohibiting the issuance of non-voting equity securities, (but only to the extent required by Bankruptcy Code Section 1123(a)(6)).  The amended organizational documents of the Debtors shall constitute the New Debtor Governing Documents.  The New Debtor Governing Documents shall be in substantially the forms of such documents included in the Plan Supplement and shall be in full force and effect as of the Effective Date.

DOC ID – 22951909.1 22951909.9

**5.4    Cancellation of Interests**

On the Effective Date, all Old Securities, including all promissory notes, stock, instruments, warrants, certificates and other documents evidencing the Parent Equity Interests shall be deemed automatically cancelled and surrendered and shall be of no further force in accordance with Section 7.7 of the Plan, and the obligations of the Debtors thereunder or in any way related thereto, including any obligation of the Debtors to pay any franchise or similar type taxes on account of such Interests, shall be discharged.

**5.5    Authorization and Issuance of the New Common Stock**

(a)    On the Effective Date, Reorganized Allied Holdings shall issue shares of New Common Stock to the New Common Stockholders pursuant to Section 3.3(a).

(b)    The rights of the holders of the New Common Stock shall be as provided for in the New Debtor Governing Documents.

**5.6    Directors and Officers of Reorganized Debtors**

(a)    The initial directors of the New Board and officers of each of the Reorganized Debtors shall be selected by the parties to whom the New Common Stock will be distributed pursuant to the Plan in accordance with the New Debtor Governing Documents.  The identities of the initial directors of the New Board shall be disclosed prior to the Confirmation Hearing as part of the Plan Supplement in accordance with Section 1129(a)(5) of the Bankruptcy Code.

(b)    All officers and directors of the Debtors not listed in the Plan Supplement will be deemed to have resigned on the Effective Date.

**5.7    Corporate Action; Effectuating Documents**

(a)    On the Effective Date, the adoption and filing of the New Debtor Governing Documents and all actions contemplated by the Plan shall be authorized and approved in all respects pursuant to the Plan.  All matters provided for herein involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the stockholders or directors of the Debtors or the Reorganized Debtors, and shall be fully authorized pursuant to Section 303 of the Delaware General Corporation Law.

(b)    Any director, chief executive officer, president, chief financial officer, senior vice president, general counsel or other appropriate officer of the Reorganized Debtors shall be authorized to execute, deliver, file, or record the documents included in the Plan Supplement and such other contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Any director, secretary or assistant secretary of the Reorganized Debtors shall be authorized to certify or attest to any of the foregoing actions.  All of the foregoing is authorized without the need for any required approvals, authorizations, or consents except for express consents required under the Plan.

**5.8    Plan Administrator**

On the Effective Date, the Plan Administrator shall have all the rights and powers to implement the provisions of the Plan pertaining to the Plan Administrator, including, without limitation, the right to (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan; (2) make distributions as contemplated in the Plan (other than those distributions to be made by the First Lien Agents), (3) establish and administer any necessary reserves for Disputed Claims that may be required; and (4) object to Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any

manner approved by the Bankruptcy Court such Disputed Claims.  For the avoidance of doubt, the Plan Administrator shall have no obligation to object to or dispute (or expend funds to object or dispute) any Claim where, in the Plan Administrator's sole judgment, the cost of such objection or dispute is not warranted in light of the potential incremental benefit to the remaining holders of Claims.  The Litigation Trustee shall serve as the initial Plan Administrator.  The reasonable costs and expenses incurred by the Plan Administrator in performing the duties set forth in the Plan shall be paid by the Litigation Trust, subject to the approval of the Litigation Oversight Committee.

**5.9    Revesting of Reorganized Debtor Assets**

Except as otherwise provided herein, the Reorganized Debtors' Assets shall revest in the Reorganized Debtors on the Effective Date.  Thereafter, the Reorganized Debtors may operate its business and may use, acquire, and dispose of such property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, or Bankruptcy Court approval.  Except as specifically provided in the Plan or the Confirmation Order, as of the Effective Date, all property of the Reorganized Debtors shall be free and clear of all Claims and Interests, and all Liens with respect thereto.  For the avoidance of doubt, the Litigation Trust Assets shall not revest in the Reorganized Debtors.  Such assets shall vest in the Allied Litigation Trust pursuant to Section 5.11 of the Plan.

**5.10    The Litigation Trustee**

**(a)    Appointment of the Litigation Trustee**

The Litigation Trustee shall be selected by the Litigation Oversight Committee.  Pursuant to the Litigation Trust Agreement, the selection of the Litigation Trustee will be determined by a majority vote of the Litigation Oversight Committee and will require the written approval of the two members of the Litigation Oversight Committee selected by the First Lien Requisite Lender.  The identity of the Litigation Trustee shall be disclosed prior to the Confirmation Hearing as part of the Plan Supplement in accordance with Section 1129(a)(5) of the Bankruptcy Code.  The Litigation Trustee will be compensated by the Allied Litigation Trust.

**(b)    Powers of the Litigation Trustee**

The Litigation Trustee shall be a representative of the Debtors' Estates and shall, subject to the terms of the Litigation Trust Agreement, have the power to make all decisions with respect to the prosecution of the Litigation Claims; *provided, however,* that the following actions will require prior written approval of a majority of the members of the Litigation Oversight Committee and the two members of the Litigation Oversight Committee selected by the First Lien Requisite Lender: (a) any determination to draw funds under the commitments for any Litigation Funding Loans issued by the Litigation Lenders; (b) the incurrence by the Litigation Trust of additional indebtedness to fund the prosecution of the Litigation Claims in excess of the Litigation Funding Loans; (c) the retention of counsel and other professionals to assist in prosecution of the Litigation Claims; (d) settlement of all or any portion of the Litigation Claims, and (e) any arrangement for compensation of the Litigation Trustee or the Plan Administrator.

The Litigation Trustee shall consult with, and obtain approval of, the Litigation Oversight Committee with respect to all material decisions regarding the prosecution of the Litigation Claims, including (without limitation) the litigation strategy with respect thereto, and the filing and prosecution of any dispositive or other substantive motions or pleadings.

**(c)    The Litigation Trustee as the Representative of the Debtors' Estates**

On the Effective Date, the Litigation Trustee, and not the Reorganized Debtors shall be deemed the Estates' representative in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Litigation Trust Agreement, including, without limitation, the right to (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of

the Litigation Trust Agreement; (2) administer the Litigation Trust Assets, including prosecuting, settling, abandoning or compromising any actions that are or relate to the Litigation Trust Assets; (3) employ and compensate professionals and other agents consistent with Section 5.10(b) of the Plan, *provided, however*, that any such compensation shall be paid by the Allied Litigation Trust to the extent not inconsistent with the status of the Allied Litigation Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes; and (4) control attorney/client privilege relating to or arising from the Litigation Trust Assets.

**5.11     The Allied Litigation Trust**

(a)     On the Effective Date, the Allied Litigation Trust shall be established pursuant to the Litigation Trust Agreement for the purpose of prosecuting the Litigation Claims.  The Allied Litigation Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation Article 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

(b)     On the Effective Date, the ~~Litigation Trust Assets~~ Estate Claims shall vest automatically in the Allied Litigation Trust.  The Plan shall be considered a motion pursuant to Sections 105, 363 and 365 of the Bankruptcy Code for such relief.  The transfer of the ~~Litigation Trust Assets~~ Estate Claims to the Allied Litigation Trust shall be made for the benefit and on behalf of the Beneficiaries.  The assets comprising the Litigation Trust Assets will be treated for tax purposes as being transferred by the Debtors and the First Lien Agents to the Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Beneficiaries to the Allied Litigation Trust in exchange for the beneficial interests in the Allied Litigation Trust.  The Beneficiaries shall be treated as the grantors and owners of the Allied Litigation Trust.  Upon the transfer of the Litigation Trust Assets, the Allied Litigation Trust shall succeed to all of the Debtors' and the First Lien Agents' rights, title and interest in the Litigation Trust Assets, and the Debtors and the First Lien Agents will have no further interest in or with respect to the Litigation Trust Assets.

(c)     Except as otherwise ordered by the Bankruptcy Court, the Litigation Trust Expenses on or after the Effective Date shall be paid in accordance with the Litigation Trust Agreement without further order of the Bankruptcy Court.

(d)     The Allied Litigation Trust shall file annual reports regarding the liquidation or other administration of property comprising the Litigation Trust Assets, the distributions made by it and other matters required to be included in such report in accordance with the Litigation Trust Agreement.  In addition, the Allied Litigation Trust will file tax returns as a grantor trust pursuant to United States Treasury Regulation Article 1.671-4(a).

**5.12     The Litigation Oversight Committee**

(a)     The Litigation Oversight Committee shall be comprised of three members: two members selected by the First Lien Requisite Lender and one member selected by the Committee.  Each member of the Litigation Oversight Committee shall be reasonably satisfactory to each of the Backstop Parties.  The identity of the members of the Litigation Oversight Committee shall be disclosed prior to the Confirmation Hearing as part of the Plan Supplement in accordance with Section 1129(a)(5) of the Bankruptcy Code.

(b)     The Litigation Oversight Committee shall oversee the Allied Litigation Trust and the Litigation Trustee.

(c)     The Litigation Oversight Committee shall be authorized to retain and employ Professionals to assist it with and advise it with respect to its duties under the Plan.  All fees and expenses of such Professionals shall be satisfied by the Allied Litigation Trust.

(d)    The duties and powers of the Litigation Oversight Committee shall terminate upon the final resolution of the Litigation Claims and the final distribution of all proceeds in accordance with the terms of the Litigation Trust Agreement.

## 5.13    Joint Prosecution of the Litigation Claims

The Litigation Claims shall be jointly prosecuted in the Bankruptcy Court (or such other court of competent jurisdiction) in a single action to the maximum extent permitted by law, or otherwise in actions coordinate for the purposes of trial and discovery.

## 5.14    Litigation Proceeds Waterfall

The proceeds of the Litigation Claims shall be distributed as follows: (a) *first*, to the Backstop Parties in satisfaction of the Backstop Fee; (b) *second*, to repay all Litigation Funding Loans then outstanding; (c) *third*, to the Litigation Lenders in the amount of $4.5 million; (d) *fourth*, a distribution of up to the next $3 million, to be allocated on a dollar for dollar basis (i) 50% on a Pro Rata basis to the holders of Allowed First Lien Lender Claims and (ii) 50% on a Pro Rata basis to the holders of Allowed General Unsecured Claims and Allowed Second Lien Lender Claims; and (e) *thereafter*, any remaining balance shall be split on a dollar for dollar basis as follows (i) 20% on a Pro Rata basis to the holders of Allowed First Lien Lender Claims; (ii) 5% on a Pro Rata basis to the holders of Allowed General Unsecured Claims and Allowed Second Lien Lender Claims; and (iii) 75% to the Litigation Funding Lenders; *provided, however,* that any distributions made pursuant to subsection (d) of this Section 5.14 of the Plan shall be credited against any distributions that would otherwise be made under clause (e) of this Section 5.14 of the Plan.

## 5.15    Certain Settlements

Confirmation of the Plan shall constitute approval of each of the AIG Settlement, the Central States Settlement and the Northwest Settlement pursuant to Bankruptcy Rule 9019.  Confirmation of the Plan shall also constitute a settlement of any and all disputes among the First Lien Agents (on behalf of the First Lien Lenders), the Debtors and the Committee, including (without limitation) with respect to (a) the entitlement of the First Lien Lenders to adequate protection pursuant to the 2012 Final DIP Order and the ~~2013  Final~~ Replacement DIP Order, and (b) the obligation of the First Lien Lenders to fund the Wind Down Budget (as defined in the JCT Sale Order).

In addition to the occurrence of the Effective Date, the effectiveness of the AIG Settlement shall be conditioned upon satisfaction of the following conditions, which may be waived by AIG: (a) the Debtors shall have settled or transferred to the State of Florida all remaining workers' compensation claims, or shall otherwise have withdrawn from the self-insured workers' compensation program in the State of Florida, and (b) the Debtors shall have settled or transferred to the State of Georgia all remaining workers' compensation claims, or shall otherwise have withdrawn from the self-insured workers' compensation program in the State of Georgia.  If these conditions are not satisfied (or waived by AIG), the AIG Settlement will not become effective and the AIG Claims will be treated as Disputed.

## 5.16    Exemption From Certain Transfer Taxes

Pursuant to Bankruptcy Code Section 1146(a), any transfers from the Debtors to the Allied Litigation Trust or any other Person pursuant to, in contemplation of, or in connection with the Plan, and the issuance, transfer, or exchange of any debt, equity securities or other interest under or in connection with the Plan, shall not be taxed under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or government assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

DOC ID = ~~22951909.1~~22951909.9

RLF1 11415540v.7

Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement distributions under the Plan, including the documents contained in the Plan Supplement and all documents necessary to evidence and implement any of the transactions and actions described in the Plan or the Plan Supplement.

**5.17    Plan Supplement**

The Plan Supplement may be filed in parts either contemporaneously with the filing of the Plan or from time to time thereafter, but in no event later than one (1) week prior to the deadline established by the Bankruptcy Court for objecting to Confirmation of the Plan.    After filing, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal business hours.    The Plan Supplement also will be available for inspection on (a) the website maintained by the Claims Agent: http://www.omnimgt.com/alliedsystems, and (b) the Bankruptcy Court's website: http://www.deb.uscourts.gov. In addition, holders of Claims or Interests may obtain a copy of any document included in the Plan Supplement upon written request in accordance with Section 10.16 of the Plan.

**5.18    Committee**

Upon the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to (a) obligations arising under confidentiality agreements which shall remain in full force and effect according to their terms; (b) applications for Professional Fee Claims filed by or on behalf of the Committee; (c) any motions or other actions seeking enforcement or implementation of the provisions of this Plan, the Confirmation Order or the Litigation Trust Agreement, and (d) providing assistance (if requested by the Litigation Trustee) in connection with the Litigation Claims or in defending any claim brought against the Committee by any party in the Litigation Claims.    Professionals retained by the Committee shall be entitled to reasonable compensation for services rendered in connection with the matters identified in clauses (b), (c) and (d) after the Effective Date, subject to a budget to be agreed between the Committee and the members of the Litigation Oversight Committee appointed by the First Lien Requisite Lender.

**5.19    Retiree Committee**

Upon the Effective Date, the Retiree Committee shall dissolve automatically, whereupon its members, shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code.

**ARTICLE VI**

**TREATMENT OF CONTRACTS AND LEASES**

**6.1    Rejection of Contracts and Leases**

On the Effective Date, except for the executory contracts and unexpired leases listed on the Plan Supplement, if any, and except to the extent that a Debtor either previously has assumed, assumed and assigned or rejected an executory contract or unexpired lease by an order of the Bankruptcy Court, including, but not limited to, the JCT Sale Order or the SBDRE Sale Order, or has filed a motion to assume or assume and assign an executory contract or unexpired lease prior to the Effective Date, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms will be deemed rejected pursuant to section 365 of the Bankruptcy Code, and written notice will be provided to each such counterparty of such deemed rejected contract or lease (together with a statement of the date by which any Proof of Claim must be filed).    Each such contract and lease will be rejected only to the extent that any such contract or lease constitutes an executory contract or unexpired lease.    The entry

of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to Sections 365(a) and 1123 of the Bankruptcy Code and that the rejection thereof is in the best interest of the Debtors, their Estates and all parties in interest in the Chapter 11 Cases.

**6.2    Claims Based of Rejection of Executory Contracts of Unexpired Leases**

Claims created by the rejection of executory contracts and unexpired leases pursuant to this Section 6.1 of the Plan, or the expiration or termination of any executory contract or unexpired lease prior to the Effective Date, must be filed with the Bankruptcy Court and served on the Litigation Trustee no later than thirty (30) days after the Effective Date.  Any Claims arising from the rejection of an executory contract or unexpired lease pursuant to Section 6.1 for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtors, the Estates, its successors and assigns, and its assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  All such Claims shall, as of the Effective Date, be subject to the discharge and permanent injunction set forth in Section 10.7.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article III of the Plan.

**6.3    Assumption of Contracts and Leases**

(a)    Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the Debtors shall assume each of the respective executory contracts and unexpired leases, if any, listed as Assumed Contracts in the Plan Supplement; provided, however, that the Debtors reserve the right, at any time prior to the Effective Date, to amend the Plan Supplement to: (a) delete any executory contract or unexpired lease listed therein, thus providing for its rejection pursuant hereto; or (b) add any executory contract or unexpired lease to the Plan Supplement, thus providing for its assumption pursuant to this Section 6.3.  The Debtors shall provide written notice to each counterparty to an Assumed Contract (together with a statement of the date by which any Cure Claims must be filed) and written notice of any amendments to the Plan Supplement to the parties to the executory contracts or unexpired leases affected thereby and to the parties on the then-applicable service list in the Chapter 11 Cases.  Nothing herein or in the Plan Supplement shall constitute an admission by the Debtors that any contract or lease is an executory contract or unexpired lease or that a Debtor has any liability thereunder.

(b)    Each executory contract or unexpired lease assumed under this Section 6.3 shall include any modifications, amendments, supplements or restatements to such contract or lease.

**6.4    Payments Related to the Assumption of Executory Contracts and Unexpired Leases**

Any Cure Claims associated with any executory contract or unexpired lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code: (a) by payment of the Cure Claim in Cash on or after the Effective Date; or (b) on such other terms as are agreed to by the parties to such executory contract or unexpired lease.  Pursuant to section 365(b)(2)(D) of the Bankruptcy Code, no Cure Claim shall be allowed for a penalty rate or other form of default rate of interest.  If there is an unresolved dispute regarding: (x) the amount of any Cure Claim; (y) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (z) any other matter pertaining to assumption of such contract or lease, the payment of any Cure Claim required by section 365(b)(1) of the Bankruptcy Code shall be made following the resolution of such dispute by the parties or the entry of a Final Order resolving the dispute and approving the assumption.

**6.5     Extension of Time to Assume or Reject**

Notwithstanding anything set forth in Article VI of the Plan, in the event of a dispute as to whether a contract is executory or a lease is unexpired, the Debtors' right to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired.  The deemed rejection provided for in Section 6.1 of the Plan shall not apply to any such contract or lease, and any such contract or lease shall be assumed or rejected only upon motion of the Debtors following the Bankruptcy Court's determination that the contract is executory or the lease is unexpired.

**ARTICLE VII**

**PROVISIONS GOVERNING DISTRIBUTIONS**

**7.1     Determination of Allowability of Claims and Interests and Rights to Distributions**

(a)     Only holders of Allowed Claims shall be entitled to receive distributions under the Plan.  The Plan Administrator shall make distributions to holders of Allowed Claims on each Distribution Date.

(b)     With respect to Filed Claims, the Debtors, the Plan Administrator or any other party in interest with standing shall have the right to object to the Proofs of Claim or Requests for Payment in the Bankruptcy Court by the Claims Objection Deadline (as extended), but shall not be required to do so.

(c)     No distribution shall be made on a Disputed Claim until and unless such Disputed Claim becomes an Allowed Claim.  Prior to making any distribution under the Plan to a particular Class, the Plan Administrator, shall establish a ~~separate~~ Disputed Claims Reserve for Disputed Claims in such Class, each of which Disputed Claims Reserves shall be administered by the Plan Administrator.  The Plan Administrator shall reserve in Cash or other property, for distribution on account of each Disputed Claim, the full amount of the estimated distribution on account of such Disputed Claim (or such lesser amount as may be estimated or otherwise ordered by the Bankruptcy Court in accordance with Section 7.5 of the Plan or otherwise) with respect to each Disputed Claim.

(d)     The Plan Administrator shall hold property in the Disputed Claims Reserves in trust for the benefit of the holders of Claims ultimately determined to be Allowed.  Each Disputed Claims Reserve shall be closed and extinguished by the Plan Administrator when all distributions and other dispositions of Cash or other property required to be made under the Plan will have been made in accordance with the terms of the Plan.  Upon closure of a Disputed Claims Reserve, all Cash or other property held in that Disputed Claims Reserve shall revest in and become the property of (i) the Reorganized Debtors if the applicable Disputed Claims Reserve was established with assets of the Reorganized Debtors or (ii) the Allied Litigation Trust if the applicable Disputed Claims Reserve was established with the proceeds of the Litigation Claims.  All funds or other property that vest or revest in the Reorganized Debtors pursuant to this paragraph shall be used to pay the fees and expenses of the Plan Administrator, and thereafter distributed on a Pro Rata basis to holders of Allowed Claims pursuant to the remaining provisions of this Plan at a time determined in the sole discretion of the Plan Administrator.

(e)     Notwithstanding anything to the contrary set forth herein, any distributions that would otherwise be made on account of the Disputed First Lien Obligations by the Debtors or the First Lien Agents shall be made to the Disputed First Lien Obligations Escrow to be held, and ultimately distributed, in accordance with the terms thereof and the JCT Sale Order.  On the Effective Date the Plan Administrator shall succeed to the rights and obligations of the ~~Debtor~~ Debtors under the Disputed First Lien Obligations Escrow.

**7.2     Procedures for Making Distributions to Holders of Allowed Claims**

(a)     The Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

(b)     The Plan Administrator shall send distributions to the holders of the Allowed Claims at the addresses listed for such holder in the Schedules or on the applicable Proof of Claim or notice of transfer of a Claim filed at least 5 days before the Effective Date.

(c)     If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Plan Administrator is notified by the Reorganized Debtors, the Claims Agent, or such holder of such holder's then current address, at which time all missed distributions shall be made, subject to Section 7.2(d) of the Plan, to such holder without interest.  If any distribution is made by check and such check is not returned but remains uncashed for three (3) months after the date of such check, the Plan Administrator may cancel and void such check, and the distribution with respect thereto shall be deemed undeliverable.  If, pursuant to Section 7.8 of the Plan, any holder is requested to provide an applicable Internal Revenue Service form or to otherwise satisfy any tax withholding requirements with respect to a distribution and such holder fails to do so within three (3) months of the date of such request, such holder's distribution shall be deemed undeliverable.

(d)     Amounts in respect of returned or otherwise undeliverable or unclaimed distributions made by the Plan Administrator shall be returned to or deemed to revest in the Reorganized Debtors or the Allied Litigation Trust, as applicable, until such distributions are claimed. All claims for returned or otherwise undeliverable or unclaimed distributions must be made (i) on or before the first (1st) anniversary of the Effective Date or (ii) with respect to any distribution made later than such date, on or before six (6) months after the date of such later distribution; after which date all undeliverable property shall revert and revest in to the Reorganized Debtors or the Allied Litigation Trust, as applicable, free of any restrictions thereon and the claims of any holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.  In the event of a timely claim for any returned or otherwise undeliverable or unclaimed distribution, the Plan Administer shall distribute such amount or property pursuant to the Plan.

(e)     The Plan Administrator may elect not make a distribution of less than $~~50.00~~ 25.00 to any holder of an Allowed Claim unless the distribution is a final distribution.  If, at any time, the Plan Administrator determines that the remaining Cash and other Assets are not sufficient to make distributions to holders of Allowed Claims in an amount that would warrant the Reorganized Debtor incurring the cost of making such a distribution, the Plan Administrator may dispose of such remaining Cash and other Assets in a manner the Plan Administrator deems to be appropriate, including donating it to a charitable organization.

(f)     All distributions made under the Plan shall be final, and none of the Estates, the Litigation Trustee, nor any representative of the Debtors' Estates may seek disgorgement of any distributions made under the Plan.

**7.3     Consolidation for Distribution Purposes Only**

Solely for the purposes of determining the Allowed amount of Claims to be used in calculating distributions to be made pursuant to the Plan, any holder asserting the same Claim against more than one Debtor (based on a guarantee, joint and several liability under contract or applicable law, or any other basis) shall be deemed to have only one Claim and shall only receive a distribution under the Plan on account of such Claim.

**7.4**     **Application of Distribution Record Date**

On the applicable Distribution Record Date, the Debtors' books and records for Unfiled Claims and the claims register maintained by the Claims Agent for Filed Claims shall be closed for purposes of determining the record holders of Claims, and there shall be no further changes in the record holders of any Claims. Except as provided herein, the Plan Administrator and its respective agents, successors, and assigns shall have no obligation to recognize any transfer of Claims occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the applicable books and records, claims registers or transfer ledgers as of 5:00 p.m. prevailing Eastern time on the Distribution Record Date irrespective of the number of distributions to be made under the Plan to such Persons or the date of such distributions.

**7.5**     **Provisions Related to Disputed Claims**

(a)     Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Plan Administrator shall have the right to make, file, prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court, objections to Claims. The costs of pursuing the objections to Claims shall be borne by the Reorganized Debtors. From and after the Effective Date, the Plan Administrator and any claimant may elect to compromise, settle or otherwise resolve any objection to a Disputed Claim without approval of the Bankruptcy Court. Notwithstanding anything in the Plan, the U.S. Trustee's rights to object to Claims, including Professional Fee Claims and Claims asserted under Section 503(b)(3) or (b)(4), are fully reserved.

(b)     All objections to Disputed Claims shall be filed and served upon the holders of each such Claim not later than the Claim Objection Deadline (as extended).

(c)     At any time, (a) prior to the Effective Date, the Debtors, and (b) subsequent to the Effective Date, the Plan Administrator, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by Section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Plan Administrator has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the Claim, the Debtors or the Plan Administrator, as applicable, may elect to object to the ultimate allowance of the Claim or seek to reduce and allow the Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

(d)     There shall be no distribution on account of any Claims held by any Person from which property is recoverable under Section 542, 543, 550 or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code. Nothing herein shall affect the rights of Yucaipa to file a Claim, if any, under Section 502(h) of the Bankruptcy Code. Any such Claim of Yucaipa, if Allowed, shall be classified in Class 5.

(e)     EXCEPT AS PROVIDED HEREIN OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE BAR DATE SHALL NOT BE TREATED AS CLAIMS FOR PURPOSES OF DISTRIBUTION PURSUANT TO BANKRUPTCY RULE 3003(c)(2) AND PURSUANT TO THE BAR DATE ORDER, UNLESS ON OR BEFORE THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.

**7.6    Adjustment of Claims Without Objection**

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted on the Claims Register by the Claims Agent at the direction of the Debtors or the Plan Administrator, as applicable, upon notice to the holder of such Claim, but without a Claims objection having to be Filed and. If no objection is received within the time period prescribed in the notice, such Claim shall be adjusted without any further notice to or action, order or approval of the Bankruptcy Court.

**7.7    Surrender of Cancelled Old Securities**

Each holder of an Parent Equity Interest shall be deemed to have surrendered any stock certificate or other documentation underlying each such Interest, and any such stock certificates and other documentation shall be deemed to be cancelled pursuant to Section 5.4 of the Plan.

**7.8    Withholding and Reporting Requirements**

In connection with the Plan and all distributions hereunder, the Plan Administrator shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a distribution, the holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each holder. Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any governmental unit, including income and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the applicable Plan Administrator to allow it to comply with its tax withholding and reporting requirements. Any property to be distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution to be held by the Plan Administrator, as the case may be, until such time as the Plan Administrator is satisfied with the holder's arrangements for any withholding tax obligations.

**7.9    Setoffs**

The Plan Administrator may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors, the Reorganized Debtors or the Allied Litigation Trust may have against the holder of such Claim; *provided*, *however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Reorganized Debtors or the Allied Litigation Trust of any such claim that the Debtors, the Reorganized Debtors or the Allied Litigation Trust may have against such holder.

**7.10    Prepayment**

Except as otherwise provided in the Plan, any ancillary documents entered into in connection herewith, or the Confirmation Order, the Plan Administrator shall have the right to prepay, without penalty, all or any portion of an Allowed Claim at any time; *provided*, *however*, that any such prepayment shall not be violative of, or otherwise prejudice, the relative priorities and parities among the Classes of Claims.

**7.11    No Distribution in Excess of Allowed Amount of Claim**

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

# ARTICLE VIII

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

### 8.1    Conditions to Confirmation

The following are conditions precedent to the occurrence of the Confirmation Date, each of which must be satisfied or waived in accordance with Section 8.3 of the Plan:

(a)    an order pursuant to Bankruptcy Code Section 1125 shall have been entered finding that the Disclosure Statement contains adequate information;

(b)    the proposed Confirmation Order, in form and substance satisfactory to the Debtors, the First Lien Requisite Lender and the Committee, shall have been submitted to the Bankruptcy Court;

(c)    the Bankruptcy Court shall have approved (i) the Northwest Settlement, (ii) the Central States Settlement, (iii) the AIG Settlement, and (iv) the settlement among the First Lien Agents (on behalf of the First Lien Lenders), the Debtors and the Committee as contemplated by Section 5.15 of the Plan; and

(d)    the Bankruptcy Court shall have determined that the Plan satisfies all requirements for confirmation under the Bankruptcy Code.

### 8.2    Conditions to Effective Date

The following conditions precedent must be satisfied or waived on or prior to the Effective Date in accordance with Section 8.3 of the Plan:

(a)    the Confirmation Order shall have been entered;

(b)    the Confirmation Order shall, among other things:

(i)    provide that the Debtors, the Reorganized Debtors, the Committee, the Plan Administrator, the Litigation Trustee, the Litigation Oversight Committee and the Allied Litigation Trust are authorized and directed to take all actions necessary or appropriate to enter into, implement, and consummate the transactions contemplated by and the contracts, instruments, releases, indentures, and other agreements or documents created under or in connection with the Plan; and

(ii)    authorize the issuance of the New Common Stock;

(c)    the Confirmation Order shall not then be stayed, vacated, or reversed;

(d)    all other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed, or will be effected or executed contemporaneously with implementation of the Plan (including, without limitation, the New Debtor Governing Documents), each of which shall be in form and substance acceptable to the First Lien Requisite Lender;

(e)    the Cash necessary to fund the First Lien Lender Cash Distribution and the GUC Cash Distribution shall have been provided to the Plan Administrator;

(f)    the fees and expenses required to be paid on the Effective Date pursuant to Section 10.2 of the Plan shall have been paid in full in Cash;

(g)    the aggregate amount of all Allowed Administrative Claims and ~~Allowed~~ Priority Tax Claims shall not exceed $~~2 million~~4.5 million (such cap to be reduced for all administrative expenses and other wind-

down costs paid by the Debtors, in the ordinary course, on or after the date of the Disclosure Statement and prior to the Effective Date) and the aggregate amount of all Allowed Priority Claims shall not exceed $275,000;

(h)    BDCM Opportunity Fund II, LP, Black Diamond CLO 2005-1 Ltd., and Spectrum Investment Partners, L.P. shall each have executed and delivered the Reorganized Allied Holdings Shareholders' Agreement;

(i)    all conditions to the effectiveness of the AIG Settlement shall have been satisfied (or waived by AIG);

(j)    either the Confirmation Order shall provide that the Retiree Benefit Plans are terminated by their terms on the Effective Date or the 1114 Order shall have been entered; and

(k)    The Effective Date shall have occurred by no later than ————————, 2015September 30, 2015, or such other date as agreed to by each of the Plan Proponents.

## 8.3    Waiver of Conditions

Each of the conditions set forth in Sections 8.1 and 8.2, with the express exception of the conditions contained in Sections 8.1(a), 8.2(a) and 8.2(c), may be waived in whole or in part by the Plan Proponents, without any notice to parties in interest or the Bankruptcy Court and without a hearing.

## 8.4    Operations of the Debtors Between the Confirmation Date and the Effective Date

During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate its business as debtor in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all Final Orders.

## 8.5    Effective Date

On or within one Business Day of the Effective Date, the Debtors shall file and serve a notice of occurrence of the Effective Date.

## ARTICLE IX

## RETENTION OF JURISDICTION

## 9.1    Scope of Retention of Jurisdiction

Under Bankruptcy Code Sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, without limitation, jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim (whether a Filed Claim or Unfiled Claim) or Interest not otherwise Allowed under the Plan (other than personal injury or wrongful death Claims, unless agreed by the holder), including, without limitation, the resolution of any Request for Payment  and the resolution of any objections to the allowance or priority of Claims;

(b)    hear and determine all applications for Professional Fees; *provided*, *however*, that from and after the Effective Date, the payment of the fees and expenses of the retained Professionals of the Reorganized Debtors, the Plan Administrator or the Allied Litigation Trust (to the extent different from those of the Plan

Administrator) shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(c)    hear and determine all matters with respect to contracts or leases or the assumption or rejection of any contracts or leases to which a Debtors were a party or with respect to which the Debtors may be liable, including, if necessary and without limitation, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

(d)    effectuate performance of and payments under the provisions of the Plan;

(e)    hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Litigation Claims or the Chapter 11 Cases, including, without limitation, any matters arising out of the asset purchase agreements evidencing the Sale, the JCT Sale Order, and the SBDRE Sale Order;

(f)    enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

(g)    hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including, without limitation, disputes arising under agreements, documents, or instruments executed in connection with the Plan, *provided*, *however*, that any dispute arising under or in connection with the New Debtor Governing Documents shall be adjudicated in accordance with the provisions of the applicable document;

(h)    consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(j)    enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(k)    hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, the Litigation Trust Agreement, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

(l)    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases or provided for under the Plan;

(m)    except as otherwise limited herein, recover all assets of the Debtors and property of the Estates, wherever located;

(n)    hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code Sections 346, 505, and 1146;

(o)    hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;

(p)    hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(q)    enter a final decree closing the Chapter 11 Cases.

**9.2    Failure of the Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in Section 9.1 of the Plan, the provisions of this Article IX shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

**10.1    Administrative Expense Claims, Professional Fee Claims and Substantial Contribution Claims**

(a)    The Bankruptcy Court shall have entered one or more orders establishing the Administrative Expense Claim Bar Date.  Objections to Administrative Expense Claims must be filed and served on the Debtor or Reorganized Debtor, as applicable, and the Plan Administrator, their counsel, and the entity submitting such Administrative Expense Claim no later than twenty (20) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the Administrative Expense Claims Bar Date.

(b)    All final Requests for Payment of Professional Fee Claims must be filed and served on the Reorganized Debtor and the Plan Administrator, their counsel, and other necessary parties in interest no later than forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to such Requests for Payment must be filed and served on the Reorganized Debtor and the Plan Administrator, their counsel, and the requesting Professional or other entity no later than twenty (20) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable Request for Payment was served.

**10.2    Payment of Statutory Fees**

All quarterly fees payable pursuant to Section 1930 of Title 28 of the United States Code prior to the Effective Date shall be paid by the Debtors on or before the Effective Date.  All such fees payable after the Effective Date shall be paid by the Plan Administrator as and when due, until such time as the Chapter 11 Cases are closed, dismissed or converted.

**10.3    Termination of Retiree Benefit Plans**

On the Effective Date, the Retiree Benefit Plans shall be deemed terminated and cancelled as permitted by their terms or otherwise permitted by law.  Alternatively, in connection with the confirmation of the Plan, Debtors shall seek entry of the 1114 Order terminating the Retiree Obligations under the Retiree Benefit Plans. Entry of either a form of Confirmation Order providing for the termination of the Retiree Benefit Plans on the Effective Date or the 1114 Order is a condition to the occurrence of the Effective Date.

**10.4    Successors and Assigns and Binding Effect**

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Person, including, but not limited to, the Allied Litigation Trust, the Reorganized Debtors and all other parties in interest in the Chapter 11 Cases.

**10.5    Preservation of Subordination Rights**

Nothing contained in this Plan shall be deemed to modify, impair, terminate or otherwise affect in any way the rights of any Entity under section 510(a) of the Bankruptcy Code, and all such rights are expressly preserved under this Plan.  The treatment set forth in Article III of the Plan and the distributions to the various Classes of Claims hereunder shall not affect the right of any Person to levy, garnish, attach, or employ any other legal process with respect to such distributions by reason of any claimed subordination rights or otherwise. All such rights and any agreements relating thereto shall remain in full force and effect, except as otherwise expressly compromised and settled pursuant to the Plan.

**10.6    Releases**

(a)    **Releases by the Debtors**

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, the Reorganized Debtors, the Plan Administrator, the Allied Litigation Trust, the Litigation Trustee and any Person (including the Committee and the First Lien Agents) seeking to exercise the rights of the Debtors' Estates, including, without limitation, any successor to the Debtors or any Estate representative appointed or selected pursuant to Bankruptcy Code Section 1123(b)(3), shall be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action (including claims or causes of action arising under Chapter 5 of the Bankruptcy Code), and liabilities whatsoever (other than for fraud, willful misconduct, criminal conduct and/or gross negligence), whether direct or derivative, in connection with or related to the Debtors, the Chapter 11 Cases, or the Plan (other than the rights of the Debtors, the Committee, the Reorganized Debtors, the Allied Litigation Trust, the Litigation Trustee and the First Lien Agents to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date against (i) any of the directors and officers of the Debtors serving during the pendency of the Chapter 11 Cases, other than those directors and officers named as defendants in either the Amended Complaint or the Lender Direct Complaint or any other director or officer that is party to a tolling agreement with the Committee, (ii) any Professionals of the Debtors, (iii) the First Lien Agents, in their capacity as such, (iv) the First Lien Lenders (other than Yucaipa) in their capacity as such, (v) any Professional of the First Lien Agents, (vi) the Second Lien Lenders (other than Yucaipa) in their capacity as such, (vii) any Professional for the Second Lien Lenders (other than Yucaipa), (viii) the members of the Committee, but only in their capacity as such, (ix) any Professional of the Committee, in their capacity as such; and (x) with respect to the Persons identified in clauses (ii) through (ix), their respective directors, officers, employees, members, participants, agents, representatives, partners, affiliates, counsel, other advisors, successors or assigns (collectively, the "Released Parties"); provided, however, that nothing in this Section 10.6(a) shall be deemed to prohibit the Debtors, the Reorganized Debtors, the Allied Litigation Trust, the Litigation Trustee, the Plan Administrator or the First Lien Agents from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, causes of action or liabilities they may have against any Person identified as a defendant in any of the Litigation Claims.**

(b)    **Releases by Holders of Claims and Interests**

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each holder of a Claim or Interest that affirmatively votes in favor of the Plan and does not otherwise elect on its Ballot to withhold the release contemplated by this Section 10.6(b) shall be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, damages, demands,**

**debts, rights, causes of action and liabilities whatsoever (other than for fraud, willful misconduct, criminal conduct and/or gross negligence) against the Released Parties in connection with or related to the Debtors, the Chapter 11 Cases, or the Plan (other than the rights under the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date; *provided*, *however*, that nothing herein shall be deemed a waiver or release of a Claim holder's right to receive a distribution pursuant to the terms of the Plan or any obligation under the Plan or Confirmation Order. For the avoidance of doubt, this Release by holders of Claims and Interests is not and shall not be deemed a waiver of the Debtors' rights or claims against the holders of Claims and Interests, including to the Debtors' rights to assert setoffs, recoupments or counterclaims, or to object or assert defenses to any such Claim, and all such rights, causes of action and claims are expressly reserved, except as otherwise provided in the Plan or other Final Order. For the avoidance of doubt, nothing contained in this Section 10.6(b) shall be deemed to prohibit the First Lien Lenders from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, causes of action or liabilities they may have against any Person identified as a defendant in any of the Litigation Claims.**

**10.7    Discharge of the Debtors**

(a)    Except as otherwise provided herein or in the Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtors or any of its assets or properties and, regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, retained, or distributed pursuant to the Plan on account of such Claims. Upon the Effective Date, (i) the Debtors shall be deemed discharged and released under Bankruptcy Code Section 1141(d)(1)(A) from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Bankruptcy Code Section 502, whether or not (A) a Proof of Claim based upon such debt is filed or deemed filed under Bankruptcy Code Section 501, (B) a Claim based upon such debt is Allowed under Bankruptcy Code Section 502, (C) a Claim based upon such debt is or has been disallowed by order of the Bankruptcy Court, or (D) the holder of a Claim based upon such debt accepted the Plan, and (ii) all Interests shall be terminated.

(b)    As of the Effective Date, except as provided in the Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Debtors, the Committee, the Reorganized Debtors, the First Lien Agents, the Allied Litigation Trust, the Plan Administrator or the Litigation Trustee any other or further claims, debts, rights, causes of action, claims for relief, liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors and termination of all Common Stock, pursuant to Bankruptcy Code Sections 524 and 1141, and such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim or terminated Interest.

**10.8    Exculpation and Limitation of Liability**

(a)    **To the fullest extent permitted by applicable law and approved in the Confirmation Order, neither the Debtors, nor the Litigation Oversight Committee, nor any Released Party shall have any liability for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or**

omissions that constitute or are the result of fraud, criminal conduct, gross negligence, or willful misconduct or willful violation of federal or state securities laws or the Internal Revenue Code.

(b)    Notwithstanding any other provision of the Plan other than Section 10.2, to the fullest extent permitted by applicable law and approved in the Confirmation Order, no holder of a Claim or an Interest, no other party in interest, and none of their respective present or former directors, officers, employees, members, participants, agents, representatives, partners, affiliates, counsel, other advisors, successors or assigns, shall have any right of action against the Debtors, the Litigation Oversight Committee or any Released Party for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, negotiation, or implementation of the Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions that constitute or are the result of fraud, criminal conduct, gross negligence, or willful misconduct or willful violation of federal or state securities laws or the Internal Revenue Code.

(c)    The Debtors, the Allied Litigation Trust, the Litigation Oversight Committee, the Litigation Trustee, the Plan Administrator, the First Lien Agents, and each member of the Committee, solely acting in that capacity, and their respective directors, officers, employees, members, participants, agents, representatives, partners, affiliates, counsel, other advisors, successors or assigns) shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

**10.9    Injunction**

(a)    Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, may hold, or allege that they hold, a Claim or other debt or liability that is discharged pursuant to Section 10.7 of the Plan or Bankruptcy Code Sections 524 and 1141 or an Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtors, the Reorganized Debtors, the Committee, the Allied Litigation Trust, the Litigation Oversight Committee, the Plan Administrator, the Litigation Trustee, the First Lien Agents, their respective directors, officers, employees, members, participants, agents, representatives, partners, affiliates, counsel, other advisors, successors or assigns, and their respective subsidiaries or their property, on account of any such discharged Claims, debts, or liabilities or terminated Interests or rights:  (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors, the Reorganized Debtors, the Allied Litigation Trust or the Litigation Trustee; or (v) commencing or continuing any action, in each such case in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Plan.

(b)    Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, or may hold, a Claim, or an Interest or other right of an equity security holder, obligation, suit, judgment, damage, demand, debt, right, cause of action, or liability that is released pursuant to Sections 10.6, 10.7, or 10.8 of the Plan are permanently enjoined from taking any of the following actions on account of such released Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities or terminated Interests or rights, including against the Released Parties: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance;

**(iv) asserting a setoff against any debt, liability, or obligation due to any released Person; or (v) commencing or continuing any action, in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Plan.**

**10.10   Certain Provisions Relating to Central States, Southeast and Southwest Area Pension Fund and the Pension Benefit Guaranty Corporation**

Notwithstanding anything to the contrary contained in the Plan (including, but without limitation, Sections 10.5, 10.6, 10.7 and 10.8), neither Yucaipa nor ~~an~~ any Affiliate, officer, director, member or shareholder thereof shall be released from any claim or liability (including, without limitation, any liability or Claim for withdrawal liability under 29 U.S.C. §§ 1383 and 1385) now or hereafter owing to Central States, Southeast and Southwest Area Pension Fund ("**Central States Pension Fund**"), a multi-employer plan as that term is defined by 29 U.S.C. § 1301(a)(3), as a result of any Debtor's participation in Central States Pension Fund. For the avoidance of doubt, subject to the Central States Settlement, nothing in this paragraph shall restrict Central States Pension Fund's right to receive distributions on its Claims pursuant to the terms of the Plan.

Notwithstanding anything to the contrary contained in the Plan, no provision of the Plan shall be construed as discharging, releasing or relieving any party (other than the Reorganized Debtors and their subsidiaries), in any capacity, from any liability imposed under any law or regulatory provision with respect to any pension plans covered by Title IV ~~or~~ of ERISA or the Pension Benefit Guaranty Corporation (the "**PBGC**"). Neither the PBGC nor any pension plans covered by Title IV ~~or~~ of ERISA will be enjoined or precluded from enforcing any such liability as a result of any provision of the Plan or the Confirmation Order.

**10.11   Term of Injunctions or Stays**

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code Sections 105 or 362 or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

**10.12   Modifications and Amendments**

The Plan Proponents may alter, amend, or modify the Plan under Bankruptcy Code Section 1127(a) at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of the Plan, as defined in Bankruptcy Code Section 1101(2), the Plan Proponents may under Bankruptcy Code Section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, *provided*, *however*, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

**10.13   Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be substantially consummated under Section 1101 and 1127(b) of the Bankruptcy Code.

**10.14   Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Plan Proponents shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or

interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## 10.15   Revocation, Withdrawal, or Non-Consummation

The Plan Proponents reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization. If the Plan Proponents revoke or withdraw the Plan in accordance with this Section 10.15, or if Confirmation or the Effective Date does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, any Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by any Plan Proponents or any other Person.

## 10.16   Notices

Any notice, request, or demand required or permitted to be made or provided to or upon the Debtors, the Reorganized Debtors, the Allied Litigation Trust, the Committee or the First Lien Agents under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, and (d) addressed as follows:

> **For the Debtors:**
>
> ASHINC Corp.
> Attn: John Blount
> c/o Jeffrey W. Kelley
> Troutman Sanders LLP
> 600 Peachtree Street, Suite 5200
> Atlanta, GA 30308-2216
> E-mail: jblount@ashincorp.com
>
> with copies to:
>
> TROUTMAN SANDERS LLP
> Jeffrey W. Kelley
> Matthew R. Brooks
> Bank of America Plaza
> 600 Peachtree Street, Suite 5200
> Atlanta, Georgia 30308-2216
> Telephone No.: (404) 885-3000
> Facsimile No.: (404) 885-3900
> E-Mail: jeffrey.kelley@troutmansanders.com
> E-Mail: matthew.brooks@troutmansanders.com
>
> - and -

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins
Marisa A. Terranova
920 North King Street
Wilmington, DE 19801
Telephone:  302-651-7700
Facsimile:  302-651-7701
E-mail:  collins@rlf.com
       terranova@rlf.com

**For the Committee:**

SIDLEY AUSTIN LLP
Michael G. Burke
Brian Lohan
787 Seventh Avenue
New York, NY 10019
Telephone No.: (212) 839-5200
Facsimile No.: (212) 839-5599
E-Mail: mgburke@sidley.com
E-Mail: blohan@sidley.com

-and -

SULLIVAN HAZELTINE ALLINSON LLC
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
901 North Market Street, Suite 1300
Wilmington, Delaware 19801
Telephone No.: (302) 428-8191
Facsimile No.: (302) 428-8195
E-Mail: whazeltine@sha-llc.com
E-Mail: bsullivan@sha-llc.com

**For the First Lien Agents:**

SCHULTE ROTH & ZABEL LLP
Adam C. Harris
Robert J. Ward
919 Third Avenue
New York, NY 10022
Telephone No.: (212) 756-200756-2000
Facsimile No.: (212) 593-5955
E-Mail: Adam.Harris@srz.com
E-Mail: Robert.Ward@srz.com

-and -

LANDIS RATH & COBB LLP
Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 North Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone No.: (302) 467-4400
Facsimile No.: (302) 467-4450
E-Mail: landis@lrclaw.com
E-Mail: mumford@lrclaw.com

## 10.17   Conflicts

To the extent any provision of the Disclosure Statement or any instrument, document or agreement executed in connection with the Plan (or any exhibits, schedules, appendices, supplements or amendments to the foregoing) conflicts with or is in any way inconsistent with the terms of the Plan, the terms and provisions of the Plan shall govern and control.

## 10.18   Aid and Recognition

The Debtors, the Reorganized Debtors, the Plan Administrator or Litigation Trustee, as the case may be, shall, as needed to effect the terms hereof, request the aid and recognition of any court or judicial, regulatory or administrative body in any province or territory of Canada or any other nation or state.

**[SIGNATURE PAGE FOLLOWS]**

Dated: ~~May 4~~June 17, 2015

**ASHINC Corp.**                                             **Official Committee of Unsecured Creditors**
(for itself and on behalf of each Debtor)

By: /s/ John F. Blount                                      By: /s/ Michael G. Burke
    Name:  John F. Blount                     Name: Michael G. Burke
    Title:  President and CEO/Wind-Down Officer        Title: Counsel to the Official Committee of
                      Unsecured Creditors

**First Lien Agents**
By: /s/ Adam C. Harris
    Name: Adam C. Harris
    Title: Counsel to the First Lien Agents

| | |
|---|---|
| Mark D. Collins (No. 2981) | Jeffrey W. Kelley (GA Bar No. 412296) |
| Marisa A. Terranova (No. 5396) | Matthew R. Brooks (GA Bar No. 378018) |
| RICHARDS, LAYTON & FINGER, P.A. | TROUTMAN SANDERS LLP |
| One Rodney Square | Bank of America Plaza |
| 920 North King Street | 600 Peachtree Street, Suite 5200 |
| Wilmington, Delaware 19801 | Atlanta, Georgia 30308-2216 |
| Telephone No.: (302) 651-7700 | Telephone No.: (404) 885-3000 |
| Facsimile No.: (302) 651-7701 | Facsimile No.: (404) 885-3900 |
| E-Mail: collins@rlf.com | E-Mail: jeffrey.kelley@troutmansanders.com |
| E-Mail: terranova@rlf.com | E-Mail: matthew.brooks@troutmansanders.com |

*Attorneys for the Debtors and Debtors in Possession*

- and -

| | |
|---|---|
| William D. Sullivan (No. 2820) | Michael G. Burke |
| William A. Hazeltine (No. 3294) | Brian Lohan |
| SULLIVAN HAZELTINE ALLINSON LLC | SIDLEY AUSTIN LLP |
| 901 North Market Street, Suite 1300 | 787 Seventh Avenue |
| Wilmington, Delaware 19801 | New York, NY 10019 |
| Telephone No.: (302) 428-8191 | Telephone No.: (212) 839-5200 |
| Facsimile No.: (302) 428-8195 | Facsimile No.: (212) 839-5599 |
| E-Mail: whazeltine@sha-llc.com | E-Mail: mgburke@sidley.com |
| E-Mail: bsullivan@sha-llc.com | E-Mail: blohan@sidley.com |

*Attorneys for the Committee*

- and -

| | |
|---|---|
| Adam G. Landis (No. 3407) | Adam C. Harris |
| Kerri K. Mumford (No. 4186) | Robert J. Ward |
| LANDIS RATH & COBB LLP | SCHULTE ROTH & ZABEL LLP |
| 919 North Market Street, Suite 1800 | 919 Third Avenue |
| Wilmington, Delaware 19801 | New York, NY 10022 |
| Telephone No.: (302) 467-4400 | Telephone No.: (212) ~~756-200~~756-2000 |
| Facsimile No.: (302) 467-4450 | Facsimile No.: (212) 593-5955 |
| E-Mail: landis@lrclaw.com | E-Mail: Adam.Harris@srz.com |
| E-Mail: mumford@lrclaw.com | E-Mail: Robert.Ward@srz.com |

*Attorneys for the First Lien Agents*

| Comparison Details | |
|---|---|
| Title | **pdfDocs compareDocs Comparison Results** |
| Date & Time | 6/17/2015 7:38:52 PM |
| Comparison Time | 2.94 seconds |
| compareDocs version | v3.4.15.4 |

| Sources | |
|---|---|
| Original Document | C:\Users\MXT\AppData\Local\Temp\DocsCorp\pdfDocs compareDocs\Document\Allied - Plan of Reorganization.docxDMS Information |
| Modified Document | [#12251918] [v1] Allied - Plan of Reorganization (6-17-15 version).docxDMS information |

| Comparison Statistics | |
|---|---|
| Insertions | 37 |
| Deletions | 31 |
| Changes | 188 |
| Moves | 0 |
| TOTAL CHANGES | 256 |
| | |
| | |
| | |
| | |
| | |

| Word Rendering Set Markup Options | |
|---|---|
| Name | Standard |
| Insertions | |
| Deletions | |
| Moves / Moves | |
| Inserted cells | |
| Deleted cells | |
| Merged cells | |
| Formatting | Color only. |
| Changed lines | Mark left border. |
| Comments color | ByAuthorcolor options] |
| Balloons | False |

| compareDocs Settings Used | Category | Option Selected |
|---|---|---|
| Open Comparison Report after Saving | General | Always |
| Report Type | Word | Track Changes |
| Character Level | Word | False |
| Include Headers / Footers | Word | True |
| Include Footnotes / Endnotes | Word | True |
| Include List Numbers | Word | True |
| Include Tables | Word | True |
| Include Field Codes | Word | True |
| Include Moves | Word | True |
| Show Track Changes Toolbar | Word | True |
| Show Reviewing Pane | Word | False |
| Update Automatic Links at Open | Word | False |
| Summary Report | Word | End |
| Include Change Detail Report | Word | Separate |
| Document View | Word | Print |
| Remove Personal Information | Word | False |