# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| ASHINC CORPORATION, *et al.* [1] | Case No. 12-11564 (CSS) |
|  | Jointly Administered |
| Debtors. |  |

## PLAN PROPONENTS' MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY THE DEBTORS, THE COMMITTEE AND THE FIRST LIEN AGENTS

Mark D. Collins (No. 2981)
Marisa A. Terranova (No. 5396)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone No.: (302) 651-7700
Facsimile No.: (302) 651-7701
E-Mail: collins@rlf.com
E-Mail: terranova@rlf.com

Jeffrey W. Kelley (GA Bar No. 412296)
Matthew R. Brooks (GA Bar No. 378018)
TROUTMAN SANDERS LLP
Bank of America Plaza
600 Peachtree Street, Suite 5200
Atlanta, Georgia 30308-2216
Telephone No.: (404) 885-3000
Facsimile No.: (404) 885-3900
E-Mail: jeffrey.kelley@troutmansanders.com
E-Mail: matthew.brooks@troutmansanders.com

*Attorneys for the Debtors and Debtors in Possession*

- and -

---

[1]  The Debtors in these cases, along with the federal tax identification number (or Canadian business number where applicable) for each of the Debtors, are: ASHINC Corporation (f/k/a Allied Systems Holdings, Inc.) (58-0360550); AAINC Corporation (f/k/a Allied Automotive Group, Inc.) (58-2201081); AFBLLC LLC (f/k/a Allied Freight Broker LLC) (59-2876864); ASCCO (Canada) Company (f/k/a Allied Systems (Canada) Company) (90-0169283); ASLTD L.P. (f/k/a Allied Systems, Ltd. (L.P.) (58-1710028); AXALLC LLC (f/k/a Axis Areta, LLC) (45-5215545); AXCCO Canada Company (f/k/a Axis Canada Company) (875688228); AXGINC Corporation (f/k/a Axis Group, Inc.) (58-2204628); Commercial Carriers, Inc. (38-0436930); CTSINC Corporation (f/k/a CT Services, Inc.) (38-2918187); CTLLC LLC (f/k/a Cordin Transport LLC) (38-1985795); F.J. Boutell Driveway LLC (38-0365100); GACS Incorporated (58-1944786); Logistic Systems, LLC (45-4241751); Logistic Technology, LLC (45-4242057); QAT, Inc. (59-2876863); RMX LLC (31-0961359); Transport Support LLC (38-2349563); and Terminal Services LLC (91-0847582).  The location of the Debtors' corporate headquarters and the Debtors' address for service of process is 2302 Parklake Drive, Bldg. 15, Ste. 600, Atlanta, Georgia 30345.

William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
SULLIVAN HAZELTINE ALLINSON LLC
901 North Market Street, Suite 1300
Wilmington, Delaware 19801
Telephone No.: (302) 428-8191
Facsimile No.: (302) 428-8195
E-Mail: whazeltine@sha-llc.com
E-Mail: bsullivan@sha-llc.com

Michael G. Burke
Brian Lohan
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone No.: (212) 839-5200
Facsimile No.: (212) 839-5599
E-Mail: mgburke@sidley.com
E-Mail: blohan@sidley.com

*Attorneys for the Committee*

- and -

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
LANDIS RATH & COBB LLP
919 North Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone No.: (302) 467-4400
Facsimile No.: (302) 467-4450
E-Mail: landis@lrclaw.com
E-Mail: mumford@lrclaw.com

Adam C. Harris
David M. Hillman
Robert J. Ward
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022
Telephone No.: (212) 756-2000
Facsimile No.: (212) 593-5955
E-Mail: Adam.Harris@srz.com
E-Mail: Robert.Ward@srz.com

*Attorneys for the First Lien Agents*

RLF1 12470955v.6

INTRODUCTION ...................................................................................................................1

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS .....................................................................................................3

    I.      History of the Debtors...............................................................................................3

    II.     Events During the Bankruptcy Case ........................................................................5

THE PLAN MEETS ALL APPLICABLE CONFIRMATION REQUIREMENTS......................7

    I.      The Plan Complies With Section 1129(a) of the Bankruptcy Code ........................7

           A.      Section 1129(a)(1) of the Bankruptcy Code ...............................................7

                   1.      Section 1122 of the Bankruptcy Code – Classification of Claims and Interests ..............................................................7

                   2.      Compliance With Section 1123(a) of the Bankruptcy Code – Mandatory Contents of the Plan ..................................9

                   3.      Section 1123(b) of the Bankruptcy Code – Discretionary Contents of the Plan ..........................................13

           B.      Section 1129(a)(2) of the Bankruptcy Code .............................................15

            C.      Section 1129(a)(3) of the Bankruptcy Code .............................................17

            D.      Section 1129(a)(4) of the Bankruptcy Code .............................................19

            E.      Section 1129(a)(5) of the Bankruptcy Code .............................................20

            F.      Section 1129(a)(6) of the Bankruptcy Code .............................................22

            G.      Section 1129(a)(7) of the Bankruptcy Code .............................................22

            H.      Section 1129(a)(8) of the Bankruptcy Code .............................................24

            I.      Section 1129(a)(9) of the Bankruptcy Code .............................................24

            J.      Section 1129(a)(10) of the Bankruptcy Code ...........................................26

           K.      Section 1129(a)(11) of the Bankruptcy Code ...........................................26

            L.      Section 1129(a)(12) of the Bankruptcy Code ...........................................28

           M.     Section 1129(a)(13) of the Bankruptcy Code ...........................................28

RLF1 12470955v.6

II.     Section 1129(b) – The Plan Satisfies the "Cramdown" Requirements For Confirmation ........................................................................................................29

III.     Section 1129(c) – No Other Plan Has Been Proposed Or Confirmed ...................31

IV.     Section 1129(d) – The Plan's Purpose Is Consistent With the Bankruptcy Code .......................................................................................................................31

OTHER PLAN PROVISIONS ARE NECESSARY AND APPROPRIATE ..............................31

I.     The Settlements Should Be Approved ..................................................................31

II.     The Assumption or Rejection of the Executory Contracts and Unexpired Leases Under the Plan Should Be Approved ........................................................35

III.     Limited Consolidation For Plan Purposes Only Is Appropriate ..........................37

IV.     The Plan's Exculpation Provision Is Appropriate and Should Be Approved ........37

WAIVER OF STAY .................................................................................................................42

CONCLUSION ........................................................................................................................43

RLF1 12470955v.6

# TABLE OF AUTHORITIES

**Page**

C<small>ASES</small>

Allied Tech., Inc. v. R.B. Brunemann & Sons, Inc.,
  25 B.R. 484 (Bankr. S.D. Ohio 1982)........................................................................36

Borman's, Inc. v. Allied Supermarkets, Inc.,
  706 F.2d 187 (6th Cir. 1983), cert. denied, 464 U.S. 908 (1983)............................36

Case v. Los Angeles Lumber Prods. Co.
  308 U.S. 106 (1939) ................................................................................................32

City of Covington v. Covington Landing Ltd. P'ship,
  71 F.3d. 1221 (6th Cir. 1995) ..................................................................................35

CoreStates Bank v. United Chem. Techs., Inc.,
  202 B.R. 33 (E.D. Pa. 1996) ...................................................................................18

Fin. Sec. Assur. Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd.
  P'ship),
  116 F.3d 790 (5th Cir. 1997) ...................................................................................19

Fry's Metals, Inc. v. Gibbons (In re Rfe Indus., Inc.),
  283 F.3d 159 (3d Cir. 2002)....................................................................................32

Grp. of Inst'l Investors v. Chi., M., St. P., & P.R.R. Co.,
  318 U.S. 523 (1943)................................................................................................35

Hanson v. First Bank of S.D.,
  828 F.2d 1310 (8th Cir. 1987) .................................................................................17

In re AbitibiBowater Inc.,
  418 B.R. 815 (Bankr. D. Del. 2009) ........................................................................36

In re AbitibiBowater Inc.,
  Case No. 09-11296 (KJC) (Bankr. D. Del. Nov. 23, 2010) .....................................39

In re Acequia, Inc.,
  787 F.2d 1352 (9th Cir. 1986) ..............................................................................9, 30

In re ACG Holdings,
  Case No. 08-11467 (CSS) (Bankr. D. Del. Aug. 26, 2008).....................................39

In re Aleris Int'l, Inc.,
  2010 WL 3492664 (Bankr. D. Del. May 13, 2010)..................................... *passim*

In re AOV Indus.,
31 B.R. 1005 (D.D.C. 1983), aff'd in part, rev'd in part, 792 F.2d 1140 (D.C. Cir. 1986), vacated in light of new evidence, 797 F.2d 1004 (D.C. Cir. 1986)..............................22

In re Apex Oil Co.,
118 B.R. 683 (Bankr. E.D. Mo. 1990)....................................................................27

In re Armstrong World Indus., Inc.,
348 B.R. 111 (D. Del. 2006)................................................................................30

In re Armstrong World Indus., Inc.,
348 B.R. 136 (D. Del. 2006)............................................................................8, 22

In re Bildisco,
682 F.2d 72 (3d Cir. 1982), aff'd sub nom. NLRB v. Bildisco & Bildisco, 465 U.S. 513 (1984)........................................................................................................36

In re Block Shim Dev. Co.,
939 F.2d 289 (5th Cir. 1991) .............................................................................18

In re Cellular Info. Sys., Inc.,
171 B.R. 926 (Bankr. S.D.N.Y. 1994)..................................................................27

In re Century Glove, Inc.,
1993 WL 239489 (D. Del. Feb. 10, 1993) ..........................................................18

In re Chapel Gate Apartments, Ltd.,
64 B.R. 569 (Bankr. N.D. Tex. 1986)..................................................................20

In re Combustion Eng'g, Inc.,
391 F.3d 190 (3d Cir. 2004)..........................................................................17, 18

In re Coram Healthcare Corp.,
271 B.R. 228 (Bankr. D. Del. 2001) ...................................................................17

In re Crdentia Corp.,
2010 WL 3313383 (Bankr. D. Del. May 26, 2010)...............................................20

In re Crowthers McCall Pattern, Inc.,
120 B.R. 279 (Bankr. S.D.N.Y. 1990)..................................................................23

In re Drexel Burnham Lambert Grp.,
134 B.R. 493 (Bankr. S.D.N.Y. 1991)..................................................................33

In re Drexel Burnham Lambert Grp.,
138 B.R. 723 (Bankr. S.D.N.Y. 1992) ..................................................................27

In re Dura Auto. Sys., Inc.,
   Case No. 06-11202 (KJC) (Bankr. D. Del. May 13, 2008) ....................................40

In re Eagle-Picher Indus., Inc.,
   203 B.R. 256 (S.D. Ohio 1996) ...............................................................7, 8, 19, 23

In re Econ. Lodging Sys., Inc.,
   205 B.R. 862 (Bankr. N.D. Ohio 1997) ..............................................................22

In re Elm Creek Joint Venture,
   93 B.R. 105 (Bankr. W.D. Tex. 1988) ..................................................................27

In re FAH Liquidating Corp. f/k/a Fisker Auto. Holdings, Inc.,
   Case No. 13-13087 (KG) (Bankr. D. Del. July 28, 2014) (Confirmation Hr'g Tr.) ...............40

In re FAH Liquidating Corp. f/k/a Fisker Auto. Holdings, Inc.,
   Case No. 13-13087 (KG) (Bankr. D. Del. July 30, 2014) ....................................39

In re Fairfield Residential LLC,
   2010 WL 2904990 (Bankr. D. Del. July 6, 2010)..................................................18

In re Foamex Int'l Inc.,
   Case No. 05-12685 (KG) (Bankr. D. Del. Feb. 1, 2007) ......................................40

In re HSH Del. GP LLC,
   Case No. 10-10187 (MFW) (Bankr. D. Del. Jan. 18, 2011) (Confirmation Hr'g Tr.) ...........41

In re HSH Del. GP LLC,
   Case No. 10-10187 (MFW) (Bankr. D. Del. Jan. 18, 2011).................................39

In re Hilex Poly Co. LLC,
   Case No. 08-10890 (KJC) (Bankr. D. Del. June 26, 2008) ..................................39

In re Int'l Distrib. Ctrs., Inc.,
   103 B.R. 420 (S.D.N.Y. 1989)..............................................................................33

In re Jartran, Inc.,
   44 B.R. 331 (Bankr. N.D. Ill. 1984) .....................................................................23

In re Johns-Manville Corp.,
   68 B.R. 618 (Bankr. S.D.N.Y. 1986), aff'd in part, rev'd in part on other grounds, 78
   B.R. 407 (S.D.N.Y. 1987) aff'd, Kane v. Johns-Manville Corp., 843 F.2d 636 (2d Cir.
   1988) ...........................................................................................................20, 27, 30

In re Koelbl,
   751 F.2d 137 (2d Cir. 1984).................................................................................19

In re Laboratory Partners, Inc.,
    Case No. 13-12769 (PJW) (Bankr. D. Del. July 10, 2014) ...............................................39, 40

In re Lapworth,
    1998 WL 767456 (Bankr. E.D. Pa. Nov. 2, 1998)...................................................................15

In re Leslie Controls, Inc.,
    2010 WL 4386935 (Bankr. D. Del. Oct. 28, 2010) .................................................................39

In re Louise's, Inc.,
    211 B.R. 798 (D. Del. 1997).....................................................................................................32

In re Market Square Inn, Inc.,
    978 F.2d 116 (3d Cir. 1992)......................................................................................................35

In re Martin,
    66 B.R. 921 (Bankr. D. Mont. 1986) ........................................................................................26

In re Marvel Entm't Group, Inc.,
    222 B.R. 243 (Bankr. D. Del. 1998) ...................................................................................32, 33

In re Nassau Broad Partners L.P.,
    Case No. 11-12934 (KG) (Bankr. D. Del. July 31, 2013) (Confirmation Hr'g Tr.)................41

In re Nassau Broad Partners L.P.,
    Case No. 11-12934 (KG) (Bankr. D. Del. July 31, 2013) ........................................................39

In re Owens Corning,
    419 F.3d 195 F.3d (3d Cir. 2005) .............................................................................................37

In re Premier Int'l Holdings Inc.,
    Case No. 09-12019 (CSS) (Bankr. D. Del. Apr. 29, 2010) .....................................................39

In re PWS Holding Corp.,
    228 F.3d 224 (3d Cir. 2000).................................................................................15, 17, 38, 40

In re Remy Worldwide Holdings Inc.,
    Case No. 07-11481 (KJC) (Bankr. D. Del. Nov. 20, 2007) .....................................................40

In re Riodizio, Inc.,
    204 B.R. 417 (Bankr. S.D.N.Y. 1997)......................................................................................36

In re Rivers End Apartments, Ltd.,
    167 B.R. 470 (Bankr. S.D. Ohio 1994).....................................................................................27

In re S. Indus. Banking Corp.,
    41 B.R. 606 (Bankr. E.D. Tenn. 1984) .....................................................................................20

In re Sea Containers Ltd.,
    Case No. 06-11156 (KJC) (Bankr. D. Del. Nov. 24, 2008)....................................................39

In re Semcrude, L.P.,
    Case No. 08-11525 (Bankr. D. Del. Oct. 27, 2009).............................................................39

In re Sherwood Square Assocs.,
    107 B.R. 872 (Bankr. D. Md. 1989) ....................................................................................21

In re Sound Radio, Inc.,
    93 B.R. 849 (Bankr. D.N.J. 1988), aff'd in part, remanded in part on other grounds,
    103 B.R. 521 (D.N.J. 1989), aff'd, 908 F.2d 964 (3d Cir. 1990) ...........................................18

In re Stolrow's, Inc.,
    84 B.R. 167 (B.A.P. 9th Cir. 1988)......................................................................................19

In re Terrell,
    892 F.2d 469 (6th Cir. 1989) .............................................................................................36

In re Texaco, Inc.,
    84 B.R. 893 (Bankr. S.D.N.Y. 1988)........................................................................15, 21, 27

In re Toy & Sports Warehouse, Inc.,
    37 B.R. 141 (Bankr. S.D.N.Y. 1984) .....................................................................................7

In re Tranel,
    940 F.2d 1168 (8th Cir. 1991) ...........................................................................................22

In re Victory Constr. Co.,
    42 B.R. 145 (Bankr. C.D. Cal. 1984)...................................................................................23

In re Washington Mutual, Inc.,
    442 B.R. 314 (Bankr. D. Del. 2011) ...................................................................................40

In re W.E. Parks Lumber Co.,
    19 B.R. 285 (Bankr. W.D. La. 1982)...................................................................................21

In re Worldcom Inc.,
    2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) ..........................................................15

In re Zenith Elecs. Corp.,
    241 B.R. 92 (Bankr. D. Del. 1999) ................................................................................18, 29

John Hancock Mut. Life Ins. Co v. Route 37 Bus. Park Assocs.,
    987 F.2d 154 (3d Cir. 1993)...............................................................................................29

Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.),
    843 F.2d 636 (2d Cir. 1988)...........................................................................................7, 27

RLF1 12470955v.6

Key3 Media Group, Inc. v. Pulver.com, Inc. (In re Key3 Media Group, Inc.),
    336 B.R. 87 (Bankr. D. Del. 2005) ...................................................................32, 33

Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd.
    P'ship),
    115 F.3d 650 (9th Cir. 1997) ...............................................................................29

Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.),
    150 F.3d 503 (5th Cir. 1998) ...............................................................................29

McCormick v. Banc One Leasing Corp. (In re McCormick),
    49 F.3d 1524 (11th Cir. 1995) .............................................................................18

Myers v. Martin (In re Martin),
    91 F.3d 389 (3d Cir. 1996).................................................................................33

NLRB v. Bildisco & Bildisco,
    465 U.S. 513 (1984).............................................................................................35

Nordhoff Invs., Inc. v. Zenith Elecs. Corp.,
    258 F.3d 180 (3d Cir. 2001).................................................................................43

Official Comm. of Unsecured Creditors v. Michelson (In re Michelson),
    141 B.R. 715 (Bankr. E.D. Cal. 1992) .................................................................15

Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.),
    200 F.3d 154 (3d Cir. 1999).................................................................................17

Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,
    390 U.S. 414 (1968).........................................................................................32, 33

Prudential Ins. Co. of Am. v. Monnier (In re Monnier Bros.),
    755 F.2d 1336 (8th Cir. 1985) .............................................................................27

Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.),
    177 B.R. 791 (S.D.N.Y. 1995), aff'd, 68 F.3d 26 (2d Cir. 1995)...........................32

Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.,
    872 F.2d 36 (3d Cir. 1989)...................................................................................36

**FEDERAL RULES**

Federal Rules of Bankruptcy Procedure .................................................................. *passim*

**OTHER AUTHORITIES**

H.R. Rep. No. 95-595 (1977), reprinted in 1978 U.S.C.C.A.N. 5963 (1977) ..........................7, 16

S. Rep. No. 95-989 (1978), reprinted in 1978 U.S.C.C.A.N. 5787 (1978) ..............................7, 15

**MISCELLANEOUS**

7 Alan N. Resnick et al., <u>Collier on Bankruptcy</u> ¶ 1123.01[7] (16th ed. rev. 2010) .....................13

7 Alan N. Resnick, et al., <u>Collier on Bankruptcy</u> ¶ 1129.03[11] (16th ed. rev. 2010) .................26

## INTRODUCTION

1.      The above-captioned debtors (collectively, the "Debtors"), the Official Committee of Unsecured Creditors appointed in the above-captioned cases (the "Committee") and Black Diamond Commercial Finance, L.L.C. and Spectrum Commercial Finance LLC (the "First Lien Agents," and together with the Debtors and the Committee, the "Plan Proponents") submit this memorandum of law (this "Memorandum of Law") in support of the *Debtors' Joint Chapter 11 Plan of Reorganization Proposed by the Debtors, the Committee and the First Lien Agents* (as it may be modified or amended, the "Plan") pursuant to Section 1129 of title 11 of the United States Code (collectively, the "Bankruptcy Code").   In addition, as set forth herein, the Plan Proponents request a waiver of the 14-day stay of the confirmation order imposed by Rule 3020(e) of the Federal Rules of Bankruptcy Procedure.

## PRELIMINARY STATEMENT

2.      After consummating the sale of substantially all of their operating assets in transactions with Jack Cooper and the SBDRE Purchaser approved by this Court in late 2013, the Debtors and their principal creditor constituencies – represented by the Committee and the First Lien Agents – were faced with a decision on how to bring these Chapter 11 Cases to conclusion. The options were to pursue a chapter 11 plan of reorganization or convert the cases to cases under Chapter 7 of the Bankruptcy Code.   Each option presented potential issues and hurdles that could have materially impacted recoveries for creditors. For instance, in evaluating the best path forward the parties had to consider, among other issues:   (a) the magnitude of the potential Administrative Expense Claims and Priority Claims that would have to be paid if a plan were to be confirmed; (b) how best to continue the prosecution of the Estate Claims (arguably the most meaningful remaining asset of the Debtors and the sole potential source for unsecured creditor recoveries); (c) how to resolve the First Lien Agent's entitlement to adequate protection and the

- 1 -

magnitude of any "diminution" suffered; and (d) how to resolve the issues surrounding the First Lien Agents' obligation to fund certain wind down expenses as required by the JCT Sale Order. After extensive discussion and negotiations, the Plan Proponents determined that it would be in the best interests of the Debtors and their creditors to pursue confirmation of a plan of reorganization.

3.      To that end, the Plan Proponents embarked on a process to determine whether confirmation of a reorganization plan was feasible.  One important part of this process involved negotiations with certain creditors who had asserted material Administrative Expense Claims and/or Priority Claims against the Debtors, in an effort to settle those claims at significantly discounted amounts.  Those negotiations resulted in the various settlements embodied in the Plan, including the AIG Settlement (which settles alleged Administrative Expense Claims of in excess of $4 million for a $1 million payment), the Central States Settlement (which settles alleged Administrative Expense Claims and Priority Claims in excess of $1 million for a $270,000 payment), and the Northwest Settlement (which settles alleged Administrative Expense Claims and Priority Claims of $93,000 for a $40,000 payment).  In addition, the Committee and the First Lien Agents engaged in negotiations to resolve the issues surrounding the First Lien Agents' adequate protection entitlements and obligations to fund certain wind down expenses in accordance with the JCT Sale Order.  Those negotiations resulted in the settlement embodied in the Plan, which (assuming confirmation of the Plan) will result in all Administrative Expense Claims and Priority Claims being paid in full, and unsecured creditors receiving a distribution of both cash and interests in the Litigation Trust (with committed funding in place for the prosecution of the Litigation Claims).  In the view of the Plan Proponents, this outcome is

- 2 -

undeniably superior to the outcome that would result from conversion of these cases to cases under Chapter 7.

4.      The Plan Proponents respectfully submit that the Plan meets all of the requirements under the Bankruptcy Code for plan confirmation as set forth in further detail below.  Specifically, the Plan provides for the payment of all unpaid Allowed Administrative Claims[1] and Priority Claims in full — something that may not be possible if the Debtors remain in Chapter 11 and continue to accrue administrative costs, and likely will not occur if the Chapter 11 Cases are converted to cases under Chapter 7 of the Bankruptcy Code.   As noted below, the Plan Proponents will supplement this Memorandum of Law following the expiration of the Voting Deadline (defined below) to the extent that any one or more of the Impaired Voting Classes rejects the Plan.

## STATEMENT OF FACTS

### I.      History of the Debtors

5.      The Debtors' main line of business was carried out by Allied Automotive and its direct and indirect subsidiaries (collectively, the "Allied Automotive Group").[2]  This major line of business, known in the industry as "car-haul," was the transport of light vehicles, such as automobiles, sport-utility vehicles and light trucks, from manufacturing plants, ports, auctions, and railway distribution points to automobile dealerships in the United States and Canada.  The trips were generally what are known in the industry as "short hauls," with each averaging less than two hundred miles.  The Debtors' major customers were automobile manufacturers.  Allied

---

[1]  The amounts of certain of the Allowed Administrative Claims have been negotiated and are reflected in the Settlements (defined below).  The Settlements are incorporated into the Plan.  Therefore, the Debtors' ability to satisfy the Claims related to the Settlements (and to satisfy all Administrative Claims and Priority Claims) is linked to the successful Confirmation of the Plan.

[2]  The Allied Automotive Group included the following Debtors: Allied Automotive, Allied Systems, Allied Canada, QAT, RMX, Transport Support, F.J., GACS, Commercial Carriers and Allied Freight.

Automotive Group, primarily through its operating subsidiary, Allied Systems, transported light vehicles by means of tractor trailers (the "Rigs") specially designed for transporting light vehicles. As of the end of 2011, the Debtors owned about 2400 Rigs, which operated out of approximately 44 terminals (most of which were leased), located in the United States and Canada. Allied Systems' drivers were unionized.

6.       The Debtors' much smaller line of business was carried out by Axis and its direct and indirect subsidiaries (collectively, the "Axis Group").[3]  This line of business included arranging for and managing vehicle tracking, vehicle accessorizing, and dealer preparation services for the automotive industry in the United States and Canada, and providing yard management services in Mexico.  The Axis Group operated 39 terminals located in the United States, Canada and Mexico.

7.       The Debtors were reorganized in Chapter 11 cases that were filed in the United States Bankruptcy Court for the Northern District of Georgia on July 31, 2005.  These cases resulted in the 2007 Plan of Reorganization, which was confirmed and became effective on May 29, 2007.  Substantially all of the exit financing (including the First Lien Credit Facility and the Second Lien Credit Facility) established on the effective date of the 2007 Plan of Reorganization was still outstanding on the date involuntary petitions were filed against Allied Holdings and Allied Systems.  The amounts outstanding under these facilities are set forth in the Disclosure Statement.  The Disclosure Statement further sets forth the extensive litigation that has occurred since late 2009 relating to the First Lien Credit Facility.

---

[3]  The Axis Group included the following Debtors: Axis, CT Services, Cordin, Terminal Services, Axis Canada, Axis Areta, Logistic Technology and Logistic Systems

**II.      Events During the Bankruptcy Case**

8.      During the Chapter 11 Cases, the Debtors entered into two debtor-in-possession facilities.  The 2012 DIP Facility was provided by the Yucaipa DIP Lenders (as defined in the Disclosure Statement) and was approved on a final basis on July 12, 2012 pursuant to the 2012 DIP Order.  The Replacement DIP Facility was provided by affiliates of the First Lien Agents and was approved on a final basis on June 21, 2013 pursuant to the Replacement DIP Order.  The proceeds of the Replacement DIP Facility were used to refinance in full the 2012 DIP Facility, to pay certain fees and expenses related to the Replacement DIP Facility and for the Debtors' working capital needs and general corporate purposes.  The amounts outstanding under the Replacement DIP Facility were paid in full from the proceeds of the Sale.

9.      During the Chapter 11 Cases, the Debtors sold substantially all of their assets to two purchasers, Jack Cooper and the SBDRE Purchaser.  Jack Cooper purchased substantially all of the Debtors' assets other than certain owned real and personal property (the "Excluded Assets").  The SBDRE Purchaser purchased a majority of the Excluded Assets.  The JCT Sale was approved on September 17, 2013 and closed on December 27, 2013.  The SBDRE Sale was approved on September 30, 2013 and closed on March 20, 2014.

10.      Three adversary proceedings have been commenced during the pendency of the Chapter 11 Cases:  (1) the Allied Adversary Proceeding, commenced on October 18, 2012 by the Debtors against the First Lien Lenders; (2) the Committee Adversary Proceeding, commenced on February 1, 2013 (amended complaint filed on March 14, 2013) by the Committee against Yucaipa; and (3) a case commenced on November 19, 2014 by Black Diamond, Spectrum, and the First Lien Agents against Yucaipa, numerous officers and directors of Allied, and Ronald Burkle (the "Lender Direct Adversary Proceeding," and together with the Allied Adversary Proceeding and the Committee Adversary Proceeding, the "Adversary Proceedings").  The

- 5 -

claims asserted in the Committee Adversary Proceeding are the Estate Claims, and the claims asserted in the Lender Direct Adversary Proceeding are the Lender Direct Claims.  Many of the claims asserted in the Adversary Proceedings relate to the First Lien Credit Facility.  The Adversary Proceedings are currently pending before the Court.

11.    On May 4, 2015, the Plan Proponents filed the Plan and the accompanying Disclosure Statement [Docket No. 2940].  Updated versions of the Plan and Disclosure Statement were filed on June 15, 2015 and June 17, 2015 [Docket Nos. 3004, 3013 & 3014].  On July 8, 2015, the Court entered the *Order (I) Approving Disclosure Statement, (II) Approving Voting and Tabulation Procedures, (III) Setting Confirmation Hearing and Related Deadlines and (IV) Granting Related Relief* [Docket No. 3049] (the "<u>Disclosure Statement Order</u>").  In accordance with the Disclosure Statement Order, the Debtors caused copies of the Disclosure Statement to be sent to creditors, interest holders and other parties in interest in the Bankruptcy Cases.[4]  The Court set a hearing to consider the Plan Confirmation for September 9, 2015 at 9:30 a.m., Eastern Daylight Time.

12.    The Plan divides holders of Claims against, and Interests in, the Debtors into seven separate Classes.  Class 1 (Priority Claims) will receive such treatment that renders the holders of Priority Claims unimpaired.  Class 2 (First Lien Lender Claims), Class 3 (Second Lien Lender Claims), Class 4 (AIG Claims), Class 5 (General Unsecured Claims) are each impaired and entitled to vote in favor of or against the Plan.  Class 6 (Parent Equity Interests) is impaired and will receive no distribution under the Plan.  Accordingly, Class 6 is deemed to reject the Plan.  Class 7 (Subsidiary Equity Interests) is unimpaired and deemed to accept the Plan.

---

[4]  <u>See</u> Affidavit of Service [Docket No. 3071].

<u>**THE PLAN MEETS ALL APPLICABLE CONFIRMATION REQUIREMENTS**</u>

13.     As set forth below, both the Plan and the Plan Proponents meet all the requirements of Section 1129 of the Bankruptcy Code and should be confirmed.

**I.     The Plan Complies With Section 1129(a) of the Bankruptcy Code**

    **A.     Section 1129(a)(1) of the Bankruptcy Code**

14.     The Plan complies with Section 1129(a)(1) of the Bankruptcy Code, which provides that a plan of reorganization may be confirmed only if "[t]he plan complies with the applicable provisions of this title."  11 U.S.C. § 1129(a)(1); <u>In re Eagle-Picher Indus., Inc.</u>, 203 B.R. 256, 270-73 (S.D. Ohio 1996) (examining each requirement of chapter 11 to demonstrate that Section 1129(a)(1) was satisfied); <u>In re Toy & Sports Warehouse, Inc.</u>, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984) ("In order for a plan of reorganization to pass muster . . . it must comply with all the requirements of Chapter 11 . . . .").

15.     The legislative history of Section 1129(a)(1) indicates that the primary focus of this requirement is to ensure that a plan complies with Sections 1122 and 1123 of the Bankruptcy Code, which govern classification of claims and interests and the contents of a plan, respectively. <u>See</u> S. Rep. No. 95-989, at 126 (1978), <u>reprinted in</u> 1978 U.S.C.C.A.N. 5787, 5912 (1978); H.R. Rep. No. 95-595, at 412 (1977), <u>reprinted in</u> 1978 U.S.C.C.A.N. 5963, 6368 (1977); <u>see also</u> <u>Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)</u>, 843 F.2d 636, 648-49 (2d Cir. 1988) (holding that legislative history indicates that Section 1129(a)(1) was intended to require compliance with Sections 1122 and 1123).

        **1.     Section 1122 of the Bankruptcy Code – Classification of Claims and Interests**

16.     Section 1122 of the Bankruptcy Code provides that the claims or interests within a given class must be "substantially similar" to the other claims or interests in that class:

> (a)    Except as provided in subsection (b) of this Section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

11 U.S.C. § 1122.  Courts consistently have held that Section 1122(a) of the Bankruptcy Code is satisfied so long as similar claims are classified together.  See In re Armstrong World Indus., 348 B.R. 136, 160 (D. Del. 2006)  (holding that Section 1122(a) of the Bankruptcy Code was satisfied where similar claims were classified together); In re Aleris Int'l, Inc., 2010 WL 3492664, at *12 (Bankr. D. Del. May 13, 2010) (same); see also Eagle-Picher Indus., 203 B.R. at 270 (same).

17.    The Plan classifies Claims in accordance with Section 1122(a) of the Bankruptcy Code, as each of the Plan's Classes contains Claims that share the same priority status, contractual rights and enforcement rights against the Debtors' Estates.  In particular, Article II of the Plan segregates into separate Classes:  Priority Claims (Class 1); First Lien Lender Claims (Class 2); Second Lien Lender Claims (Class 3); AIG Claims (Class 4); General Unsecured Claims (Class 5); Parent Equity Interests (Class 6); and Subsidiary Equity Interests (Class 7).[5] The number of Classes in the Plan reflects the diverse characteristics of the Claims and Interests classified in the various Classes, and the legal rights under the Bankruptcy Code of each of the holders of Claims or Interests within a particular Class are substantially similar to other holders of Claims or Interests within the same Class.

18.    In addition, valid business, factual and legal reasons exist for the separate classification of Claims and Interests.  At a threshold level, the Plan separates Claims from Interests, Priority Claims from both Secured Claims and General Unsecured Claims, First Lien

---

[5]    In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified.

- 8 -

Lender Claims from Second Lien Lender Claims and Parent Equity Interests from Subsidiary Equity Interests.  The Debtors also separately classified the AIG Claims (Class 4) from the Claims held by other General Unsecured Creditors (Class 5).  This separate classification reflects the unique circumstances relating to the AIG Claims, their asserted entitlement to administrative expense priority status, and the terms of the AIG Settlement.

> **2.    Compliance With Section 1123(a) of the Bankruptcy Code – Mandatory Contents of the Plan**

19.    Section 1123(a) of the Bankruptcy Code requires that a chapter 11 plan: (a) designate classes of claims and interests; (b) specify unimpaired classes of claims and interests; (c) specify treatment of impaired classes of claims and interests; (d) provide for equality of treatment within each class; (e) provide adequate means for the plan's implementation; (f) provide for the prohibition of nonvoting equity securities and provide an appropriate distribution of voting power among the classes of securities; and (g) contain only provisions that are consistent with the interests of the creditors and equity security holders and with public policy with respect to the  manner of selection of the reorganized company's officers and directors.  See 11 U.S.C. § 1123(a).  In analyzing a plan's provisions with respect to the selection of officers and directors, a court is to consider "the shareholders' interest in participating in the corporation, the desire to preserve the debtor's reorganization, and the overall fairness of the provisions."  In re Acequia, Inc., 787 F.2d 1352, 1362 (9th Cir. 1986).

20.    The Plan fully complies with each requirement of Section 1123(a) described above.  As previously noted with respect to the Plan's compliance with Section 1122 of the Bankruptcy Code, Article II of the Plan designates seven separate Classes of Claims and Interests, as required by Section 1123(a)(1) of the Bankruptcy Code.  Section 2.3 of the Plan specifies that the Claims in Class 1 are unimpaired under the Plan, as required by

- 9 -

Section 1123(a)(2) of the Bankruptcy Code.  Sections 2.4-2.6 of the Plan specify that the Claims and Interests in Classes 2, 3, 4, 5, 6, and 7 are impaired and describes the treatment of such Classes in accordance with Section 1123(a)(3) of the Bankruptcy Code.  Further, as required by Section 1123(a)(4) of the Bankruptcy Code, the treatment of each Claim or Interest within a Class is either (i) the same as the treatment of each other Claim or Interest in such class or (ii) otherwise consistent with the legal rights of such claimant.

21.     In accordance with the requirements of Section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate means for its implementation through Article V and various other provisions.  Specifically, the Plan provides for:

(a)     the consummation of the Litigation Funding Loans under Section 5.1(c) of the Plan;

(b)     the continuation of each Reorganized Debtor's corporate existence, each with all of the powers of corporation, limited partnership, or limited liability company, as applicable under the laws of its respective jurisdiction of organization under Section 5.2 of the Plan;

(c)     the adoption of the corporate organizational documents that will govern the Reorganized Debtors and the identification of the initial boards of directors and officers of the Reorganized Debtors under Sections 5.3 and 5.6 of the Plan;

(d)     the cancellation of all issued and outstanding Old Securities under Sections 5.4 and 7.7 of the Plan and issuance of the New Common Stock to the New Common Stockholders pursuant to Sections 3.3(a) and 5.5 of the Plan;

(e)     the authorization to effectuate various documents and enter into various transactions to effectuate the Plan under Section 5.7 of the Plan;

- 10 -

(f)    the authorization of the Plan Administrator to (i) effect all actions necessary to implement the provisions of the Plan, (ii) make distributions as contemplated in the Plan, (iii) establish and administer any necessary reserves for Disputed Claims, and (iv) object to Disputed Claims and prosecute, settle, compromise, withdraw or resolve such Disputed Claims under Sections 5.8 and 7.5 of the Plan;

(g)    the revesting of all of the Reorganized Debtors' Assets in the relevant Reorganized Debtor free and clear of all Claims, Interests and Liens with respect thereto on the Effective Date under Section 5.9 of the Plan;

(h)    the appointment of the Litigation Trustee under Section 5.10(a) of the Plan;

(i)    the authorization of the Litigation Trustee to make all decisions with respect to the prosecution of the Litigation Claims and administer the Litigation Trust Assets under Section 5.10(b)-(c) of the Plan;

(j)    the establishment of the Allied Litigation Trust and the vesting of the Estate Claims in the Allied Litigation Trust on the Effective Date under Section 5.11 of the Plan;

(k)    the formation of the Litigation Oversight Committee and the authorization of the Litigation Oversight Committee to oversee the Allied Litigation Trust and the Litigation Trustee under Section 5.12 of the Plan;

(l)    the approval of the (i) AIG Settlement, (ii) the Central States Settlement, (iii) the Northwest Settlement, (iv) the settlement of the extent of the First Lien Agents' right to adequate protection pursuant to the 2012 Final DIP Order and the Replacement DIP Order, and (v) the settlement of  the extent of First Lien Agents' obligation to fund the Wind Down Budget (as defined in the JCT Sale Order) (collectively, the "Settlements") pursuant to Bankruptcy Rule 9109 under Section 5.15 of the Plan;

- 11 -

(m)      the exemption from certain transfer taxes under Section 5.16 of the Plan;

(n)      the dissolution of the Committee and the Retiree Committee upon the Effective Date under Sections 5.18 and 5.19 of the Plan;

(o)      the assumption or rejection of executory contracts and unexpired leases under Article VI of the Plan;

(p)      the authorization of the Plan Administrator to set off against any Claims under Section 7.9 of the Plan; and

(q)      the authorization to execute the (i) releases provided by the Debtors and holders of Claims, (ii) discharge of the Debtors, (iii) permanent injunction related to the releases, and (iv) limitation of liability under Article X of the Plan.

22.      Section 1123(a)(6) of the Bankruptcy Code requires that a debtor's corporate organizational documents prohibit the issuance of nonvoting equity securities.  In accordance with that requirement, Section 5.3 of the Plan provides that the New Debtor Governing Documents will prohibit the issuance of nonvoting equity securities to the extent required by Section 1123(a)(6) of the Bankruptcy Code.

23.      Finally, Section 1123(a)(7) of the Bankruptcy Code requires that a plan of reorganization "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, directors, or trustee under the plan . . . ."  11 U.S.C. § 1123(a)(7).  This provision is supplemented by Section 1129(a)(5) of the Bankruptcy Code, which directs the scrutiny of the court to the methods by which the management of the reorganized corporation is to be chosen to provide    adequate    representation    of    those    whose    investments    are    involved    in    the

- 12 -

reorganization — i.e., creditors and equity holders.  See 7 Alan N. Resnick et al., Collier on Bankruptcy ¶ 1123.01[7] (16th ed. rev. 2010).

24.     The Plan complies with Section 1123(a)(7) and ensures that the selection of the officers and directors of each Reorganized Debtor are consistent with the interests of creditors and equity security holders, and with public policy.  Section 5.6 of the Plan provides that the identities of the initial directors of the New Board shall be disclosed prior to the Confirmation Hearing as part of the Plan Supplement.  Further, this Section of the Plan describes that the initial directors of the New Board and officers of each of the Reorganized Debtors shall be selected by the parties to whom the New Common Stock will be distributed pursuant to the Plan in accordance with the New Debtor Governing Documents.  The Plan's provisions with respect to the selection of directors and officers are, thus, consistent with the interests of creditors and public policy.

**3.      Section 1123(b) of the Bankruptcy Code – Discretionary Contents of the Plan**

25.     Section 1123(b) of the Bankruptcy Code identifies various discretionary provisions that may be included in a plan of reorganization, but are not required.  For example, a plan may impair or leave unimpaired any class of claims or interests and provide for the assumption or rejection of executory contracts and unexpired leases.  11 U.S.C. §§ 1123(b)(1)-(2).  A plan also may provide for (a) "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate;" (b) "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest"; or (c) "the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests."  11 U.S.C. §§ 1123(b)(3)(A)-(B); 11 U.S.C. §§ 1123(b)(4).  Finally, a plan may "modify the rights of

- 13 -

holders of secured claims . . . or . . . unsecured claims, or leave unaffected the rights of holders of any class of claims" and may "include any other appropriate provision not inconsistent with the applicable provisions of [Title 11]."  11 U.S.C. §§ 1123(b)(5)-(6).

26.    The Plan includes various provisions that fall under the spectrum of Section 1123(b) of the Bankruptcy Code.  For instance, the Plan impairs Classes 2, 3, 4, 5, and 6, leaving Classes 1 and 7 unimpaired.  See Plan Art. II.  The Plan further provides for the retention of the Estate Claims.  See Plan § 5.11.  Article VI of the Plan includes provisions that provide for the assumption or rejection of executory contracts and unexpired leases to which the Debtors are parties.  See Plan Art. VI.  Section 6.4 of the Plan also provides for the satisfaction of Cure Claims associated with each executory contract and unexpired lease to be assumed pursuant to the Plan in accordance with Section 365(b)(1) of the Bankruptcy Code.  See Plan § 6.4.

27.    In accordance with Section 1123(b)(6) of the Bankruptcy Code, the Plan includes numerous other provisions designed to ensure its implementation that are consistent with the Bankruptcy Code, including the provisions of:    (a) Section 7.2 of the Plan, governing distributions to the holders of Allowed Claims; (b) Section 7.5 of the Plan, establishing procedures for resolving Disputed Claims and making distributions on account of such Disputed Claims once resolved; (c) Sections 10.7 and 10.9 of the Plan, establishing the discharge of Claims and injunctions against certain actions; and (d) Article IX of the Plan, regarding retention of jurisdiction by the Bankruptcy Court over certain matters after the Effective Date.

28.    Finally, the Plan includes the Settlements that the Debtors believe are appropriate under applicable law, including Sections 1123(b)(1), (3) and (6), and Bankruptcy Rule 9019.  A further analysis of these provisions is set forth below.

- 14 -

### B.    Section 1129(a)(2) of the Bankruptcy Code

29.    The Plan complies with Section 1129(a)(2) of the Bankruptcy Code, which requires that a plan proponent comply with applicable provisions of the Bankruptcy Code.  The legislative history accompanying Section 1129(a)(2) indicates that the principal purpose of this section is to ensure compliance with the disclosure and solicitation requirements set forth in Section 1125 of the Bankruptcy Code.  See In re PWS Holding Corp., 228 F.3d 224, 248 (3d Cir. 2000) ("[Section] 1129(a)(2) [of the Bankruptcy Code] requires that the plan proponent comply with the adequate disclosure requirements of § 1125"); In re Aleris Int'l, 2010 WL 3492664, at *20 ("The legislative history of Section 1129(a)(2) of the Bankruptcy Code reflects that this provision is intended to encompass the solicitation and disclosure requirements under Sections 1125 and 1126 of the Bankruptcy Code."); In re Lapworth, 1998 WL 767456, at *20 (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of [Section] 1129(a)(2) specifically identifies compliance with the disclosure requirements of [Section] 1125 as a requirement of [Section] 1129(a)(2)."); Official Comm. of Unsecured Creditors v. Michelson (In re Michelson), 141 B.R. 715, 719 (Bankr. E.D. Cal. 1992) ("Compliance with the disclosure and solicitation requirements is the paradigmatic example of what the Congress had in mind when it enacted Section 1129(a)(2)."); In re Texaco, Inc., 84 B.R. 893, 906-07 (Bankr. S.D.N.Y. 1988) ("[The] principal purpose of Section 1129(a)(2) is to assure that the proponents have complied with the requirements of Section 1125 in the solicitation of acceptances to the plan"); see also In re Worldcom Inc., 2003 WL 23861928, at *49 (Bankr. S.D.N.Y. Oct. 31, 2003) ("section 1129(a)(2) . . . is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code."); S. Rep. No. 95-989, at 126 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5912 (1978) ("Paragraph (2) [of Section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as Section 1125

- 15 -

regarding disclosure."); H.R. Rep. No. 95-595, at 412 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6368 (1977).

30.     The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, including the provisions of Section 1125 regarding disclosure and plan solicitation.  Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan of reorganization from holders of claims or interests "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or summary of the plan, and a written disclosure statement approved . . . by the court as containing adequate information." 11 U.S.C. § 1125(b).  In the instant cases, the Plan Proponents solicited votes in favor or against the Plan from Classes 2, 3, 4, and 5 as such Classes are impaired but will receive some distribution under the Plan.  The Plan Proponents did not solicit votes from Classes 1, 6, and 7 as such Classes are deemed to either accept or reject the Plan under Section 1126(f) and (g) of the Bankruptcy Code.

31.     Pursuant to the Disclosure Statement Order, the Bankruptcy Court specifically determined that the Disclosure Statement contained adequate information within the meaning of Section 1125 of the Bankruptcy Code.  See Disclosure Statement Order, ¶ 2.  The Bankruptcy Court further approved the form of notice of the confirmation hearing (the "Confirmation Hearing Notice") and required that the Plan Proponents serve the Confirmation Hearing Notice on all persons or entities listed on the Creditor Matrix, all other persons requesting notices pursuant to Bankruptcy Rule 2002, the U.S. Trustee, and the counter-parties to the Debtors' unexpired leases and executory contracts that have not yet been assumed or rejected.  See Disclosure Statement Order, ¶¶ 5 & 10-12.

- 16 -

32.    The Plan Proponents have complied with the Disclosure Statement Order and caused the mailing of the Confirmation Hearing Notice to occur in accordance with the requirements of the Disclosure Statement Order.  See Affidavit of Service [Docket No. 3071]. The Plan Proponents further have complied with all applicable provisions of the Bankruptcy Code, including Section 1125 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018.  As a result, the Plan meets the requirements of Section 1129(a)(2) of the Bankruptcy Code.

C.    **Section 1129(a)(3) of the Bankruptcy Code**

33.    The Plan satisfies Section 1129(a)(3) of the Bankruptcy Code, which requires that a plan of reorganization be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3).  Courts consider a plan as proposed in good faith "if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the [Bankruptcy] Code."  Hanson v. First Bank of S.D., 828 F.2d 1310, 1315 (8th Cir. 1987); see also In re Combustion Eng'g, Inc., 391 F.3d 190, 247 (3d Cir. 2004) ("[F]or purposes of determining good faith under Section 1129(a)(3) … the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.") (quoting In re PWS Holding Corp., 228 F.3d at 242); Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.), 200 F.3d 154, 165 (3d Cir. 1999) (the good faith standard in Section 1129(a)(3) requires that there be "'some relation'" between the chapter 11 plan and the "reorganization-related purposes" that chapter 11 was designed to serve) (citations omitted); In re Coram Healthcare Corp., 271 B.R. 228, 234 (Bankr. D. Del. 2001) ("The good faith standard requires that the plan be proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code.") (quoting In re Zenith Elecs. Corp., 241 B.R. 92, 107 (Bankr. D. Del. 1999)) (internal quotations omitted).

- 17 -

34.     One must view the requirement of good faith solely in the context of the totality of the circumstances surrounding the formulation of a chapter 11 plan.  See In re Fairfield Residential LLC, 2010 WL 2904990, at *9 (Bankr. D. Del. July 6, 2010) (holding that requirements of Section 1129(a)(3) of the Bankruptcy Code were satisfied after examining the "totality of the circumstances"); see also McCormick v. Banc One Leasing Corp. (In re McCormick), 49 F.3d 1524, 1526 (11th Cir. 1995) ("The focus of a court's inquiry is the plan itself, and courts must look to the totality of the circumstances surrounding the plan …."); In re Block Shim Dev. Co., 939 F.2d 289, 292 (5th Cir. 1991) (finding that good faith requirement "is viewed in the context of the circumstances surrounding the plan"); CoreStates Bank v. United Chem. Techs., Inc., 202 B.R. 33, 57 (E.D. Pa. 1996) (concluding that courts must view good faith by looking at totality of circumstances).

35.     In determining whether a plan of reorganization will succeed and accomplish goals consistent with the Bankruptcy Code, courts look to the terms of the plan itself.  See Combustion Eng'g, 391 F.3d at 246; In re Sound Radio, Inc., 93 B.R. 849, 853 (Bankr. D.N.J. 1988) (concluding that the good faith test provides the court with significant flexibility and is focused on an examination of the plan itself, rather than other, external factors), aff'd in part, remanded in part on other grounds, 103 B.R. 521 (D.N.J. 1989), aff'd, 908 F.2d 964 (3d Cir. 1990).

36.     The plan proponent must show, therefore, that the plan has not been proposed by any means forbidden by law and that the plan has a reasonable likelihood of success.  See In re Century Glove, Inc., 1993 WL 239489, at *4 (D. Del. Feb. 10, 1993) ("A court may only confirm a plan for reorganization if . . . 'the plan has been proposed in good faith and not by any means forbidden by law. . . .'  Moreover, '[w]here the plan is proposed with the legitimate and

- 18 -

honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of Section 1129(a)(3) is satisfied.'") (citations omitted); see also Fin. Sec. Assur. Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship), 116 F.3d 790, 802 (5th Cir. 1997) (same); In re Koelbl, 751 F.2d 137, 139 (2d Cir. 1984) (noting that plan provisions may not contravene any law, including state law, and a plan must have been proposed with "a basis for expecting that a reorganization can be effected'") (citations omitted).

37.      The Plan Proponents drafted the Plan in a manner that effectuates the objectives and purposes of the Bankruptcy Code.  The Plan reflects the consensus that the Debtors, the Committee, the First Lien Agents and several other parties in interest, including AIG, Central States and Northwest reached as a result of their negotiations and demonstrates that the Plan Proponents proposed the Plan in good faith.  See In re Stolrow's, Inc., 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988) (holding that good faith in proposing plan "also requires a fundamental fairness in dealing with one's creditors"); Eagle-Picher Indus., 203 B.R. at 274 (finding that plan of reorganization was proposed in good faith when, among other things, it was based on extensive arms-length negotiations among plan proponents and other parties in interest).  In addition, the Plan contains no provision that is contrary to state or other laws nor is there any indication the Plan Proponents lack the ability to consummate the Plan.  Accordingly, the Plan satisfies the requirements of Section 1129(a)(3) of the Bankruptcy Code.

### D.      Section 1129(a)(4) of the Bankruptcy Code

38.      The Plan also complies with Section 1129(a)(4) of the Bankruptcy Code, which states the following:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan incident to the case, has

- 19 -

been approved by, or is subject to the approval of, the court as reasonable.

11 U.S.C. § 1129(a)(4). In essence, Section 1129(a)(4) of the Bankruptcy Code requires that any and all fees promised or received in connection with or in contemplation of a chapter 11 case must be disclosed and subject to the court's review. See In re Crdentia Corp., 2010 WL 3313383, at *8 (Bankr. D. Del. May 26, 2010) (holding that plan complied with Section 1129(a)(4) where all final fees and expenses payable to professionals remained subject to final review by bankruptcy court); In re Johns-Manville Corp., 68 B.R. 618, 632 (Bankr. S.D.N.Y. 1986), aff'd in part, rev'd in part on other grounds, 78 B.R. 407 (S.D.N.Y. 1987) aff'd, Kane v. Johns-Manville Corp., 843 F.2d 636 (2d Cir. 1988); In re Chapel Gate Apartments, Ltd., 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (before plan may be confirmed, "there must be a provision for review by the Court of any professional compensation"); In re S. Indus. Banking Corp., 41 B.R. 606, 612 (Bankr. E.D. Tenn. 1984) (even absent challenge, court has independent duty to determine reasonableness of professional fees).

39.    Section 10.1 of the Plan provides for the payment of Professional Fee Claims and makes all such payments subject to Court approval in accordance with applicable legal standards. While the Bankruptcy Court has authorized the interim payment of fees and expenses incurred by Professionals in connection with the Bankruptcy Cases, all such fees and expenses remain subject to the Court's final review.    See Plan § 9.1(b). Accordingly, the Plan fully complies with the requirements of Section 1129(a)(4) of the Bankruptcy Code.

**E.    Section 1129(a)(5) of the Bankruptcy Code**

40.    Prior to the Confirmation Hearing, the Plan Proponents will file the Plan Supplement which will cause the Plan to comply with Section 1129(a)(5) of the Bankruptcy Code, which requires that a plan proponent disclose: (a) the identity of those individuals who

- 20 -

will serve as management of the reorganized debtor; (b) the identity of any insider to be employed or retained by the reorganized debtor; and (c) the nature of the compensation proposed to be paid to such insider.  In addition, under Section 1129(a)(5)(A)(ii), the appointment or continuation in office of existing management must be consistent with the interests of creditors, equity security holders and public policy.

41.    In determining whether the post-confirmation management of a debtor is consistent with the interests of creditors, equity security holders and public policy, a court must consider proposed management's competence, discretion, experience and affiliation with entities having an interest adverse to the debtor.  See In re W.E. Parks Lumber Co., 19 B.R. 285, 292 (Bankr. W.D. La. 1982) (court should consider whether "the initial management and board of directors of the reorganized corporation will be sufficiently independent and free from conflicts and the potential of post-reorganization litigation so as to serve all creditors and interested parties on an even and loyal basis").  In general, however, "[t]he [d]ebtor should have first choice of its management, unless compelling cause to the contrary exists. . . ."  In re Sherwood Square Assocs., 107 B.R. 872, 878 (Bankr. D. Md. 1989).  The case law also is clear that a plan may contemplate the retention of the debtor's existing directors and officers.  See, e.g., Texaco, 84 B.R. at 908 (holding that Section 1129(a)(5) was satisfied where notice was provided that debtor's existing directors and officers would continue to serve in office after plan confirmation).

42.    The Plan Proponents will disclose at or prior to the Confirmation Hearing all necessary information regarding the Reorganized Debtors' officers and directors.  In addition, as will be established by these disclosures, the Reorganized Debtors' officers shall be qualified and experienced.  As such, the appointment of the proposed directors and officers is consistent with

- 21 -

the interests of holders of Claims and Interests and with public policy, and the Plan satisfies the

requirements of Section 1129(a)(5) of the Bankruptcy Code.

#### F.    Section 1129(a)(6) of the Bankruptcy Code

43.    Section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Debtors, as it

requires that "[a]ny governmental regulatory commission with jurisdiction, after confirmation of

the plan, over the rates of the debtor has approved any rate change provided for in the plan, or

such rate change is expressly conditioned on such approval."   11 U.S.C. § 1129(a)(6).   The

Debtors' businesses have no involvement with the establishment of rates over which any

regulatory commission has jurisdiction or will have jurisdiction after the Plan's confirmation.

Accordingly, Section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Debtors.

#### G.    Section 1129(a)(7) of the Bankruptcy Code

44.    The Plan satisfies the "best interests of creditors" test set forth in

Section 1129(a)(7) of the Bankruptcy Code.   This test requires that, with respect to each

impaired class of claims or interests, each holder of such claims or interests (a) has accepted the

plan or (b) will receive or retain property of a value not less than what such holder would receive

or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.   See Armstrong

World Indus., 348 B.R. 136, 165-66 (Bankr. D. Del. 2006); see also In re Tranel, 940 F.2d 1168,

1172 (8th Cir. 1991) (considering evidence supporting best interests of creditors test outcome);

In re AOV Indus., 31 B.R. 1005, 1008-13 (D.D.C. 1983), aff'd in part, rev'd in part, 792 F.2d

1140, 1144 (D.C. Cir. 1986) (if no impaired creditor receives less than liquidation value, plan of

reorganization is in best interests of creditors), vacated in light of new evidence, 797 F.2d 1004

(D.C. Cir. 1986); In re Econ. Lodging Sys., Inc., 205 B.R. 862, 864-65 (Bankr. N.D. Ohio 1997)

(analyzing evidence relating to best interests of creditors test); Eagle-Picher Indus.,

203 B.R. at 266 (best interest of creditors test must be met even in cramdown situation).   A court,

- 22 -

in considering whether a plan is in the "best interests" of creditors, is not required to consider any alternative to the plan other than the dividend projected in a liquidation of all the debtor's assets under chapter 7 of the Bankruptcy Code.  See, e.g., In re Victory Constr. Co., 42 B.R. 145, 151 (Bankr. C.D. Cal. 1984); see also In re Crowthers McCall Pattern, Inc., 120 B.R. 279, 297 (Bankr. S.D.N.Y. 1990); In re Jartran, Inc., 44 B.R. 331, 389-93 (Bankr. N.D. Ill. 1984) (best interests test satisfied by showing that, upon liquidation, cash received would be insufficient to pay priority claims and secured creditors so that unsecured creditors and stockholders would receive no recovery).

45.     As Section 1129(a)(7) of the Bankruptcy Code itself makes clear, the "best interests" of creditors test is applicable only to *nonaccepting* holders of *impaired* claims and interests.  See 11 U.S.C. § 1129(a)(7).  Thus, in the instant Bankruptcy Case, the "best interests" test applies only to Class 6 at this time, as the holders of Parent Equity Interests in this Class will receive no distribution on account of such Interests and are deemed to reject the Plan under Section 1126(g) of the Bankruptcy Code.  As the deadline to vote to accept or rejection the Plan has not passed (the Disclosure State Order set the voting deadline as August 17, 2015 (the "Voting Deadline")), the Plan Proponents do not know whether there will be any non-accepting holders in impaired classes.   If there are, then the Plan Proponents will file a supplemental brief in support of confirmation.

46.     As set forth on the liquidation analysis attached as Exhibit DS-5 to the Disclosure Statement (the "Liquidation Analysis"), it is clear that the Plan satisfies the "best interests" test with respect to each impaired Class, because holders of Claims and Interests in such Classes would receive less consideration on account of their Claims and Interests in a hypothetical

- 23 -

Chapter 7 liquidation.  See Disclosure Statement, Ex. DS-5.  As a result, the Plan satisfies the requirements of Section 1129(a)(7) of the Bankruptcy Code.

**H.    Section 1129(a)(8) of the Bankruptcy Code**

47.    The Plan fails to comply with Section 1129(a)(8) of the Bankruptcy Code, which requires that "with respect to each class of claims or interests — (A) such class has accepted the plan; or (B) such class is not impaired under the Plan."  Specifically, Class 6 is deemed to reject the Plan under Section 1126(g) of the Bankruptcy Code, because the Plan provides no distribution to the holders of Interests in Class 6.  Further, other Classes may vote to reject the Plan prior to the Voting Deadline.  Nevertheless, as set forth below, the Plan Proponents have satisfied the necessary requirements under section 1129(b) of the Bankruptcy Code to obtain confirmation of the Plan notwithstanding Class 6's deemed rejection of the Plan (and the potential rejection of the Plan by other Classes).

48.    In contrast, the Plan renders Classes 1 and 7 unimpaired and therefore Classes 1 and 7 are deemed to accept the Plan under Section 1126(f) of the Bankruptcy Code.  As a result, the Plan satisfies Section 1129(a)(8) with respect to Classes 1 and 7.

**I.    Section 1129(a)(9) of the Bankruptcy Code**

49.    The Plan satisfies Section 1129(a)(9) of the Bankruptcy Code, which requires that a chapter 11 plan provide for the payment of certain priority claims in full on the effective date in the allowed amount of such claims.  In particular, pursuant to Section 1129(a)(9)(A) of the Bankruptcy Code, unless otherwise agreed by the holder, holders of claims of a specific kind specified in Section 507(a)(1) of the Bankruptcy Code — administrative claims allowed under Section 503(b) of the Bankruptcy Code — must receive cash equal to the allowed amount of such claims on the effective date of a plan.  Section 1129(a)(9)(B) further requires that the holders of claims of a kind specified in Sections 507(a)(1) and 507(a)(4) through (7) (generally,

- 24 -

wage and employees benefit claims and consumer deposits that are entitled to priority) must receive, if the class in which such claimants are members has accepted the plan, deferred cash payments of a value equal to the allowed amount of these claims; or, if the class in which such claimants are members has not accepted the plan, cash equal to the allowed amount of these claims on the effective date of a plan. Finally, Sections 1129(a)(9)(C) and (D) of the Bankruptcy Code provide for the payment of priority tax claims, including secured claims that would otherwise meet the requirements of Section 507(a)(8) of the Bankruptcy Code absent the secured status of such claims, in cash in regular installments.

50.     In accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, Section 3.1(a) of the Plan provides that, unless otherwise agreed by the holder of an Administrative Claim or an order of the Bankruptcy Court provides otherwise, each holder of an Allowed Administrative Claim shall receive Cash equal to the amount of such Allowed Administrative Claim in full satisfaction of its Administrative Claim on Effective Date.

51.     In accordance with Section 1129(a)(9)(B) of the Bankruptcy Code, Section 3.1(b) of the Plan provides that each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release and discharge of such Allowed Priority Tax Claim either (i) on the Effective Date, Cash equal to the due and unpaid portion of such Allowed Priority Tax Claim, (ii) treatment in a manner consistent with Bankruptcy Code Section 1129(a)(9)(C), or (iii) such different treatment as to which such holder and the Debtors or the Plan Administrator, as applicable, shall have agreed upon in writing.

52.     In accordance with Section 1129(a)(9)(C) of the Bankruptcy Code, Section 3.2(a) of the Plan provides that, unless otherwise agreed to by a holder of an Allowed Priority Claim,

- 25 -

holders of such Priority Claims shall receive Cash equal to the amount of such Allowed Priority Claim on the Effective Date.

53.     Accordingly, the Plan satisfies the requirements set forth in Section 1129(a)(9) of the Bankruptcy Code.

**J.     Section 1129(a)(10) of the Bankruptcy Code**

54.     Section 1129(a)(10) of the Bankruptcy Code, is inapplicable to the Plan at this time because the Voting Deadline has not passed.  This Section provides the following:

> If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

11 U.S.C. § 1129(a)(10); see In re Martin, 66 B.R. 921, 924 (Bankr. D. Mont. 1986) (holding that acceptance by three classes of impaired creditors, exclusive of insiders, satisfied requirement of Section 1129(a)(10)).  Because the Voting Deadline will not occur for four weeks, the Plan Proponents are unable to indicate whether the Plan complies with Section 1129(a)(10) of the Bankruptcy Code at this time.  Following the expiration of the Voting Deadline, the Plan Proponents will file a brief in further support of Plan Confirmation that addresses this Section of the Bankruptcy Code.

**K.     Section 1129(a)(11) of the Bankruptcy Code**

55.     The Plan satisfies Section 1129(a)(11) of the Bankruptcy Code, which provides that a court may confirm a plan of reorganization only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need further financial reorganization, of the debtor or any successor to the debtor under the plan."  11 U.S.C. § 1129(a)(11).  One commentator has stated that this Section "requires courts to scrutinize carefully the plan to determine whether it offers a reasonable prospect of success and is workable."  7 Alan N. Resnick, et al., Collier on

- 26 -

Bankruptcy ¶ 1129.03[11] (16th ed. rev. 2010); <u>accord</u> <u>Aleris Int'l</u>, 2010 WL 3492664, at *27; <u>In re Cellular Info. Sys., Inc.</u>, 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994); <u>In re Rivers End Apartments, Ltd.</u>, 167 B.R. 470, 476 (Bankr. S.D. Ohio 1994); <u>Johns-Manville</u>, 68 B.R. at 635.

56.    Section 1129(a)(11), however, does not require a guarantee of the plan's success; rather, the proper standard is whether the plan offers a "reasonable assurance" of success. <u>See</u> <u>Aleris Int'l</u>, 2010 WL 3492664, at *27 ("The feasibility test set forth in Section 1129(a)(l1) requires the Bankruptcy Court to determine whether the reorganized debtor has a reasonable assurance of commercial viability."); <u>see also</u> <u>In re Johns-Manville Corp.</u>, 843 F.2d at 649 (noting plan may be feasible although its success is not guaranteed); <u>Prudential Ins. Co. of Am. v. Monnier (In re Monnier Bros.)</u>, 755 F.2d 1336, 1341 (8th Cir. 1985) (same); <u>Rivers End Apartments</u>, 167 B.R. at 476 (to establish feasibility, "a [plan] proponent must demonstrate that its plan offers 'a reasonable prospect of success' and is workable"); <u>In re Drexel Burnham Lambert Grp.</u>, 138 B.R. 723, 762 (Bankr. S.D.N.Y. 1992) ("'Feasibility does not, nor can it, require the certainty that a reorganized company will succeed.'") (citations omitted); <u>In re Apex Oil Co.</u>, 118 B.R. 683, 708 (Bankr. E.D. Mo. 1990) (guarantee of success is not required to meet feasibility standard of Section 1129(a)([11])); <u>In re Elm Creek Joint Venture</u>, 93 B.R. 105, 110 (Bankr. W.D. Tex. 1988) (a guarantee of success is not required under Section 1129(a)(11), only reasonable expectation that payments will be made); <u>Texaco</u>, 84 B.R. at 910 ("All that is required is that there be reasonable assurance of commercial viability.").

57.    As set forth in the Liquidation Analysis, the Debtors possess or will possess the necessary assets to make all distributions called for under the Plan.  Further, because following the Effective Date, the Reorganized Debtors' business will be to hold certain real estate and other assets, there is no likelihood that the Reorganized Debtors will require a further financial

- 27 -

restructuring.   Accordingly, the Plan satisfies the feasibility standard of Section 1129(a)(11) of the Bankruptcy Code.

### L.        Section 1129(a)(12) of the Bankruptcy Code

58.        The Plan complies with Section 1129(a)(12) of the Bankruptcy Code, which requires that, as a condition precedent to the confirmation of a plan of reorganization, "[a]ll fees payable under Section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan."  11 U.S.C. § 1129(a)(12).  The Plan specifically provides that all fees payable pursuant to Section 1930 of Title 28 of the United States Code will be paid on or prior to the Effective Date.  See Plan § 10.2.  As such, the Plan complies with Section 1129(a)(12) of the Bankruptcy Code.

### M.        Section 1129(a)(13) of the Bankruptcy Code

59.        Section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Plan, as it requires that a plan of reorganization provide for the continuation of all retiree benefits at the level established by agreement or by court order pursuant to Section 1114 of the Bankruptcy Code at any time prior to confirmation of the plan, for the duration of the period that the debtor has obligated itself to provide such benefits.  Prior to or at the Confirmation Hearing, the Debtors will terminate all existing retiree benefits plans.  Indeed, a condition to the Effective Date of the Plan is that either the Confirmation Order shall provide that the Retiree Benefit Plans are terminated by their terms on the Effective Date.  Therefore, from and after the Effective Date, the Debtors will have no obligations to pay retiree benefits (as defined in Section 1114(a) of the Bankruptcy Code).  Accordingly, Section 1129(b)(13) of the Bankruptcy Code is inapplicable to the Plan.

## II.    Section 1129(b) – The Plan Satisfies the "Cramdown" Requirements For Confirmation

60.    The Plan complies with Section 1129(b)(1) of the Bankruptcy Code, which states the following:

> [I]f all of the applicable requirements of subsection (a) of this Section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted the plan.

11 U.S.C. § 1129(b)(1).  Thus, to confirm a plan that has not been accepted by all impaired classes, the plan proponent must show that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to impaired, non-accepting classes.  See Zenith Elecs., 241 B.R. at 105 (explaining that "[w]here a class of creditors or shareholders has not accepted a plan of reorganization, the court shall nonetheless confirm the plan if it 'does not discriminate unfairly and is fair and equitable'"); see also Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.), 150 F.3d 503, 519 (5th Cir. 1998) (plan is fair and equitable only if the holder of any claim or interest that is junior to the claims of the non-accepting class will not receive or retain under the plan on account of such junior claim or interest any property) (citations omitted); Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship), 115 F.3d 650, 653 (9th Cir. 1997) (setting forth requirements under Section 1129(b)(1) and (2)); John Hancock Mut. Life Ins. Co v. Route 37 Bus. Park Assocs., 987 F.2d 154, 157 n.5 (3d Cir. 1993) (same).

61.    Here, Class 6, which consists solely of Parent Equity Interests, is the sole impaired, non-accepting Class under the Plan.  As such, Section 1129(b)(2)(C) provides the relevant "fair and equitable" standard for purposes of Class 6, requiring that "the holder of any

- 29 -

interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property."  11 U.S.C. § 1129(b)(2)(C).  The Plan is "fair and equitable" with respect to Class 6 because Class 6 includes Interests that possess the most junior distribution rights of any Claim or Interest classified under the Plan and, as a result, there exists no possibility that any class junior to Class 6 will receive or retain property under the Plan.[6]  As such, the Plan complies with the "fair and equitable" requirement of Section 1129(b) of the Bankruptcy Code with respect to Class 6.

62.    With respect to the "unfair discrimination" requirement of Section 1129(b) of the Bankruptcy Code, a plan unfairly discriminates against a class if:  (a) there exists another class of claims with similar legal rights and such class receives better treatment under the plan than the class at issue; and (b) there is no reasonable basis for treating the class at issue less favorably. See, e.g., Armstrong World Indus., 348 B.R. 111, 121 (D. Del. 2006) ("[T]his standard ensures that a dissenting class will receive relative value equal to the value given to all other similarly situated classes.") (quoting Johns-Manville, 68 B.R. at 636); see also Acequia, Inc., 787 F.2d at 1364 (finding that provision requires that plan "allocate [ ] value to the class in a manner consistent with the treatment afforded to other classes with similar legal claims against the debtor.").

63.    The Plan causes no discrimination against the holders of Interests in Class 6.  The Interests classified in Class 6 represent the sole Class of Interests classified under the Plan held by individuals or entities other than other Debtors.  Further, holders of Interests in Class 6 possess a junior distribution right to the Claims classified in Classes 1 through 5 of the Plan.  As

---

[6]  Class 7, Subsidiary Equity Interests, does not have lower priority that Class 6.  Rather, the creation of and treatment of Interests in Class 7 solely are designed to maintain the Debtors' organizational structure.

a result, there is no discrimination with respect to Class 6, and the requirements of Section 1129(b) of the Bankruptcy Code are satisfied with respect to Class 6.

64.    To the extent that other Classes reject the Plan, the Plan Proponents will file a brief in further support of Plan Confirmation that addresses this Section 1129(b) of the Bankruptcy Code as it relates to these other potential non-accepting classes.

### III.    Section 1129(c) – No Other Plan Has Been Proposed Or Confirmed

65.    The Plan satisfies Section 1129(c) of the Bankruptcy Code, which provides that, with a limited exception, a bankruptcy court may only confirm one plan.  The Plan is the only plan that has been filed in these cases and is the only plan that satisfies the requirements of subsections (a) and (b) of Section 1129 of the Bankruptcy Code.  Accordingly, the requirements of Section 1129(c) of the Bankruptcy Code are satisfied.

### IV.    Section 1129(d) – The Plan's Purpose Is Consistent With the Bankruptcy Code

66.    The Plan satisfies Section 1129(d) of the Bankruptcy Code, which provides that a court may not confirm a plan if the principal purpose of the plan is to avoid taxes or the application of Section 5 of the Securities Act of 1933.  In the instant case, the Plan's principal purpose is not the avoidance of taxes or the avoidance of the requirements of Section 5 of the Securities Act of 1933, and there has been no filing by any governmental agency asserting the contrary.  Accordingly, the Plan complies with Section 1129(d) of the Bankruptcy Code.

### OTHER PLAN PROVISIONS ARE NECESSARY AND APPROPRIATE

### I.    The Settlements Should Be Approved

67.    As described above, the Plan Proponents have incorporated the terms of the Settlements into the Plan.  The Settlements are a critical component of the Plan and satisfy the standards for approval under Section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.  Settlements and compromises are "a normal part of the process of reorganization."

- 31 -

Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)).  As part of the restructuring process, the Court "may approve a compromise or settlement" under Bankruptcy Rule 9019(a).  Fed. R. Bankr. P. 9019(a).  Similarly, as set forth above, Section 1123(b)(3) of the Bankruptcy Code states that a plan may "provide for … the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."   11 U.S.C. § 1123(b)(3).

68.    A decision to approve or reject a proposed compromise or settlement falls within the court's sound discretion.  Key3 Media Group, Inc. v. Pulver.com, Inc. (In re Key3 Media Group, Inc.), 336 B.R. 87, 92 (Bankr. D. Del. 2005); In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997).  When exercising such discretion, the bankruptcy court must determine whether the compromise is "fair, reasonable, and in the best interests [sic] of the estate."  Key3 Media Group, 336 B.R. at 92; see also Fry's Metals, Inc. v. Gibbons (In re Rfe Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002) (considering interests of creditors when analyzing settlement); Louise's Inc., 211 B.R. at 801 (considering interests of estate when determining whether to approve settlement); In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (Bankr. D. Del. 1998) (same).

69.    Courts have consistently recognized that plan settlements under Section 1123(b)(3) of the Bankruptcy Code should be evaluated under the same "fair, reasonable and in the best interests of the estate" standard applicable to Bankruptcy Rule 9019 settlements. E.g., Aleris Int'l, 2010 WL 3492664, at *18; Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.), 177 B.R. 791, 794 n.4 (S.D.N.Y. 1995) ("Irrespective of whether a claim is settled as part of a plan pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code or pursuant to

- 32 -

a separate motion under Bankruptcy Rule 9019, the standards applied by the Bankruptcy Court for approval are the same."), aff'd, 68 F.3d 26 (2d Cir. 1995).

70.     In evaluating whether a proposed settlement is fair and equitable, courts in the Third Circuit consider the following four factors:  (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attendant thereto; and (d) the paramount interests of the creditors and a proper deference to their reasonable opinions. See Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); Aleris Int'l, 2010 WL 3492664, at *19; Key3 Media Group, 336 B.R. at 93; Marvel, 222 B.R. at 249.  To properly balance these values, the Court should consider all factors "relevant to a full and fair assessment of the wisdom of the proposed compromise."  Marvel, 222 B.R. at 249 (quoting TMT Trailer Ferry, Inc., 390 U.S. at 424).

71.     In applying these factors, "a bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather should canvass the issues and see whether the settlement fall[s] below the lowest point on the range of reasonableness."  Aleris Int'l, Inc., 2010 WL 3492664, at *19 (alteration in original) (citations omitted) (internal quotation marks omitted); see also In re Drexel Burnham Lambert Grp., 134 B.R. 493, 497 (Bankr. S.D.N.Y. 1991) (same).  Moreover, when considering a proposed settlement, a court should exercise its discretion in light of "the general policy of encouraging settlements and favoring compromise."  Aleris Int'l, 2010 WL 3492664, at *18 (citing Martin, 91 F.3d at 393). In fact, courts generally accord great deference to the recommendations of an estate representative when considering negotiated agreements.  See In re Int'l Distrib. Ctrs., Inc., 103 B.R. 420, 423 (S.D.N.Y. 1989).

- 33 -

72.     Under the Settlements, the Plan Proponents have resolved the Administrative Expense Claims asserted by AIG, Central States and Northwest and provided for allowance of those Claims in amounts and priority that are feasible for the Debtors to satisfy pursuant to the Plan and at a material discount to the amounts asserted to be due and owing by such creditors. Specifically, Central States will receive an Administrative Expense Claim in the amount of $270,000 (on account of an asserted claim $1 million [POC Nos. 540, 542-543, 545, 547-552, 557-568]); and Northwest will receive an Administrative Expense Claim in the amount of $40,000 (on account of an asserted claim of $93,000 [Docket No. 2292]).  Further, AIG, which holds Claims separately classified under the Plan (Class 4) will receive a Cash payment in the amount of $1,000,000 (on account of an asserted administrative expense claim in excess of $4 million [Docket No. 2190]) in full and final satisfaction of its Claims against the Debtors.

73.     Moreover, the settlement of the First Lien Agents' entitlement to adequate protection claims and replacement liens under the 2012 Final DIP Order and Replacement DIP Order avoids expensive, time-consuming and uncertain litigation regarding whether, and to what extent, the DIP loan proceeds were used to preserve and maintain the collateral pending a going concern sale to JCT as opposed to diminution in the value of such collateral during the Bankruptcy Cases.  Similarly, the settlement of the First Lien Agents' obligation to the fund the Wind Down Budget (as required by the JCT Sale Order) will avoid the time, expense and uncertainty of litigating with the First Lien Agents with respect to with terms of the Court's prior order.

74.     In sum, the Settlements represent a fair and reasonable resolution of the disputes and, as such, are in the best interests of the Debtors' estates and their respective creditors.

- 34 -

## II.    The Assumption or Rejection of the Executory Contracts and Unexpired Leases Under the Plan Should Be Approved

75.    "Except for the executory contracts and unexpired leases listed on the Plan Supplement, if any, and except to the extent that a Debtor either previously has assumed, assumed and assigned or rejected an executory contract or unexpired lease by an order of the Bankruptcy Court, including, but not limited to, the JCT Sale Order or the SBDRE Sale Order, or has filed a motion to assume or assume and assign an executory contract or unexpired lease prior to the Effective Date, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms will be deemed rejected pursuant to section 365 of the Bankruptcy Code."  Plan § 6.1.  The Debtors reserve the right, however, at any time prior to the Effective Date, to amend the Plan Supplement to:   (a) delete any executory contract or unexpired lease listed therein, thus providing for its rejection pursuant to Section 6.1 of the Plan; or (b) add any executory contract or unexpired lease to the Plan Supplement, thus providing for its assumption under Section 6.3 of the Plan.

76.    Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  Courts routinely approve motions to assume, assume and assign or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment.  See, e.g., NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984); Grp. of Inst'l Investors v. Chi., M., St. P., & P.R.R. Co., 318 U.S. 523, 550 (1943); City of Covington v. Covington Landing Ltd. P'ship, 71 F.3d. 1221, 1226 (6th Cir. 1995); In re Market Square Inn, Inc., 978 F.2d 116, 121 (3d Cir. 1992) (the "resolution of th[e] issue of assumption or rejection will be a matter of business

- 35 -

judgment by the bankruptcy court"); In re Terrell, 892 F.2d 469, 471 (6th Cir. 1989); Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp., 872 F.2d 36, 39-40 (3d Cir. 1989); Borman's, Inc. v. Allied Supermarkets, Inc., 706 F.2d 187, 189 (6th Cir. 1983), cert. denied, 464 U.S. 908 (1983); In re AbitibiBowater Inc., 418 B.R. 815, 831 (Bankr. D. Del. 2009); In re Riodizio, Inc., 204 B.R. 417, 424-25 (Bankr. S.D.N.Y. 1997).

77.     The "business judgment" test is not a strict standard; it merely requires a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate.  See AbitibiBowater Inc., 418 B.R. at 831 (satisfying the business judgment standard for purposes of Section 365 of the Bankruptcy Code "is not a difficult standard to satisfy and requires only a showing that rejection will benefit the estate"); Allied Tech., Inc. v. R.B. Brunemann & Sons, Inc., 25 B.R. 484, 495 (Bankr. S.D. Ohio 1982) ("As long as assumption of a lease appears to enhance a debtor's estate, Court approval of a debtor in possession's decision to assume the lease should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code . . . ."); see also In re Bildisco, 682 F.2d 72, 79 (3d Cir. 1982), aff'd sub nom. NLRB v. Bildisco & Bildisco, 465 U.S. 513 (1984) (test for rejection is whether rejection would benefit estate).

78.     In the instant cases, the Debtors have reviewed their executory contracts and unexpired leases and, in the exercise of their sound business judgment, have decided to reject all executory contracts and unexpired leases other than those executory contracts and unexpired leases listed in the Plan Supplement.  In the identical exercise of their sound business judgment, the Debtors have decided to assume the executory contracts and unexpired leases contained in the Plan Supplement.  As a result, the assumption and rejection of executory contracts and unexpired leases as set forth in the Plan should be approved.

- 36 -

## III.    Limited Consolidation For Plan Purposes Only Is Appropriate

79.    Section 7.3 of the Plan provides that the Estates will be substantively consolidated for Plan purposes only.[7]  See Plan § 7.3.  Any holder asserting the same Claim against more than one Debtor (based on a guarantee, joint and several liability under contract or applicable law, or any other basis) shall be deemed to have only one Claim and shall only receive a distribution under the Plan on account of such Claim.  See id.  This limited consolidation will enable more efficient administration of the Plan and will cause no harm to any non-consenting creditors (to the extent any such creditor exists).  The Plan Proponents submit the limited consolidation of their Estates set forth in the Plan is appropriate.  See In re Owens Corning, 419 F.3d 195, 214-15 (3d Cir. 2005) (focusing its analysis on the appropriateness of deemed substantive consolidation on harm such consolidation may cause on each creditor).

## IV.    The Plan's Exculpation Provision Is Appropriate and Should Be Approved

80.    The Plan includes in Section 10.8 a customary exculpation and limitation of liability that is authorized by Bankruptcy Code Section 1125(e) and typically afforded to debtors, estate fiduciaries and third parties that participated in the plan process.  Section 10.8 of the Plan is narrowly tailored to limit the liability of the Debtors, the Litigation Oversight Committee and any Released Party, which includes, among others, the First Lien Agents, the First Lien Lenders (other than Yucaipa), the professionals of the First Lien Agents, the Second Lien Lenders (other than Yucaipa), and the professionals of the Second Lien Lenders.    All of these parties

---

[7]  The text of Section 1123(a)(5) contemplates that a consolidation may be used as a means to implement a plan. 11 U.S.C. § 1123(a)(5)(C) ("Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall . . . provide adequate means for the plan's implementation, such as . . . consolidation of the debtor with one or more persons."); see In re Owens Corning, 419 F.3d 195, 208, n.14 (3d Cir. 2005) (noting text of Section 1123(a)(5)(C) of the Bankruptcy Code permits substantive consolidation pursuant to plan).

unquestionably have provided substantial contributions to the Debtors' Chapter 11 Cases and the plan process.

81.     Section 10.8 of the Plan limits liability in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan.   See Plan § 10.8.[8]   For the avoidance of doubt, the proposed exculpation provision does not affect the liability of any exculpated party arising from prepetition conduct.   Further, consistent with Third Circuit precedent, it does not affect any liability that is determined to have constituted gross negligence, fraud or willful misconduct. See Plan § 10.8; In re PWS Holding Corp., 228 F.3d 224, 245-46 (3d Cir. 2000) (holding that exculpation provision must not eliminate liability arising from willful misconduct or gross negligence).   The Court should approve the exculpation provision in Section 10.8 of the Plan because it is consistent with: (i) the limitation of liability contained in Section 1125(e) of the Bankruptcy Code; and (ii) similar provisions approved by this Court where non-fiduciaries have provided substantial contributions in the case or to the plan process.

82.     First, the proposed exculpation provision is appropriate based on the limitation of liability provided in Section 1125(e) of the Bankruptcy Code.   That section provides:

> A person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title, or that participates, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan, of the debtor,

---

[8]   By its terms, Section 10.8 of the Plan does not act as a release or otherwise limit the liability of any exculpated party in connection with claims raised against them in the Litigation Claims that are preserved under the Plan.

- 38 -

> of an affiliate participating in a joint plan with the debtor, or of a
> newly organized successor to the debtor under the plan, is not
> liable, on account of such solicitation or participation, for violation
> of any applicable law, rule, or regulation governing solicitation of
> acceptance or rejection of a plan or the offer, issuance, sale, or
> purchase of securities.

11 U.S.C. § 1125(e).  This statutory limitation of liability encompasses the matters listed in the proposed exculpation provision in Section 10.8 of the Plan.  See In re HSH Del. GP LLC, Case No. 10-10187 (MFW) (Bankr. D. Del. Jan. 18, 2011) (confirming plan that provided exculpation to, among others, debtors' lenders and stating that provision was "appropriate under [Bankruptcy Code Section] 1125(e)" because it was "limited to the activities so far in the Chapter 11" and only related to prospective acts in connection with execution and implementation of plan). Accordingly, the Court has authority and should approve the exculpation provision as appropriate under Section 1125(e) of the Bankruptcy Code.

83.     Second, although there are no reported decisions from this Court or courts in this District specifically authorizing non-fiduciary exculpation, this Court has approved exculpation provisions similar to those in Section 10.8 of the Plan in numerous instances where a non-fiduciary has provided a substantial contribution to the case or plan process.[9]

---

[9] See In re FAH Liquidating Corp. f/k/a Fisker Auto. Holdings, Inc., Case No. 13-13087 (KG) (Bankr. D. Del. July 30, 2014) (overruling objection of U.S. Trustee and confirming plan that provided exculpation to purchaser of debtors' assets and debtors' secured lender due to their substantial contributions in plan process); In re Laboratory Partners, Inc., Case No. 13-12769 (PJW) (Bankr. D. Del. July 10, 2014) (overruling U.S. Trustee's objection and confirming plan that provided exculpation to secured lender that had provided substantial contributions by funding payroll obligations prior to petition date and gifting recoveries to subordinated creditors); In re Nassau Broad Partners L.P., Case No. 11-12934 (KG) (Bankr. D. Del. July 31, 2013) (confirming plan, over objection of U.S. Trustee, that provided exculpation of non-estate fiduciaries and stating "I just want to be very clear that it's my opinion that exculpation is not limited to fiduciaries, that the Third Circuit has not addressed that matter and has not so held at this point."); In re Leslie Controls, Inc., 2010 WL 4386935 (Bankr. D. Del. Oct. 28, 2010) (approving exculpation of, among others, ad hoc committee and DIP lender); In re AbitibiBowater Inc., Case No. 09-11296 (KJC) (Bankr. D. Del. Nov. 23, 2010) (approving exculpation of ad hoc noteholders' committee, DIP lenders, and indenture trustees); In re Premier Int'l Holdings Inc., Case No. 09-12019 (CSS) (Bankr. D. Del. Apr. 29, 2010) (approving exculpation of prepetition lenders, backstop purchasers and ad hoc committee of noteholders); In re SemCrude, L.P., Case No. 08-11525 (Bankr. D. Del. Oct. 27, 2009) (BLS) (approving exculpation of unofficial steering committee of prepetition lenders); In re Sea Containers Ltd., Case No. 06-11156 (KJC) (Bankr. D. Del. Nov.

- 39 -

84.    Despite the numerous instances where third-party exculpation has been approved, Judge Walrath's decision in In re Washington Mutual, Inc. sometimes is cited as having created a bright line prohibition against exculpation for non-estate fiduciaries.  442 B.R. 314, 350-51 (Bankr. D. Del. 2011).   The decision in Washington Mutual, however, relies on the Third Circuit's decision in PWS, which did **not** address exculpation in the context of non-fiduciaries. See Washington Mutual, 442 B.R. at 351.  In fact, in PWS the Third Circuit rejected any "per se rule barring any provision in a reorganization plan limiting the liability of third parties" by virtue of Bankruptcy Code Section 524(e) when it assessed a plan exculpation in that case.  PWS, 228 F.3d at 247.  Rather, the Third Circuit held that where a plan seeks to limit liability, such provision must not eliminate liability for gross negligence or willful misconduct, and it must be considered in light of the particular circumstances at issue in the case.  See id.

85.    Notably, since Washington Mutual, at least three judges in the Delaware Bankruptcy Court (including Judge Walrath), have declined to adopt a bright-line rule against non-fiduciary exculpation in favor of a more flexible standard approving third party exculpation where the third party provided substantial contributions in the case or the plan process.  See Confirmation Hr'g Tr. at 26:21-27:18, In re FAH Liquidating Corp. (f/k/a Fisker Auto. Holdings, Inc.), Case No. 13-13087 (KG) (Bankr. D. Del. July 28, 2014) (overruling U.S. Trustee's objection based on Washington Mutual and confirming plan providing for exculpation to

---

24, 2008) (approving exculpation of DIP lenders, indenture trustee, and liquidators and administrators under ancillary foreign insolvency proceedings); In re ACG Holdings, Case No. 08-11467 (CSS) (Bankr. D. Del. Aug. 26, 2008) (approving exculpation of noteholders and indenture trustee); In re Hilex Poly Co. LLC, Case No. 08-10890 (KJC) (Bankr. D. Del. June 26, 2008) (approving exculpation of DIP agent, DIP lenders, prepetition lenders and prepetition agents); In re Dura Auto. Sys., Inc., Case No. 06-11202 (KJC) (Bankr. D. Del. May 13, 2008) (approving exculpation of DIP lenders, DIP agents, exit lenders, prepetition lenders and indenture trustees); In re Remy Worldwide Holdings Inc., Case No. 07-11481 (KJC) (Bankr. D. Del. Nov. 20, 2007) (approving exculpation of certain holders of impaired claims, note purchasers, prepetition agent and indenture trustee); In re Foamex Int'l Inc., Case No. 05-12685 (KG) (Bankr. D. Del. Feb. 1, 2007) (approving exculpation of exit facility agents and lenders, indenture trustee, noteholders, DIP lenders and DIP agents).

- 40 -

purchaser of debtors' assets and debtors' secured lender); Confirmation Hr'g Tr. at 35:23-36:4, In re Laboratory Partners, Inc., Case No. 13-12769 (PJW) (Bankr. D. Del. July 10, 2014) (overruling U.S. Trustee's objection relying on Washington Mutual and confirming plan that includes provision exculpating debtors' secured lender); Confirmation Hr'g Tr. 54-55, In re Nassau Broad Partners L.P., Case No. 11-12934 (KG) (Bankr. D. Del. July 31, 2013) (confirming plan with exculpation of non-fiduciaries and stating that "I just want to be very clear that it's my opinion that exculpation is not limited to fiduciaries, that the Third Circuit has not addressed that matter and has not so held at this point."); Confirmation Hr'g Tr. 28:22-29:7, In re HSH Del. GP LLC, Case No. 10-10187 (MFW) (Bankr. D. Del. Jan. 18, 2011) (confirming plan that provided exculpation to, among others, debtors' lenders "who were, in fact, involved in drafting and negotiating of the plan of reorganization").

86.     Here, as the Court is well aware, the First Lien Agents, the First Lien Lenders, and the professionals of the First Lien Agents have made substantial contributions in these Chapter 11 Cases and have participated extensively in the Plan process.  Specifically, affiliates of the First Lien Agents provided the Debtors the Replacement DIP Facility, which enabled the Debtors to pay off in full the 2012 DIP Facility and to provide for the Debtors' working capital needs and general corporate purposes.  Then, following the sale of substantially all of the Debtors' assets and facing significant issues with respect to bringing the Chapter 11 Cases to a conclusion, the First Lien Agents, the First Lien Lenders and the professionals of the First Lien Agents, among others, provided substantial contributions that have resulted in the Plan, which undeniably will deliver superior value to the Debtors' creditors than would a conversion of these Chapter 11 Cases to Chapter 7.  Absent the extensive negotiations, complex settlements and

- 41 -

coordinated efforts by and among the parties for which exculpation is sought, there would be no Plan and, consequently, no resolution of these Chapter 11 Cases.

87.    Accordingly, based on their substantial contributions and participation in these Chapter 11 Cases and in the Plan process, the Court should approve the exculpation provision in Section 10.8 of the Plan.  At bottom, the exculpation provision in Section 10.8 of the Plan is consistent with other chapter 11 plans confirmed in this District and complies with the standard in the Third Circuit for exculpation provisions because it does not limit liability for willful misconduct, fraud or gross negligence.

## WAIVER OF STAY

88.    The Plan Proponents respectfully request that the Court cause the Confirmation Order to become effective immediately upon its entry notwithstanding the 14-day stay imposed by operation of Bankruptcy Rule 3020(e), which states that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P 3020(e); see also Fed. R. Bankr. P. 3020(e), Adv. Comm. Notes, 1999 Amend (stating that a "court may, in its discretion, order that Rule 3020(e) is not applicable so that the plan may be implemented and distributions may be made immediately") (emphasis added).  According to the Advisory Committee notes to the 1999 amendments to the Bankruptcy Rules, the purpose of Bankruptcy Rule 3020(e) is to permit a party in interest to request a stay of the confirmation order pending appeal before the plan is implemented and an appeal becomes moot.  Fed. R. Bankr. P. 3020(e), Adv. Comm. Notes, 1999 Amend.  To the extent a party wishes to seek an appeal, it may seek to stay the effectiveness of the Confirmation Order in

- 42 -

connection with the appeal.[10]  As a result, the Plan Proponents respectfully request that the

Bankruptcy Court cause the Confirmation Order to become effective immediately upon its entry.

## **CONCLUSION**

89.     For the reasons set forth in this Memorandum of Law, the Plan Proponents

respectfully submit that:  (a) the Plan fully satisfies all applicable requirements of the Bankruptcy

Code and should be confirmed by the Court; and (b) the 14-day stay of the Confirmation Order

should be waived.

*/s/ Tyler D. Semmelman*

| | |
|---|---|
| Mark D. Collins (No. 2981) | Jeffrey W. Kelley (GA Bar No. 412296) |
| Marisa A. Terranova (No. 5396) | Matthew R. Brooks (GA Bar No. 378018) |
| Tyler D. Semmelman (No. 5386) | TROUTMAN SANDERS LLP |
| RICHARDS, LAYTON & FINGER, P.A. | Bank of America Plaza |
| One Rodney Square | 600 Peachtree Street, Suite 5200 |
| 920 North King Street | Atlanta, Georgia 30308-2216 |
| Wilmington, Delaware 19801 | Telephone No.: (404) 885-3000 |
| Telephone No.: (302) 651-7700 | Facsimile No.: (404) 885-3900 |
| Facsimile No.: (302) 651-7701 | E-Mail: jeffrey.kelley@troutmansanders.com |
| E-Mail: collins@rlf.com | E-Mail: matthew.brooks@troutmansanders.com |
| E-Mail: terranova@rlf.com | |
| E-Mail: semmelman@rlf.com | |

*Attorneys for the Debtors and Debtors in Possession*

- and -

---

[10]  If for some reason a party in interest does decide to appeal the Confirmation Order, such party is on notice that the Debtors are asking the Court for a waiver of the stay imposed by Bankruptcy Rule 3020(e).  Therefore, such party is on notice that it must request a stay pending appeal immediately after the entry of the Confirmation Order. See, e.g., Nordhoff Invs., Inc. v. Zenith Elecs. Corp., 258 F.3d 180, 187 (3d Cir. 2001) (noting that all parties were on notice that plan called for "Immediate Effectiveness," allowing appellants the opportunity to seek stay immediately upon confirmation of plan).

| | |
|---|---|
| /s/ William A. Hazeltine | |
| William D. Sullivan (No. 2820) | Michael G. Burke |
| William A. Hazeltine (No. 3294) | Brian Lohan |
| SULLIVAN HAZELTINE ALLINSON LLC | SIDLEY AUSTIN LLP |
| 901 North Market Street, Suite 1300 | 787 Seventh Avenue |
| Wilmington, Delaware 19801 | New York, NY 10019 |
| Telephone No.: (302) 428-8191 | Telephone No.: (212) 839-5200 |
| Facsimile No.: (302) 428-8195 | Facsimile No.: (212) 839-5599 |
| E-Mail: whazeltine@sha-llc.com | E-Mail: mgburke@sidley.com |
| E-Mail: bsullivan@sha-llc.com | E-Mail: blohan@sidley.com |

*Attorneys for the Committee*

- and -

| | |
|---|---|
| /s/ Adam G. Landis | |
| Adam G. Landis (No. 3407) | Adam C. Harris |
| Kerri K. Mumford (No. 4186) | David M. Hillman |
| LANDIS RATH & COBB LLP | Robert J. Ward |
| 919 North Market Street, Suite 1800 | SCHULTE ROTH & ZABEL LLP |
| Wilmington, Delaware 19801 | 919 Third Avenue |
| Telephone No.: (302) 467-4400 | New York, NY 10022 |
| Facsimile No.: (302) 467-4450 | Telephone No.: (212) 756-2000 |
| E-Mail: landis@lrclaw.com | Facsimile No.: (212) 593-5955 |
| E-Mail: mumford@lrclaw.com | E-Mail: Adam.Harris@srz.com |
| | E-Mail: Robert.Ward@srz.com |

*Attorneys for the First Lien Agents*

- 44 -