## EXHIBIT A

## AIG SETTLEMENT AGREEMENT

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|                                                      |     |                           |
| ---------------------------------------------------- | --- | ------------------------- |
|                                                      | :   |                           |
| In re:                                               | :   | Chapter 11                |
|                                                      | :   |                           |
| ASHINC CORPORATION, *et al.*,[1]                     | :   | Case No. 12-11564 (CSS)   |
|                                                      | :   | (Jointly Administered)    |
| Debtors.                                             | :   |                           |
|                                                      | :   |                           |

**STIPULATION BY AND AMONG NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA, AIG INSURANCE COMPANY OF CANADA,
AMERICA HOME ASSURANCE COMPANY, CHARTIS CLAIMS, INC.
AND OTHER INSURERS AFFILIATED WITH AIG PROPERTY CASUALTY, INC.
AND DEBTORS RESOLVING CLAIMS AND CLOSING OUT
CERTAIN INSURANCE PROGRAMS**

This stipulation (the "**Stipulation**"), by and among the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), including ASCCO (Canada) Company (f/k/a Allied Systems (Canada) Company) and AXCCO Canada Company (f/k/a Axis Canada Company) (the "**Canadian Insureds**" and together with the other Debtors, the "**Insureds**"), and National Union Fire Insurance Company of Pittsburgh, PA, AIG Insurance Company of Canada f/k/a Chartis Insurance Company of Canada, American Home Assurance Company, AIG Claims, Inc. and other insurers affiliated with AIG Property Casualty, Inc. f/k/a Chartis Inc. (collectively, "**AIG**" and together with the Insureds and Haul, the "**Parties**"), sets forth the terms upon which

---

[1] The Debtors in these cases, along with the federal tax identification number (or Canadian business number where applicable) for each of the Debtors, are: ASHINC Corporation (f/k/a Allied Systems Holdings, Inc.) (58-0360550); AAINC Corporation (f/k/a Allied Automotive Group, Inc.) (58-2201081); AFBLLC LLC (f/k/a Allied Freight Broker LLC) (59-2876864); ASCCO (Canada) Company (f/k/a Allied Systems (Canada) Company) (90-0169283); ASLTD L.P. (f/k/a Allied Systems, Ltd. (L.P.) (58-1710028); AXALLC LLC (f/k/a Axis Areta, LLC) (45-5215545); AXCCO Canada Company (f/k/a Axis Canada Company) (875688228); AXGINC Corporation (f/k/a Axis Group, Inc.) (58-2204628); Commercial Carriers, Inc. (38-0436930); CTSINC Corporation (f/k/a CT Services, Inc.) (38-2918187); CTLLC LLC (f/k/a Cordin Transport LLC) (38-1985795); F.J. Boutell Driveway LLC (38-0365100); GACS Incorporated (58-1944786); Logistic Systems, LLC (45-4241751); Logistic Technology, LLC (45-4242057); QAT, Inc. (59-2876863); RMX LLC (31-0961359); Transport Support LLC (38-2349563); and Terminal Services LLC (91-0847582). The location of the Debtors' corporate headquarters and the Debtors' address for service of process is 2302 Parklake Drive, Bldg. 15, Ste. 600, Atlanta, Georgia 30345.

the Parties have agreed to settle certain of their controversies with respect to the U.S. Insurance Program, the Canadian Insurance Program and the Service Agreements (but, for the avoidance of doubt, not the Reinsurance Program), each as defined below, as provided herein:

**RECITALS**

WHEREAS, on May 17, 2012, involuntary bankruptcy petitions seeking relief under chapter 11 were filed against ASHINC Corporation (f/k/a Allied Systems Holdings, Inc.) ("**ASHINC**") and its major subsidiary ASLTD L.P. (f/k/a Allied Systems, Ltd. (L.P.)) in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").  On June 10, 2012, the remaining above-captioned Debtors filed voluntary chapter 11 petitions in the Bankruptcy Court, and, in connection therewith, ASHINC and ASLTD L.P. consented to relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**");

WHEREAS, AIG issued insurance policies providing primary coverage for workers' compensation and employer's liability insurance, automobile liability insurance, and commercial general liability insurance to ASHINC and other named insureds in the United States for the period of January 1, 2006 through December 28, 2013 (the "**U.S. Insurance Policies**"), and issued deductible insurance policies providing primary coverage for automobile liability and garage liability to the Canadian Insureds in Canada for the period of January 1, 2010 through December 28, 2013 (the "**Canadian Insurance Policies**");

WHEREAS, the U.S. Insurance Policies are governed by a Payment Agreement effective as of January 1, 2006 (the "**2006 Payment Agreement**"), between ASHINC on the one hand and National Union Fire Insurance Company of Pittsburgh, PA and other affiliated insurers on the other hand (collectively, "**National Union**"), renewals of such 2006 Payment Agreement or new payment agreements, schedules, addenda, amendments, and other related documents

(collectively, the "**U.S. Program Agreements**" and together with the U.S. Insurance Policies, the "**U.S. Insurance Program**");

WHEREAS, the Canadian Insurance Policies are governed by a Payment Agreement effective as of January 1, 2010, between the Canadian Insureds on the one hand and AIG Insurance Company of Canada f/k/a Chartis Insurance Company of Canada and other affiliated insurers on the other hand (collectively, "**AIG Canada**"), renewals of such Payment Agreement or new payment agreements, schedules, addenda, amendments, and other related documents (collectively, the "**Canadian Program Agreements**" and together with the Canadian Insurance Policies, the "**Canadian Insurance Program**");

WHEREAS, Haul Insurance Limited, a wholly-owned captive insurance provider of the Debtors ("**Haul**") provided AIG with reinsurance in connection with certain auto liability and garage liability insurance provided by AIG Canada (or its affiliates) to the Canadian Insureds (the "**Reinsurance**");

WHEREAS, the Reinsurance is governed by a Reinsurance Agreement effective January 1, 2003, by and between Haul and American Home Assurance Company (and its successors and affiliates), and any new reinsurance agreements, schedules, addenda, and amendments thereto (collectively, the "**Reinsurance Program**");

WHEREAS, AIG provided certain claim services to ASHINC for certain self-insured workers' compensation liability losses that occurred during the period of January 1, 2006 through December 28, 2013 (the "**TPA Services**");

WHEREAS, the provision of TPA Services is governed by a Claim Service Agreement by and between ASHINC f/k/a Allied Holdings, Inc. and AIG Claims, Inc. f/k/a Chartis Claims, Inc. and AIG Domestic Claims, Inc., effective as of January 1, 2006, and any renewals, new

claim service agreements, amendments, or other related documents (collectively, the "**TPA Services Agreements**" and together with the U.S. Insurance Program and the Canadian Insurance Program, but specifically excluding the Reinsurance Program, the "**AIG Programs**");

WHEREAS, in connection with the AIG Programs, AIG received certain security from the Insureds, including cash, escrow and other items (collectively, the "**AIG Security**");

WHEREAS, AIG alleges that the AIG Security is insufficient to cover all of the obligations of the Insureds under the AIG Programs;

WHEREAS, one of the conditions for AIG agreeing to renew the U.S. Insurance Policies and the Canadian Insurance Policies after the commencement of the Debtors' bankruptcy cases was that the Debtors assume the obligations under the U.S. Insurance Program and the Canadian Insurance Program;

WHEREAS, to satisfy this condition, the Debtors filed the *Debtors' Motion for an Order (I) Authorizing the Debtors to Assume the Chartis Insurance Programs, (II) Approving the Debtors' Entry into Postpetition Insurance Agreements Pursuant to the Chartis Insurance Programs, and (III) Granting Related Relief* (Dkt. No. 765) (the "**Assumption Motion**");

WHEREAS, on January 24, 2013, the Bankruptcy Court entered an order granting the relief requested in the Assumption Motion (Dkt. No. 810) (the "**Assumption Order**");

WHEREAS, as the conditions established by AIG for the continuation of the 2013 renewals of the U.S. Insurance Policies and the Canadian Insurance Policies were met, AIG renewed the U.S. Insurance Policies and the Canadian Insurance Policies through January 1, 2014;

WHEREAS, AIG alleges that pursuant to the Assumption Order, any claims that AIG has under the U.S. Insurance Program and the Canadian Insurance Program are administrative

expense claims against the Debtors;

WHEREAS, on September 17, 2013, the Bankruptcy Court entered an order (Dkt. No. 1837) approving the Debtors' sale of substantially all of their assets to Jack Cooper Holdings Corp. (the "**Jack Cooper Sale**").  On December 27, 2013, the Jack Cooper Sale closed;

WHEREAS, the U.S. Insurance Policies and the Canadian Insurance Policies were cancelled on December 28, 2013;

WHEREAS, on January 16, 2014, AIG filed the *Motion of National Union Fire Insurance Company of Pittsburgh, PA, AIG Insurance Company of Canada, and Other Insurers Affiliated with AIG Property Casualty, Inc. to Compel Enforcement of Order Authorizing Assumption of Chartis Insurance Programs, to Allow and Direct Payment of Administrative Expense, and to Grant Related Relief* (Dkt. No. 2190) (the "**AIG Motion**"), seeking to enforce the Assumption Order such that, among other things, the Debtors pay a November 2013 invoice in the amount of $1,141,100.00.  Subsequent to the filing of the AIG Motion, AIG determined that the Debtors owe approximately $93,624 for premium obligations for the policy period covering January 1, 2013 through December 28, 2013.  Further, AIG has alleged that the Debtors are obligated to AIG pursuant to the U.S. Insurance Program and the Canadian Insurance Program in the additional amount of not less than $2,700,000, and that such amount constitutes an administrative expense claim pursuant to the Assumption Order;

WHEREAS, on May 4, 2015, the Debtors filed the *Debtors' Joint Chapter 11 Plan of Reorganization Proposed By the Debtors, the Committee and the First Lien Agents* (as may be amended and supplemented, the "**Chapter 11 Plan**"); and

WHEREAS, the Parties wish to resolve the AIG Motion and close-out the AIG Programs (but not, for the avoidance of doubt, the Reinsurance Program);

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1.       The recitals and prefatory phrases and paragraphs set forth above are hereby fully incorporated in full, and made a part of, this Stipulation.

2.       This Stipulation shall be timely filed as part of the Chapter 11 Plan supplement.  The Chapter 11 Plan shall be amended to refer to and incorporate this Stipulation as setting forth the settlement among the Parties.  Any proposed order confirming the Chapter 11 Plan shall contain language acceptable to the Parties approving this Stipulation pursuant to Bankruptcy Rule 9019. This Stipulation shall become effective on the Effective Date (defined below).  The "**Effective Date**" shall be the date on which all of the following shall have occurred:  (i) an order confirming the Chapter 11 Plan and expressly approving this Stipulation has been entered (the "**Confirmation Order**"); (ii) AIG has received the Close-Out Payment (defined below); (iii) the Debtors have terminated the TPA Services Agreements consistent with relevant state law such that AIG is no longer required to provide the Debtors any TPA Services; and (iv) the Chapter 11 Plan becomes effective.

3.       On the Effective Date, the Debtors shall pay AIG the sum of $1,000,000.00 (One Million U.S. Dollars) (the "**Close-Out Payment**") with said Close-Out Payment to be paid by wire transfer of immediately available funds pursuant to wire instructions provided to the Debtors in writing by AIG.  Further, on the Effective Date, AIG shall be entitled to retain (i) the AIG Security and (ii) all other amounts previously paid to AIG in connection with the AIG Programs, in full and final settlement of the Debtors' and the Insureds' past, current and future monetary obligations under the AIG Programs (the "**Obligations**").  Further, on the Effective Date, AIG shall be deemed

to have withdrawn any proofs of claim filed against the Debtors with prejudice and the AIG Motion shall be deemed withdrawn with prejudice.

4.       Other than those claims which have already been reported to AIG and/or the claims administrator(s), the Insureds represent and warrant that they have not been notified of any other demands or claims which have been made or asserted against them or against any other person or entity for which the Insureds or such other person or entity may be entitled to coverage under the U.S. Insurance Program and the Canadian Insurance Program.

5.       **U.S. Insurance Program Release**.  Upon the Effective Date, except as otherwise provided herein, AIG hereby releases any and all claims, demands, causes of action, liabilities, obligations, damages, losses, costs and expenses, whether known or unknown, of every kind or nature whatsoever, which AIG had or claims to have or may have against the Debtors, their affiliates, successors and assigns and their respective directors, officers employees and agents as respects the Obligations related to the U.S. Insurance Program.

6.       Upon the Effective Date, except as otherwise provided herein, the Debtors hereby release and forever discharge any and all claims, demands, causes of action, liabilities, obligations, damages, losses, costs and expenses, whether known or unknown, of every kind or nature whatsoever, which the Debtors had or claim to have or may have against AIG, its affiliates, successors and assigns and their respective directors, officers employees and agents by reason of or in respect of any act, matter, cause, or thing whatsoever with respect to the U.S. Insurance Program, provided however, that nothing contained herein shall release AIG from its obligation to pay any claims asserted against the Insureds and covered under the U.S. Insurance Program, whether or not identified to or known by AIG prior to or as of the Effective Date. Further, there will be no release by either National Union or the Debtors for any claims that may

arise or exist as a result of this Stipulation.

7.    **Canadian Insurance Program Release**.    Upon the Effective Date, except as otherwise provided herein, AIG hereby releases any and all claims, demands, causes of action, liabilities, obligations, damages, losses, costs and expenses, whether known or unknown, of every kind or nature whatsoever, which AIG had or claims to have or may have against the Canadian Insureds, their affiliates, successors and assigns and their respective directors, officers employees and agents as respects the Obligations related to the Canadian Insurance Program.

8.    Upon the Effective Date, except as otherwise provided herein, the Canadian Insureds hereby release and forever discharge any and all claims, demands, causes of action, liabilities, obligations, damages, losses, costs and expenses, whether known or unknown, of every kind or nature whatsoever, which the Canadian Insureds had or claim to have or may have against AIG, its affiliates, successors and assigns and their respective directors, officers employees and agents by reason of or in respect of any act, matter, cause, or thing whatsoever with respect to the Canadian Insurance Program, provided however, that nothing contained herein shall release AIG from its obligation to pay any claims asserted against the Canadian Insureds and covered under the Canadian Insurance Program, whether or not identified to or known by AIG prior to or as of the Effective Date.   Further, there will be no release by either AIG or the Canadian Insureds for any claims that may arise or exist as a result of this Stipulation.

9.    **TPA Services Release**.    Upon the Effective Date, AIG Claims, Inc. and the Debtors hereby release any and all claims, demands, causes of action, liabilities, obligations, damages, losses, costs and expenses, whether known or unknown, of every kind or nature whatsoever, which they had or claim to have or may have against each other with respect to the TPA Services and/or the TPA Services Agreements.  However, there will be no release by either

AIG Claims, Inc. or the Debtors for any claims that may arise or exist as a result of this Stipulation.

10.    Notwithstanding the foregoing, nothing herein shall serve to relieve Insureds of any of their obligations, other than the Obligations (defined above), as an insured under the U.S. Insurance Policies and the Canadian Insurance Policies, including, but not limited to Insureds' duty to cooperate with AIG, and nothing herein shall serve to relieve AIG of any of its obligations as the insurer under the U.S. Insurance Policies and the Canadian Insurance Policies nor have any impact on the responsibilities of the Parties to each other, if any, outside the scope of this Stipulation.

11.    It is expressly understood and agreed that this Stipulation contains no admissions whatsoever regarding insurance coverage.

12.    The Insureds further agree that all subrogation, reimbursement, indemnity, or recovery rights held by the Insureds in respect of the AIG Programs and any payments related thereto whether they are owed now or may be owed and payable in the future are assigned to AIG without any further action required by the Insureds or any other Party.

13.    Nothing herein shall release, reduce, enlarge, or alter in any way any insurance coverage previously provided by AIG to the Insureds under the U.S. Insurance Program and the Canadian Insurance Program.  All conditions, terms, provisions, and exclusions of any kind under the policies of the U.S. Insurance Program and the Canadian Insurance Program remain in effect as they were on the date this Stipulation was executed including, without limitation, those relating to dates of coverage, the provision of coverage, exclusions, limitations, and cooperation. In addition, all defenses, subrogation rights and claims against third parties arising from the AIG Programs are preserved and the Insureds' shall be obligated to cooperate to the extent required

by the AIG Programs in connection therewith.

14.     The Parties acknowledge that this Stipulation is not to be construed in any manner as an admission of any wrongdoing or liability on the part of any Party.  In the event that this Stipulation does not become effective, neither the terms nor the statements contained in this Stipulation shall be argued nor deemed to be an admission against any Party's interest in any litigation between the Parties.

15.     The Parties represent and warrant to each other that no claim addressed by this Stipulation has been assigned or otherwise transferred in whole or in part to any other party or entity.

16.     On the Effective Date, this Stipulation shall be binding upon and shall inure to the benefit of the Parties and their respective heirs, executors, legal representatives, successors and permitted assigns.

17.     This Stipulation shall be governed by and construed in accordance with the internal laws of the State of New York, without giving effect to any conflict of laws principles that would cause the application of the laws of any other jurisdiction.

18.     In the event of any dispute between the Parties concerning this Stipulation, such dispute upon the written request of any Party, will be submitted to arbitration consistent with the arbitration provisions set forth in the 2006 Payment Agreement, except that the Debtors or their affiliates shall only be entitled to one arbitrator for all of their interested parties, AIG shall only be entitled to one arbitrator for all of its interested parties, and there shall also be one neutral arbitrator.

19.     The arbitrators will interpret this Stipulation as an honorable engagement and not merely a legal obligation; they are relieved of all judicial formalities and may abstain from

following the strict rules of law, and they will make their award with a view toward effecting the general purpose of this Stipulation in a reasonable manner.

20.     Each party will bear the expense of its own arbitrator and jointly and equally bear with the other party the expense of the third arbitrator and of the arbitration.  Said arbitration will take place in New York, New York unless otherwise agreed to by the Parties hereto.  The arbitration will be governed by the United States Arbitration Act, 9 U.S.C. 1, *et seq*., and judgment upon the award rendered by the arbitrators may be entered by a court having jurisdiction thereof.

21.     This Stipulation constitutes the entire agreement of the Parties, and supersedes all previous agreements and/or contracts, whether oral or written, between them with respect to the subject matter hereof, and, except as set forth herein, no representations, warranties, promises, inducements or considerations have been made or relied upon by the Parties.

22.     This Stipulation may be executed in counterparts, by facsimile or PDF, each of which shall be deemed an original, together which shall for all purposes constitute one agreement binding upon each of the Parties.

23.     The Parties agree to perform all further acts and to execute and deliver or cause to be executed and delivered all documents, instruments and agreements which may be reasonably necessary to carry out the intents and purposes of this Stipulation or to enable the other Party to enforce any of its rights under this Stipulation.

24.     If any provision of this Stipulation, or the application of such provision to any person or entity or set of circumstances, shall be determined to be unenforceable to any extent, the remainder of this Stipulation, and the application of such provision to persons or entities or circumstances other than those as to which it is determined to be unenforceable, shall not be affected and shall continue to be valid and enforceable to the fullest extent permitted by law.

25. No failure or delay by either Party in exercising any right, power or privilege hereunder will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.

26. No amendment, modification or alteration of this Stipulation shall be valid unless it shall be in writing and signed by each of the Parties.  Additionally, no course of conduct or method of doing business shall modify or amend the terms of this Stipulation.

27. Subject to Bankruptcy Court approval, the Parties represent and warrant that they each have the authority to enter into this Stipulation and to discharge the obligations created hereunder; that the person or persons executing this Stipulation on its behalf is/are authorized to do so; that it is not a party to any pending agreements, transactions or negotiations that would render this Stipulation or any part hereof void, voidable or unenforceable; and that any authorizations, consents or approvals of any governmental or regulatory entity or authority required to make this Stipulation valid and binding upon it has been obtained.

[Signatures are on the following page.]

Dated:  August 28, 2015

/s/_____
Mark D. Collins (No. 2981)
Marisa A. Terranova (No. 5396)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700 Telephone

-and-

Jeffrey W. Kelley (GA Bar No. 412296)
Matthew R. Brooks (GA Bar No. 378018)
TROUTMAN SANDERS LLP
Bank of America Plaza
600 Peachtree Street, Suite 5200
Atlanta, GA  30308-2216
404-885-3000 Telephone

Attorneys for the Debtors

Dated:  August 28, 2015

/s/_____
David W. Carickhoff (No. 3715)
ARCHER & GREINER, P.C.
300 Delaware Avenue; Suite 1370
Wilmington, DE  19801
302-777-4350 Telephone

Attorneys for AIG