## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) | **Chapter 11** |
| **ASHINC CORPORATION, *et al.*** [1] | ) ) ) | **Case No. 12-11564 (CSS)** |
| | ) ) | **Jointly Administered** |
| Debtors. | ) | |

### SUPPLEMENT TO DISCLOSURE STATEMENT IN SUPPORT OF DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY THE DEBTORS, THE COMMITTEE AND THE FIRST LIEN AGENTS

Mark D. Collins (No. 2981)
Marisa A. Terranova (No. 5396)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone No.: (302) 651-7700
Facsimile No.: (302) 651-7701
E-Mail: collins@rlf.com
E-Mail: terranova@rlf.com

Jeffrey W. Kelley (GA Bar No. 412296)
Matthew R. Brooks (GA Bar No. 378018)
TROUTMAN SANDERS LLP
Bank of America Plaza
600 Peachtree Street, Suite 5200
Atlanta, Georgia 30308-2216
Telephone No.: (404) 885-3000
Facsimile No.: (404) 885-3900
E-Mail: jeffrey.kelley@troutmansanders.com
E-Mail: matthew.brooks@troutmansanders.com

*Attorneys for the Debtors and Debtors in Possession*

- and -

---

[1]   The Debtors in these cases, along with the federal tax identification number (or Canadian business number where applicable) for each of the Debtors, are: ASHINC Corporation (f/k/a Allied Systems Holdings, Inc.) (58-0360550); AAINC Corporation (f/k/a Allied Automotive Group, Inc.) (58-2201081); AFBLLC LLC (f/k/a Allied Freight Broker LLC) (59-2876864); ASCCO (Canada) Company (f/k/a Allied Systems (Canada) Company) (90-0169283); ASLTD L.P. (f/k/a Allied Systems, Ltd. (L.P.) (58-1710028); AXALLC LLC (f/k/a Axis Areta, LLC) (45-5215545); AXCCO Canada Company (f/k/a Axis Canada Company) (875688228); AXGINC Corporation (f/k/a Axis Group, Inc.) (58-2204628); Commercial Carriers, Inc. (38-0436930); CTSINC Corporation (f/k/a CT Services, Inc.) (38-2918187); CTLLC LLC (f/k/a Cordin Transport LLC) (38-1985795); F.J. Boutell Driveway LLC (38-0365100); GACS Incorporated (58-1944786); Logistic Systems, LLC (45-4241751); Logistic Technology, LLC (45-4242057); QAT, Inc. (59-2876863); RMX LLC (31-0961359); Transport Support LLC (38-2349563); and Terminal Services LLC (91-0847582).  The location of the Debtors' corporate headquarters and the Debtors' address for service of process is 2302 Parklake Drive, Bldg. 15, Ste. 600, Atlanta, Georgia 30345.

William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
SULLIVAN HAZELTINE ALLINSON LLC
901 North Market Street, Suite 1300
Wilmington, Delaware 19801
Telephone No.: (302) 428-8191
Facsimile No.: (302) 428-8195
E-Mail: whazeltine@sha-llc.com
E-Mail: bsullivan@sha-llc.com

Michael G. Burke
Brian Lohan
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone No.: (212) 839-5300
Facsimile No.: (212) 839-5599
E-Mail: mgburke@sidley.com
E-Mail: blohan@Sidley.com

*Attorneys for the Committee*

- and -

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
LANDIS RATH & COBB LLP
919 North Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone No.: (302) 467-4400
Facsimile No.: (302) 467-4450
E-Mail: landis@lrclaw.com
E-Mail: mumford@lrclaw.com

Adam C. Harris
Robert J. Ward
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022
Telephone No.: (212) 756-200
Facsimile No.: (212) 593-5955
E-Mail: Adam.Harris@srz.com
E-Mail: Robert.Ward@srz.com

*Attorneys for the First Lien Agents*

Dated:  August 28, 2015

**THIS SUPPLEMENT TO THE DISCLOSURE STATEMENT IS BEING PROVIDED TO ALL FIRST LIEN LENDERS TO PROVIDE INFORMATION RELATING TO CHANGES PROPOSED TO THE TREATMENT OF THE FIRST LIEN CLAIMS (CLASS 2) PURSUANT TO THE TERMS OF THE DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY THE DEBTORS, THE COMMITTEE AND THE FIRST LIEN AGENTS, DATED AUGUST 28, 2015. [DKT. NO. 3164] (THE "AMENDED PLAN"). A COPY OF THE AMENDED PLAN IS ATTACHED HERETO AS EXHIBIT A, AND A BLACKLINED COPY SHOWING CHANGES FROM THE PLAN IS ATTACHED HERETO AS EXHIBIT B. THE MODIFICATIONS REFLECTED IN THE AMENDED PLAN ARE SUMMARIZED HEREIN, BUT ARE QUALIFIED IN THEIR ENTIRETY BY THE TERMS OF THE AMENDED PLAN. THE PLAN PROPONENTS ENCOURAGE EACH FIRST LIEN LENDER TO REVIEW THE AMENDED PLAN IN ITS ENTIRETY BEFORE DETERMINING WHETHER TO VOTE TO ACCEPT OR REJECT THE AMENDED PLAN.**

**ON AUGUST __, 2015, THE BANKRUPTCY COURT ENTERED AN ORDER APPROVING THIS SUPPLEMENT TO THE DISCLOSURE STATEMENT AND AUTHORIZED ITS USE IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE AMENDED PLAN BY THE HOLDERS OF FIRST LIEN CLAIMS. IN CONNECTION THEREWITH, PLEASE BE ADVISED THAT BOTH THE VOTING DEADLINE AND THE DEADLINE FOR FILING OBJECTIONS TO CONFIRMATION OF THE AMENDED PLAN HAVE BEEN EXTENDED TO 12:00 P.M. ON SEPTEMBER 8, 2015 SOLELY FOR THE HOLDERS OF FIRST LIEN CLAIMS. IF YOU HAVE ALREADY SUBMITTED A BALLOT ACCEPTING OR REJECTING THE PLAN AND WISH TO CHANGE YOUR VOTE WITH RESPECT TO THE AMENDED PLAN, YOU MAY DO SO BY SUBMITTING A NEW BALLOT VIA FIRST CLASS MAIL, HAND DELIVERY OR OVERNIGHT MAIL TO THE DEBTORS' CLAIMS AGENT AT THE FOLLOWING ADDRESS:**

**ASHINC Corporation, *et al.*, Claims Processing**
**c/o Rust Consulting/Omni Bankruptcy**
**5955 DeSoto Avenue, Suite 100**
**Woodland Hills, CA  91367**

**Introduction**

On June 17, 2015, the Plan Proponents filed that certain Disclosure Statement In Support of Debtors' Joint Chapter 11 Plan of Reorganization Proposed By The Debtors, The Committee And The First Lien Agents [Dkt. No. 3014] (the "Disclosure Statement").  Attached as Exhibit A to the Disclosure Statement is a copy of the Debtors' Joint Chapter 11 Plan of Reorganization Proposed By The Debtors, The Committee And The First Lien Agents, dated June 17, 2015 (the "Plan").  All capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Plan.

On July 8, 2015, the Bankruptcy Court entered that certain Order (I) Approving Disclosure Statement, (II) Approving Voting and Tabulation Procedures, (III) Setting Confirmation Hearing and Related Deadlines, and (IV) Granting Related Relief [Dkt. No. 3047] (the "Disclosure Statement Approval Order"), pursuant to which the Bankruptcy Court approved the Disclosure Statement for use in connection with the solicitation of votes to accept or reject the Plan.  In accordance with the Disclosure Statement Approval Order, the Plan Proponents commenced the process of soliciting votes to accept or reject the Plan.  The Bankruptcy Court has scheduled a hearing on confirmation of the Plan for September 10, 2015.

As disclosed in the Disclosure Statement, Yucaipa objected to the Bankruptcy Court's approval of the Disclosure Statement and advised the Plan Proponents and the Bankruptcy Court of its intention to object to confirmation of the Plan.  Yucaipa's objection to approval of the Disclosure Statement, which also summarizes the objections to confirmation, can be found on the Bankruptcy Court's docket at entry 2991.  Yucaipa also filed a motion to suspend these Chapter 11 cases or alternatively to stay all proceedings related to confirmation of the Plan pending resolution of the Litigation Claims filed against Yucaipa and certain other defendants by the Committee (on behalf of the Debtors' estates) and the First Lien Agents.  [Dkt. No. 2994].

Subsequent to the entry of the Disclosure Statement Approval Order, Yucaipa served discovery requests upon each of the Debtors, the Committee and the First Lien Agents.  The Plan Proponents similarly served discovery requests upon Yucaipa.  In order to establish a schedule for the conduct of discovery and the submission of briefing in connection with the hearing on confirmation of the Plan, the Plan Proponents and Yucaipa negotiated a scheduling order which was approved by the Bankruptcy Court on July 2, 2015 [Dkt. No. 3044] (the "Scheduling Order").  The Plan Proponents provided initial responses to Yucaipa's discovery demands, including the production of documents.  Yucaipa alleged certain deficiencies in the document production of the Plan Proponents, and filed a motion to compel with the Bankruptcy Court [Dkt. No. 3066].  Yucaipa also challenged the extent of the "common interest privilege" asserted by the Plan Proponents.  No depositions have yet been taken or scheduled, although four individuals have been identified as potential witnesses for the confirmation hearing.  In addition, Yucaipa indicated its intention to call an expert witness to testify at the confirmation hearing.  To date, however, no expert report has been served and no deposition of such expert has been taken or scheduled.  Yucaipa has also (a) filed a motion for the temporary allowance of the full amount of its claim for voting purposes on August 10, 2015 [Dkt. No. 3111] that would have been heard by the Bankruptcy Court at the confirmation hearing, and (b) requested that the Bankruptcy Court extend the discovery cutoff dates and briefing schedule set forth in the Scheduling Order, and to

adjourn confirmation until late October, 2015.  If a contested confirmation hearing were to occur, the Plan Proponents believe that completion of discovery (including document production, depositions, expert depositions) and the prosecution of such a contested confirmation hearing would result in substantial cost and expense to each of the Plan Proponents, all of which would be borne by the First Lien Lenders through the use of their Cash Collateral.

In or about the first week in August, 2015, the Plan Proponents and Yucaipa began discussions regarding the prospect of resolving Yucaipa's objections to confirmation through certain modifications to the Plan.  Those discussions have resulted in the agreement of the Plan Proponents to modify the Plan (in the form of the Amended Plan), and the agreement of Yucaipa to vote, or to consent to the First Lien Agents' voting, Yucaipa's First Lien Claims to accept the Amended Plan.[2]  A summary of the modifications embodied in the Amended Plan is set forth below.

## Summary of Changes In The Amended Plan

The modifications reflected in the Amended Plan generally fall into three categories.  The first category of modifications reflect changes made to conform the Amended Plan (and particularly certain defined terms used in the Amended Plan) to certain of the Plan Documents included in the Plan Supplement, filed on August 12, 2015 [Dkt. No. 3126], which will be executed upon the Effective Date and used to implement the terms of the Amended Plan.  For instance, the term "Litigation Funding Loans" has been replaced by the term "Investments" and a new defined term "Investment Funding Agreement" has been added as the document setting forth the terms on which the Investors will provide funding to the Allied Litigation Trust to fund the prosecution of the Litigation Claims.  Defined terms for "Litigation Trust Beneficiaries" and "Litigation Trust Interests" have also been added.  These changes do not affect the treatment of the First Lien Lenders' Claims in Class 2.

The second category includes various "clean up changes" to correct non-material errors in the Plan, to conform the Plan to other settlements embodied in the Plan (such as the AIG Settlement Agreement), or to add provisions not previously included.  These changes also do not affect the treatment of the First Lien Lenders' Claims in Class 2.

The third category of changes includes those modifications made to reflect the settlement with Yucaipa.  Those changes are as follows:

1.  **First Lien Lender Deferred Distribution**.  The treatment of the First Lien Lender Claims in Class 2 has been modified to provide those First Lien Lenders who do not elect to receive New Common Stock in Reorganized Allied Holdings (a "Non-Electing First Lien Lender") with additional consideration in the form of the First Lien Lender Deferred Distribution.  The First Lien Lender Deferred Distribution is equal to such Non-Electing First Lien Lender's Pro Rata share of up to $1 million, to be paid by the Reorganized Debtors from the net cash proceeds received by the Reorganized Debtors from the sale, transfer, assignment or

---

[2]  Yucaipa's agreement in this regard is without prejudice to any and all of Yucaipa's and the Plan Proponents' rights and defenses, and shall not be used by any party for any purpose in any other proceeding (including, without limitation, the Litigation Claims or any proceeding in which the validity or enforceability of the Third Amendment to the First Lien Credit Agreement is at issue).

disposition of the Reorganized Debtors' Assets (other than the Reorganized Debtors' interests in Haul Insurance Limited). Payment of the First Lien Lender Deferred Distribution will also be subject to the Reorganized Debtors' prior recovery (in cash or property) from the Reorganized Debtors' Assets of an amount equal to the First Lien Lender Cash Distribution (i.e., the amount paid by the Reorganized Debtors to Non-Electing First Lien Lenders upon the Effective Date of the Amended Plan equal to their Pro Rata share of $2.6 million).

In addition, on or before the commencement of the Confirmation Hearing, each Non-Electing Lender that is entitled to receive its Pro Rata share of the First Lien Lender Deferred Distribution may, by written notice to counsel for the First Lien Agents, exchange such entitlement to a Pro Rata share of the First Lien Lender Deferred Distribution for a one-time payment in Cash in an amount equal to such Non-Electing First Lien Lender's Pro Rata share of $500,000, such payment to be made no later than seven (7) Business Days after the Effective Date.

A complete description of the First Lien Lender Deferred Distribution can be found in Section 5.20 of the Amended Plan.

2. **GUC Cash Distribution.** Section 5.15 of the Plan provided for a settlement of any disputes among the First Lien Agents (on behalf of the First Lien Lenders), the Debtors and the Committee, including (without limitation) with respect to (a) entitlement of the First Lien Lenders to adequate protection pursuant to the 2012 Final DIP Order and the Replacement DIP Order, and (b) the obligation of the First Lien Lenders to fund the Wind Down Budget (as defined in the JCT Sale Order). Pursuant to this settlement the First Lien Agents agreed to fund, through use of Cash Collateral, certain amounts required to pay Administrative Expense Claims, Priority Claims, amounts required by the Central States Settlement, the Northwest Settlement and the AIG Settlement Agreement, as well as a $3 million Cash distribution to the holders of Allowed General Unsecured Claims. Pursuant to this settlement, the Debtors and the Committee agreed to support the Plan, including those portions of the Plan providing for the creation of the Allied Litigation Trust to pursue, from and after the Effective Date, the Litigation Claims against Yucaipa and the other defendants. The First Lien Lenders (other than Yucaipa) will be substantial Litigation Trust Beneficiaries, and thus stand to benefit in the event the Litigation Claims are successfully prosecuted. Yucaipa had objected to the First Lien Agents' use of Yucaipa's alleged Pro Rata share of Cash Collateral to fund any payments to be made under the Plan, and in particular the GUC Cash Distribution. In settlement of this objection, the Amended Plan now provides that no portion of the Cash Collateral held by the Debtors or the First Lien Agents allocable to the Disputed First Lien Obligations (i.e., those First Lien Claims allegedly held by Yucaipa) shall be used to fund the GUC Cash Distribution. *See* Amended Plan, definition of "GUC Cash Distribution"; Section 5.1(a). Notwithstanding the foregoing, any distribution of Cash that Yucaipa is entitled to receive either from the Debtors or the First Lien Agents pursuant to the Amended Plan shall be deposited into the Disputed First Lien Obligations Escrow, to be held pending resolution of the Litigation Claims.

3. **No Prejudice.** As a final element to the resolution with Yucaipa, the Plan Proponents and Yucaipa have agreed that no provision of the Amended Plan or the Confirmation Order shall constitute or be deemed to constitute an admission or waiver of any right or defense that any party has or may have in any other proceeding, and that the Confirmation Order will not contain

any finding of fact or conclusion of law relating to the First Lien Credit Agreement that will be binding on Yucaipa or any Plan Proponent in any other proceeding.

4. **Section 3.7; Treatment of Yucaipa.**    Section 3.7 of the Plan has been added to provide additional specificity regarding Yucaipa's treatment under the Plan, and in particular the treatment of its Disputed First Lien Obligations in Class 2 (First Lien Lender Claims).  As more fully set forth in Section 3.7, all distributions made on account of Yucaipa's Disputed First Lien Obligations, whether from the Debtors, the Reorganized Debtors or the First Lien Agents, and whether prior to, on or after the Effective Date, will be deposited into the Disputed First Lien Obligations Escrow pending resolution of the Litigation Claims.  Section 3.7 also clarifies that Yucaipa will be entitled to ratable treatment with each other First Lien Lender with respect to the Disputed First Lien Obligations in regards to any subsequent distributions, subject to such distributions being deposited into the Disputed First Lien Obligations Escrow.  Finally, Section 3.7 clarifies that (a) Yucaipa will not share in the funding of the GUC Cash Distribution (described in paragraph 2 above) and (b) that no provision of the Plan or Confirmation Order will prejudice any rights or defenses that Yucaipa or any Plan Proponent (or any of their successors or assigns) has or may have in any other proceedings (described in paragraph 3 above).

**Recommendation**

The Plan Proponents continue to believe that confirmation of the Amended Plan is in the best interests of all holders of Claims and urge all holders of First Lien Lender Claims in Class 2 to vote to accept the Amended Plan.

Dated: August 28, 2015

**ASHINC Corp.**                                        **Official Committee of Unsecured Creditors**
(for itself and on behalf of each Debtor)

By: /s/ John F. Blount                               By:    /s/ Michael G. Burke
    Name:  John F. Blount                               Name: Michael G. Burke
    Title:  President and CEO/Wind-Down Officer         Title:  Counsel to the Official Committee of
                                                                Unsecured Creditors

**First Lien Agents**
By:   /s/ Adam C. Harris
    Name: Adam C. Harris
    Title: Counsel to the First Lien Agents