IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ASHINC CORPORATION, et al., ) | Bank. No. 12-11564-CSS |
| ) | Adv. No. 13-50530-CSS |
| Debtors. ) | |
| | |
| | |
| MARK GENDREGSKE, et al, ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | Civ. No. 14-1415-SLR |
| ) | |
| BLACK DIAMOND COMMERCIAL ) | |
| FINANCE LLC, et al., ) | |
| ) | |
| Appellees. ) | |

## MEMORANDUM

At Wilmington this 29th day of September, 2015, having reviewed the appeal from the bankruptcy court's October 6, 2014 order ("the Order", D.I. 18, ex. J), and the opposition thereto; I will affirm the Order and deny the appeal, based on the following reasoning.

1. **Background.** Debtors ASHINC Corporation f/k/a Allied Systems Holdings, Inc. ("Allied"), Allied Systems, Ltd., and their U.S. and Canadian subsidiaries (collectively, "debtors") filed for protection under Chapter 11 of the Bankruptcy Code in June 2012. Also in June, the Official Committee of Unsecured Creditors (the "Committee") was appointed and in March 2013, the Committee initiated an adversary

proceeding against, *inter alia*, several related entities collectively referred to as "Yucaipa,"[1] as well as members of the Board of Directors of Allied (the "directors," including appellants Mark Gendregske and Brian Cullen ("appellants")). The amended complaint asserts claims that Yucaipa and certain of the directors breached, and/or aided and abetted the breach of, fiduciary duties owed to Allied in order to impermissibly benefit Yucaipa to the detriment of Allied. In July 2013, the Committee, the debtors, Yucaipa, and the directors entered into a settlement agreement (the "Agreement") and filed a motion ("the Motion") to have the agreement approved by the bankruptcy court. However, over the course of the more than 14 months that passed between the filing of the Motion and the Order denying such, objections were posed by non-parties[2] and disagreements arose among the parties[3] such that the bankruptcy court ordered the parties back to mediation, which mediation efforts were unsuccessful. By August 2014, apparently the only parties who still actively supported the Agreement were appellants, who filed a request for a hearing on the Motion. On October 6, 2014, the bankruptcy judge denied the request for a hearing, explaining that a hearing would be

> a colossal waste of everybody's time and effort, because as drafted I don't see any way that the Court would approve the agreement. . . . I think it contains some fundamental flaws that make the agreement illusory at best

---

[1] Yucaipa American Alliance Fund I, L.P.; Yucaipa American Alliance (Parallel) Fund I, L.P.; Yucaipa American Alliance Fund II, L.P.; Yucaipa American Alliance (Parallel) Fund II, L.P..

[2] BDCM Opportunity Fund II LP and Black Diamond CLO 2005-1 Ltd. (collectively, "Black Diamond"); and Spectrum Investment Partners LP ("Spectrum").

[3] *See, e.g.*, D.I. 26 at 5-6; D.I. 28 at 5-6.

2

> and that ultimately would, if it survived, be an extremely . . . narrow settlement over a very small amount of money that is insufficient to satisfy the legal standards.
>
> I say it's illusory for several reasons. Primarily that Yucaipa has negotiated an out, if you will, of the agreement, and they've made it clear they intend to exercise that out.
> The effect under the plain meaning of the agreement that would be in front of the Court would be to remove Yucaipa from the settlement agreement and remove any releases or fixing of claim amount that would apply to Yucaipa. . . . [S] that's a problem, because they're a key party to whatever settlement could be achieved, and they provide by far the bulk of the consideration that was included in the settlement.

(D.I. 18, ex. K at 37-38) The bankruptcy judge went on to describe other issues that would constitute obstacles to approval of the Agreement, including: (1) the potential objection to the Agreement by Black Diamond, when the amount of the claim applicable to all parties was not fixed by the Agreement (*id.* at 38); and (2) the "significant open issues with the insurers and the scope of the . . . releases as currently drafted" (*id.* at 38-39). The judge concluded that there had been "a significant change in circumstances" between the time the settlement was forged and the time it was being presented for approval and, consequently, denied both the motion for a hearing and the Agreement itself based on the issues that had been exposed through the passage of time. (*Id.* at 39)

2. **Standard of review.** This court has jurisdiction to hear an appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). With

3

mixed questions of law and fact, the court must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (citing Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101–02 (3d Cir. 1981)). The district court's appellate responsibilities are further informed by the directive of the United States Court of Appeals for the Third Circuit, which effectively reviews on a de novo basis bankruptcy court opinions. *In re Hechinger*, 298 F.3d 219, 224 (3d Cir. 2002); *In re Telegroup*, 281 F.3d 133, 136 (3d Cir. 2002).

3. **Discussion.** Federal Rule of Bankruptcy Procedure 9019 governs settlements in bankruptcy proceedings. Under Rule 9019, a bankruptcy judge has "the authority to approve a compromise of a claim" and, generally, the judge's approval or disapproval of a settlement agreement is reviewed for abuse of discretion. *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). In ruling on a motion for approval of a settlement under Rule 9019, a bankruptcy court should examine the proposed settlement under the framework established in *In re Martin*, that is, the court should consider each of the following factors:

> (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors.

*Id. See also In re RFE Indus., Inc.*, 283 F.3d 159, 165 (3d Cir. 2002). Rule 9019(a) makes clear that it is the bankruptcy court's responsibility to examine the settlement

4

agreement from the perspective of all the creditors of an estate. *In re Martin*, 91 F.3d at 394. In order to fulfill that responsibility,

> the bankruptcy court must be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate. Accordingly, the trustee should inform the court and the parties of any changed circumstances since the entry into the stipulation of settlement. The trustee may even opt not to argue in favor of the stipulation, as was done here, if she no longer believes the settlement to be in the best interest of the estate.

*Id.*

4. Consistent with the above analysis, the bankruptcy court did not commit any error by taking into account how circumstances had changed from the time the Agreement was executed to the time the order under appeal was issued. Moreover, the record reflects that, of the original signatories, only the appellants (defendant directors) continue to support the Agreement.[4] The analytical framework established in *In re Martin* - particularly the fourth prong, the "paramount interest of the creditors" - cannot possibly be satisfied when all the creditors object. 91 F.3d at 393. The bankruptcy judge properly exercised his discretion in disapproving the Agreement - even before a hearing - when it was evident from the record that the Agreement would not serve to either minimize litigation or expedite the administration of the estate, given the legitimate issues identified by the judge and the almost universal lack of support.[5]

---

[4](*See* D.I. 25, 26) It is worth noting as well that the principal beneficiaries of the claims that are the subject of the Agreement, Black Diamond and Spectrum, likewise object to the Agreement. (D.I. 24)

[5]The court notes in closing that, because appellants do not have standing to challenge the Agreement as it pertains to Yucaipa (D.I. 18, ex. C at 1 n.1), the court has not considered the merits of appellants' arguments as they relate to the bankruptcy court's interpretation of such, particularly, the ability of Yucaipa to "opt out" of the

5

5. **Conclusion.** For the above reasons, the court affirms the October 6, 2014 order of the bankruptcy court and denies the appeal. An appropriate order shall issue.

_____
United States District Judge

---

settlement.