## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ASHINC CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 12-11564-CSS<br><br>Jointly Administered<br><br>**Hearing Date: September 16, 2020 at 12:00 Noon (ET)**<br>**Objections Due:  August 17, 2020 at 4:00 P.M. (ET)** |

### NOTICE OF FILING OF REDACTED VERSION OF PLAN ADMINISTRATOR'S MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AND/OR SECTIONS 105(a) AND 542(e) OF THE BANKRUPTCY CODE AUTHORIZING THE TAKING OF DOCUMENT DISCOVERY AND DEPOSITION TESTIMONY FROM THE YUCAIPA FUNDS

TO:    (I) THE DEBTORS; (II) THE UNITED STATES TRUSTEE; (III) YUCAIPA FUNDS; AND (IV) ANY SUCH OTHER PARTY ENTITLED TO RECEIVE NOTICE PURSUANT TO BANKRUPTCY RULE 2002.

**PLEASE TAKE NOTICE** that on July 31, 2020, Catherine E. Youngman, in her capacity as the Litigation Trustee and Plan Administrator (the "Litigation Trustee") filed the **Motion for an Order Pursuant to Bankruptcy Rule 2004 and/or Sections 105(a) and 542(e) of the Bankruptcy Code Authorizing the Taking of Document Discovery and Deposition Testimony from the Yucaipa Funds** (the "Motion") [D.I. 4086].

**PLEASE TAKE FURTHER NOTICE** that on July 31, 2020, the Litigation Trustee also filed the **Motion of the Litigation Trustee for Entry of an Order Under 11 U.S.C. § 107(b), Fed. R. Bankr. P. 9018 and Del. Bankr. L.R. 9018 Authorizing Filing Under Seal of the Motion for an Order Pursuant to Bankruptcy Rule 2004 and/or Sections 105(a) and 542(e) of the Bankruptcy Code Authorizing the Taking of Document Discovery and Deposition Testimony from the Yucaipa Funds** [D.I. 4087] (the "**Motion to Seal**").

---

[1] The Debtors in these cases, along with the federal tax identification number (or Canadian business number where applicable) for each of the Debtors, are: ASHINC Corporation (f/k/a Allied Systems Holdings, Inc.) (58-0360550); AAINC Corporation (f/k/a Allied Automotive Group, Inc.) (58-2201081); AFBLLC LLC (f/k/a Allied Freight Broker LLC) (59-2876864); ASCCO (Canada) Company (f/k/a Allied Systems (Canada) Company) (90-0169283); ASLTD L.P. (f/k/a Allied Systems, Ltd. (L.P.) (58-1710028); AXALLC LLC (f/k/a Axis Areta, LLC) (45-5215545); AXCCO Canada Company (f/k/a Axis Canada Company) (875688228); AXGINC Corporation (f/k/a Axis Group, Inc.) (58-2204628); Commercial Carriers, Inc. (38-0436930); CTSINC Corporation (f/k/a CT Services, Inc.) (38-2918187); CTLLC LLC (f/k/a Cordin Transport LLC) (38-1985795); F.J. Boutell Driveway LLC (38-0365100); GACS Incorporated (58-1944786); Logistic Systems, LLC (45-4241751); Logistic Technology, LLC (45-4242057); QAT, Inc. (59-2876863); RMX LLC (31-0961359); Transport Support LLC (38-2349563); and Terminal Services LLC (91-0847582).

**PLEASE TAKE FURTHER NOTICE** that the Litigation Trustee hereby files the proposed redacted version of the Motion (the "**Proposed Redacted Document**"), attached hereto as **Exhibit "A"**.

**PLEASE TAKE FURTHER NOTICE** THAT A HEARING TO CONSIDER THE MOTION IS SCHEDULED FOR **SEPTEMBER 16, 2020 AT 12:00 NOON (ET)**[2] BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI AT THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 NORTH MARKET STREET, 6TH FLOOR, COURTROOM NO. 6, WILMINGTON, DE 19801.

**PLEASE TAKE FURTHER NOTICE** that any objections to the redactions contacted in the Proposed Redacted Document may be heard at the Hearing.

**PLEASE TAKE FURTHER NOTICE THAT IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR A HEARING.**

Dated:  August 5, 2020

**FOX ROTHSCHILD LLP**

*/s/ Seth A. Niederman*
Seth A. Niederman (DE Bar No. 4588)
Citizens Bank Center
919 N. Market Street, Suite 300
Wilmington, DE  19899-2323
Tel.: (302) 654-7444
Fax: (302) 656-8920
sniederman@foxrothschild.com

-and-

---

[2] **The hearing may be held telephonically and by videoconference. All parties wishing to appear must do so telephonically by contacting COURTCALL, LLC at 866-582-6878 no later than September 16, 2020 at 8:30 a.m. (ET) to register. Additionally any parties that will be arguing or testifying must appear by Zoom for video and CourtCall for audio in accordance with the instructions set forth in the *Notice Regarding Videoconferencing During The Implementation of COVID-19 Court Procedures* and the *Delaware Bankruptcy Court Audio/Video Appearance Procedures*. The Litigation Trustee will file a Notice of Agenda prior to the hearing containing Zoom link for the hearing.**

Catherine E. Youngman, Esq.
Mark E. Hall, Esquire
Michael R. Herz, Esquire
75 Eisenhower Parkway, Suite 200
Roseland, NJ  07068-1600
Tel.: (973) 992-4800
Fax: (973) 992-9125

*Counsel for the Litigation Trustee and Plan Administrator*

# Exhibit "A"

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*,[1] | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |

### THE LITIGATION TRUST'S MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 — AND/OR SECTIONS 105(a) AND 542(e) OF THE BANKRUPTCY CODE — AUTHORIZING THE TAKING OF DOCUMENT DISCOVERY AND DEPOSITION TESTIMONY FROM THE YUCAIPA FUNDS

Catherine E. Youngman, as Litigation Trustee and Plan Administrator (the "Trustee") for the litigation trust for ASHINC Corporation, *et al* (the "Litigation Trust"), by and through her undersigned counsel, moves this Court pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), Rule 2004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware ("Local Rules"), and Sections 105(a) and 542(e) of Title 11 of the United States Code ("Bankruptcy Code") for an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"): (i) directing Yucaipa American Alliance Fund I, L.P. ("YAAF Main Fund") and Yucaipa American Alliance (Parallel) Fund I, L.P. (together, "YAAF 1" or the "Yucaipa Funds") to produce certain documents to the Trustee, including electronically stored information and other tangible things, as set forth on Schedule A to the Proposed Order, and (ii) authorizing the Trustee to conduct examinations of YAAF 1's

---

[1]    The Debtors in these cases, along with the federal tax identification number (or Canadian business number where applicable) for each of the Debtors, are: ASHINC Corporation (f/k/a Allied Systems Holdings, Inc.) (58-0360550); AAINC Corporation (f/k/a Allied Automotive Group, Inc.) (58-2201081); AFBLLC LLC (f/k/a Allied Freight Broker LLC) (59-2876864); ASCCO (Canada) Company (f/k/a Allied Systems (Canada) Company) (90-0169283); ASLTD L.P. (f/k/a Allied Systems, Ltd. (L.P.) (58-1710028); AXALLC LLC (f/k/a Axis Areta, LLC) (45-5215545); AXCCO Canada Company (f/k/a Axis Canada Company) (875688228); AXGINC Corporation (f/k/a Axis Group, Inc.) (58-2204628); Commercial Carriers, Inc. (38-0436930); CTSINC Corporation (f/k/a CT Services, Inc.) (38-2918187); CTLLC LLC (f/k/a Cordin Transport LLC) (38-1985795); F.J. Boutell Driveway LLC (38-0365100); GACS Incorporated (58-1944786); Logistic Systems, LLC (45-4241751); Logistic Technology, LLC (45-4242057); QAT, Inc. (59-2876863); RMX LLC (31-0961359); Transport Support LLC (38-2349563); and Terminal Services LLC (91-0847582). The location of the Debtors' corporate headquarters and the Debtors' address for service of process is 2302 Parklake Drive, Bldg. 15, Ste. 600, Atlanta, Georgia 30345.

custodian of the records if necessary.  In support of this motion (the "Motion"), the Trustee states

as follows:

**PRELIMINARY STATEMENT**

1.      Earlier this year, the Trustee uncovered that the Yucaipa Funds made a *significant*

distribution to one of its investors last spring.  The Trustee was subsequently told by YAAF 1's

counsel that distributions had, in fact, been routinely made to other Yucaipa Fund investors over

time.  YAAF 1's counsel further claimed that such distributions were made in compliance with

the Yucaipa Funds' Limited Partnership Agreement(s).[2]

2.      As the Trustee charged with overseeing, among other things, the prosecution of

two related adversary proceedings — Adversary Proceeding Nos. 13-50530 and 14-50971 (the

"Adversary Proceedings") — these distributions raise serious concerns.

3.      By way of the Adversary Proceedings, the Trustee is seeking recovery of

hundreds of millions of dollars in damages resulting from YAAF 1's acts of misconduct against

Debtors and its constituents.  Despite the massive contingent liability presented by the Adversary

Proceedings (first initiated in early 2013), it appears the Yucaipa Funds regularly dissipated

assets.

4.      In light of YAAF 1's large distributions to investors, it is unclear if the Yucaipa

Funds can satisfy a judgment if one is obtained in the Adversary Proceedings.  If YAAF 1 is

potentially unable to satisfy a judgment, as a result of the Yucaipa Funds' distributions, it is

necessary for the Trustee to understand what her recourse may be.  This, in turn, requires

understanding, *inter alia*, when the Yucaipa Funds made distributions, who were the recipients,

what were the amounts of those distributions, what were the basis for these distributions, and

---

[2]      A copy of Yucaipa American Alliance Fund I, L.P's Third Amended and Restated Limited Partnership Agreement, dated March 4, 2005 (the "**LP Agreement**") is attached as Exhibit A to the accompany Declaration of the Trustee (the "Trustee's Declaration").

what assets remain in the Yucaipa Funds. This information is readily available to YAAF 1, and it is critical to the Trustee's understanding of what, if any, measures are necessary to protect the beneficiaries of the Litigation Trust at this time.

5. As such, the Trustee sought a consensual turnover of information regarding the distributions from YAAF 1. While the parties made headway towards a voluntary turnover of certain information during several meet and confer exchanges, YAAF 1's counsel informed the Trustee that its client was unwilling to provide the identity of recipients of distributions and required, as a pre-condition to any voluntary turnover, an agreement from the Trustee that she would not seek any additional discovery on these issues prior to any judgment issuing in the Adversary Proceedings.

6. The Trustee cannot acquiesce to these restrictions in light of duties owed to the Litigation Trust. As such, this Motion is necessary.

**JURISDICTION**

7. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.

8. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

9. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The statutory and legal predicates for the relief requested herein are Bankruptcy Rule 2004, Local Rule 2004-1, and Sections 105 and 542(e) of the Bankruptcy Code.

**BACKGROUND**[3]

11.     As the Court is aware, the Litigation Trust has been engaged in the Adversary Proceedings against YAAF 1 that have been ongoing for over 7 years.  In those coordinated actions, the Trustee is prosecuting various claims for damages against YAAF 1, avoidance claims under chapter 5 of the Bankruptcy Code, and claims for equitable subordination and recharacterization of debt.  The Trustee is seeking recovery of hundreds of millions of dollars as a result of the Yucaipa Funds' wrongdoing.

12.     Earlier this year, one of YAAF 1's initial investors ███████ issued certain 2019 performance reports that the Trustee reviewed.  These reports — when compared to earlier issued reports from ████████ — reveal that YAAF 1 made *significant* distributions during the first and second quarters of 2019.

13.     The Trustee was subsequently told by the Yucaipa Funds' counsel that there have been other such distributions over time.

14.     YAAF 1's dissipation of assets by way of these distributions seemingly contravenes YAAF 1's own LP Agreement.

15.     Following the revelation that YAAF 1 was making large distributions to investors (notwithstanding its sizable contingent liability to the Litigation Trust), the Trustee sent YAAF 1's counsel a letter on March 11, 2020 requesting YAAF 1 to provide "all financial statements, investor letters, and any other distribution explanations, as well as a schedule that details all distributions, including the dates, amounts, and recipients of such distributions, made since the filing of the 13-50530 Adversary Proceeding on January 25, 2013 to present."

16.     The parties subsequently met and conferred through letter exchange and conference calls over the course of several months.  Eventually, YAAF 1 agreed to provide some of the requested items.  Specifically, contingent on a concession from the Trustee not to pursue

---

[3]     The facts set forth in the Trustee's Declaration are incorporated by reference.

additional Rule 2004 discovery, it agreed to provide: (i) the dates and amount of all distributions YAAF 1 made since December 1, 2016; (ii) a declaration that distributions were made in compliance with the LP Agreement; and (iii) an accounting for the value of cash and other assets remaining with YAAF 1. YAAF 1, however, would not agree to disclose the recipients of distributions (citing unspecified "privacy concerns"), or any support — beyond a self-serving declaration — that the Yucaipa Funds' distributions were made in compliance with the LP Agreement.

17.     The parties, therefore, have reached an impasse, necessitating the filing of this Motion.

## RELIEF REQUESTED

18.     By this Motion, and without limiting the scope of the requested documents set forth in Schedule A to the Proposed Order, the Trustee seeks documents and information in YAAF 1's possession relating to: (i) the dates, amounts, and recipients of distributions made by the Yucaipa Funds since December 1, 2016;[4] (ii) supporting documentation reflecting that distributions by the Yucaipa Funds were made in compliance with the LP Agreement(s); and, (iii) the amount of cash and assets remaining with the Yucaipa Funds.

19.     The Trustee also seeks an Order authorizing the Trustee to conduct an examination of YAAF 1's custodian of records, if necessary.

20.     The Trustee requests that YAAF 1 produce the requested documents and information beginning no later than ten (10) business days following entry of an Order granting this Motion. Such production should be made at the offices of Fox Rothschild, LLP, 49 Market Street, Morristown, NJ 07960, Attn.: Catherine E. Youngman (or at such other time or place as the parties may mutually agree).

## GROUNDS FOR REQUESTED RELIEF

---

[4]     December 1, 2016 to present captures all months since the effective date of the Debtors' Plan.

I.    **BANKRUPTCY RULE 2004 AUTHORIZES THE DISCOVERY SOUGHT**

21.    Pursuant to Bankruptcy Rule 2004, the court may order any investigation "that affects the administration of the debtor's estate." FED. R. BANKR. P. 2004(b).  The scope of a Bankruptcy Rule 2004 examination is extremely broad.  *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) ("[u]nlike traditional discovery, which narrowly focuses on the issues germane to the dispute, the scope of Rule 2004 is broad and unfettered, and has been likened to a 'fishing expedition' and 'an inquisition.'").  Legitimate goals of the investigation include "discovering assets, examining transactions, and determining whether wrongdoing has occurred."  *In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009).

22.    As discussed below, the discrete, and narrowly tailored information sought by the Trustee fits squarely within the purpose of Rule 2004.

      A.    **Disclosure of the Yucaipa Funds' Cash and Assets Are Properly Within the Scope of a Rule 2004 Examination**

23.    "Because the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation."  *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).  Here, it is uncontested that the Yucaipa Funds had extensive dealings with Allied from the time it emerged from its first bankruptcy in May 2007 to the time it entered bankruptcy, again, in May 2012.  It is therefore subject to examination under Rule 2004.

24.    The Trustee seeks information regarding YAAF 1's ability to satisfy a potential judgment (without conditions YAAF 1 has attempted to place on her ability for potential follow-up discovery if necessary).  The information is important to the Trustee's exercise of her business judgment and duties owed to the Litigation Trust's beneficiaries in this respect.

25.    While the Trustee has been prosecuting the Adversary Proceedings for slightly over 3 ½ years, her concerns about YAAF 1's ability to satisfy any judgment were only recently validated.  In or around January 2020, ████████████████████████████████████████████████

released a Private Equity Program Fund Performance Review for the second quarter of 2019 (the "Q2 2019 Report").    The Q2 2019 Report shows that in Q1 2019, ████████████████████████ ████████████████████████████████████████████████████████████████████████████  Thus, between the first and second quarters of 2019, it appears YAAF 1 made distributions of approximately ██████████████████████████████████████████ ██████████████████████████████████████████████████████████ This is an astounding distribution in light of the massive contingent liability the Yucaipa Funds face in the Adversary Proceedings.

26.    This information is alarming.  The Trustee owes a fiduciary responsibility to all creditors to use her business judgment in administering the Litigation Trust.   To do so, the Trustee needs information regarding YAAF 1's current financial condition.  *See In re Roman Catholic Church of Diocese of Gallup*, 513 B.R. 761, 762 (Bankr. D.N.M. 2014) (permitting Rule 2004 investigation into collectability of an estate claim against a third party).  The Trustee's narrow request for information about YAAF 1's distributions and its current cash and assets is, therefore, an appropriate subject for examination under Rule 2004.

27.    This investigation — while informing the prosecution of the Adversary Proceedings — is unrelated to the underlying merits of those cases.  The Adversary Proceedings concerns YAAF 1's abuse of its position as Allied's controlling shareholder and its repeated breaches of the First Lien Credit Agreement.  YAAF 1's current cash and assets following its distributions to date have no bearing on these issues, so there is no risk that the investigation will lead to discovery of evidence related to the pending litigation.  *See In re Washington Mut., Inc.*, 408 B.R. at 45 (discussing exceptions to the "pending proceeding" rule).

**B.      Disclosure of the Yucaipa Funds' Distributions Are
Properly Within the Scope of a Rule 2004 Examination**

28.    An investigation is consistent with Rule 2004 when its purpose is to determine "whether claims beneficial to the estates exist and whether to pursue them."  *In re Recoton*

*Corp.*, 307 B.R. 751, 756 (Bankr. S.D.N.Y. 2004).  That is the case here.

29.     If YAAF 1 is unable to satisfy a judgment in the Adversary Proceedings, its distributions to its investors during the pendency of the Adversary Proceedings would be subject to potential turnover claims.  ████████████████████████████████████these transfers may also be subject to avoidance under Delaware's fraudulent conveyance statutes. The Trustee seeks the dates, amounts, and identities of the recipients of YAAF 1's distributions since December 1, 2016 in order to, among other things, make these determinations.  Such an investigation is not premature.  Whereas discovery under Federal Rule of Civil Procedure 69 regarding potentially fraudulent transfers first requires a judgment, discovery under Rule 2004 is not so limited.  *See In re Brooke Corp.*, No. 08-22786, 2013 WL 3948866, at *3 (Bankr. D. Kan. July 29, 2013) (permitting trustee to evaluate potential collection of a judgment from parties other than the named defendant).  Denying the Trustee this discovery until *after* judgment in the Adversary Proceedings "would prolong the litigation and therefore, the administration of the estate." *Id.*

## II.     SECTIONS 105(a), 542(e) AND 1106(a)(3) OF THE BANKRUPTCY CODE FURTHER SUPPORT GRANTING THE TARGETED DISCOVERY SOUGHT

30.     Sections 105(a), 542(e) and 1106(a)(3) of the Bankruptcy Code also support granting the discovery sought by the Trustee in this Motion.

31.     *First*, Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Courts routinely find § 105(a) to be a broad provision, endowing bankruptcy courts with equitable powers to craft "necessary and appropriate" remedies that further the aims of the Bankruptcy Code.  *See, e.g.*, *In re Swift Energy Company*, 2016 WL 35566962, at *5 (Bankr. D.

---

5  ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

Del. June 29, 2016). Because the Trustee seeks this information to fulfill her fiduciary responsibility to all creditors in administering the Litigation Trust, this investigation is appropriate.

32.    *Second*, Section 542(e) of the Bankruptcy Code specifically provides that the court may order the turnover to the trustee of "recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs,." 11 U.S.C. § 542(e). Under Section 542(e), it is irrelevant whether the records at issue are the property of the debtor, the property of the Auditors, or the property of someone else. *See In re Huffman*, No. 12-00177-NPO, 2013 WL 2481529, at *9 (Bankr. S.D. Miss. June 10, 2013) (Section 542(e) applies "even when documents are not property of the estate."). Given that the information sought by the Trustee "relates to" the financial affairs of Debtors estate, it is subject to turnover under § 542(e).

33.    *Third*, § 1106(a)(3) of the Bankruptcy Code also provides Chapter 11 Trustees with broad investigative authority pertaining to any matters "relevant to the case." The documents and information requested from the Yucaipa Funds — as set forth above and in Schedule A to the Proposed Order — are precisely the types of materials that a Litigation Trustee, as successor to the debtor-in-possession with respect to the claims against YAAF 1, is obligated to pursue under the Bankruptcy Code as such information is germane to the value and potential recovery of claims.[6]

## NO PREVIOUS REQUEST

34.    No previous request for the relief sought in this Motion has been made by the Trustee.

## CERTIFICATION

35.    As set forth in her Declaration, the Trustee has complied with her obligations under Local Rule 2004-1(a) and (b). The Trustee has extensively communicated and conferred

---

[6]    Further, courts have enjoined defendants from distributing assets during a litigation as a matter of public policy. The public "has a strong interest in ensuring that defendants do not fraudulently or otherwise transfer assets during litigation to circumvent recovery by a wronged plaintiff." *Barrett v. Reynolds*, No. 8:12cv328, at *10-11 (D. Neb. Nov. 15, 2012) (*quoting MeccaTech, Inc. v. Kiser*, 2008 WL 1774992, at *6 (D. Neb. Apr. 15, 2008) (District Court issued an injunction to prevent the defendant from "dissipating assets and funds outside the ordinary course of business or distributing such assets to partners of the [defendant.]")).

telephonically and in writing with counsel for YAAF 1 regarding production of the requested documents.

## NOTICE

36.     Pursuant to Local Rule 2004-1(c), notice of this Motion has been given to the (i) United States Trustee, (ii) the Yucaipa Funds, and (iii) those parties that have filed notices of appearance in this case pursuant to Bankruptcy Rule 2002.  The Trustee submits that such notice constitutes good and sufficient notice of the 2004 Motion, and that no other or further notice is necessary or required.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order (i) containing terms substantially similar to those included in the Proposed Order, (ii) directing YAAF 1 to produce documents specified in Schedule A to the Proposed Order to the Trustee and appear for examination under oath if necessary; and (iii) granting such other and further relief as is just and proper.

Dated: July 31, 2020

**FOX ROTHSCHILD LLP**

By:    */s/ Seth A. Niederman*
Seth A. Niederman (DE Bar No. 4588)
Citizens Bank Center
919 N. Market Street, Suite 300
Wilmington, DE 19801
Tel.: (302) 654-7444
Fax: (302) 656-8920
sniederman@foxrothschild.com

-and-

Catherine E. Youngman, Esq.
75 Eisenhower Parkway, Suite 200
Tel: (973) 992-4800
Fax: (973) 992-9125

*Counsel for the Litigation Trustee and Plan Administrator*

112727596.v1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*,[1] | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF THE LITIGATION TRUSTEE, CATHERINE E. YOUNGMAN, IN SUPPORT OF THE LITIGATION TRUST'S MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 — AND/OR SECTIONS 105(a) AND 542(e) OF THE BANKRUPTCY CODE — AUTHORIZING THE TAKING OF DOCUMENT DISCOVERY AND DEPOSITION TESTIMONY FROM THE YUCAIPA FUNDS**

I, Catherine E. Youngman, pursuant to 28 U.S.C. § 1746, declare as follows:

1.        I am the Litigation Trustee and Plan Administrator (the "Trustee") for the litigation trust for ASHINC Corporation and its affiliated debtors (the "Litigation Trust").  I have personal knowledge of the facts contained in this declaration and, if called as a witness, I could and would testify to these facts.

2.        As the Court is aware, the Litigation Trust has been engaged in adversary proceedings against Yucaipa American Alliance Fund I, L.P. ("YAAF Main Fund") and Yucaipa American Alliance (Parallel) Fund I, L.P. (together, "YAAF 1" or the "Yucaipa Funds")) that have been ongoing for over 7 years (*see* Adversary Proceeding Nos. 13-50530 and 14-50971) (the

---

[1]        The "Debtors" in these cases, along with the federal tax identification number (or Canadian business number where applicable) for each of the Debtors, are: ASHINC Corporation (f/k/a Allied Systems Holdings, Inc.) (58-0360550); AAINC Corporation (f/k/a Allied Automotive Group, Inc.) (58-2201081); AFBLLC LLC (f/k/a Allied Freight Broker LLC) (59-2876864); ASCCO (Canada) Company (f/k/a Allied Systems (Canada) Company) (90-0169283); ASLTD L.P. (f/k/a Allied Systems, Ltd. (L.P.) (58-1710028); AXALLC LLC (f/k/a Axis Areta, LLC) (45-5215545); AXCCO Canada Company (f/k/a Axis Canada Company) (875688228); AXGINC Corporation (f/k/a Axis Group, Inc.) (58-2204628); Commercial Carriers, Inc. (38-0436930); CTSINC Corporation (f/k/a CT Services, Inc.) (38-2918187); CTLLC LLC (f/k/a Cordin Transport LLC) (38-1985795); F.J. Boutell Driveway LLC (38-0365100); GACS Incorporated (58-1944786); Logistic Systems, LLC (45-4241751); Logistic Technology, LLC (45-4242057); QAT, Inc. (59-2876863); RMX LLC (31-0961359); Transport Support LLC (38-2349563); and Terminal Services LLC (91-0847582).  The location of the Debtors' corporate headquarters and the Debtors' address for service of process is 2302 Parklake Drive, Bldg. 15, Ste. 600, Atlanta, Georgia 30345.

"Adversary Proceedings").  In my capacity as Litigation Trustee, I am prosecuting various claims for damages against YAAF 1, avoidance claims under chapter 5 of the Bankruptcy Code, and claims for equitable subordination and recharacterization of debt.  The Litigation Trust is seeking recovery of hundreds of millions of dollars as a result of the Yucaipa Funds' wrongdoing.

3.    In the course of exercising my duties as Litigation Trustee, I have endeavored to ascertain who the Yucaipa Funds' investors are and, relatedly, who may have received distributions from the Yucaipa Funds over time.  Although I have limited details from YAAF Main Fund's Third Amended and Restated Limited Partnership Agreement, dated March 4, 2005 (the "LP Agreement"), and public sources, it has not been possible to obtain an accurate account of the Yucaipa Funds' investors, over time, and distributions that have been made to them.

4.    For example, the LP Agreement — a true and correct copy of which is attached as **Exhibit A** — ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████  Based on my review of a Drawdown Notice issued by YAAF Main Fund on September 11, 2009  — a true and correct copy of which is attached as **Exhibit B** — ███████████████████████████████████████████████████████████

████████████████████████████████████████

5.    A non-comprehensive list of additional investors is also available via Bloomberg. Attached hereto as **Exhibit C** is a true and correct copy of such investors as displayed on Bloomberg.

6.    Upon information and belief, the Yucaipa Funds made significant distributions to its investors during the first and second quarters of 2019.  This information is based on a review

of ████████████████████████████████████████████████████████

████████████████, copies of which are attached hereto as **Exhibit D** and **Exhibit E**

7.     Such distributions could impair the Yucaipa Funds' ability to meet its obligations to the Litigation Trust, and/or impair the Litigation Trust's ability to collect on a judgment against YAAF 1.

8.     Further, the fact that YAAF 1 made significant distributions in 2019 raises a serious concern that YAAF 1 may have also made significant distributions in previous years while the Adversary Proceedings — and the large contingent liability to the Litigation Trust (and its predecessors) — were pending.

9.     In the event YAAF 1 is unable to satisfy a judgment in the Adversary Proceedings, the Litigation Trust may have potential claims relating to the Yucaipa Funds' distributions to its investors during the pendency of the Adversary Proceedings.

10.    ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

11.    ████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

---

[2] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████



12.

13.

14.    By letter dated March 11, 2020 to the Yucaipa Fund's counsel (Gibson Dunn), I requested that YAAF 1 consensually provide "all financial statements, investor letters, and any other distribution explanations, as well as a schedule detailing all distributions, including the dates, amounts, and recipients of such distributions, made since the filing of the first of the Adversary Proceedings (Adversary Proceeding No. 13-50530) on January 25, 2013, to present." I also

4

explained that "receipt and consideration of this information is critical for fulfillment of my fiduciary duties."  A true and correct copy of this March 11, 2020 letter is attached as **Exhibit F**.

15.     Following subsequent exchanges with Gibson Dunn, I sent an April 10, 2020 letter providing additional specificity regarding the document requests in my March 11 letter.  A true and correct copy of this April 10, 2020 letter is attached as **Exhibit G**.

16.     Thereafter, my counsel and I engaged in several additional communications with Gibson Dunn by telephone, email, and letter in an attempt to resolve the document requests.  This included a conference call on April 15, 2020.  During that call, counsel for the Yucaipa Funds explained that distributions were routinely made to the Yucaipa Funds' investors over the years; however, he claimed that such distributions were proper under the LP Agreement

17.     On April 17, 2020, Gibson Dunn circulated a proposed stipulation providing, *inter alia*, that it would agree to provide "(a) the dates and amounts of all distributions that Yucaipa has made since January 1, 2019; (b) confirmation that any distributions that Yucaipa has made since January 1, 2019, have been made in compliance with the 'Distribution' provisions of Yucaipa's partnership agreement, including with respect to the timing of those distributions; and (c) the amount of cash and other assets (excluding assets or interests related in any way to Allied) that remain in Yucaipa as of April 15, 2020."

18.     The April 17, 2020 draft stipulation conditioned receipt of this material on the Trustee agreeing to "forego (a) any Rule 2004 discovery and (b) any other discovery tool or mechanism (in these proceedings or otherwise), including any attempt to re-open civil discovery, either of which would be related in any way to distributions made by Yucaipa at any point (including but not limited to the identities of any recipients), the amount of cash or other assets remaining in Yucaipa, or Yucaipa's ability to satisfy any judgment in these actions."  A true and

5

correct copy of this April 17, 2020 email and draft stipulation is attached as **Exhibit H**.  I did not accept the conditions in the April 17, 2020 email.

19.     However, in an effort to avoid motion practice, my counsel and I continued to communicate with counsel for the Yucaipa Funds regarding a possible consensual exchange of information.  As memorialized in a May 20, 2020 letter from me to Gibson Dunn — a true and correct copy of which is attached as **Exhibit I** — my understanding is that YAAF 1 was prepared to produce:

    (1)  The dates and amounts of all distributions YAAF 1 made since December 1, 2016;

    (2)  A declaration that the distributions by YAAF 1 were made in compliance with the Fund's partnership agreement, including with respect to the timing of the distributions; and

    (3)  The amount of cash and other assets that remain in the Yucaipa Funds as of the date of the contemplated transaction.

20.     Yucaipa's offer, however, remained contingent on the Trustee agreeing to forego any additional Rule 2004 discovery.  Also, Yucaipa remained unwilling to disclose the identity of the recipients of distributions from the Yucaipa Funds, referencing "privacy concerns."  *See id.* Despite my offer to treat receipt of any information as confidential, the parties reached an impasse over these issues making this motion necessary.

21.     The targeted documents and information requested in my correspondence to Gibson Dunn are necessary in carrying out my duties as Trustee.  Among other things, I need to be able to determine (1) if YAAF 1 has sufficient cash or assets to satisfy a potential judgment to the Litigation Trust, (2) if not, whether distributions made by YAAF 1 during the pendency of the Adversary Proceedings were proper, and (3) if parties receiving distributions are subject to

obligations to return them.  Having this information is critically important to exercising my business judgment and properly fulfilling my fiduciary responsibility to all creditors in administering the Litigation Trust.

22.    The parties have extensively conferred in satisfaction of Local Bankruptcy Rule 2004-1(a).  Despite several attempts, however, the parties have not been able to come to an agreement, necessitating this Motion seeking production of:  (i) the dates, amounts, and recipients of distributions made by YAAF 1 since December 1, 2016;[3] (ii) supporting documentation reflecting that distributions by YAAF 1 were made in compliance with the LP Agreement; and (iii) an accounting for the value of cash and other assets remaining with YAAF 1.  Additionally, I am seeking to authorization to examine YAAF 1's custodian of records if necessary.

I declare under penalty of perjury that the foregoing is true and correct.


Executed this 31st day of July 2020 at Morristown, New Jersey.


/s/Catherine E. Youngman
Catherine E. Youngman


112756016.v1

---

[3]    December 1, 2016 to present captures all months since the effective date of the Debtors' Plan.

7

**ASHINC CORPORATION, *et al.***

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

**Case No. 12-11564 CSS**

## Exhibit A
**TO DECLARATION OF THE LITIGATION TRUSTEE, CATHERINE E. YOUNGMAN,
IN SUPPORT OF THE LITIGATION TRUST'S MOTION FOR AN ORDER
PURSUANT TO BANKRUPTCY RULE 2004 AND/OR SECTIONS 105(a) AND 542(e)
OF THE BANKRUPTCY CODE AUTHORIZING THE TAKING OF DOCUMENT
<u>DISCOVERY AND DEPOSITION TESTIMONY FROM THE YUCAIPA FUNDS</u>**

# FILED UNDER SEAL

**ASHINC CORPORATION, *et al.***

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

**Case No. 12-11564 CSS**

## Exhibit B

**TO DECLARATION OF THE LITIGATION TRUSTEE, CATHERINE E. YOUNGMAN, IN SUPPORT OF THE LITIGATION TRUST'S MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AND/OR SECTIONS 105(a) AND 542(e) OF THE BANKRUPTCY CODE AUTHORIZING THE TAKING OF DOCUMENT <u>DISCOVERY AND DEPOSITION TESTIMONY FROM THE YUCAIPA FUNDS</u>**

# FILED UNDER SEAL

Exhibit "C"

GRAB

PEF3347 US Equity | Private Equity Fund Holders
Yucaipa American Alliance Fund I LP

| Investor | | Commitment(USD) | %Ownership| | Repeat Investor | Secondary |
|---|---|---|---|---|---|
| 1) California Public Employees' Retirement System | | 200.0M | 25.2 | Yes (5 Funds) | -- |
| 2) New York City Employees' Retirement System | | 90.0M | 11.3 | Yes (3 Funds) | -- |
| 3) Teachers' Retirement System of the City of New Yo | | 55.0M | 6.9 | Yes (3 Funds) | -- |
| 4) Western Conference of Teamsters Pension Trust Fun | | 50.0M | 6.3 | Yes (2 Funds) | -- |
| 5) New York City Police Pension Fund | | 20.0M | 2.5 | Yes (3 Funds) | -- |
| 6) Los Angeles City Employees' Retirement System | | 10.0M | 1.3 | Yes (2 Funds) | -- |
| 7) New York City Fire Pension Fund | | 5.0M | .6 | Yes (3 Funds) | -- |
| 8) Connecticut Retirement Plans & Trust Funds | ● | -- | -- | Yes (3 Funds) | -- |
| 9) IAM National Pension Fund | | -- | -- | Yes (4 Funds) | -- |
| 10) American Airlines Group Inc | | -- | -- | Yes (2 Funds) | -- |

● Exited Investor

Australia 61 2 9777 8600 Brazil 5511 2395 9000 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 4565 8900    Singapore 65 6212 1000    U.S. 1 212 318 2000    Copyright 2020 Bloomberg Finance L.P.
SN 189369 G897-22-0 14-Jan-20 10:28:03 EST  GMT-5:00

**ASHINC CORPORATION, *et al.***

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

**Case No. 12-11564 CSS**

## Exhibit D

**TO DECLARATION OF THE LITIGATION TRUSTEE, CATHERINE E. YOUNGMAN, IN SUPPORT OF THE LITIGATION TRUST'S MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AND/OR SECTIONS 105(a) AND 542(e) OF THE BANKRUPTCY CODE AUTHORIZING THE TAKING OF DOCUMENT <u>DISCOVERY AND DEPOSITION TESTIMONY FROM THE YUCAIPA FUNDS</u>**

# FILED UNDER SEAL

**ASHINC CORPORATION, *et al.***

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

**Case No. 12-11564 CSS**

## <u>Exhibit E</u>

**TO DECLARATION OF THE LITIGATION TRUSTEE, CATHERINE E. YOUNGMAN,
IN SUPPORT OF THE LITIGATION TRUST'S MOTION FOR AN ORDER
PURSUANT TO BANKRUPTCY RULE 2004 AND/OR SECTIONS 105(a) AND 542(e)
OF THE BANKRUPTCY CODE AUTHORIZING THE TAKING OF DOCUMENT
<u>DISCOVERY AND DEPOSITION TESTIMONY FROM THE YUCAIPA FUNDS</u>**

# FILED UNDER SEAL

**Exhibit "F"**



**Fox Rothschild** LLP
ATTORNEYS AT LAW

49 Market Street
Morristown, NJ 07960-5122
T: 973.992.4800 F: 973.992.9125
www.foxrothschild.com

CATHERINE A. YOUNGMAN
Direct No: 973-548-3333
Email: cyoungman@FoxRothschild.com

March 11, 2020

**_Via email_**
Kahn A. Scolnick, Esq.
Gibson Dunn
333 South Grand Avenue
Los Angeles, CA 90071-3197

**Re:** _In re: ASHINC Corporation, et al._, **Case No. 12-11564 (KBO)**
_Official Committee of Unsecured Creditors of Allied Systems Holdings, Inc. v. Yucaipa_
_American Alliance Fund I, L.P., et al.,_ **Adv. Pro. No. 13-50530 (KBO)**

Dear Mr. Skolnick:

As a follow up to my comments in Court on February 27, 2020, in connection with the above-referenced case, I have recently learned that Yucaipa American Alliance Fund I, L.P. (Main and Parallel funds) (together, "YAAF 1") made significant distributions during Q1/Q2 2019. Specifically, I have found evidence of YAAF 1's distributions by review of CALPERS, NYCERS and LACERS' private equity performance reviews for Q1 and Q2 2019. I am formally requesting that YAAF 1 consensually provide all financial statements, investor letters and any distribution explanations, as well as a schedule that details all distributions, including the dates, amounts, and recipients of such distributions, made since the Unsecured Creditors Committee's filing of the 13-50530 Adversary Proceeding on January 25, 2013 to present.

Please inform me by March 13, 2020, regarding the timing of your client's anticipated production in response to this request. If your client is unwilling to agree to this request, I will, as noted in Court, file a Motion for a Rule 2004 Subpoena, as receipt and consideration of this information is critical for fulfillment of my fiduciary duties.

You can contact me with any questions.

Very truly yours,

Catherine Youngman
CEY:cb

A Pennsylvania Limited Liability Partnership

| California | Colorado | Delaware | District of Columbia | Florida | Georgia | Illinois | Minnesota |
| Nevada | New Jersey | New York | North Carolina | Pennsylvania | South Carolina | Texas | Washington |

157820\00001\108465572.v3

**ASHINC CORPORATION, *et al.***

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

**Case No. 12-11564 CSS**

## Exhibit G

**TO DECLARATION OF THE LITIGATION TRUSTEE, CATHERINE E. YOUNGMAN, IN SUPPORT OF THE LITIGATION TRUST'S MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AND/OR SECTIONS 105(a) AND 542(e) OF THE BANKRUPTCY CODE AUTHORIZING THE TAKING OF DOCUMENT DISCOVERY AND DEPOSITION TESTIMONY FROM THE YUCAIPA FUNDS**

# FILED UNDER SEAL

Exhibit "H"

**From:**            Youngman, Catherine E.
**Sent:**            Tuesday, June 02, 2020 9:44 AM
**To:**              Herz, Michael R.
**Subject:**         FW: Ashinc Corporation 12-11564
**Attachments:**     103881132_6 _Yucaipa_Trustee Proposed Stip re Distributions and 2004 Rule Discovery-C2.DOCX

---

**From:** Scolnick, Kahn A. <KScolnick@gibsondunn.com>
**Sent:** Friday, April 17, 2020 3:53 PM
**To:** Youngman, Catherine E. <cyoungman@foxrothschild.com>
**Cc:** gsinger@JHANY.COM; Brown, Cathi <cbrown@foxrothschild.com>; jzaiger@zaigerllc.com; Hall, Mark E. <mhall@foxrothschild.com>; Suh, Maurice <MSuh@gibsondunn.com>; Scolnick, Kahn A. <KScolnick@gibsondunn.com>
**Subject:** [EXT] RE: Ashinc Corporation 12-11564

Cathy:        Following up on our discussion this week, here's the proposed stipulation.  Have a good weekend.


**Kahn A. Scolnick**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7656 • Fax +1 213.229.6656
KScolnick@gibsondunn.com • www.gibsondunn.com

---

**From:** Scolnick, Kahn A.
**Sent:** Monday, April 13, 2020 2:57 PM
**To:** Brown, Cathi <cbrown@foxrothschild.com>
**Cc:** Suh, Maurice <MSuh@gibsondunn.com>; gsinger@JHANY.COM; jzaiger@zaigerllc.com; Hall, Mark E. <mhall@foxrothschild.com>; Youngman, Catherine E. <cyoungman@foxrothschild.com>; Scolnick, Kahn A. <KScolnick@gibsondunn.com>
**Subject:** Re: Ashinc Corporation 12-11564

Ms. Youngman:   Can we have a call about this tomorrow?  How about 430 or 5 Eastern?



Sent from my iPhone


        On Apr 10, 2020, at 11:58 AM, Brown, Cathi <cbrown@foxrothschild.com> wrote:

        [External Email]

Please see attached letter regarding the above mentioned matter with attachments that were inadvertently omitted in the initial letter.
My apologies.

Regards,
Cathi Brown

**Cathi Brown**
Legal Assistant to
Catherine Youngman, Mark Hall and
Michael Herz
**Fox Rothschild LLP**
49 Market Street
Morristown, NJ 07960
(973) 548-3339 - direct
(973) 992-9125- fax
cbrown@foxrothschild.com
www.foxrothschild.com

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.
<109424552_1_Ashinc - Scolnik letter with enclosure-C1.PDF>

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (KBO) |
| Debtors. | (Jointly Administered) |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET. AL., AS SUCCESSOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ASHINC CORPORATION, AND ITS AFFILIATED DEBTORS | Adv. Proc. No. 13-50530 |
| Plaintiff, | |
| BLACK DIAMOND OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., and SPECTRUM INVESTMENT PARTNERS, L.P., | |
| Intervenors, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., MARK GENDREGSKE, JOS OPDEWEEGH, JAMES FRANK, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET AL., AS SUCCESSOR TO BLACK DIAMOND OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., as co-administrative agent, and SPECTRUM | Adv. Pro. No. 14-50971 (KBO) |

COMMERCIAL FINANCE LLC, as co-
administrative agent,

Plaintiff,

v.

YUCAIPA AMERICAN ALLIANCE FUND I, L.P.,
YUCAIPA AMERICAN ALLIANCE (PARALLEL)
FUND I, L.P., YUCAIPA AMERICAN ALLIANCE
FUND II, L.P., YUCAIPA AMERICAN ALLIANCE
(PARALLEL) FUND II, L.P., RONALD BURKLE,
JOS OPDEWEEGH, DEREX WALKER, JEFF
PELLETIER, IRA TOCHNER, and JOSEPH
TOMCZAK,

Defendants.

## **PROPOSED STIPULATION**

This stipulation (the "Stipulation") is entered into by and among Plaintiff Catherine E.

Youngman, as Litigation Trustee for ASHINC Corporation and related debtors (the "Trustee"),

and Defendants Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance

(Parallel) Fund I, L.P. (together "Yucaipa," and collectively with the Litigation Trustee, the

"Parties"):

## **RECITALS**

WHEREAS, on March 11, 2020, the Trustee requested via letter that Yucaipa provide all

financial statements, investor letters, and any other distribution explanations, as well as a

schedule detailing all distributions made from January 25, 2013 to present;

WHEREAS, Yucaipa asserted the following objections to the Trustee's request:

(i)     The request constitutes untimely civil discovery—the Trustee had ample opportunity to seek this information during the multi-year discovery period, but did not do so before the fact-discovery period closed on May 31, 2019;

(ii)    The request appears to arise out of comments made during the course of mediation proceedings held in the fall of 2019, and is therefore improper and a prohibited basis for seeking discovery.  *See* Del. L. Bankr. R. 9019-5(d)(i); and

(iii)   The Trustee may not circumvent the civil discovery rules and this Court's discovery deadlines through Rule 2004—because the information she seeks is related to the pending proceedings.  *See Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016); *see also In re Wash. Mut.*, 408 B.R. 45, 51-53 (Bankr. D. Del. 2009).

WHEREAS, the Parties met and conferred on these issues via correspondence and a telephone call on April 15, 2020; and

WHEREAS, in an effort to avoid costly and unnecessary motion practice, and reserving all rights and objections, including but not limited to those set forth above, the Parties have agreed to resolve this matter as reflected in this stipulation.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED THAT:

1.     Within three business days of entering this stipulation, Yucaipa will provide the Trustee with:  (a) the dates and amounts of all distributions that Yucaipa has made since January 1, 2019; (b) confirmation that any distributions that Yucaipa has made since January 1, 2019, have been made in compliance with the "Distribution" provisions of Yucaipa's partnership agreement, including with respect to the timing of those distributions; and (c) the amount of cash

and other assets (excluding assets or interests related in any way to Allied) that remain in Yucaipa as of April 15, 2020.

2.        In consideration of the information to be provided by Yucaipa under Paragraph 1, the Trustee will forego (a) any Rule 2004 discovery and (b) any other discovery tool or mechanism (in these proceedings or otherwise), including any attempt to re-open civil discovery, either of which would be related in any way to distributions made by Yucaipa at any point (including but not limited to the identities of any recipients), the amount of cash or other assets remaining in Yucaipa, or Yucaipa's ability to satisfy any judgment in these actions.


Dated:  April __, 2020
Wilmington, Delaware


STIPULATED AND AGREED:


FOX ROTHSCHILD LLP

*/s/*

Seth A. Niederman (No. 4588)
Citizens Bank Center
919 North Market Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 654-7444
sniederman@roxrothschild.com

-and-

JOSEPH HAGE AARONSON LLC
Gregory P. Joseph
Douglas J. Pepe
Gila S. Singer
485 Lexington Avenue, 30th Floor
New York, NY 10017
Telephone: (212) 407-1200
gjoseph@jha.com

-and-

ZAIGER LLC
Jeffrey H. Zaiger

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/*

Michael R. Nestor (No. 3526)
Michael S. Neiburg (No. 5275)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Email: mnestor@ycst.com

-and-

GIBSON, DUNN & CRUTCHER LLP
Robert A. Klyman
Maurice M. Suh
Kahn Scolnick
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
RKlyman@gibsondunn.com

*Counsel for the Yucaipa Defendants*

4

432 Park Avenue, Suite 19A
New York, NY 10022
Telephone: (917) 572-7701
jzaiger@zaigerllc.com

*Counsel for Litigation Trustee*

# Exhibit "I"



**Fox Rothschild LLP**
ATTORNEYS AT LAW

49 Market Street
Morristown, NJ 07960-5122
Tel (973) 992-4800  Fax (973) 992-9125
www.foxrothschild.com

Deirdre E. Moore
Office Managing Partner

CATHERINE YOUNGMAN
Direct No:  973.548.3333
Email: cyoungman@foxrothschild.com

May 20, 2020

<u>*Via email*</u>
Maurice M. Suh, Esq.
Kahn A. Scolnick, Esq.
Gibson Dunn
333 South Grand Avenue
Los Angeles, CA  90071-3197

Re:    ***In re:  ASHINC Corporation, et al.*, Case No. 12-11564 (KBO)**
       ***Official Committee of Unsecured Creditors of Allied Systems Holdings, Inc. v. Yucaipa***
       ***American Alliance Fund I, L.P., et al.*, Adv. Pro. No. 13-50530 (KBO)**

Dear Messrs Suh and Scolnick:

I am writing as a follow up to your recent discussions with my counsel, Jeff Zaiger, in the sincere hope that we can overcome the final hurdles and avoid unnecessary motion practice and concomitant expenses.

I understand your most recent offer to include the following:

(1) The dates and amounts of all distributions YAAF1[1] made since December 1, 2016;

(2) A declaration that the distributions by YAAF1 were made in compliance with the Fund's partnership agreement, including with respect to the timing of the distributions; and

(3) The amount of cash and other assets that remain in the Yucaipa Funds as of the date of the contemplated transaction.

---

[1] All capitalized terms not otherwise defined herein have the same meaning in my previous correspondence on these issues, including on March 11 and 18, and April 10, 2020, or in correspondence received from you.

A Pennsylvania Limited Liability Partnership

California    Colorado    Connecticut    Delaware    District of Columbia    Florida    Illinois
Minnesota    Nevada    New Jersey    New York    Pennsylvania    Texas    Washington



There appear to be a couple areas where we have not yet reached agreement: (1) my request for the identity of the parties receiving distributions; and (2) documentation supporting that YAAF1 made distributions in compliance with the Fund's partnership agreement.  Further, in #3 above, you refer to the date of the contemplated "transaction."  The language before it mirrors my previous request except that it substitutes "transaction" for "stipulation."  As long as you concur that it will be information as of the date YAAF1 enters into a stipulation memorializing this agreement, we are on the same page.

In the spirit of compromise, I would be willing to forego my request for supporting documentation and accept the declaration you propose as long as YAAF1 provides the identity of the parties receiving distributions.

You have referenced "privacy concerns" as the basis for not identifying the parties receiving distributions, although you have not identified the basis for such concerns.  I do not believe you should have any privacy concerns as I am prepared to treat information received as confidential along the lines set forth in the Agreed Protective Order, entered March 25, 2013 in the Adversary Proceedings (and attached for your convenience).  In the event you would like to discuss another manner to designate and treat this information as confidential, we are open to that discussion as well.  I do, however, require that YAAF1 disclose the identity of parties receiving distributions during the discussed timeframe as part of any compromised resolution.

Finally, again in the spirit of compromise, I can confirm that receipt of this information would lead to my agreement not to file a Rule 2004 motion or seek additional Rule 2004 discovery on this issue.  To be clear, I of course will not be waiving any rights pursuant to Federal Rule of Bankruptcy Procedure 7069.

Please advise if these terms are acceptable and, if so, we will revise the Stipulation consistent with this agreement.


Very truly yours,

Catherine Youngman

Enc.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ALLIED SYSTEMS HOLDINGS, INC., *et al.*[1],<br><br>Debtors. | Chapter 11<br><br>Case No. 12-11564 (CSS)<br><br>(Jointly Administered) |
| ALLIED SYSTEMS HOLDINGS, INC.<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN MONEY MANAGEMENT CORP., AVENUE CAPITAL GROUP, BDCM OPPORTUNITY FUND II, LP, BENNETT MANAGEMENT, BLACK DIAMOND CLO 2005-1 LTD., DEL MAR DISTRESSED OPPORTUNITIES MASTER FUND, MJX ASSET MANAGEMENT, LLC, PAR-FOUR INVESTMENT MANAGEMENT, SPECTRUM INVESTMENT PARTNERS LP, TEAK HILL - CREDIT CAPITAL INVESTMENTS, LLC, THE CIT GROUP/BUSINESS CREDIT, INC., THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P.<br><br>Defendants. | Adv. Proc. No. 12-50947 (CSS)<br><br>and<br><br>Adv. Proc. No. 13-50530 (CSS) |

---

[1] The Debtors in these cases, along with the federal tax identification number (business number where applicable) for each of the Debtors, are: Allied Systems Holdings, Inc. (58-0360550); Allied Automotive Group, Inc. (58-2201081); Allied Freight Broker LLC (59-2876864); Allied Systems (Canada) Company (90-0169283); Allied Systems, Ltd. (L.P.) (58-1710028); Axis Areta, LLC (45-5215545); Axis Canada Company (87568828); Axis Group, Inc. (58-2204628); Commercial Carriers, Inc. (38-0436930); CT Services, Inc. (38-2918187); Cordin Transport LLC (38-1985795); F.J. Boutell Driveway LLC (38-0365100); GACS Incorporated (58-1944786); Logistic Systems, LLC (45-4241751); Logistic Technology, LLC (45-4242057); QAT, Inc. (59-2876863); RMX LLC (31-0961359); Transport Support LLC (38-2349563); and Terminal Services LLC (91-0847582). The location of the Debtors' corporate headquarters and the Debtors' address for service of process is 2302 Parklake Drive, Bldg. 15, Ste. 600, Atlanta, Georgia 30345.

| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALLIED SYSTEMS HOLDINGS, INC., and its affiliated debtors, |
| --- |
| Plaintiff, |
| v. |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., AND YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P.,  MARK J. GENDREGSKE, JOS OPDEWEEGH, JAMES FRANK, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, |
| Defendants. |
| AND RELATED COUNTERCLAIMS AND CROSS-ACTIONS |

## AGREED PROTECTIVE ORDER

All undersigned parties to the above-captioned bankruptcy cases and related complaints and cross-actions (the "Proceedings") having agreed and consented to the terms and entry of this Agreed Protective Order (the "Protective Order"), the Court hereby enters this Protective Order regarding the use and dissemination of confidential information in connection with these Proceedings.

## SCOPE OF THIS PROTECTIVE ORDER

1.      This Protective Order is made and entered into by and among Debtors, as defined above in footnote 1; American Money Management Corp.; Avenue Capital Group; BDCM Opportunity Fund II, LP; Black Diamond CLO 2005-1 Ltd.; Del Mar Distressed Opportunities Master Fund; MJX Asset Management, LLC; Par-Four Investment

2

Management; Spectrum Investment Partners LP; Teak Hill – Credit Capital Investments, LLC; The CIT Group/Business Credit, Inc.; The Official Committee of Unsecured Creditors; Yucaipa American Alliance Fund I, L.P.; Yucaipa American Alliance (Parallel) Fund I, L.P.; Yucaipa American Alliance Fund II, L.P.; Yucaipa American Alliance (Parallel) Fund II, L.P.; Ronald Burkle; James Frank; Jos Opdeweegh; Jeff Pelletier; Ira Tochner; Joseph Tomczak; Derex Walker; Mark Gendregske; and any other person the parties above identify as being bound by this Protective Order throughout the course of this bankruptcy and adversary proceedings; and each of their respective attorneys, Professionals (as defined herein), and other persons bound by this Protective Order (each, a "Party").[2] It is the intent of the Parties that this document shall be their binding agreement effective March 1, 2013. This Protective Order shall be applicable to all information, all documents and all materials (collectively, the "Materials") produced by any Party or non-Party, including Materials produced by any Party pursuant to interrogatories, depositions, requests for production of documents, requests for admissions, subpoenas or other discovery requests (whether formal or informal), in connection with the Proceedings. No production in discovery of any Material (including any document, testimony or thing) shall constitute a waiver of or otherwise affect any Party's claim that any such Material constitutes the Party's proprietary, confidential or sensitive business information or trade secret. This Protective Order shall apply to original forms and copies of documents and Material maintained or recorded in any format, including in paper or other hard-copy form and in electronic form, regardless of the particular storage medium or media employed. Subject to the provisions of Paragraph 24, Materials produced by any Party or non-Party or other discovery produced in

---

[2]    Any Party that does not sign this Protective Order below shall not be permitted to receive any documents, testimony or information designated as Confidential or Professionals Only under the terms of this Protective Order.

3

the course of these Proceedings shall not be shared or used by the Parties for any purpose other than in connection with these Proceedings.  In addition, certain Material may be deemed "Confidential" or "Professionals Only" pursuant to Paragraphs 4-6 herein.

2.      Any Party issuing a subpoena to a non-Party shall enclose a copy of this Protective Order with a request that, within ten (10) calendar days, the non-Party either request the protection of this Protective Order or notify the issuing Party that the non-Party does not need the protection of this Protective Order or wishes to seek different protection. In the event that the non-Party requests the protection of this Protective Order, it may become entitled to such protections by sending a letter to the Party that issued the subpoena requesting such protection.  Such letter shall serve as conclusive notice that the subpoenaed non-Party has sought the protection of this Protective Order and the subpoenaed non-Party shall thereafter be bound to the terms of this Protective Order and shall enjoy the full rights and protections afforded under, and shall be subject to the obligations of, this Protective Order.

3.      In the event additional parties join or intervene in this action, the newly joined parties shall not have access to Materials or Confidential Information until its counsel has executed the Agreement embodied by Exhibit A to be fully bound by this Protective Order.

## DESIGNATION OF INFORMATION AS CONFIDENTIAL OR PROFESSIONALS ONLY

4.      Any Party may obtain Confidential treatment, as described below in Paragraphs 10-11, for any Material disclosed (whether by that Party or any other Party, witness or entity) in the Proceedings or any other litigation, including but not limited to the Prior Allied Litigation,[3]

---

[3]      The "Prior Allied Litigation" shall include:

where that Party has in good faith asserted that the Material is private, confidential or proprietary, including, but not limited to, trade secrets, research, design, development, financial, technical, marketing, planning, "Private-Confidential" and/or personal or commercial information, as such terms are used in all applicable Federal Rules of Civil Procedure ("Confidential Information"). For the purposes of this Protective Order, Private-Confidential information is limited to: street addresses and former street addresses of any natural person, Social Security numbers, personal telephone numbers, personal email addresses, dates of birth, driver's license numbers, account numbers, benefits and/or compensation-related information, maiden names of mothers and passwords. Confidential Information may be designated as Confidential in the following manner:

      a.    *Documents or Things.* Confidential treatment may be obtained by typing, stamping or otherwise affixing the word "Confidential" on the particular document or thing, whether in a hard copy or electronic format. If a Party to these Proceedings seeks copies of particular documents from another Party, the Confidential designation shall be affixed to the document or thing at the time said copies are made and delivered to the requesting Party.

      b.    *Interrogatories and Requests for Admissions.* In answering any interrogatory or request for admission, or part thereof, a Party may designate its answer as

---

(a) *Allied Systems Holdings, Inc., Yucaipa American Alliance Fund I, LP, and Yucaipa American Alliance (Parallel) Fund I, LP v. The CIT Group/Business Credit, Inc.*, Civil Action No. 2009-CV-177574 (Sup. Ct. of Fulton City, Ga.);

(b) *Allied Systems Holdings, Inc v. T. Michael Riggs, IEP Carhaul, LLC and Jack Cooper Transport Company. Inc. and Active Carhaul Acquisition, Inc. v. The Yucaipa Companies. LLC and Mark J. Gendregske*, Civil Action No. CV-09-1-10536-48 (Sup. Ct. of Cobb County Ga.);

(c) *T. Michael Riggs, Innovative Equity Partners, LLC and Jack Cooper Transport Company. Inc. v. Comvest Investment Partners, III, LP and Comvest II Partners, LLC*, Case No. 502009CA042921XXXXMB (Circuit Ct. 15th Judicial Circuit Palm Beach, Fla.); and

(d) *BDCM Opportunity Fund II, LP, Black Diamond CLO 2005-1 Ltd., and Spectrum Investment Partners, L.P. v. Yucaipa American Alliance Fund I, LP, and Yucaipa American Alliance (Parallel) Fund I, LP*, Civil Action No. 650150/2012 (Supreme Ct. of N.Y.).

Confidential by affixing thereto the legend "Confidential." Such Confidential answers shall be made on separate pages from any other answers or portions thereof that are not designated as Confidential Information.

        c.    *Testimony.* Any Party may obtain Confidential treatment for any testimony, including without limitation deposition testimony, given in the Proceedings by any witness by designating that testimony as Confidential Information on the record during the course of that testimony. Such testimony may also be designated as Confidential Information by written notice to the court reporter and all other Parties' counsel within twenty-one (21) days in the case of non-expert witnesses and fifteen (15) days in the case of expert witnesses after receipt of the transcript of such testimony, setting forth the pages and lines of the transcript containing Confidential Information. To facilitate this process, all transcripts, exhibits and other Material disclosed during testimony shall be treated as "Confidential" for a period of either twenty-one (21) or fifteen (15) days, as the case may be, following receipt of the transcript by the Parties, to run concurrently with the witness' thirty-day period to review the transcript and complete an errata sheet. The court reporter shall separately transcribe and bind the designated testimony as Confidential Information and shall mark the face of the separate bound transcript containing such testimony with the legend "Confidential."

        d.    *Electronic documents or data.* Confidential treatment may be obtained for electronic documents or data by electronically affixing the word "Confidential" on each page of the electronic document or data and by affixing a label to the disk or other media containing the electronic document or data. That said, electronic files should not be modified under any circumstances; provided, however, that converting electronic files into "tiff" images, PDFs or a

6

similar format shall be acceptable. If the word "Confidential" cannot be affixed to native-format electronic documents or data, then a "Confidential" label must be affixed to the disk or other media containing the electronic document or data and, in that event, the disk or other media shall only include "Confidential" Material and clearly identify (on the disk or other media or on an accompanying index) the Bates number range of the documents and data contained on the disk or other media designated as "Confidential." The Confidential designation shall be affixed at the time such electronic documents or data are delivered to the requesting Party. In the event a receiving Party generates any "hard copy," transcription, or printout from any disk or other storage containing "Confidential" Material where such designation cannot be affixed to native-format electronic documents or data, that Party shall be responsible for affixing the "Confidential" label to such "hard copy," transcription, or printout.

5.    <u>Professionals Only</u>. Disclosing Parties may further restrict access to Confidential Information to only the receiving Parties' professionals, which shall consist of the Parties' respective attorneys (including paralegals and other legal support), experts, and financial consultants and financial advisors ("Professionals"). The Professionals Only designation shall be strictly limited to Confidential Information that may include, without limitation, non-public proprietary business, financial or personal Material such as tax returns, trade secrets, projections of future business, Material concerning the development of the business and other similarly proprietary Material that, if made public, could cause competitive injury, directly or indirectly ("Professionals Only" information). Only the Professionals for the receiving Parties may view and/or use Material designated Professionals Only, and the receiving Parties shall not be permitted to view and/or use such Material. A Professionals Only designation does not

7

restrict the disclosing Party's ability to view and/or use Material it designated as Professionals Only.

6.       Professionals Only Material shall he designated in the same ways that Confidential Information is designated, as described in Paragraph 4, with a Professionals Only legend substituted for the "Confidential" legend. Such documents, electronic documents, discovery, testimony, or other things should be clearly labeled:

**PROFESSIONALS ONLY**

**o r**

**PROFESSIONALS EYES ONLY - CONFIDENTIAL**

7.       Each Party, except for Gendregske, agrees that all documents, testimony and other Material it provided, or consented to the provision of, in connection with Prior Allied Litigation may be discovered in connection with these Proceedings; provided, however, that all Parties reserve all rights to object to the admissibility of any Materials and arguments as to the evidentiary value of any such Materials. All documents, testimony and other Material designated as "Confidential" in the Prior Allied Litigation shall be treated as "Confidential" in these Proceedings. All documents, testimony and Material designated as "Attorneys Only" in the Prior Allied Litigation shall be treated as "Professionals' Only" in these Proceedings. The use or disclosure of such documents, testimony and other Material in these Proceedings shall not constitute a waiver of such Parties' "Confidential" and "Attorneys Only" designations in the Prior Allied Litigation. All confidentiality protective orders and confidentiality agreements in place in the Prior Allied Litigation or that otherwise govern any documents, testimony, discovery or other Material requested (formally or informally) in these Proceedings shall remain in full force and effect. In addition, Materials not designated as

8

"Confidential" or "Attorneys Only" in the Prior Allied Litigation may be designated as "Confidential" or "Professionals Only" by written designation within 30 days of the date of production.

8.     All requests for Confidential and Professionals Only treatment shall be made in good faith and for good cause. The inadvertent or unintentional failure to designate Material as "Confidential" or "Professionals Only," including any Materials inadvertently or unintentionally produced in the Prior Allied Litigation, shall not be deemed a waiver in whole or in part of a Party's claim for such treatment under the terms of this Protective Order. If Material is produced for which such a "Confidential" or "Professionals Only" designation is lacking but should have appeared, any Party may restrict future disclosure of the Material in accordance with this Protective Order by notifying all other Parties in writing of the designation and by having the Material re-produced with the appropriate designation affixed. Upon receiving such notice and replacement copies, all receiving Parties shall destroy all copies that did not bear the designation, regardless of location of the copies, take reasonable steps to prevent any further disclosure of such newly-designated Material, and treat the Material according to its new designation going forward. Such Materials shall thereafter be fully subject to this Protective Order as if they had been initially so designated, notwithstanding Paragraph 24(d) below. Likewise, if a producing Party inadvertently produces or discloses Material that is attorney-client privileged, protected by the attorney work product doctrine, or otherwise privileged, the producing Party shall promptly, within five (5) days of learning of such production or disclosure, so advise the receiving Party in writing and request that the item or items be returned or destroyed. No Party to the Proceedings shall thereafter assert that such disclosure waived any privilege or immunity. Upon receiving such notice, all receiving Parties

shall promptly return or destroy the inadvertently produced Material, promptly certify in writing said return or destruction to the producing Party and shall take reasonable steps to prevent any further disclosure of the Material; provided, however, that if a receiving Party objects to the producing Party's claim of privilege or asserts that the privilege has been waived, it shall notify the producing Party and all other Parties to the Proceedings of the dispute and basis therefore in writing within five (5) days of receipt of the request for the return of the privileged information. The Parties shall meet and confer in good faith regarding the disputed claim within three (3) days. In the event that the Parties do not resolve their dispute, either Party may bring a motion for determination of whether a privilege applies or has been waived. The moving Party shall not attach or disclose the substance of the disputed Material with its motion papers but may request, as part of its motion, that the document or Material be submitted to the Court under seal for *in camera* review. Regardless of whether the producing or non-producing Party makes the motion, should the Court determine that an *in camera* inspection of the document or other Material is necessary to rule on the motion, the Parties each reserve the right to request that a different judge or neutral third party, other than the Court, conduct the *in camera* inspection and make a final determination on the issue of privilege or protection. Any request for an *in camera* inspection by the producing Party or compliance by the producing Party with a determination by the Court that an *in camera* inspection is required, shall not constitute a waiver of any privilege or protection.

9.      Whenever a Party objects to the designation of Material as Confidential Information or Professionals Only Material, such Party may apply to the Court for a ruling that the Material should not be so designated, but only after giving five (5) days' notice of the application to counsel for all Parties. Unless otherwise provided by applicable law, the

10

burden of demonstrating that designated Materials are Confidential Information or Professionals Only Material shall be on the Party claiming such protection. Unless and until the Court enters an order changing the designation of the Material, it shall be afforded the Confidential or Professionals Only treatment described herein.

### RESTRICTIONS ON DISCLOSURE OF CONFIDENTIAL INFORMATION AND PROFESSIONALS ONLY INFORMATION

10.     Except by order of the Court after reasonable notice to counsel for all Parties, Material designated as Confidential Information, and any notes or other documents that reflect or refer to such Material, shall not be disclosed to, viewed or used by any person other than:

a.     The Parties' attorneys of record herein including such partners, associates and paralegals and others employed by said attorneys who are assigned to and necessary to assist such attorneys with these Proceedings;

b.     (i) Parties who are individuals and (ii) with respect to Parties who are not individuals, to the extent in good faith deemed necessary by their attorneys of record in connection with these Proceedings, the Parties' directors, officers, employees, agents, members, trustees or beneficiaries;

c.     The Parties' Professionals, consultants or experts retained by the attorneys of record to assist in these Proceedings, to the extent in good faith deemed necessary by said attorneys in connection with these Proceedings;

d.     Deponents, trial or hearing witnesses and their counsel during depositions, hearings or trial in these Proceedings, when the examining attorney reasonably and in good faith believes that the witness has previously seen or been exposed to the designated Material other

than in violation of this Protective Order, after attempting in good faith to comply with Paragraph 14;

e.     Bona fide potential deponents or witnesses in preparation for such depositions, hearings or trial in these Proceedings when, reasonably and in good faith, counsel for the witness believes that the witness may be exposed to the designated Material at the deposition, hearing or trial;

f.     Personnel (i) of any insurer or reinsurer whose policies may potentially provide coverage for all or any of the claims asserted in these Proceedings and (ii) who are providing assistance to any such insurer or reinsurer including, but not limited to, any in-house or outside counsel (collectively, "Insurer Personnel");

g.     The Court, its respective clerks and staff and any jurors sitting in any hearing or trial of these Proceedings (including any court having jurisdiction of any appeal); and

h.     Any person indicated on the face of the Confidential Information to be its originator, author, or a recipient of a copy of the original document or other Material or any person employed by or otherwise affiliated with the Party producing the Confidential Information; provided such person is advised that the item is designated as Confidential Information and that the showing of the document or discussion of the Material does not release such person from any obligation of confidentiality to which such person is or was previously subject.

11.     Information designated as "Professionals Only," and any notes or other documents that reflect or refer to such Material, shall not be disclosed to, viewed or used by any person other than:

a.      The Parties' attorneys of record herein including such partners, associates and paralegals and others employed by said attorneys who are assigned to and necessary to assist such attorneys with these Proceedings;

b.      The Parties' Professionals, consultants and experts retained by the attorneys of record to assist in these Proceedings, to the extent in good faith deemed necessary by said attorneys in connection with these Proceedings;

c.      Deponents, trial or hearing witnesses and their counsel during depositions, hearings or trial in these Proceedings, when the examining attorney reasonably and in good faith believes that the witness has previously seen or been exposed to the designated Material other than in violation of this Protective Order, after attempting in good faith to comply with Paragraph 14;

d.      Bona fide potential deponents or witnesses in preparation for such depositions, hearings or trial in these Proceedings when, reasonably and in good faith, counsel for the witness believes that the witness may be exposed to the designated Material at the deposition, hearing or trial;

e.      Insurer Personnel; and

f.      The Court, its respective clerks and staff and any jurors sitting in any hearing or trial of these Proceedings (including any court having jurisdiction of any appeal).

12.    Delivery of Material designated as Confidential Information or Professionals Only Material to reputable persons or companies providing copying, messenger or other similar services that do not normally involve the substantive review of Material contained therein shall neither be considered disclosure of the Confidential Information or Professionals Only Material nor require counsel to inform such persons of the provisions

13

of this Protective Order or obtain their agreement to be bound thereby; provided, however, that reasonable steps shall be taken to package such Material in a manner designed to prevent the substantive review of the Material other than by the Party for whom it is intended.

13.    All Materials designated as Confidential Information or Professionals Only shall be used solely and exclusively for the purpose of the preparation and trial of these Proceedings or in connection with analysis of coverage for any Party under any applicable insurance policies and shall not be used for purposes of publicity or competition or for any other purpose outside of these Proceedings including any business, governmental, or commercial purpose, or any other administrative or judicial proceedings or actions, except pursuant to Paragraph 20, below.

14.    Except as otherwise provided in this Protective Order, each person to whom Confidential Information or Professionals Only Material is disclosed shall be informed of the terms of this Protective Order and shall agree to be bound by it before disclosure to such person of any such Material. Further, before any such Material is disclosed to any person covered by Paragraphs 10(c), 10(e), 10(f), 11(b), 11(d) or 11(e) above, he or she must first agree in writing to be bound by the terms of this Protective Order by execution of an Undertaking of Compliance in the form attached hereto as Exhibit A. Counsel for each Party receiving Confidential Information or Professionals Only Material shall maintain the written agreements required herein and shall be required to produce them upon written request.

## FILING AND USE IN COURT OF
## CONFIDENTIAL INFORMATION OR PROFESSIONALS ONLY MATERIAL

15.    The Bankruptcy Court's entry of an order approving this Protective Order shall constitute authority pursuant to Del. Bankr. L.R. 9018-1(c) for the Parties to file future documents under seal without the necessity of filing a separate motion. When pleadings,

motions, briefs, discovery requests or responses, deposition transcripts, or other documents or tangible or electronic things that have been designated, in whole or in part, as being or as containing Confidential Information or Professionals Only Material are to be filed with the Court, they shall be filed in sealed envelopes or other appropriately sealed containers on which shall be endorsed the caption of the litigation, the title (or, if untitled, concise description) of the enclosed documents or tangible things, the word "Confidential" and a statement substantially in the following form:

> **"The documents or tangible things contained herein are filed under seal with the Court pursuant to the terms of the Agreed Protective Order effective as of _____, 2013 and entered by the Court on _____, 2013. This container is not to be opened, or the documents or tangible things contained herein handled, except in accordance with the terms of the Agreed Protective Order."**

The Clerk of the Court is directed to maintain under seal all such Materials that have been so designated and filed with the Court in these Proceedings until further order of the Court.

### RETURN OF CONFIDENTIAL INFORMATION
### AND PROFESSIONALS ONLY MATERIAL

16.    All Material designated as Confidential Information or Professionals Only in these Proceedings shall be destroyed or returned to the producing Party within the later of ten (10) calendar days of the request or thirty (30) calendar days of the final conclusion of these Proceedings, whether by final settlement or following the trial and the extinguishment of any appeal, except that the Parties' attorneys may keep one copy of such Material, which shall remain subject to the terms of this Protective Order, as needed for their own records and Insurer Personnel shall be entitled to retain such copies as are needed or required for their records, which shall also remain subject to this Protective Order. Upon the destruction of such Material, the destroying Party shall certify to all other Parties that such Material has been

destroyed.

17.    This Protective Order shall continue to be binding through the date 90 days following the later of final return or destruction of all documents and other Material subject to this order or the conclusion of these Proceedings, including any appeals, provided, however, that it shall continue to govern any documents or other Material that remain in the custody of the Parties' attorneys under Paragraph 16.

18.    No Party may seek judicial enforcement related to the return or destruction of Materials or Confidential Information or Professionals Only Material before it has provided the Party from whom the return or destruction is sought ten (10) calendar days' written notice and an opportunity to comply.

## RELIEF FROM ORDER

19.    A Party needing relief from the provisions of this Protective Order may, if agreement between or among the Parties cannot be reached, seek appropriate relief from the Court upon due notice to all other Parties. This Protective Order is without prejudice to all rights of the Parties regarding discovery as set forth in the applicable code of civil procedure.

20.    In the event that any Party becomes legally compelled (by deposition, interrogatory, request for documents, subpoena, civil or criminal investigative demand, regulatory requirement, or similar process) to disclose any of the Confidential Information, that Party shall provide the producing Party with prior written notice of such requirements as promptly as practicable and with sufficient notice (if possible, and if permitted by law, rule, regulation, legal process or Court order) so that the producing Party may seek a protective order or other appropriate remedy, at the producing Party's election and sole expense, and/or make a limited waiver of compliance with the terms of this agreement and Protective Order. In the event

that the producing Party seeks a protective order or other appropriate remedy, the recipient Party subject to the disclosure obligation shall take reasonable steps to maintain, to the greatest degree possible, the continued confidentiality of the Confidential Information subject to the resolution of such motion or other remedy.

21. Entering into, agreeing to, and/or complying with the terms of this Protective Order shall not:

a. Operate as an admission by any Party that any particular Confidential Information or Professionals Only Material designated by any other Party is, in fact, confidential;

b. Operate as an admission by any Party that any particular Confidential Information or Professionals Only Material designated by any other Party contains or reflects currently valuable trade secrets or proprietary or commercial Material; or

c. Prejudice in any way the right of a Party at any time:

(1) To seek a determination by a court whether any particular Confidential Information or Professionals Only Material should be subject to the terms of this Protective Order;

(2) To seek relief from a court of any provision(s) of this Protective Order, either generally or as to any particular Confidential Information or Professionals Only Material; or

(3) To object to the production or disclosure of particular documents or Material, or to seek further restrictions on disclosure with respect to particular documents or Material that are greater than or different from those set forth herein.

22. The Court shall retain jurisdiction over the Parties for the purpose of enforcing

this Protective Order.

23.     Other than as specifically set forth herein, agreement to this Protective Order waives no rights of any Party, including jurisdictional rights, right to request severance, demand a jury trial, and/or move to withdraw the reference.

24.     The restrictions and obligations set forth herein relating to Material designated as Confidential Information or Professionals Only shall not apply to Material that:

a.     Was lawfully in the receiving Party's possession prior to such information being designated as protected Material in these Proceedings and that the receiving Party is not otherwise obligated to treat as confidential;

b.     Was obtained without any benefit or use of protected Material from a third party having the right to disclose such information to the receiving Party without restriction or obligation of confidentiality;

c.     Is or becomes generally available to the public other than as a result of disclosure by a receiving Party, its employees, or agents in violation of this Protective Order; or

d.     Has been or is disclosed by the producing Party without imposing an obligation of confidentiality.

Dated: _____3/25_____ , 2013

_____
The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

18

EXHIBIT A

<u>UNDERTAKING OF COMPLIANCE</u>

_____, being first duly sworn on oath, states as follows:

That (s)he has read the annexed Agreed Protective Order, effective as of _____, 2013, in the matter of *In re Allied Systems Holdings, Inc., et al.* and its related adversary proceedings.

That (s)he is fully familiar with and agrees to comply with and be bound by the provisions of that Agreed Protective Order;

That (s)he will not divulge to persons other than those specifically authorized by the Agreed Protective Order, and will not copy or use except solely for the purpose of these Proceedings, any information designated as Confidential or Professionals Only; and

That (s)he consents to the jurisdiction of the United States Bankruptcy Court for the District of Delaware for purposes of enforcement of the Agreed Protective Order.

_____

Subscribed to and sworn to
before me this _____ day of
_____, 2013.


_____
NOTARY PUBLIC

My Commission Expires:_____

19

AGREED TO AND CONSENTED TO BY:

*Attorneys for Debtors:*

Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Christopher M. Samis (No. 4909)
Marisa A. Terranova (No. 5396)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

Jeffrey W. Kelley (GA Bar No. 412296)
Ezra H. Cohen (GA Bar No. 173800)
Michael E. Johnson (GA Bar No.395039)
Mathew R. Brooks (GA Bar No. 378018)
TROUTMAN SANDERS LLP
Bank of America Plaza
600 Peachtree Street, Suite 5200
Atlanta, GA 30308-2216
Telephone: (404) 885-3000
Facsimile: (404) 885-3900

*Attorneys for Yucaipa American Alliance
Fund I, L.P., Yucaipa American Alliance
(Parallel) Fund I, L.P., Yucaipa American
Alliance Fund II, L.P., and Yucaipa
American Alliance (Parallel) Fund II, L.P.;
Ronald Burkle, James Frank, Jos
Opdeweegh, Jeff Pellettier, Ira Tochner,
Joseph Tomczak and Derex Walker:*

John T. Dorsey, Esquire (No. 2988)
Michael R. Nestor (No. 3526)
Donald J. Bowman, Jr. (No. 4383)
YOUNG, CONAWAY, STARGATT &
TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801

-and-

Robert A. Klyman
Russell F. Sauer, Jr.
Ted A. Dillman
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
Telephone: (213) 485-1234

-and-

David E. Spalten
Daniel A. Cohen
KASOWITZ, BENSON, TORRES &
FRIEDMAN, LLP
1349 West Peachtree Street, NW
Suite 1500
Atlanta, GA 30316
Telephone: (404) 260-6080
Facsimile: (404) 260-6081

*Attorneys for BDCM Opportunity Fund II, LP;*
*Black Diamond CLO 2005-1 Ltd. and Spectrum*
*Investment Partners LP:*

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
LANDIS RATH & COBB, LLP
919 Market Street, Sute 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (3002) 467-4450

-and-

Robert J. Ward
Adam C. Harris
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000

*Attorneys for Del Mar Distressed*
*Opportunities Master Fund; MJX Asset*
*Management, LLC; Par-Four*
*Investment Management; and Teak Hill*
*– Credit Capital Investments, LLC:*

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
LANDIS RATH & COBB, LLP
919 Market Street, Sute 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (3002) 467-4450

-and-

Lawrence V. Gelber
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000

21

*Attorneys for The CIT Group/Business Credit, Inc.:*

Richard W. Riley
DUANE MORRIS, LLP
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801

-and-

Israel David, Esq.
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
One New York Plaza
New York, NY 10004

*Attorneys for Mark Gendregske:*

Derek C. Abbott
MORRIS NICHOLS ARSHT & TUNNELL
LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

-and-

Justin Antonipillai
ARNOLD & PORTER
555 Twelfth Street, NW
Washington, DC 20004-1206
Telephone: (202) 942-5000

*Attorneys for The Official Committee of Unsecured Creditors:*

William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
SULLIVAN HAZELTINE ALLINSON
LLC
901 N. Market St., Suite 1300
Wilmington, DE 19801
Telephone: (302) 428-8191
Facsimile: (302) 428-8195

-and-

Michael G. Burke
Nicholas K. Lagemann
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Tel: 212-839-8521
Fax: 212-839-5599

22

*Attorneys for The CIT Group/Business Credit, Inc.:*

*Attorneys for The Official Committee of Unsecured Creditors:*

_____

Richard W. Riley
DUANE MORRIS, LLP
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801

-and-

Israel David, Esq.
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
One New York Plaza
New York, NY 10004

William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
SULLIVAN HAZELTINE ALLINSON
LLC
901 N. Market St., Suite 1300
Wilmington, DE 19801
Telephone: (302) 428-8191
Facsimile: (302) 428-8195

-and-

Michael G. Burke
Nicholas K. Lagemann
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Tel: 212-839-8521
Fax: 212-839-5599

*Attorneys for Mark Gendregske:*

_____

Derek C. Abbott
MORRIS NICHOLS ARSHT & TUNNELL
LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

-and-

Justin Antonipillai
ARNOLD & PORTER
555 Twelfth Street, NW
Washington, DC 20004-1206
Telephone: (202) 942-5000

22

*Attorneys for The CIT Group/Business Credit, Inc.:*

*Attorneys for The Official Committee of Unsecured Creditors:*

Richard W. Riley
DUANE MORRIS, LLP
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801

-and-

Israel David, Esq.
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
One New York Plaza
New York, NY 10004

William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
SULLIVAN HAZELTINE ALLINSON
LLC
901 N. Market St., Suite 1300
Wilmington, DE 19801
Telephone: (302) 428-8191
Facsimile: (302) 428-8195

-and-

Michael G. Burke
Nicholas K. Lagemann
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Tel: 212-839-8521
Fax: 212-839-5599

*Attorneys for Mark Gendregske:*

Derek C. Abbott
MORRIS NICHOLS ARSHT & TUNNELL
LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

-and-

Justin Antonipillai
ARNOLD & PORTER
555 Twelfth Street, NW
Washington, DC 20004-1206
Telephone: (202) 942-5000

22