

Citizens Bank Center
919 N. Market Street
Suite 300
Wilmington, DE 19899-2323
Tel (302) 654-7444  Fax (302) 656-8920
www.foxrothschild.com

SETH A. NIEDERMAN
Direct No: 302.622.4238
Email: SNiederman@FoxRothschild.com

May 10, 2021

**BY ELECTRONIC MAIL AND ECF**

The Honorable Christopher S. Sontchi
Chief United States Bankruptcy Judge
District of Delaware
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

   **Re:**  *In re ASHINC Corporation, et al.*, **Case No. 12-11564 (CSS)**

Dear Chief Judge Sontchi:

  Together with Joseph Hage Aaronson LLC and Zaiger LLC, this firm represents Catherine E. Youngman, the Litigation Trustee (the "Trustee") for ASHINC Corporation and related debtors. On July 31, 2020, the Trustee filed a *Motion for an Order Pursuant to Bankruptcy Rule 2004 – and/or Sections 105(a) and 524(e) of the Bankruptcy Code – Authorizing the Taking of Document Discovery and Deposition Testimony from the Yucaipa Funds* (the "2004 Motion") [D.I. 4086].[1] The Yucaipa Funds (as defined in the 2004 Motion) filed an objection to the 2004 Motion on September 4, 2020 [D.I. 4105 and 4106], and the Trustee filed a reply in support of the motion on September 21, 2020 [D.I. 4118].

  A hearing on the 2004 Motion was held on September 24, 2020, at which time the Court denied the motion without prejudice,[2] noting that the matter was premature and should await the summary judgment argument in adversary proceedings numbers 13-50530 and 14-50971 (the

---

[1] The 2004 Motion was filed under seal pursuant an order entered on September 22, 2021 [D.I. 4123], and a redacted version of the 2004 Motion was filed on August 5, 2020 [D.I. 4088].

[2] Although the 2004 Motion was denied without prejudice on the record, the docket does not reflect an Order to that effect being entered.

Hon. Christopher S. Sontchi
May 10, 2021
Page 2

"Adversary Proceedings") before revisiting.  For reference, a copy of the transcript of the September 24, 2020 hearing is attached as **Exhibit A** (the "Transcript").  Your Honor instructed the Trustee to not file a new motion regarding the discovery issues and suggested that the matter be discussed at the summary judgment hearing (*see* Transcript at 29).

A hearing on the summary judgment motions in the Adversary Proceedings was held on February 4, 2021, and the Court entered an opinion and order on May 4, 2021 (the "Summary Judgment Order") granting in part and denying in part the parties' respective summary judgment motions.  Notably, the total value of the Trustee's claims for which summary judgment was granted exceeds $120 million.[3]

In light of the disposition of the summary judgment motions – including the substantial award to the Estate on certain claims – and Your Honor's previous comments with respect to the 2004 Motion at the September 24, 2020 hearing, the Trustee believes it is now appropriate and timely to revisit the 2004 Motion.  In particular, the Trustee filed the 2004 Motion due to serious concerns that the Yucaipa Funds were dissipating assets notwithstanding notice of a significant contingent liability in the Adversary Proceedings.  The 2004 Motion included exhibits evidencing the Yucaipa Funds' dissipation of funds, and Your Honor noted during the September 24, 2020 hearing that the Trustee's concern were valid, and thus the matter should not be overly delayed due to the Trustee's need to obtain discovery prior to the potential expiration of any applicable statute of limitations (*see* Transcript at 26).  The massive liability on the part of the Yucaipa Funds is no longer contingent in light of Your Honor's Summary Judgement Order, and the Trustee's concern have only grown since the September 24, 2020 hearing.  Indeed, publicly available information suggests that the Yucaipa Funds may have continued dissipating their assets.[4]

It seems clear that the Yucaipa Funds are undeterred by the pending litigation and Your Honor's comments during the September 24, 2020 hearing, and that the Trustee's need to move forward with the discovery requested in the 2004 Motion has become acute in light of the Summary Judgment Order.

---

[3] This includes approximately $57.4 million in damages plus pre-judgment interest running from August 31, 2009 on the Trustee's breach of contract claim (Claim 5), and approximately $7 million on the Trustee's fraudulent transfer claims (Claims 10, 11, and 13).

[4] On March 21, 2021, Yucaipa Master Manager, LLC, an investment adviser registered with the U.S. Securities Exchange Commission, filed a Form ADV reporting gross asset values as of December 31, 2020 for Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P. of $1,545,775 and $5,901,549, respectively.  This development is alarming.  *See*  https://reports.adviserinfo.sec.gov/reports/ADV/158216/PDF/158216.pdf  (at pp. 24-25 and 38-39).

Hon. Christopher S. Sontchi
May 10, 2021
Page 3

Based on the foregoing, it is respectfully requested that Your Honor hold a status conference as soon as Your Honor's schedule permits to revisit the 2004 Motion or, alternatively, grant the Trustee's pending motion.

Respectfully submitted,

*/s/ Seth A. Niederman*
Seth A. Niederman
DE Bar No. 4588

cc: (*via email*)

Michael R. Nestor, Esq.
Michael S. Neiburg, Esq.
Robert A. Klyman, Esq.
Maurice M. Suh, Esq.
Kahn A. Scolnick, Esq.

Exhibit "A"

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | . | Case No. 12-11564(CSS) |
| | . | (Jointly Administered) |
| | . | |
| | . | |
| ASHINC CORPORATION, et al., | . | Chapter 11 |
| | . | |
| | . | 824 Market Street |
| Debtors. | . | Wilmington, Delaware 19801 |
| | . | |
| | . | September 24, 2020 |
| . . . . . . . . . . . . . . . | . | 1:06 p.m. |

TRANSCRIPT OF MOTION FOR RULE 2004 EXAMINATION
BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY COURT JUDGE

TELEPHONIC APPEARANCES:

For the Litigation Trustee:    Fox Rothschild, LLP
                               By:  SETH A. NIEDERMAN, ESQ.
                               919 North Market Street
                               Suite 300
                               Wilmington, DE 19899

                               Fox Rothschild, LLP
                               By:  CATHERINE E. YOUNGMAN, ESQ.
                               49 Market Street
                               Morristown, NJ 07960

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311      Fax No. (609) 587-3599**

TELEPHONIC APPEARANCES (Cont'd):

For Yucaipa Defendants:        Young Conaway Stargatt & Taylor,
                                LLP
                               By:  MICHAEL S. NEIBURG, ESQ.
                                    MICHAEL R. NESTOR, ESQ.
                               Rodney Square
                               1000 North King Street
                               Wilmington, DE 19801

                               Gibson Dunn & Crutcher, LLP
                               By:  ROBERT KLYMAN, ESQ.
                                    MAURICE M. SUH, ESQ.
                                    VANESSA A. PASTORA, ESQ.
                                    KAHN A. SCOLNICK, ESQ.
                               333 South Grand Avenue
                               Los Angeles, CA 90071


For Mark Gendregske:           Morris Nichols Arsht & Tunnell,
                                LLP
                               By:  DEREK C. ABBOTT, ESQ.
                               1201 North Market Street
                               16th Floor
                               Wilmington, DE 19899

                               Arnold & Porter Kaye Scholer, LLP
                               By:  IAN S. HOFFMAN, ESQ.
                                    JOHN C. MASSARO, ESQ.
                               601 Massachusetts Ave., NW
                               Washington, DC 20001


                       - - -

3

# **I N D E X**

| **EXHIBITS** | **ID.** | **EVD.** |
|---|---|---|
| Maurice Suh's declaration | -- | 11 |
| Catherine Youngman's declaration | -- | 23 |

4

1          THE COURT:  Good afternoon, everyone, at least on the
2  east coast.  Good morning to those of you who might be further
3  west.  We're here on the ASHINC case and the motion for Rule
4  2004 exam.
5          Mr. Suh, are you on the CourtCall?  I want to make
6  sure we have you.
7          MR. SUH:  I am, Your Honor.
8          THE COURT:  Okay.
9          MR. SUH:  And apologies for my problems with Zoom.
10  I'm connected to the video.  I just don't know why I'm not -- I
11  can't see myself on the screen.  I can see all of you.
12          THE COURT:  Your camera is not turned on is the
13  problem.
14          MR. SUH:  It says -- again, forgive me, Your Honor,
15  for this but it says --
16          THE COURT:  It's okay.  I don't want to hold
17  everybody up.  It's not a problem.  I just wanted to make sure
18  we had you before we start.
19          MR. SUH:  Yes.
20          THE COURT:  So I don't know who wants to go first.  I
21  have read the papers.  I suppose the liquidation trust should
22  go first.
23          MR. NIEDERMAN:  Thank you, Your Honor.  And for the
24  record, Seth Niederman from Fox Rothschild on behalf of the
25  trustee.  Can you hear me okay?

1          THE COURT:  Yes, sir.

2          MR. NIEDERMAN:  Thank you.  Your Honor, as I'm sure

3   the Court is aware, the discovery sought by the motion relief

4   to distributions by the Yucaipa Funds and the possible

5   depletion of those funds during the pendency of adversary

6   actions pending before this Court.  The trustee learned of

7   these distributions late last year and was able to confirm

8   through publicly-available documents that a significant

9   distribution had in fact occurred.

10          In the exercise of her fiduciary responsibility to

11   all creditors in administering the litigation trust, Ms.

12   Youngman reached out to counsel for Yucaipa to obtain

13   information related to the distributions and to request the

14   current balance of that that's held by the Funds.  This process

15   started back in February of this year and carried on for

16   several months as the parties attempted to resolve the request

17   without court intervention.  This is evidenced by the numerous

18   correspondence exchanged by the parties which are attached to

19   the parties' respective submissions.

20          Notably as spelled out in the papers, the Funds

21   eventually agreed to provide most of the requested items,

22   however, it was contingent upon conditions that were

23   unacceptable to the trustee.  Specifically, the Funds agreed to

24   produce the dates and amounts of all distributions made since

25   December of 2016, a declaration that distributions were made in

6

1  compliance with the LP agreement and an accounting for the

2  value of cash and other assets remaining with the Fund.

3  However, the Funds would not agree to disclose the recipients

4  of distributions citing unspecified privacy concerns or any

5  support that the type of funds distributions were made in

6  compliance with the LP agreement.

7      Additionally, the production was contingent on a

8  concession from the trustee not to pursue any additional Rule

9  2004 discovery.  These conditions were not acceptable to the

10  trustee and this motion followed.  Through the motion the

11  trustee seeks documents and information in the Fund's

12  possession relating to the dates, amounts and recipients of the

13  distributions made by the Fund since December 2016 which is the

14  effective date of the plan, supporting documentation reflecting

15  the distributions by the Fund were made in compliance with the

16  agreement and the amount of cash and assets remaining with the

17  Yucaipa Funds.

18      There can be no doubt that this information fits

19  within the broad scope of an examination permitted by Rule 2004

20  and it does not appear that Yucaipa is arguing that the

21  information is outside the scope of a 2004 exam.  Instead,

22  Yucaipa relies on the pending proceeding rule in its

23  opposition, however, it's detailed in our papers the pending

24  proceeding rule is not applicable here.  The pending proceeding

25  rule would apply to Rule 2004 discovery related to the merits

1 of pending adversaries.

2          The concern with this rule is that parties use a Rule

3 2004 exam as an end run on civil discovery and that's not what

4 is being sought here.  The information sought by the trustee is

5 to evaluate possible future actions by the trustee.  It is not

6 to be used in connection with the merits of the adversary

7 proceedings.  I think, Judge, the time period of the requested

8 information sought dispels any argument that the trustee is

9 seeking this information for purposes to the merits of the

10 pending adversary proceedings.  The post effective date

11 distribution by the Funds have no relationship to the merits of

12 the underlying adversaries and Yucaipa's opposition to the

13 motion does not cite any overlap on the merits.  On the other

14 hand, this information is necessary for the trustee to promptly

15 or properly exercise her business judgment and fulfill her

16 obligations to trust beneficiaries.  As such, the 2004 exam is

17 not precluded by the pending proceedings rule.

18          The Yucaipa Funds also cite and assert that the

19 motion is improper under local Rule 9019-5.  They're also

20 incorrect in that assertion and their assertion that the motion

21 or the trustee somehow violated the local rule because that

22 local rule is based on information or, excuse me, that local

23 rule prohibits the use of documents or statements made in

24 mediation as evidence in the proceeding.  The trustee's motion,

25 in contrast, relies solely on her investigation and the

1  documents that support her findings, none of which were

2  produced in the mediation.

3         Additionally, as this Court is aware, the local Rule

4  --

5         THE COURT:  For purposes of deciding your motion, I

6  can't consider the fact that you got that information because

7  it's the factual basis of your motion and if the facts aren't

8  evidence, I don't know what is.

9         MR. NIEDERMAN:  Well, Your Honor, I think that the

10 fact that the trustee was able to glean this information from

11 publicly-available sites takes it outside of the scope of local

12 Rule 9019-5(d)(i) which provides that information otherwise

13 discoverable or admissible in evidence does not become exempt

14 from discovery or inadmissible in evidence merely by being used

15 by a party in the mediation.  So the idea is you can't take

16 something that's publicly-available and used in mediation and

17 then say it's precluded from being used in any future

18 proceedings which is what is being done here.  Does that

19 address Your Honor's question?

20        THE COURT:  Okay.

21        MR. NIEDERMAN:  The trustee additionally has

22 authority to pursue this discovery.  We've spelled out in our

23 papers, especially our reply the trustee's standing to be able

24 to pursue this discovery in her capacity as litigation trustee.

25

1         In sum, this is not a heavy lift for Yucaipa.  The

2   requests were in fact targeted notwithstanding the fact that

3   2004 permits a broad net or a wide net in terms of discovery

4   that's permissible or examinations that are permissible, excuse

5   me.  However, the trustee's requests were targeted, discreet

6   and notably, as I said earlier, Yucaipa has already volunteered

7   to produce most of it, however, under conditions that are

8   unacceptable to the trustee.  The trustee needs to know who the

9   transferees were and the trustee needs to be able to preserve

10  her ability to follow up if the targeted discovery sought

11  reflects any suspicious activity and prompts additional

12  discovery requests.

13         Any supposed privacy concerns can easily be addressed

14  through confidentiality designations which this Court permits

15  and allows routinely and we respectfully would ask Your Honor

16  to grant the motion in connection with the requested

17  information from both Yucaipa Main Fund and its co-investor,

18  Yucaipa Parallel Fund.  I'll rely on my papers for the balance

19  of the arguments but I'm happy to address any specific points

20  that the Court may have or questions that the Court may have

21  for me.

22         THE COURT:  No, I have no questions.  Anyone in

23  support that would like to be heard before I turn it over to

24  opposition?

25                       (No audible response)

1            THE COURT:  Okay, response?

2            MR. KLYMAN:  Your Honor, this is Robert Klyman from

3    Gibson Dunn on behalf Yucaipa if I may be heard?

4            THE COURT:  Yes.

5            MR. KLYMAN:  Thank you, Your Honor.  As an initial

6    matter, Your Honor, we did file a declaration of Maurice Suh

7    which was filed as a sealed version at Docket 4106 and the

8    redacted version is 4109.  It's the only evidence in the case

9    that demonstrates that the trustee only learned about the

10   possibility of funds and the availability of funds for a

11   judgment in mediation and that everything coming in connection

12   with the Rule 2004 motion is directly related to in the proofs

13   of that confidential mediation discussion.  I'll address the

14   mediation privilege later in my presentation but for

15   housekeeping matters, Your Honor, I wanted to move that into

16   evidence.  Mr. Suh is on the line and he's also subject to

17   cross examination.

18           THE COURT:  Any objection?

19           MR. NIEDERMAN:  No objection to its admission into

20   evidence, Your Honor.

21           THE COURT:  Submitted.

22           MR. KLYMAN:  Thank you, Your Honor.  Your Honor, some

23   background is necessary here.  As we pointed out in our status

24   conference report in connection with the status report on

25   August 11, 2020, the facts of these cases matter.  After six-

1  plus years of litigation, dozens of depositions across the

2  country from California to New York to Florida and states in

3  between and the production of the parties of millions of pages

4  of documents and the incurrence of millions of dollars in fees

5  related to discovery, the facts matter.

6         Until depositions started in earnest in 2020 or late

7  2019, most of what was before the Court was a narrative built

8  on allegations and complaints and the central allegations of

9  Black Diamond and Spectrum and the litigation trustee have been

10 proven untrue as you will see when you consider the motions for

11 summary judgment that are currently pending before Your Honor

12 and set before you for a hearing I believe on January 12th,

13 just a couple of months away.

14        Since the last time we had a disputed matter before

15 Your Honor the case has matured significantly.  The plaintiffs

16 had always relied on the presumptions based on allegations in

17 their complaint because depositions hadn't occurred and that

18 will no longer exist and that's directly relevant to the motion

19 today.

20        The key facts in this case rebutting those

21 allegations are going to come from third parties and the

22 plaintiff's own witness as an expert, all of which are

23 important today to the relief sought by the trustee and will

24 either moot that relief or render the motion premature and it

25 should be delayed until after judgment.  Those facts include

12

1  the following, Your Honor.

2        That Allied stakeholders all believed that the Fourth

3  Amendment was in Allied's best interest at the time it was

4  adopted and that Yucaipa's acquisition of debt was in the best

5  interest of Allied.  The trustee has repeatedly asserted that

6  Yucaipa caused the Fourth Amendment which has now been

7  invalidated, to be enacted and then purchased Allied's first

8  lien debt from ComVest solely for Yucaipa's benefit.  The

9  evidence has shown this to be false.  Instead, the evidence

10 shows that Yucaipa, the Allied board, the special committee of

11 independent directors all devised by Troutman Sanders as

12 independent counsel, Allied's management and employees and

13 Allied's customers all believe that absent the Fourth Amendment

14 and debt purchase, Allied would have not been able to escape a

15 second bankruptcy and likely liquidation in the midst of the

16 Great Recession.  If Allied had liquidated at the time, all the

17 stakeholders would have been worse off.

18       The evidence will further demonstrate, Your Honor,

19 that Black Diamond and Spectrum were fully aware of the

20 purchase of debt by Yucaipa and even considered teaming up with

21 others to sell their debt to Yucaipa or teaming up with Yucaipa

22 to make a joint bid for Allied.

23       Second, the lender complaint alleges that Yucaipa

24 somehow harmed the estate and other lender by usurping

25 negotiations with an entity called Jack Cooper and then sought

13

1 to advantage itself in negotiations over the sale of debt to

2 Jack Cooper.

3          The facts from the lenders and the third parties

4 belie this whole scenario.  According to Mike Riggs, the head

5 of Jack Cooper who had conceived of and presented the first

6 lien debt by an opportunity first to ComVest and then to pursue

7 it on his own, testified that similar to ComVest, Jack Cooper

8 and not Yucaipa had an idea to acquire the debt and then the

9 most logical way to combine the companies was through a 363

10 sale.  Jack Cooper's 30(b)(6) witness further explained that

11 during the relevant time period Jack Cooper's goal was to

12 acquire Allied by obtaining as much debt as possible because

13 Allied was in default and Jack Cooper wanted to pursue Allied

14 through a 363 sale.  The evidence, Your Honor, and this will be

15 presented to you in January, demonstrates that Yucaipa did not

16 usurp the negotiations to Jack Cooper;  rather, Jack Cooper

17 wanted to pursue a debt purchase and to that end, approached

18 Yucaipa and not Allied.

19          The allegations also were made that Yucaipa used its

20 requisite lender status to garnish some kind of premium

21 relative to the other lender but according to Jack Cooper, Jack

22 Cooper knew that Black Diamond and Spectrum were contesting the

23 validity of Yucaipa's status requisite lender and therefor

24 offered a discount to Jack, Diamond and Spectrum for the

25 purchase of their debt because in every country as you'll see

14

1 the release of that litigation was an essential feature and

2 Jack Cooper discounted the purchase price accordingly because

3 that litigation wouldn't be dropped.  And further, that Yucaipa

4 didn't kill the deal by refusing the radical treatment.  In

5 fact, as you'll see, Yucaipa did agree to radical treatment and

6 in response, Black Diamond and Spectrum filed the involuntary.

7        Importantly, Your Honor, the allegations in the

8 complaint allege that Yucaipa breached the first lien credit

9 agreement and that Yucaipa somehow caused damage to the first

10 lien lenders by, among other things, failing to make a capital

11 contribution of debt into equity.  The trustee's 30(b)(6)

12 witness on damages, Mr. Depo (phonetic), testified that the

13 trustee would rely on its expert to identify damages from all

14 of Yucaipa's purported breaches.  But the trustee's damages

15 expert testified that he had no opinion and was instructed to

16 provide no opinion whatsoever on damages related to any of the

17 purported breaches beyond a failing to make the capital

18 contribution of about $57.4 million and the allegations related

19 to JCT.

20        But given that discovery revealed that Black Diamond

21 and Spectrum's allegations and the trustee's allegations

22 regarding the JCT negotiations weren't true, they haven't

23 suffered any damages in connection with those negotiations

24 either.  And even if they did, even if those allegations were

25 true, the evidence will show, Your Honor, that Black Diamond

1  and Spectrum had an obligation, an opportunity to mitigate its

2  damages by taking the 70-cent on the dollar offer offered by

3  Jack Cooper.

4          Most importantly, Your Honor, the bulk of the damages

5  that the trustee is seeking arise from Yucaipa's purported

6  failure to contribute debt into equity or to make a capital

7  contribution at the time of the Fourth Amendment in 2009 and

8  they allege that Yucaipa breached the Third Amendment now that

9  the Fourth Amendment is invalid by not contributing debt to

10 capital.  But the undisputed evidence that you'll see, Your

11 Honor, and is presented in connection with the summary judgment

12 motion is that the lenders knew fully about this alleged breach

13 more than three years prior to filing their complaint.

14         And so based on Your Honor's prior ruling requiring

15 three-year statute of limitations against Yucaipa in connection

16 Yucaipa's breach of claims, all of the damages alleged to have

17 flown from breaches of the Third Amendment will be barred by

18 the statute of limitations.  And the lenders themselves don't

19 have direct damages.  They only have damages as a result of

20 being a lender to Allied and those damages, as you'll see, are

21 entirely speculative under the analysis by the trustee's expert

22 because the trustee's expert, as you will see and it's

23 undisputed, that is that they -- he's assuming that money was

24 contributed into Allied and that all of the facts as they

25 played out remained exactly the same and he had no opinion as

1  to whether or not Allied would have spent the money or blown

2  through the money using it to keep the business afloat.

3          And you'll also see, Your Honor, that under the UCC

4  complaint which was derivative of rights of the debtor, the

5  debtor waived its right to compel this capital contribution in

6  connection with the Third Amendment and you'll also see, Your

7  Honor, that in connection with damages, Black Diamond --

8          THE COURT:  Mr. Klyman, are we ever actually going to

9  get to the motion?  I do not have an infinite amount of time to

10  listen to your opening brief and your summary judgment motion.

11          MR. KLYMAN:  Yes, Your Honor.  I will move to that

12  right now, Your Honor.  So that's the 2004 motion.

13          The 2004 motion is premature because by the trustee's

14  own admission the discovery that the trustee is seeking relates

15  to post-judgment collection litigation.  The trustee has an

16  extremely -- has a heavy burden under 2004 to pursue this and

17  now that we've moved beyond allegations and the facts, you

18  should consider those facts at the summary judgment hearing

19  before granting this relief because the trustee needs to

20  prevail on affirmative claims for damages in order to pursue

21  investigation as to whether or not there's enough money to

22  collect.

23          We believe that the facts and law will show in

24  January that they have no affirmative claims against Yucaipa

25  and that those are barred for a variety of reasons.  And if

1  they prevail in their motion -- in their complaint to equitably

2  subordinate Yucaipa's claim, that merely means that Yucaipa's

3  claim to recoveries in this case will be subordinated to the

4  recovery of other creditors.  It doesn't give the trustee the

5  right to go seek affirmative monies from third parties.  The

6  trustee's motion is devoid of any evidence that any delay in

7  getting the requested information beyond a summary judgment

8  motion will prejudice the trustee in any way.

9        So in addition, Your Honor, what they're seeking is

10 not permissible under the rules for several reasons.  First,

11 the information that they're seeking is directly related to the

12 pending adversary proceeding and so any discovery has to

13 accomplished through the federal discovery rules and the

14 trustee misstates the applicable standard under Washington

15 Mutual.  As noted in our objections, the Court in Washington

16 Mutual said the discovery of evidence related to the pending

17 procedures must be accomplished in accord with the more strict

18 provisions of the Federal Rules of Civil Procedure, not Rule

19 2004 and that the key issue is whether the 2004 examination

20 will lead to discovery of evidence related to the pending

21 procedure, not narrowly limited to the merits but related to

22 the pending procedure.

23        And how do we know that this is related to the

24 pending procedure?  Well, the trustee believed that all of this

25 was relevant to the discovery in the pending procedure already.

18

The trustee believed that the partnership agreement was related to the pending procedure and requested it in discovery.  And Yucaipa turned it over in 2016 so that the trustee had three years before the close of discovery to ask whatever questions the trustee wanted arising out of or related to the distributions or operations of the partnership agreement.

In fact, the trustee put these directly at issue in its discovery.  For example, the trustee, following the Rules of Federal Procedure, propounded topics for the 30(b)(6) witness of Yucaipa that included as Numbers 63 and 64 the structure of the Yucaipa Fund including their investors and the ability of the Yucaipa Fund to satisfy any judgment in these actions.  These are attached to the Suh declaration at Exhibit 2 at Page 13.

Mr. Derex Walker of Yucaipa was designated as the 30(b)(6) witness.  At his deposition the trustee clearly thought that these topics were related to the pending adversary proceedings because the trustee's counsel asked questions about them.  Those are laid out in the transcript attached to the Suh declaration as Exhibit 4.  We objected to those questions and ultimately the trustee's counsel marked that transcript and reserved the right to call the witness back but never did. And then at the status conference in August Mr. Zaiger admitted that, and I'm quoting, in the adversary proceeding during fact discovery the questions were asked about distributions and the

1  ability of Yucaipa Fund to satisfy judgment.  We did not move

2  to compel those answers.  That was attached in the transcript

3  as Exhibit 9 to the Suh declaration at Pages 7 to 8.

4          They can't use Rule 2004 to take discovery where that

5  discovery was directly put at issue by them in a pending

6  adversary proceeding and now want a second bite at the apple

7  after the close of fact discovery, after the close of expert

8  discovery because the trustee failed to move to compel.

9          They have the right under Rule 69 if they get a

10 judgment to try and pursue discovery about the collectability

11 of that judgment and according to the cases, Bankruptcy Rule

12 7069 contemplates that discovery to enforce the judgment will

13 be brought by adversary proceedings, not Rule 2004.  So again

14 we have different facts and it's a premature request for

15 information.  If Your Honor wanted to rule that they could

16 reserve that right post judgment if it was even relevant, they

17 could have that right, we'd reserve our right, we could fight

18 it out for another day to the extent it was even relevant.  And

19 the cases that they cite, <u>Roman Catholic Church</u>, <u>Brook</u>, among

20 others, those deal with very different facts either where there

21 wasn't a pending adversary proceeding or the applicant sought

22 discovery from third parties.

23          Moreover, as Your Honor noted and as was raised

24 earlier, not as you noted, I apologize, the motion itself

25 directly violates the mediation privilege.  As set forth in the

1  Suh declaration, we told the trustee about the financial

2  wherewithal of Yucaipa in the context of mediation while trying

3  to settle the underlying litigation.   They asked questions

4  about it.  Mr. Suh made a presentation about it.  And then, lo

5  and behold, afterwards they decided to do more investigation

6  and diligence and served up their Rule 2004.

7          It's entirely disingenuous, Your Honor, for the

8  trustee to assert that they only happened to stumble across

9  this and garner it through public information after mediation.

10  They vaguely described that late last year they came into this

11  information.  In fact, the uncontroverted evidence in Mr. Suh's

12  declaration is that this was a direct product of the mediation.

13  And the local rules, Your Honor, as you pointed out, provide

14  that no person may rely on or introduce as evidence any

15  evidence pertaining to any aspect of the mediation including

16  but not limited to statements or admissions made by a party

17  during the course of the mediation and that no person shall

18  seek discovery from any participant in the mediation with

19  respect to any information disclosed to that mediation.   The

20  trustee asked questions about what they're seeking now during

21  discovery.  They didn't move to compel so it's part of a

22  settlement effort and confidential mediation.  We disclosed

23  further information and then, lo and behold, the motion

24  followed.

25          The trustee tries to move away from this by arguing

1   that she can bring a Rule 2004 examination in her capacity as

2   plan trustee, not litigation trustee.  That makes no sense

3   under the facts of this case.  First, all of this is teed up in

4   connection with post-judgment collection recoveries by the

5   litigation trustee.  And second, as we laid out in our papers,

6   the plan only gives the plan trustee limited powers to

7   implement the provisions of the plan.  The plan with respect to

8   this litigation and collection has already been administered.

9   On the effective date of the plan certain assets went to a

10  reorganized debtor and certain litigation claims went to the

11  litigation trust.  The litigation trust is in pursuit of and in

12  control of those adversary proceedings.

13          And then, Your Honor, as we pointed out, the trustee

14  can't use Section 105 as a roving equitable right to get

15  discovery and Section 1106(a)(3) doesn't apply just based on

16  the face of the statute and where we are in the case.  So we

17  would respectfully request, Your Honor, that you either deny

18  this motion outright for the reasons that we laid out or

19  continue it until either after the motion for summary judgment

20  where the playing field will either be more adjusted or not or

21  after the trial in this matter which should occur some time in

22  2021 when we know that there's really something to go after if

23  the trustee is successful.  Thank you, Your Honor.

24          THE COURT:  Thank you.

25          MR. NIEDERMAN:  Your Honor, may I be heard briefly?

1          THE COURT:  Yes, Mr. Niederman.

2          MR. NIEDERMAN:  Thank you, Your Honor.  Again, for

3  the record, Seth Niederman on behalf of the trustee.

4          Your Honor, I neglected to move into evidence Ms.

5  Youngman's declaration which was attached to our opening

6  papers.  She is available for any cross examination if any

7  party wishes to do so.  May I move that into evidence now?

8          THE COURT:  You may move it.  Any objection, Mr.

9  Klyman?

10         MR. KLYMAN:  No objection, Your Honor.

11         THE COURT:  Okay, submitted without objection.

12         MR. NIEDERMAN:  Thank you, Your Honor.  Two other

13  just brief responses to the presentation on the motion aspect

14  of the presentation by Mr. Klyman.  It's important to keep in

15  mind that the discovery or I should say the examination sought

16  by Ms. Youngman for this motion relates to potential additional

17  claims that she may pursue and not the existing claims.  She

18  needs this information in order to evaluate those and to fulfil

19  her fiduciary obligation to her constituency.

20         The other point is with regard to the deposition that

21  occurred of the 30(b)(6) witness of the Fund.  We don't deny

22  that this was a topic that was listed in the 30(b)(6)

23  deposition notice.  On the eve of that deposition there was an

24  objection lodged to the topic and at the actual deposition

25  questions related to that were objected to by the Funds.

1          What we heard from Mr. Klyman is that if those

2  amounts or, sorry, if that information it being relevant, it

3  should be sought through Rule 69 post judgment.  So what would

4  have happened in the underlying adversary actions if we sought

5  that is they would have said wait til the end of the case and

6  you can pursue that pursuant to Rule 69.  That's not what we're

7  talking about here.  We're not looking for it in connection

8  with the case.  We're looking for it in connection with

9  additional potential claims that the trustee may pursue and

10 that's the point of the 2004 exam as opposed to seeking that

11 information through some sort of a motion to compel in the

12 adversary actions.

13          Again, I'm happy to address any issues that the Court

14 would like me to or answer any questions the Court may have.

15          MR. KLYMAN:  Your Honor, may I be heard briefly in

16 reply?

17          THE COURT:  Yes, very briefly.

18          MR. KLYMAN:  Very briefly.  First, Your Honor, this

19 is the first that we're hearing that they think they may have

20 causes of action against third parties.  This case started in

21 2013.

22          THE COURT:  Well, I mean I assume they're talking

23 about fraudulent conveyance claims where they're going after

24 the defendant for hindering or delaying collection by the

25 creditors and they're going after the ultimate recipients of

1  the money.  I assume that's what he's -- is that what you're

2  talking about, Mr. Niederman?

3          MR. NIEDERMAN:  It is, Your Honor.

4          MR. KLYMAN:  Okay.  Well, thank you, Your Honor.

5          THE COURT:  That jumped to my mind as soon as I read

6  their papers.  I'm sure it jumped to yours.

7          MR. KLYMAN:  The second point, Your Honor, is that

8  the trustee admits in her reply that they only went to

9  investigate what's at issue here both after Yucaipa suggested

10 it had no reserves and had made a large distribution in the

11 spring of 2019.  That information came directly from the

12 mediation.  That is uncontroverted and they should not be able

13 to profit from using mediation information at this point in

14 time.  Thank you.

15         THE COURT:  All right.  So there are a couple of

16 things going on here.  I am going to deny the motion without

17 prejudice and I certainly think that we should probably await

18 at least summary judgment argument before we would renew the

19 idea of going forward here.  But there are a few things going

20 on.

21         One, I think Mr. Klyman I mean really hit the nail on

22 the head towards the end of his presentation which is to me

23 this feels like post-judgment discovery about collectability

24 and it's available under Rule 7069 by adversary proceeding.

25 It's not by Rule 2004.  And, of course, it follows an actual

1  judgment.

2          Now, I would be a little worried given the pace of

3  this case for Ms. Youngman to have to wait too long to pursue

4  whether there are potential recipients of money from the

5  defendant at a time when the defendant may have been insolvent

6  or known it was going to be insolvent based on the claims

7  against it to pursue fraudulent conveyance claims.  Certainly

8  you can't wait forever because we have statutes of limitation.

9  But it seems premature to me at this particular moment to be

10 pursing that kind of discovery at this time.

11         Now, because of the time sensitive nature of the

12 facts that the statute might be running in connection with

13 dissipation of assets, and let's just be clear here, I've heard

14 -- I am making zero, zero decision on the merits of whether

15 there was any kind of inappropriate behavior going on here.

16 I'm just making assumptions.  But assuming that there is

17 something to the dissipation of assets problem waiting for an

18 actual judgment in this case given its lightening speed might

19 put Ms. Youngman in a place where she's got a statute of

20 limitations problem and I don't want to put her there.

21         And I think Mr. Niederman correctly points out that

22 this is really not a collection of judgment from the defendant

23 issue as much as it's a are there fraudulent conveyance actions

24 that might be available against ultimate recipients of assets

25 that may have been dissipated while litigation is ongoing.

1  It's a slightly different issue.

2      But even that requires a threshold finding that

3  there's actual liability here against the defendant and we're

4  nowhere near that, at least from a judicial perspective.  And,

5  of course, I'm sure if Mr. Niederman had wanted to give his

6  side of the story on the merits of the litigation as I let Mr.

7  Klyman sort of get a little ways down that road, I would have

8  heard a very different story from the plaintiff.  Again, I'm

9  not deciding the merits today.

10     However, the thing that troubles me the most is the

11 mediation privilege.  Now, it is true that you can't hide

12 information by slipping it into a mediation and make it

13 sacrosanct and non discoverable for the rest of time.  That

14 would create a very perverse incentive with regard to

15 participating in mediation and I think inappropriately using

16 mediation to hide what would otherwise perhaps have been the

17 bad facts in connection with your case by mentioning it at a

18 hearing during a mediation.

19     And, of course, we can't just turn our brains off.

20 We can't just do an information dump after mediation and forget

21 everything we learned and to a certain extent what we learn in

22 mediation is going to color what we do after mediation

23 including maybe coming up with document requests that

24 legitimately seek in a legitimate way information we may have

25 not even known was something we should think about until we

1  heard it in mediation and that's a gray area.  It's a gray area

2  as to the scope of that mediation privilege was created by

3  local rule.

4          Here I am troubled.  It seems pretty clear to me that

5  this concern really arose out of what was disclosed at

6  mediation.  Now, that's hampered somewhat by the fact that

7  there are some allegations that this was a concern that was put

8  in place as some information that came into Ms. Youngman's or

9  her agent's knowledge a little while ago although perhaps maybe

10  vague information and, of course, it was a part of the

11  discovery with regard to the 30(b)(6) witnesses and was not

12  pursued for whatever reason.

13          So I'm a little worried about the privilege but I'm

14  not going to get hung up on that because at the end of the day

15  even if you did an info dump on your brains when you walked out

16  of that mediation, if Ms. Youngman's claims are ultimately

17  successful and the judgment is entered, it would go to collect,

18  find out maybe there wasn't enough money and do some discovery

19  to figure out where it went and we'd be right where we are

20  today except it would be one or two or three years later and

21  she might be in a position where there are statutes of

22  limitation which would limit her ability to get her hands on

23  those funds, again, assuming a judgment.

24          And I'm not particularly troubled by the fact that

25  it's a 2004 motion when there's a pending adversary.  Certainly

28

1  that's generally the way you should go which is through the

2  adversary and through the normal discovery channels but given

3  the fact that we're really talking about collectability of

4  judgment against potential third parties, we're sort of in an

5  in between place.  We're not really in this litigation.

6          We're either at the end of this litigation

7  prematurely on collectability of judgment discovery or at the

8  beginning of a litigation before it's been filed on potential

9  claims for fraudulent conveyance against recipients of assets

10 from the defendant so we're not in the middle of the discovery

11 of this case either way.  I think we're premature for the

12 former with regard to post-judgment discovery and we might be

13 somewhat premature for the latter although we can't wait

14 forever because I don't want the claims to be mooted to the

15 extent they have any merit and, again, I don't know if they do.

16         So while I certainly am not going to make any

17 promises about a quick decision of what I'm sure are going to

18 be rigorously briefed and argued summary judgment motions in

19 January, I would like to -- I'm denying this without prejudice

20 for the reason that I don't want to put Ms. Youngman in a place

21 where she waits -- I make her wait so long that ultimately it

22 doesn't matter but I don't want to hurry this up when it's

23 quite possible and we'll see what the summary judgment motions

24 look like.

25         I haven't read the brief.  I'm not even sure you're

1  done yet.  I don't know.  I signed an extension of time to

2  brief in that case about every two days so I'm not exactly sure

3  where you are on the briefing but I did know we had to move the

4  argument.  I'm sorry it had to go out so late into January

5  because of my schedule.

6          But in any event, let's continue this.  We can

7  discuss it at the summary judgment hearing about whether to tee

8  it up again for further argument or to set some sort of

9  schedule.  Don't file a new motion.  Let's discuss it at the

10  summary judgment hearing first or argument first and then we'll

11  see where we go from here.  But I do think it's premature for

12  today, that's for sure.  I'm not troubled by the fact that it's

13  a 2004 as opposed to in the adversary proceeding for the

14  reasons I said.  I am troubled that there was some leakage of

15  mediation information here.  But since I think we would have

16  ended up in this place anyway ultimately, I don't think it

17  makes a difference.  So to me, it's solely a timing issue.

18  It's not a 2004 versus Federal Rules of Civil Procedure issue

19  and we can talk about that more fulsomely at the summary

20  judgment hearing.

21          The Court will enter an order denying it without

22  prejudice for the reasons set forth on the record although that

23  will probably not get out until next week because my judicial

24  assistant is on vacation.  All right?  Anything further?

25          UNIDENTIFIED ATTORNEY:  Nothing, Your Honor.  Thank

30

1  you very much.

2          UNIDENTIFIED ATTORNEY:  Nothing, Your Honor.  Thank

3  you.

4          THE COURT:  You're welcome.  Everybody, have a good

5  day.  We're adjourned.

6          UNIDENTIFIED ATTORNEY:  Thank you.

7          UNIDENTIFIED ATTORNEY:  Thanks, Your Honor.

8                          * * * * *

11                **C E R T I F I C A T I O N**

12         I, MARY POLITO, court approved transcriber, certify

13 that the foregoing is a correct transcript from the official

14 electronic sound recording of the proceedings in the above-

15 entitled matter, and to the best of our ability.

16

17 /s/ Mary Polito

18 MARY POLITO

19 J&J COURT TRANSCRIBERS, INC.      DATE:  October 1, 2020

20

21

22

23

24

25