## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
| ASHINC CORPORATION, *et al.*,[1] | Case No. 12-11564 (MFW) (Jointly Administered) |
| Debtors. | Related D.I. 4228, 4234 |
|  | **Obj. Due: September 30, 2022 by 4:00 p.m.** **Hearing Date: October 28, 2022 at 10:30 a.m. EST** |

## THE LITIGATION TRUSTEE'S RESPONSE IN OPPOSITION TO YUCAIPA'S MOTION FOR ORDER AUTHORIZING AND EFFECTING SETOFF OF MUTUAL OBLIGATIONS, OR, IN THE ALTERNATIVE, EFFECTING RECOUPMENT

**FOX ROTHSCHILD LLP**
Seth A. Niederman (DE Bar No. 4588)
919 N. Market Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 654-7444
sniederman@foxrothschild.com

**ZAIGER LLC**
Jeffrey H. Zaiger
Judd A. Linden
2187 Atlantic Street, 9th Floor
Stamford, CT 06902
Telephone: (917) 572-7701
jzaiger@zaigerllc.com

**JOSEPH HAGE AARONSON LLC**
Gregory P. Joseph
Gila S. Singer
485 Lexington Avenue, 30th Floor
New York, NY 10017
Telephone: (212) 407-1200
gjoseph@jhany.com

**COHEN & GRESSER LLP**
Douglas J. Pepe
800 Third Avenue
New York, NY 10022
Telephone: (212) 957-7605
dpepe@cohengresser.com

*Counsel for Catherine E. Youngman, Litigation Trustee and Plan Administrator*

---

[1]      The Debtors in these cases, along with the federal tax identification number (or Canadian business number where applicable) for each of the Debtors, are: ASHINC Corporation (f/k/a Allied Systems Holdings, Inc.) (58-0360550); AAINC Corporation (f/k/a Allied Automotive Group, Inc.) (58-2201081); AFBLLC LLC (f/k/a Allied Freight Broker LLC) (59-2876864); ASCCO (Canada) Company (f/k/a Allied Systems (Canada) Company) (90-0169283); ASLTD L.P. (f/k/a Allied Systems, Ltd. (L.P.) (58-1710028); AXALLC LLC (f/k/a Axis Areta, LLC) (45-5215545); AXCCO Canada Company (f/k/a Axis Canada Company) (875688228); AXGINC Corporation (f/k/a Axis Group, Inc.) (58-2204628); Commercial Carriers, Inc. (38-0436930); CTSINC Corporation (f/k/a CT Services, Inc.) (38-2918187); CTLLC LLC (f/k/a Cordin Transport LLC) (38-1985795); F.J. Boutell Driveway LLC (38-0365100); GACS Incorporated (58-1944786); Logistic Systems, LLC (45-4241751); Logistic Technology, LLC (45-4242057); QAT, Inc. (59-2876863); RMX LLC (31-0961359); Transport Support LLC (38-2349563); and Terminal Services LLC (91-0847582).

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

TABLE OF AUTHORITIES ........................................................................ iii

PRELIMINARY STATEMENT ....................................................................1

BACKGROUND ..........................................................................................5

    A.    YUCAIPA'S PROOFS OF CLAIM AND TREATMENT UNDER THE CONFIRMED PLAN ..........5

    B.    THE ADVERSARY PROCEEDINGS ..................................................6

        1.  The Estate Action..................................................................6

        2.  The Lender Action ...............................................................7

        3.  The Litigation Trustee Assumed Prosecution of the Adversary Proceedings ........8

        4.  This Court's Summary Judgment Ruling and Rule 54(b) Judgment......................8

        5.  Trial of Remaining Claims and the Post-Trial Opinion........................................10

        6.  The Pending District Court and Third Circuit Appeals .........................................11

ARGUMENT ...............................................................................................11

    I.    YUCAIPA IS JUDICIALLY ESTOPPED FROM BRINGING THE SETOFF MOTION.................11

    II.    YUCAIPA'S CLAIMS REMAIN DISPUTED CLAIMS UNDER THE PLAN AND THIS COURT HAS BEEN DIVESTED OF JURISDICTION ........................15

    III.    YUCAIPA CLAIMS ARE DISALLOWED IN FULL UNDER THE BANKRUPTCY CODE ..........16

    IV.    YUCAIPA WAIVED ITS SUPPOSED RIGHTS TO SETOFF OR RECOUPMENT .......................17

    V.    YUCAIPA'S GROSSLY INEQUITABLE CONDUCT BARS SETOFF OR RECOUPMENT..........21

    VI.    YUCAIPA'S PURPORTED RIGHT TO SETOFF OR RECOUPMENT WOULD IMPERMISSIBLY UPEND ALLIED'S PLAN AND THE CONFIRMATION ORDER.............................................24

        A.  Yucaipa's "New Claim" Is Confined to the WT Escrow Under the Plan .............25

        B.  The Relief Sought Would Lead to a Nonsensical and Unworkable Result ..........27

CONCLUSION...........................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banks ex rel. Banks v. Yokemick*,
    177 F. Supp. 2d 239 (S.D.N.Y. 2001) .................................................................19

*BDCM Opportunity Fund II, LP v. Yucaipa Am. All. Fund I, LP*,
    2013 WL 1290394 (N.Y. Sup. Ct. Mar. 08, 2013)
    *aff'd,* 978 N.Y.S. 2d 10 (App. Div. 2013) ..................................................22 n.60, 23 n.61

*Bellevue Assocs. v. Am. Demolition, Inc.*,
    1994 WL 481165 (E.D. Pa. Aug. 31, 1994)
    *aff'd*, 60 F.3d 813 (3d Cir. 1995). ............................................................. 20-21

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006) ...................................................................20 n.56

*Crystallex Int'l Corp. v. Bolivarian Rep. of Venez.*,
    2021 WL 129803 (D. Del. Jan. 14, 2021) ..................................................14

*Donaldson v. Bernstein*,
    104 F.3d 547 (3d Cir. 1997) ....................................................................26

*Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*,
    209 F.3d 252 (3d Cir. 2000) ....................................................................18

*Haines & Kibbleouse, Inc. v. Balfour Beatty Constr., Inc.*,
    553 F. App'x 246 (3d Cir. 2014) .............................................................15

*In re American Sunlake Ltd. Partnership*,
    109 B.R. 727 (Bankr. W.D. Mich. 1989) ..................................................21-22

*In re ASHINC Corp.*,
    683 F. App'x 131 (3d Cir. 2017) ............................................................22 n.60, 23 n.61

*In re Asset Recovery Grp., Inc.*,
    261 B.R. 825 (Bankr. W.D. Pa. 2001) .....................................................18

*In re Bell*,
    476 B.R. 168 (Bankr. E.D. Pa. 2012) ......................................................19

*In re Benjamin Coal Co.*,
    978 F.2d 823 (3d Cir. 1992) ....................................................................4, 25

*In re Bennett Funding Grp., Inc.*, 212 B.R. 206 (B.A.P. 2d Cir. 1997)
    *aff'd*, 146 F.3d 136 (2d Cir. 1998) ...........................................................................21 n.59

*In re DHP Holdings II Corp.*,
    435 B.R. 220 (Bankr. D. Del. 2010) ...................................................................18

*In re EHT US1, Inc*.,
    633 B.R. 223 (Bankr. D. Del. 2021) ...................................................................21

*In re Ernst*,
    45 B.R. 700 (Bankr. D. Minn. 1985) ............................................................26 n.70

*In re Frontier Insurance Group, Inc.*,
    585 B.R. 685, (Bankr. S.D.N.Y. 2018) .........................................................26 n.71

*In re Green Field Energy Servs., Inc.*,
    594 B.R. 239 (Bankr. D. Del 2018) ....................................................................17

*In re Lansaw*,
    2015 WL 224093 (Bankr. W.D. Pa. Jan. 14, 2015)
    *aff'd*, 2016 WL 1012597 (W.D. Pa. Mar. 15, 2016),
    *aff'd*, 853 F.3d 657 (3d Cir. 2017) ....................................................................21

*In re Manshul Const. Corp.*,
    2000 WL 1228866 (S.D.N.Y. Aug. 30, 2000) ..............................................21 n.59

*In re Mauch Chunk Brewing Co.*,
    131 F.2d 48 (3d Cir. 1942) ................................................................................18

*In re Montgomery Ward Holding Corp.*,
    306 B.R. 489 (Bankr. D. Del. 2004) ..............................................................25, 26

*In re NVF Co.*,
    309 B.R. 698 (Bankr. D. Del. 2004) ...................................................................26

*In re Pettibone Corp.*,
    134 B.R. 349 (Bankr. N.D. Ill. 1994) ...........................................................26 n.70

*In re Reliance* Acceptance *Grp., Inc.*,
    2000 WL 33712305 (Bankr. D. Del. Dec. 6, 2000) .........................................17-18

*In re Sonoma W. Med. Ctr., Inc.*,
    2021 WL 4944089 (Bankr. N.D. Cal. Oct. 22, 2021) ....................................18, 19

*In re U.S. Physicians, Inc.*,
    2001 WL 793271 (E.D. Pa. July 12, 2001) .........................................................19

*In re Western Integrated Networks, LLC*,
    329 B.R. 334, (Bankr. D. Colo. 2005) ....................................................26 n.70

*In re W.R. Grace & Co.*,
    2018 WL 4441461 (Bankr. D. Del. Sept. 17, 2018) ......................................26

*InterDigital Commc'ns Corp. v. Fed. Ins. Co.*,
    2008 WL 783560 (E.D. Pa. Mar. 24, 2008),
    *aff'd*, 308 F. App'x 593 (3d Cir. 2009),
    *and amended*, 607 F. Supp. 2d 718 (E.D. Pa. 2009) ......................................19

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
    337 F.3d 314 (3d Cir. 2003) ..........................................................15 n.49

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ................................................................12, 14, 15

*Thompson v. Real Est. Mortg. Networks Inc.*,
    822 Fed. App'x. 136 (3d Cir. 2020) ....................................................14-15

*United States ex rel. IRS v. Norton*,
    717 F.2d 767 (3d Cir.1983) ..............................................................21

*Venen v. Sweet*,
    758 F.2d 117 (3d Cir. 1985) ..............................................................16

## Rules & Statutes

11 U.S.C. § 502(d) ..................................................... 3, 8, 16-17, 17 n.52

11 U.S.C. § 524(a)(2) ......................................................................26 n. 69

11 U.S.C. § 548(a)(1)(B) .........................................................................17

11 U.S.C. § 544 .................................................................................17

11 U.S.C. § 550 .................................................................................17

11 U.S.C. § 1141(a) ........................................................................26 n.70

Fed. R. Civ. P. 13(a)(1) .....................................................................19 n.55

Catherine E. Youngman (the "**Litigation Trustee**"), as Plan Administrator and Litigation

Trustee for ASHINC Corporation (f/k/a Allied Systems Holdings, Inc.) and its affiliated debtors

(together, "**Allied**"), by her undersigned counsel, responds to the *Motion For Order Authorizing*

*And Effecting Setoff Of Mutual Obligations, Or, In The Alternative, Effecting Recoupment* (D.I.

4228) (the "**Setoff Motion**" or "**Motion**") filed by Yucaipa American Alliance Fund I, LP and

Yucaipa American Alliance (Parallel) Fund I, L.P. (together, "**Yucaipa**"), as follows:

## PRELIMINARY STATEMENT[1]

1.     The Litigation Trustee is charged with asserting and recovering on claims of

Allied's estate (the "**Estate**") and lenders.  After over eight years of costly litigation in two

Adversary Proceedings, this Court ruled, among other things, that Yucaipa: (a) breached the First

Lien Credit Agreement, damaging the Estate by more than $118 million including interest; (b)

caused Allied to make over $7 million in fraudulent transfers for Yucaipa's benefit; (c) acted in

"bad faith" and engaged in "inequitable conduct" that "heavily injured Allied's Lenders by

subverting their contracted rights" and "injured Allied and [its] creditors"; and (d) breached its

fiduciary duty of loyalty to Allied by "exploit[ing] its control over Allied" at a time when it was

insolvent "in an effort to extract a premium for itself to the detriment of the other First Lien

---

[1]     Emphasis is added, and internal citations and quotations are omitted from, quotations throughout this Opposition.  The following defined terms are used in this Opposition: (1) *First Lien Secured Super-Priority Debtor In Possession And Exit Credit And Guaranty Agreement, as amended* (the "**First Lien Credit Agreement**"); (2) *Second Lien Secured Super-Priority Debtor In Possession And Exit Credit And Guaranty Agreement, as amended* (the "**Second Lien Credit Agreement**" and, together with the First Lien Credit Agreement, the "**Credit Agreements**"); (3) *Youngman v. Yucaipa American Alliance Fund I, L.P., et al.,* Adv. Proc. No. 13-50530-MFW (Bankr. D. Del.) (the "**Estate Action**"); (4) *Youngman v. Yucaipa American Alliance Fund I, L.P., et al.,* Adv. Proc. No. 14-50971-MFW (Bankr. D. Del.) (the "**Lender Action**," and together with the Estate Action, the "**Adversary Proceedings**"); (5) Debtors' First Amended Joint Chapter 11 Plan of Reorganization (D.I. 3360) (the "**Plan**"); and (6) this Court's Confirmation Order approving the Plan (D.I. 3383) (the "**Confirmation Order**").

Lenders."[2]

2.       This Court entered a Rule 54(b) Judgment awarding more than $132 million to the Litigation Trustee against Yucaipa for its improper conduct.[3]  The Court also granted the Litigation Trustee's motion for summary judgment in part on equitable subordination "upon finding that Yucaipa had engaged in inequitable conduct…" but reserved the *extent* of subordination for trial.[4]

3.       Yucaipa has not paid a penny of the Judgment.[5]  Rather than satisfy its obligations, Yucaipa filed this last-ditch Setoff Motion, claiming that the Litigation Trustee cannot recover on the Judgment because Judge Sontchi declined after trial to specify an amount by which Yucaipa's claims would be subordinated.  But Yucaipa fails to mention the reason Judge Sontchi did this: because "**the Court ha[d] already issued a Judgment that is intended to compensate the Trustee fully for all harm suffered**."[6]

4.       Without saying a word about setoff, Yucaipa convinced Judge Sontchi *not to* award equitable subordination in any amount because, in Yucaipa's words (which Judge Sontchi adopted): "all of the alleged harm that the Court has determined to be compensable has already been remedied in full pursuant to the Judgment."[7]  After winning that issue, Yucaipa now comes

---

[2]       *See* Summary Judgment Opinion, dated May 4, 2021 (Estate Action, D.I. 825; Lender Action, D.I. 563) (the "**Summary Judgment Opinion**") and the Post-Trial Opinion dated May 2, 2022 (Estate Action, D.I. 1006, Lender Action, D.I. 742) (the "**Post-Trial Opinion**"). The Summary Judgment Opinion, Post-Trial Opinion, and other pleadings were docketed in both Adversary Proceedings.  For convenience, the remainder of this Opposition cites only to the docket of the Estate Action unless otherwise indicated.

[3]       Judgment dated June 23, 2021 (D.I. 841) (the "**Judgment**").

[4]       *See* Post-Trial Opinion ¶232.

[5]       To date, the only amounts recovered are seized bank accounts totaling $3,324,787.66.

[6]       *See* Post-Trial Opinion ¶¶234-237.

[7]       *See* Yucaipa's Proposed Findings of Fact and Conclusions of Law dated April 21, 2022 (D.I. 1002) ("**Yucaipa's FF/CL**") ¶326; Post-Trial Opinion ¶235.

back to this Court claiming that the Litigation Trustee *cannot recover on the Judgment* because Judge Sontchi declined to award an amount of equitable subordination.

5.      Yucaipa cannot have it both ways.  Having convinced Judge Sontchi to deny a subordination amount because the Litigation Trustee can recover on the Judgment, it is now estopped from claiming the Litigation Trustee cannot recover at all.  (*See* Section I, below).

6.      While this duplicity alone is reason enough to deny Yucaipa's Setoff Motion, the Motion also fails for a host of additional, independent reasons:

7.      *First*, Yucaipa's Setoff Motion is predicated on the incorrect assertion that its claims somehow have been allowed.[8]  They have not.  Its claims have been, and continue to be, disputed under the unambiguous terms of the Plan and Confirmation Order.  Yucaipa's claims do not become "Allowed" Claims until a final and non-appealable order after the conclusion of the appellate process in the Adversary Proceedings.[9]  This Court is also divested of jurisdiction in light of several pending appeals arising from the Adversary Proceedings.  (*See* Section II, below).

8.      *Second*, Yucaipa's claims are disallowed in their entirety by 11 U.S.C. §502(d) because Yucaipa has not repaid $14 million plus post-judgment interest it is liable for under the Judgment for fraudulent transfers.  (*See* Section III, below).

9.      *Third*, Yucaipa waived its purported setoff and recoupment rights by failing to assert them as affirmative defenses or counterclaims in the Adversary Proceedings.  Tellingly, Yucaipa conceded it had no setoff rights when it objected to the Litigation Trustee's proposed Rule 54(b) judgment, acknowledging that the "possibility of setoff against the judgment" was "not a

---

[8]    *See* Setoff Motion, *e.g.*, ¶8.

[9]    Plan §§1.2(20), 1.2(63), 1.2(73) (definition of "Allowed," "Disputed," and "Final Order").

relevant factor."[10]  The Judgment explicitly stated that "there [were] no pending counterclaims [by Yucaipa] that could result in a set-off against this Judgment."[11]  Having *never* raised the setoff in the Adversary Proceedings, Yucaipa waived the right to raise it now.  (*See* Section IV, below).

10.    *Fourth*, it is the law of the case that Yucaipa repeatedly acted inequitably, in bad faith, in breach of contract, and in breach of its fiduciary duties.  Yucaipa comes to this Court with unclean hands and seeks to set off debt this Court held was acquired "illegitimately and in bad faith."[12]  It cannot obtain an equitable remedy to avoid the damages caused by its misconduct.  (*See* Section V, below).

11.    *Fifth*, even if Yucaipa were entitled to setoff or recoupment rights (it is not), those rights are circumscribed by the express terms of the Plan and Confirmation Order, which provide for specific treatment of Yucaipa's claims.[13]  When the Plan was confirmed, Yucaipa got "a new claim, based upon [the treatment] accorded to it in the plan itself."  *In re Benjamin Coal Co.*, 978 F.2d 823, 827 (3d Cir. 1992).  Any setoff or recoupment is limited to *that* claim—the right to specific distributions from certain escrows under the Plan—not to cancelled Yucaipa debt that the Plan extinguished.  Any other result would render whole swaths of this Court's Plan and Confirmation Order nonsensical, including the creation of a Trust and appointment of a Litigation Trustee for the express purpose of pursuing breach of contract and fraudulent transfer claims that, according to Yucaipa's logic, never could have resulted in any recovery.  (*See* Section VI, below).

12.    For these reasons, set forth more fully below, Yucaipa's Setoff Motion should be denied.

---

[10]    D.I. 803 at 9 n.5.

[11]    Judgment at 5.

[12]    Post-Trial Opinion ¶178; *see also id.* ¶171.

[13]    Plan §3.7 ("Treatment of Yucaipa"); Confirmation Order ¶16 (same).

4

## BACKGROUND

A.  **YUCAIPA'S PROOFS OF CLAIM AND TREATMENT UNDER THE CONFIRMED PLAN**

13.  On July 31, 2013, Yucaipa filed proofs of claim in this bankruptcy case for amounts allegedly owed by Allied under the Credit Agreements (the "**Proofs of Claim**").

14.  Yucaipa's Proofs of Claim were specifically addressed in the Plan and Confirmation Order.  Section 3.7 of the Plan—titled "Treatment of Yucaipa"—provided that "Yucaipa's treatment <u>shall be comprised</u>" of certain disputed amounts held in escrow, based on its asserted *pro rata* share of the Allied First Lien Debt and subject to claims asserted against it.[14]  This treatment was incorporated in the Confirmation Order by Paragraph 16.[15]  The confirmed Plan called for (a) the debt underlying Yucaipa's Proofs of Claim to be cancelled and its Proofs of Claim discharged upon the Effective Date, and (b) enjoined Yucaipa from pursuing its Proofs of Claim.[16]  The Confirmation Order further provided that the Plan was a full and complete "settlement of all Claims" and was binding on "all holders of Claims" including Yucaipa.[17]

15.  The Plan endorsed the ASHINC Litigation Trust and appointed the Litigation Trustee to pursue claims against Yucaipa, including the breach of contract and fraudulent transfer claims that the Litigation Trustee pursued in the Adversary Proceedings for the ensuing six years giving rise to the Judgment, as discussed below.[18]

16.  The Plan became effective on December 20, 2016.[19]  Following the Effective Date,

---

[14]   *See* Plan §3.7.

[15]   *See* Confirmation Order ¶16.

[16]   Plan §§5.4, 10.7(a)-(b), 10.9.

[17]   Confirmation Order ¶¶4, 7.

[18]   Plan §5.10, 1.2(102), 1.2(71), 1.2(99).

[19]   12-11564, D.I. 3744.

Yucaipa no longer had a claim based upon its prepetition First and Second lien debt holdings. Those rights were replaced with the specific post-confirmation rights accorded Yucaipa under the Plan to disputed amounts held in escrow based on Yucaipa's asserted 55.2% *pro rata* share of First Lien Debt. While Yucaipa points to language in the Plan preserving setoff rights (*see* Setoff Motion ¶¶30, 32-34), those reservations relate solely to Yucaipa's claim to potentially distributable amounts <u>under the Plan</u>; they did <u>not</u> preserve any right of Yucaipa to seek setoff or recoupment for the full amount of its discharged debt. As discussed below, any other interpretation would render meaningless both the detailed specification of Yucaipa's treatment under the Plan and the appointment of the Litigation Trustee to pursue and distribute the proceeds of litigation claims against Yucaipa under the Plan's Litigation Proceeds Waterfall.[20] (*See* Section VI, below).

## B. THE ADVERSARY PROCEEDINGS

### 1. The Estate Action

17. On February 1, 2013, the Official Committee of Unsecured Creditors filed a complaint initiating the Estate Action against Yucaipa, which it amended on March 14, 2013.[21]

18. The UCC Complaint alleged, among other things, that Yucaipa (a) held a controlling stake in Allied, (b) controlled its board of directors, (c) wrongfully acquired a majority of Allied's debt, (d) improperly declared itself the "Requisite Lender" under the First Lien Credit Agreement, and (e) used the powers flowing from this false claim for its own benefit to the detriment of Allied's creditors.

19. The UCC Complaint further alleged that Yucaipa, acting in bad faith, (a) exploited its control over Allied's Board by preventing it from initiating a value-maximizing transaction

---

[20]    Plan §§5.14, 1.2(104) (definition of "Litigation Proceeds Waterfall").

[21]    D.I. 1, 76 (the "**UCC Complaint**").

with Jack Cooper Transport ("**JCT**") in late 2011/2012 for its own benefit, (b) exploited its purported status and wrongful ownership of debt under the First Lien Credit Agreement to extract a premium for the sale of its First Lien Debt from JCT, and (c) failed to make the required capital contribution in connection with its wrongful acquisition of First Lien debt from ComVest Investment Partners III, L.P. in August 2009. [22]

20.    The Estate Action challenged Yucaipa's purported First and Second Lien Claims.[23]

21.    Yucaipa filed Answers to the original and amended complaints.[24]  While these answers asserted many affirmative defenses (seventeen and eighteen, respectively), they did not assert the defenses of setoff or recoupment.  Nor did Yucaipa ever assert setoff or recoupment as a counterclaim.

**2.    The Lender Action**

22.    On November 19, 2014, certain lenders[25] filed a complaint (the "**Lender**

---

[22]    The UCC Complaint asserted thirteen causes of action: <u>Count 1</u>: Equitable Subordination pursuant to §510(c) against Yucaipa; <u>Count 2</u>: Equitable Subordination pursuant to §510(c) against Yucaipa for harm to all First Lien and Second Lien Lenders; <u>Count 3</u>: Recharacterization (of debt to equity) pursuant to §105(a) of Yucaipa's Purported Debt Holdings Under the First and Second Lien Facilities against Yucaipa; <u>Count 4</u>: Specific Performance of Third Amendment to the First Lien Credit Agreement against Yucaipa (Contribution Provision); <u>Count 5</u>: Breach of Third Amendment to the First Lien Credit Agreement against Yucaipa (Contribution Provision); <u>Count 6</u>: Specific Performance of Third Amendment to the First Lien Credit Agreement against Yucaipa (Divestiture of Debt); <u>Count 7</u>: Breach of Fiduciary Duty against Yucaipa; <u>Count 8</u>: Breach of Fiduciary Duty against the Allied Directors; <u>Count 9</u>: Aiding & Abetting Breach of Fiduciary Duty against the Allied Directors & Yucaipa; <u>Count 10</u>: Avoidance & Recovery of Intentional and Constructive Fraudulent Transfers against Yucaipa pursuant to §§548(a) and 550; <u>Count 11</u>: Avoidance & Recovery of Intentional and Constructive Fraudulent Transfers and Conveyances against Yucaipa pursuant to §§544(b) and 550; <u>Count 12</u>: Preferential Transfers against Yucaipa pursuant to §§547 and 550; and, <u>Count 13</u>: Disallowance of Claim against Yucaipa under §502(d).

[23]    *See, e.g.*, *id.* ¶¶134, 138-139, 146, 148-150.

[24]    *See* D.I. 16 and 95.

[25]    BDCM Opportunity Fund II, L.P., Black Diamond CLO 2005-1 Ltd., Spectrum Investment Partners, LP, Black Diamond Commercial Finance, LLC, as Co-Administrative Agent, and Spectrum Commercial Finance LLC, as Co-Administrative Agent (the "**BD/S**").

**Complaint**") initiating the Lender Action against Yucaipa.[26]  The allegations in the Lender Action closely mirrored the allegations in the Estate Action.[27]

23.     Like the UCC Complaint in the Estate Action, the Lender Complaint also included challenges to Yucaipa's purported First and Second Lien Claims.[28]

24.     Yucaipa's Answer to the Lender Complaint asserted fifteen affirmative defenses but did not assert setoff or recoupment as an affirmative defense or counterclaim.[29]

### 3.     <u>The Litigation Trustee Assumed Prosecution of the Adversary Proceedings</u>

25.     On the Effective Date of the Plan, the causes of action asserted by the UCC in the Estate Action and the Lenders in the Lender Action were assigned to the Litigation Trustee, and the Court entered Orders amending the captions in the Adversary Proceedings on July 17, 2017.[30]

### 4.     <u>This Court's Summary Judgment Ruling and Rule 54(b) Judgment</u>

26.     Following years of extensive discovery and litigation, Judge Sontchi issued the 117-page Summary Judgment Opinion on May 4, 2021.  The Court granted summary judgment to the Litigation Trustee on Estate Claim 5 (Breach of Contract), Estate Claims 10 and 11 (Avoidance and Recovery of Constructive Fraudulent Transfers), and Estate Claim 13 (Disallowance of Claim against Yucaipa under §502(d)).  The Court also granted partial summary judgment to the

---

[26]     Lender Action, D.I. 1.

[27]     The Lender Complaint asserted four causes of action: <u>Count 1</u>: Equitable Subordination pursuant to §510(c) against Yucaipa for Harm to All First Lien and Second Lien Lenders; <u>Count 2</u>: Breach of Contract against Yucaipa; <u>Count 3</u>: Breach of the Duty of Good Faith and Fair Dealing against Yucaipa; and <u>Count 4</u>: Tortious Interference with Contract [First Lien Credit Agreement] against the Yucaipa Directors and Burkle.

[28]     *See, e.g.*, Lender Complaint at 33 (First Claim for Relief).

[29]     Lender Action, D.I. 19.

[30]     Estate Action, D.I. 415, Lender Action, D.I. 214.

Litigation Trustee on equitable subordination.  (*Id.*).[31]

27.     Among other things, the Court held in its Summary Judgment Opinion that
Yucaipa:

- Breached the First Lien Credit Agreement by failing to make a $57.4 million cash contribution, which effectively "ensured" Allied's bankruptcy (Summary Judgment Opinion at 32);

- Caused Allied to fraudulently transfer more than $7 million in payments, including payments for the direct benefit of Yucaipa (*id.* at 74-75);

- Engaged in "inequitable conduct" that "subvert[ed] the bargained-for rights of the Lenders" to advantage itself, causing harm to Allied and its stakeholders (*id.* at 101-102); and,

- Engaged in "bad faith conduct" and "did not conduct itself in good faith and inherent fairness" in its dealings with Allied and its Lenders (*id.* at 107-109).

28.     The Court's rulings in the Summary Judgment Opinion left three remaining claims
for trial: (1) Equitable Subordination (Estate Claim 1 & Lender Count 1) to determine the exact
amount of subordination, (2) Breach of Fiduciary Duty (Estate Claim 7), and (3) in the alternative
to Breach of Fiduciary Duty, Breach of the Implied Covenant of Good Faith and Fair Dealing
(Lender Count 3) (collectively, the "**Remaining Claims**").[32]

29.     On June 23, 2021, the Court entered a Rule 54(b) Judgment on several of the claims
addressed by the Summary Judgment Opinion, including Estate Claim 5 (Breach of Contract),

---

[31]     *See* Summary Judgment Opinion at 116-17 (Appendix).   Additionally, the Summary Judgment Opinion ruled in favor of the Litigation Trustee on Lender Claim 2 for breach of contract.  (*Id.* at 26-46, Appendix).  Yucaipa filed objections to that ruling under Bankruptcy Rule 9033, and the District Court overruled all objections other than those relating to this Court's core jurisdiction.  (*See* No. 1:21-cv-01060-CFC (D. Del.), D.I. 5 at 34).   Yucaipa has appealed the District Court's decision.  The Setoff Motion does not assert any right to setoff or recoupment with respect to the award of summary judgment to the Litigation Trustee on Lender Claim 2.  *See* Setoff Motion at 1 (seeking setoff only "against the [Rule 54(b)] Judgment dated June 23, 2021").

[32]     The parties voluntarily dismissed Lender Count 4 and Estate Claims 8, 9, and 12.

Estate Claims 10 and 11 (Fraudulent Transfer), and Estate Claim 13 (Disallowance).    The
Judgment awarded the Litigation Trustee a total of $132,431,957 and concluded there was no just
reason to delay entry because, among other things, "there [were] no pending counterclaims [by
Yucaipa] that could result in a set-off against this Judgment."[33]    Notably, while Yucaipa raised
several objections to the Litigation Trustee's proposed Rule 54(b) Judgment, it conceded that the
possibility of setoff against the Judgment was not a relevant factor weighing against entry.[34]

### 5.    Trial of Remaining Claims and the Post-Trial Opinion

30.    Judge Sontchi held a bench trial on the Remaining Claims in March 2022.

31.    On May 2, 2022, the Court entered the Post-Trial Opinion holding, among other
things, that Yucaipa:

- "Breached its fiduciary duty of loyalty" to Allied (Post-Trial Opinion ¶177);

- "[A]bused its position of control [over Allied] by failing to act with the utmost loyalty and fairness required" (*id.* ¶167);

- "[A]quired its Requisite Lender status in bad faith" (*id.* ¶187);

- Acquired its Allied debt "illegitimately and in bad faith" (*id.* ¶178, *see also* ¶171); and

- Engaged in impermissible "self-dealing" (*id.* ¶¶179, 189).[35]

32.    In analyzing the equitable subordination claims, the Court accepted Yucaipa's
argument that equitable subordination should be denied because the Litigation Trustee would fully
recover on the Judgment.    Judge Sontchi noted that "a debtor may not obtain both equitable

---

[33]    Judgment at 5.

[34]    *See* D.I. 830 at 9 n.5.

[35]    The Court declined to award additional damages to the Litigation Trustee on the fiduciary duty claim, finding that the Litigation Trustee proved causation but did not establish a reasonable basis for damages. *Id.* at 100-114.  The Litigation Trustee has appealed that ruling.  Yucaipa did not cross-appeal any portion of the Post-Trial Opinion.

subordination and an award of money damages which would compensate it for the damages resulting from the same conduct."[36]    Accepting Yucaipa's argument *verbatim*,[37] the Court concluded, in relevant part:

> **Since all of the alleged harm that the Court has determined to be compensable has already been remedied in full pursuant to the Judgment, subordination would not remedy any additional harm**. A claim or claims should be subordinated only to the extent necessary to offset the harm which the bankrupt and its creditors suffered on account of the inequitable conduct. Thus, where the defendant is held liable for money damages, the Trustee cannot also obtain a remedy of subordination to rectify the same harm. …
>
> **[T]he Court has already issued a Judgment that is intended to compensate the Trustee fully for all harm suffered**.[38]

### 6.    The Pending District Court and Third Circuit Appeals

33.    Yucaipa has sought review of the Summary Judgment Opinion and Judgment in the District Court and Third Circuit.[39]  Yucaipa also has pending appeals of an order dismissing a cross-claim and an order granting the Litigation Trustee's Motion *in limine*.[40]

34.    The Litigation Trustee has appealed the Post-Trial Opinion and judgment to the District Court.[41]  Appeals are stayed pending ongoing mediation and settlement discussions.

## ARGUMENT

### I.    YUCAIPA IS JUDICIALLY ESTOPPED FROM BRINGING THE SETOFF MOTION

35.    Yucaipa's Setoff Motion contends that the Litigation Trustee cannot recover any

---

[36]     *Id.* at p. 118 n.65.

[37]     *See* Yucaipa's FF/CL ¶¶326, 328.

[38]     Post-Trial Opinion ¶¶235, 237.

[39]     Case Nos. 1:21-cv-00994-CFC, 1:21-cv-00995-CFC, and 1:21-cv-01060, as well as Third Circuit Case No. 22-2442.

[40]     Case Nos. 1:18-cv-01467-CFC, 1:22-cv-00197-CFC, and 1:22-cv-00198-CFC.

[41]     Case Nos. 1:22-cv-00634-CFC and 1:22-cv-00635-CFC.

amount of the Judgment because Judge Sontchi declined to award an amount of equitable subordination in the Post-Trial Opinion.[42]  This is astounding, given that Judge Sontchi adopted Yucaipa's argument that equitable subordination was unwarranted *precisely because the Litigation Trustee could recover on the Judgment*.  Yucaipa's about face is barred by judicial estoppel.

36.    "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him…."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

37.    In *New Hampshire v. Maine*, the Supreme Court articulated two factors that "typically inform the decision whether to apply the doctrine in a particular case."  *Id.* at 750.  They are whether: (1) a litigant's current position is "clearly inconsistent with its earlier position," and (2) acceptance of an inconsistent position in a later proceeding would create "the perception that...[the] court was misled."  *Id*. at 750-51.  Both factors are present here.

38.    **Inconsistent Positions.**  Yucaipa persuaded Judge Sontchi not to award equitable subordination because the Litigation Trustee can recover on the Judgment.  That is clearly inconsistent with its claim in the Setoff Motion that the Litigation Trustee cannot recover anything on the Judgment.

39.    In its post-trial submissions, Yucaipa argued that if the Court were to equitably subordinate Yucaipa, the Litigation Trustee would receive a double recovery because "all of the alleged harm that the Court has determined to be compensable has already been remedied in full pursuant to the [2021] Judgment."[43]  The Court adopted Yucaipa's proposed findings *verbatim* in

---

[42]    *See* Setoff Motion ¶¶44, 46-48.

[43]    Yucaipa's FF/CL ¶326.

holding that the Litigation Trustee was not entitled to equitable subordination in any amount.  (*See* Post-Trial Opinion ¶235) (declining to equitably subordinate Yucaipa in any amount "[s]ince all of the alleged harm that the Court has determined to be compensable has already been remedied in full pursuant to the [2021] Judgment).[44]  Now, Yucaipa claims that the Litigation Trustee should not have any recovery.

40.    Yucaipa also stressed in its post-trial submissions that "the Trustee [was] actively pursuing her recovery, including by filing cases against dozens of defendants in multiple courts throughout the country" and that awarding equitable subordination in any amount would result in an "undeserved windfall."[45]  Now, Yucaipa claims that the Judgment "should be deemed satisfied,"[46] rendering the Litigation Trustee's recovery efforts in "dozens of cases" meaningless and ineffectual.

41.    Yucaipa further emphasized in its post-trial submissions that BD/S stood to recover on the $132.4 million Judgment, arguing they are the only "meaningful beneficiaries" of any awards in the Adversary Proceedings under the Plan's Litigation Proceeds Waterfall, and that subordinating Yucaipa's claims "would grant BD/S an undeserved windfall."[47]  Now, Yucaipa claims that no recovery should flow through the Litigation Proceeds Waterfall at all.

42.    This is precisely the kind of change in position warranting judicial estoppel.  *See*

---

[44]    Post-Trial Opinion ¶235; ¶235 n.63 ("Although the Trustee alleges that the Judgment has not yet been satisfied, the Trustee is actively pursuing her recovery, including, by filing cases against dozens of defendants in multiple courts throughout the country"); *id.* ¶238 ("Awarding equitable subordination under these circumstances would grant BD/S an undeserved windfall").

[45]    Yucaipa's FF/CL ¶¶326 n.28, 329.

[46]    Setoff Motion ¶8.

[47]    Yucaipa's FF/CL ¶329; *see also* 3/1/22 a.m. Trial Tr. 53:8-10 (Yucaipa's Opening Statement) ("[U]nder the waterfall that Your Honor is familiar with…[BD/S] stand to recover almost all of what was awarded in the June 23, 2021, judgment currently on appeal.").

*Crystallex Int'l Corp. v. Bolivarian Rep. of Venez.*, 2021 WL 129803, at *11-12 (D. Del. Jan. 14, 2021) (defendant judicially estopped from arguing that writ of attachment is invalid because it persuaded the Court not to impose a bond requirement "by assuring the Court that a bond is unnecessary because the Writ [of attachment] itself is sufficient security in lieu of a bond").

43.    **Misleading Argument.**  Nor can Yucaipa deny "the perception that . . . [the] court was misled." *New Hampshire*, 532 U.S. at 750-51.  The parties presented a mountain of briefing to Judge Sontchi on the summary judgment motion, participated in a full bench trial, and extensively briefed post-trial issues including equitable subordination.  Not once, throughout the entire course of pre-trial or post-trial proceedings, did Yucaipa suggest that the Judgment could not be recovered because of setoff or recoupment.  Indeed, Yucaipa affirmatively represented that setoff was not a relevant factor in considering whether a Rule 54(b) judgment could be entered following summary judgment, and the Judgment itself states that "***there [were] no pending counterclaims [by Yucaipa] that could result in a set-off against this Judgment***."[48]

44.    Yucaipa's failure to disclose its setoff or recoupment agenda to Judge Sontchi was a strategic choice to obtain a bad faith tactical advantage.  Yucaipa took a completely inconsistent position in its post-trial submissions and in its Setoff Motion, persuaded Judge Sontchi not to award equitable subordination because the Litigation Trustee could recover on the Judgment, and severely prejudiced the Litigation Trustee by depriving her of the ability to respond before the Court accepted Yucaipa's equitable subordination argument.  Yucaipa then turned around a few months later, after Judge Sontchi's Post-Trial Opinion issued, to claim that no recovery could be had on the Judgment because there was no equitable subordination.  This is precisely the kind of bad faith effort to "play fast and loose" with the Court warranting estoppel.  *See, e.g.*, *Thompson*

---

[48]    Judgment at 5.

*v. Real Est. Mortg. Networks, Inc.*, 822 F. App'x 136, 138 (3d Cir. 2020) (defendant's litigation history "exemplifies playing fast and loose with the court" where defendant waited over three years into litigation to assert that an arbitration agreement applied and made argument that "clear[ly] conflict[ed]" with the assertion [defendant] made in opposing [plaintiff's] motion to toll the FLSA statute of limitations."); *Haines & Kibbleouse, Inc. v. Balfour Beatty Constr., Inc.*, 553 F. App'x 246, 251 (3d Cir. 2014) (affirming application of judicial estoppel where litigant "played fast and loose with the courts").[49]

45.     Judicial estoppel exists to "prevent[] a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire*, 532 U.S. at 749. Yucaipa has tried to do exactly that. It argued that the Litigation Trustee can recover on the Judgment, so equitable subordination should be denied. It won that argument. It is judicially estopped from claiming now that the Litigation Trustee cannot recover.

## II.     YUCAIPA'S CLAIMS REMAIN DISPUTED CLAIMS UNDER THE PLAN AND THIS COURT HAS BEEN DIVESTED OF JURISDICTION

46.     The Setoff Motion seeks an order that Yucaipa's Proofs of Claim "are valid and allowed claims for all purposes" including for the purposes of effecting a setoff or recoupment against the Judgment. (Setoff Motion at 1). This argument is belied by the plain language of the Court's confirmed Plan.

47.     The Plan makes clear that Yucaipa's Claims remain "Disputed" claims, they are not "Allowed" Claims:

- A Claim is "Allowed" under the Plan if it (among other things) is "not Disputed" or

---

[49]     Yucaipa's attempt to "play fast and loose" with the Court constitutes "bad faith" under the test for judicial estoppel that courts have applied in this Circuit. *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (defining "bad faith" as "intent to play fast and loose with the court.").

"allowed by a Final Order."  (Plan §1.2(20)).

- "Disputed" Claims include Claims "subject to an objection filed (or similar challenge … in any timely filed adversary proceeding[] prior to the Claim Objection Deadline that has not been resolved by settlement or Final Order" (*id.* §1.2(63)).

- A "Final Order," in turn, is an order with respect to which all appeals have been exhausted.  (*Id.* §1.2(73)).

48.     Yucaipa concedes (as it must) that its claims were Disputed because the Litigation Trustee "challenged the Yucaipa Claims" by, among other things, "seeking to equitably subordinate the Yucaipa Claims under section 510(c) of the Bankruptcy Code" in the Adversary Proceedings. (Setoff Motion ¶2; *see also* UCC Complaint ¶134).

49.     No Final Order has been entered in the Adversary Proceedings.  Yucaipa appealed the Judgment and other rulings, and the Litigation Trustee's challenge to the Court's equitable subordination ruling is, as Yucaipa acknowledges, "presently on appeal."  (Setoff Motion ¶8).  The Setoff Motion should be denied on this basis alone.

50.     This Court should also decline to consider the Setoff Motion until entry of a final non-appealable order under the divestiture rule given the pendency of multiple appeals from the Adversary Proceedings.  *See, e.g.*, *Venen v. Sweet*, 758 F.2d 117, 121 (3d Cir. 1985) (the "judge-made rule [of divestiture] has the salutary purpose of preventing the confusion and inefficiency").

### III.     Yucaipa's Claims Are Disallowed In Full Under The Bankruptcy Code

51.     Yucaipa's claims have also been disallowed in their entirety under 11 U.S.C. §502(d) and the Plan.  Section 502(d) provides:

> **[T]he court shall disallow any claim of any entity** from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, **unless such entity or transferee <u>has paid the amount</u>, or turned over any such property, <u>for which such entity or transferee is liable</u>** under section 522(i), 542, 543, 550, or 553 of this title.

16

52.     Once a judgment subject to Section 502(d) has been entered, <u>all</u> claims held by the defendant are automatically disallowed unless and until the defendant "has paid the amount…for which [the defendant] is liable." *See id.*; *see also, e.g.*, *In re Green Field Energy Servs., Inc.*, 594 B.R. 239, 307 (Bankr. D. Del 2018) ("Because the Trustee was successful on his preference claims, pursuant to Section 502(d) of the Bankruptcy Code, all proofs of claim against Debtor by [defendants] must be disallowed until such time that those entities return the preferential transfers to the estate.").

53.     Here, Judge Sontchi held that the Trustee was entitled to summary judgment on Estate Counts 10 and 11 for fraudulent transfers "under 11 U.S.C. §§548(a)(1)(B), 544, and 550" and "Estate Claim 13 (Disallowance of Claim against Yucaipa pursuant to §502(d))."[50]  The Court entered Judgment on those claims "in the amount of $14,092,099, with post-judgment interest accruing until the payment of the judgment is complete."[51]  Yucaipa is liable for this amount, which remains unpaid.[52]  Since Yucaipa's claims have been disallowed in their entirety under Section 502(d), its Setoff Motion should be denied on this basis.

## IV.   YUCAIPA WAIVED ITS SUPPOSED RIGHTS TO SETOFF OR RECOUPMENT

54.     "The law is well-settled that setoff is a privilege which a creditor can waive and lose." *In re Reliance Acceptance Grp., Inc.*, 2000 WL 33712305, at *4 (Bankr. D. Del. Dec. 6,

---

[50]     Summary Judgment Opinion at 74-75.

[51]     Judgment ¶2.

[52]     Yucaipa contends that it is "not required to pay prejudgment interest awarded . . . to avoid disallowance under the [Section 502(d)]" because "prejudgment interest is not an 'amount' or 'property' for which Yucaipa 'is liable under section 522(i), 542, 543, 550 or 553 of this title,'" as required for section 502(d) to apply." (Setoff Motion at 17 n.34).  This argument ignores the plain language of Section 502(d), which requires full payment of "the amount . . . for which [Yucaipa] is liable." *See* 11 U.S.C. §502(d).  That amount is $14,092,099, plus post-judgment interest, under the express terms of the Judgment.

2000).  Waiver may be found "where the creditor's conduct is inconsistent with a claim of setoff."

*Id*.  *See also In re Mauch Chunk Brewing Co.*, 131 F.2d 48, 49 (3d Cir. 1942) (a creditor waives

its right of setoff "if the creditor's conduct is inconsistent with a subsequent claim of set-off").

55.    Yucaipa's conduct throughout nine years of litigation is inconsistent with the setoff

and recoupment claims it now asserts.  Yucaipa never asserted setoff or recoupment as a defense

or counterclaim.  Not only was Yucaipa silent as to a purported setoff and recoupment rights

throughout the Adversary Proceedings, it represented to this Court that setoff "is not relevant" to

the Judgment. [53]  This Court has previously admonished Yucaipa that "you have to stand up for

your rights" or risk waiving them.[54]  Even assuming that Yucaipa once held valid setoff or

recoupment claims, it waived those claims by failing to assert and pursue them.

56.    **Yucaipa Failed to Raise Setoff or Recoupment as Defenses.**    Setoff and

recoupment are affirmative defenses.  *See In re DHP Holdings II Corp.*, 435 B.R. 220, 232 (Bankr.

D. Del. 2010) ("The Third Circuit has held that recoupment is a defense, not a claim.") (quoting

*Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 260 (3d Cir.2000)); *In re*

*Sonoma W. Med. Ctr., Inc.*, 2021 WL 4944089, at *11 (Bankr. N.D. Cal. Oct. 22, 2021) ("Setoff

is a matter of avoidance and is an affirmative defense covered by Rule 7008(c)").  This is

particularly true here, as Yucaipa only seeks to offset the Judgment, not to obtain affirmative relief.

*See In re Asset Recovery Grp., Inc.*, 261 B.R. 825, 829 (Bankr. W.D. Pa. 2001) (recoupment claim

was properly pled as an affirmative defense because defendant "seeks only to defeat [plaintiff]'s

---

[53]    D.I. 830 at 9 n.5.

[54]    *See* 7/6/21 Hearing Tr. 9:6-7 (holding that Yucaipa waived its right to object to this Court
adjudicating and entering final orders and judgments on all Estate Claims).  The Court found that
Yucaipa's argument that it lacked constitutional authority to enter a judgment on the Estate Claims
is "something that post-judgment, the defendants had to think of something, and that looked like
their best chance.  But it's just not consistent with their behavior over the last eight years." *See id*
at 31:9-13.  As discussed, Yucaipa's assertion of a setoff right falls into the same category.

claim against [defendant] rather than to recover affirmative relief from [plaintiff]”).

57.     Over almost a decade of litigating the Adversary Proceedings, Yucaipa did not raise

setoff or recoupment even once.  If Yucaipa believed that it had these rights, the time to raise the

matter was in the Adversary Proceedings.  *See, e.g.*, *In re Bell*, 476 B.R. 168, 177, n.20 (Bankr.

E.D. Pa. 2012) (“In general, setoff is favored under the law in order to avoid a multiplicity of suits,

added expense, inconvenience, injustice and inefficient use of judicial resources.”).  By electing

to remain silent, Yucaipa waived these affirmative defenses.  *See, e.g.*, *InterDigital Commc'ns

Corp. v. Fed. Ins. Co.*, 2008 WL 783560, at *7 (E.D. Pa. Mar. 24, 2008) (recoupment is

“an affirmative defense that, if not timely raised, may be waived”), *aff'd*, 308 F. App’x 593 (3d

Cir. 2009), *and amended*, 607 F. Supp. 2d 718 (E.D. Pa. 2009); *In re U.S. Physicians, Inc.*, 2001

WL 793271, at *6 (E.D. Pa. July 12, 2001) (“The Bankruptcy Court properly concluded that

defendant had not raised the issue of setoff until his post-trial submission and had thus waived

such a defense.”); *Banks ex rel. Banks v. Yokemick*, 177 F. Supp. 2d 239, 265 (S.D.N.Y. 2001)

(setoff waived because defendant “did not plead setoff as an affirmative defense in his Answer or

Answer to Amended Complaint, nor did he include any reference to it in the defenses listed in the

Joint Pretrial Order”); *In re Sonoma*, 2021 WL 4944089 at *11 (defendant waived setoff defense

by raising it for first time at trial).[55]

---

[55]    The same holds even if Yucaipa should have pled its purported setoff right as a
counterclaim rather than an affirmative defense.  Yucaipa argues that its setoff and recoupment
claims and the “claims against Yucaipa can be traced largely to the same transaction.” (Setoff
Motion ¶5).  It thereby effectively concedes that the counterclaims would have been compulsory
under Fed. R. Civ. P. 13(a)(1), incorporated by Bankruptcy Rule 7013.  Yet it failed to assert setoff
or recoupment as counterclaims in response to the UCC Complaint or Lender Complaint.  (*See*
D.I. 16, 95; Lender Action, D.I. 19).  Nor can Yucaipa avail itself of the carve-out when parties
are “sued by a trustee or debtor in possession” under Bankruptcy Rule 7013.  It was sued in the
Lender Action and Estate Action by BD/S and the UCC, respectively, and waived all unasserted
compulsory counterclaims long before those cases were assigned to the Litigation Trustee.

58.     **Yucaipa Disclaimed Setoff As "Not Relevant" to the Judgment.**  Following the
Summary Judgment Opinion, the Litigation Trustee sought a judgment under Rule 54(b).  Yucaipa
objected, arguing that the relevant five-factor test weighed against issuing a Rule 54(b) judgment.[56]
As to the fourth factor ("the presence or absence of a claim or counterclaim which could result in
set-off against the judgment sought to be made final"), Yucaipa acknowledged: "The fourth
factor—the possibility of setoff against the judgment—*is not relevant here.*"[57]

59.     **Yucaipa Failed to Raise Setoff in Moving to Stay the Judgment**.  Yucaipa
moved to stay the Judgment, arguing that it would be irreparably harmed in the absence of a stay
because the Litigation Trustee would attempt to "dismember" it while its appeal of the Judgment
was pending.[58]  Yucaipa did not, however, claim that it would be irreparably harmed because it
had the right to offset the Judgment in the event the Court held that its pre-petition claims were
not subject to equitable subordination.

60.     By failing to raise its supposed setoff or recoupment rights in the Adversary
Proceedings, and by taking positions in those actions inconsistent with the existence of those
supposed rights, Yucaipa waived the ability to assert them now.  *See, e.g.*, *Bellevue Assocs. v. Am.
Demolition, Inc.*, 1994 WL 481165, at *1 (E.D. Pa. Aug. 31, 1994) (plaintiff waived setoff right
by raising it for the first time after judgment was entered and "there was no reference to it in

---

[56]     "(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the [bankruptcy] court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like."  *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 203 (3d Cir. 2006).

[57]     D.I. 830 at 9 n.5.

[58]     D.I. 845 at 20-21.

[plaintiff]'s extensive, multiple post trial motions which included a [motion for relief from final judgment] based on other grounds"), *aff'd*, 60 F.3d 813 (3d Cir. 1995).

## V.    YUCAIPA'S GROSSLY INEQUITABLE CONDUCT BARS SETOFF OR RECOUPMENT

61.    It is well-settled that setoff and recoupment are equitable remedies that should be denied when doing so would "allow a party with unclean hands to escape liability for his misconduct." *In re Lansaw*, 2015 WL 224093, at *20 (Bankr. W.D. Pa. Jan. 14, 2015) ("Recoupment is ultimately a creature of equity, and the Court does not believe equity would or should countenance such a result that would allow a party with unclean hands to escape liability for his misconduct."), *aff'd*, 2016 WL 1012597 (W.D. Pa. Mar. 15, 2016), *aff'd*, 853 F.3d 657 (3d Cir. 2017); *United States ex rel. IRS v. Norton*, 717 F.2d 767, 772 (3d Cir. 1983) ("[W]hen [setoff is] properly invoked before a court, [its application] rests in the discretion of that court, which exercises such discretion under the general principles of equality."); *In re EHT US1, Inc.*, 633 B.R. 223, 228 n.23 (Bankr. D. Del. 2021) ("Courts will not allow setoff when doing so would offend the general principles of equity.") (collecting cases).[59]

62.    *In re American Sunlake Ltd. Partnership*, 109 B.R. 727 (Bankr. W.D. Mich. 1989) is instructive.  There, the debtor secured a judgment against a creditor (Wilder) resulting from Wilder's breach of a purchase agreement in a real estate transaction.  After the debtor filed for

---

[59]    This is the case regardless of whether Yucaipa seeks relief under New York's statutory or common law right of setoff.  *See, e.g.*, *In re Bennett Funding Grp., Inc.*, 212 B.R. 206, 212 (B.A.P. 2d Cir. 1997), *aff'd*, 146 F.3d 136 (2d Cir. 1998) (after finding technical requirements of New York common law or statutory setoff are met, bankruptcy courts "must scrutinize the right of setoff in light of the Bankruptcy Code's goals and objectives," including "equitable treatment of all creditors" and "avert[ing] injustice"); *In re Manshul Const. Corp.*, 2000 WL 1228866, at *57 (S.D.N.Y. Aug. 30, 2000) (even if technical requirements for New York common law or statutory setoff had been met, "this is plainly a case in which a setoff is unwarranted [because] . . . [a]llowing the setoffs sought in this case would have the inequitable result of permitting the defendants to retain funds which they fraudulently conveyed").

bankruptcy, Wilder moved for setoff or recoupment of the amount of the judgment against payments made by Wilder in connection with the same transaction. The Court held that:

> [Setoff and recoupment are] inappropriate because the [] judgment in favor of the Debtor and against Wilder resulted from Wilder's breach of the original purchase agreement. Inasmuch as the maxim "he who comes into equity must come with clean hands" applies, <u>Wilder cannot use the judgment owed to the Debtor resulting from its own misdeeds to seek to utilize the equitable doctrine of recoupment [or setoff]</u>. This maxim is far more than a mere banality. It is a self-imposed ordinance that <u>closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant</u>.

*Id.* at 731; *see also id.* at 733 ("Wilder's breach of contract and inequitable conduct prohibits it from seeking equity to obtain a setoff considering the facts of this case.").

63.    This principle applies with even greater force here. *First*, Yucaipa is seeking to enforce and setoff debt *that* was *itself acquired inequitably, in violation of the First Lien Credit Agreement*, as multiple courts have held.[60]

64.    *Second*, the Adversary Proceedings are replete with binding rulings of this Court that Yucaipa's conduct was grossly inequitable, including the contractual breach that caused the damages it now seeks to offset:

65.    **Yucaipa's Bad Faith in Connection with the Fourth Amendment.** It is the law of the case that "Yucaipa acted in bad faith in purchasing first lien debt under an invalid Fourth Amendment and assuming Requisite Lender status thereunder." (Summary Judgment Opinion at

---

[60]    *See* Post-Trial Opinion ¶178 ("Yucaipa acquired its debt illegitimately and in bad faith"); *see also In re ASHINC Corp.*, 683 Fed. App'x 131, 140 (3d Cir. 2017) ("Yucaipa knew that...the Third Amendment restricted Yucaipa's rights as a Lender."); *BDCM Opportunity Fund II, LP v. Yucaipa Am. All. Fund I, LP*, 2013 WL 1290394, at *4 (N.Y. Sup. Ct. Mar. 08, 2013) ("[U]nder the Third Amendment to the Credit Agreement...Yucaipa was permitted to acquire a certain limited amount of Term Loans...the *quid pro quo* for permitting Yucaipa to acquire the Term Loans was that a cap was imposed on the amount of Term Loans that Yucaipa could acquire, and that any such Term Loans acquired by Yucaipa would be subject to substantial restrictions"), *aff'd*, 978 N.Y.S.2d 10 (App. Div. 2013).

108; *see also* (2/8/22 Hearing Tr. at 15:20-23 ("[T]he undisputed facts prove as a matter of law

that [Yucaipa] acted in bad faith.  Period.")).  In so ruling, the Court relied on earlier holdings

regarding Yucaipa's bad faith and inequitable conduct by the New York courts and Third Circuit.

(Summary Judgment Opinion at 65).[61]

66.    **Yucaipa's Inequitable Contractual Breach.**  Yucaipa seeks to offset $118.3

million in damages resulting from its breach of the Third Amendment's Capital Contribution

requirement.  Yucaipa did not make that contribution because the invalid Fourth Amendment

purported to eliminate this requirement.  This Court held that Yucaipa's breach was inequitable.

(Post-Trial Opinion ¶187 ("Yucaipa, acting in bad faith, used its control over Allied to acquire its

First Lien debt and purported Requisite Lender Status"); *see also* Summary Judgment Opinion

¶232 (Yucaipa "engaged in inequitable conduct in connection with the Fourth Amendment [and]

in breaching the Third Amendment (*i.e.*, the subject of Trustee's breach of contract claims)….").

67.    **Yucaipa's Inequitable Fraudulent Transfers.**  The Court held that Yucaipa

"engaged in inequitable conduct...in causing Allied to pay certain fees while it was insolvent."

(Summary Judgment Opinion ¶232).  These transfers included payments made by Allied in

connection with the passage of the Fourth Amendment and Yucaipa's unlawful acquisition of the

majority share of Allied's First Lien debt.  (*See generally id.* at 47-75).[62]

---

[61]    *See In re ASHINC Corp.*, 683 F. App'x at 140 ("It would be inequitable to allow Yucaipa
to achieve an end run around the substance of the Eligible Assignee restrictions in the Credit
Agreement and undercut what [Yucaipa] certainly knew the restrictions were designed to
prevent."); *BDCM Opportunity Fund II, LP*, 2013 WL 1290394, at *5 ("Yucaipa...caused Allied
to enter into that certain Amendment No. 4…, which purported to eliminate any restrictions on
Yucaipa's ownership of Allied debt…[Yucaipa] seiz[ed] control of the Lenders' rights and
remedies under the Credit Facility.").

[62]    Additionally, the Post-Trial Opinion held that Yucaipa breached its duty of loyalty to
Allied and its creditors by "exploit[ing] Allied in an effort to receive a premium price for its First
Lien debt to the detriment of other First Lien Lenders, at a time when Allied was insolvent and
Yucaipa owed fiduciary duties to Allied's creditors." *see also id.* ¶189 ("Yucaipa engaged in self-

68.     Given the breadth of Yucaipa's misconduct—including misconduct giving rise to both its ownership of debt and the $118.3 million in damages that Yucaipa now seeks to offset—Yucaipa should be precluded from obtaining equitable relief by way of any setoff or recoupment.

## VI.   YUCAIPA'S PURPORTED RIGHT TO SETOFF OR RECOUPMENT WOULD IMPERMISSIBLY UPEND ALLIED'S PLAN AND THE CONFIRMATION ORDER

69.     In the fall of 2015, Yucaipa voted affirmatively for the Chapter 11 Plan proposed by Debtors, the Official Committee of Unsecured Creditors, and the First Lien Agents.[63]  The Plan, which was subsequently confirmed on December 9, 2015, carefully delineates the framework for the treatment of Yucaipa's then-outstanding claims and interests against Allied and "constitute[d] a good-faith compromise and settlement of all Claims, disputes, or controversies relating to the rights that a holder of a Claim may have with respect to any Allowed Claim or any distribution to be made pursuant to the Plan on account of any such Allowed Claim."[64]

70.     Section 3.7 of the Plan, which Paragraph 16 the Confirmation Order affirmed and incorporated,[65] spells out precisely how Yucaipa's Proofs of Claim were to be treated.  That section begins: "For the avoidance of doubt, **Yucaipa's treatment *shall* be comprised of the following**…."  It goes on to provide for deposit into a "Disputed First Lien Obligations Escrow" of Yucaipa's disputed 55.2% share of certain reserves and cash distributions.[66]  That escrow

---

[63]     *See* 12-11564, D.I. Nos. 3192, 3192-1 at 2.

[64]     Confirmation Order ¶4.

[65]     *See* Confirmation Order ¶16 ("**Treatment of Yucaipa**.  Pursuant to the Plan, *Yucaipa shall receive* the treatment afforded to holders of First Lien Claims who are Non-Electing First Lien Lenders in Class 2 and **as further set forth in Section 3.7 of the Plan**….").

[66]     *See* Plan at §§3.7(a)-(d), §1.2(66) (defining "Disputed First Lien Obligations Escrow").  Yucaipa's 55.2% of cash held as First Lien Reserves was calculated prior to giving effect to a $3

account was established in connection with the JCT Sale Order to hold Yucaipa's "Disputed Pro Rata Share" (55.2%) of the JCT Sale proceeds pending an agreement between the parties or a "final non-appealable order of a court of competent jurisdiction entered in connection with the Yucaipa Litigation Claims."[67]  The funds held pursuant to the Escrow Agreement at Wilmington Trust (the "**WT Escrow**") total approximately $34.8 million.  (*See* Szymanksi Decl. ¶5).  To date, there has been no agreement for the release of these funds from the WT Escrow and, as discussed above, there is no "final non-appealable order of a court of competent jurisdiction entered in connection with the Yucaipa Litigation Claims."[68]

### A.    <u>Yucaipa's "New Claim" Is Confined to the WT Escrow Under the Plan</u>

71.    Under Third Circuit precedent, "once the reorganization plan is approved by the bankruptcy court, each claimant gets a 'new' claim, based upon whatever treatment is accorded to it in the plan itself" and "[t]hereafter, each claimant's remedies for any future nonpayment of claims acknowledged in the plan are limited to the usual remedies for the type of claim granted by the plan's provisions."  *In re Benjamin Coal Co.*, 978 F.2d at 827; *see also In re Montgomery Ward Holding Corp.*, 306 B.R. 489, 494 (Bankr. D. Del. 2004) ("Once a plan is confirmed, a creditor's rights are governed exclusively by the terms of that plan.").  That is particularly important here, since the treatment of Yucaipa's claims was specifically delineated in the Plan and

---

million payment by the non-Yucaipa First Lien Lenders to Allied's General Unsecured Creditors. *See id.* §§3.7(a), 1.2(89) (defining "GUC Cash Distribution"); 1.2(84) "First Lien Reserves").

[67]    *See* 12-11564, D.I. 1837 (the "**Sale Order**") ¶13.  A copy of Escrow Agreement by and among the Debtors, First Lien Agents, Yucaipa, and Wilmington Trust (as Escrow Agent) dated December 27, 2013 (the "**Escrow Agreement**") is attached as **Exhibit A** to the accompanying Declaration of Raymond Szymanski ("**Szymakski Decl.**").

[68]    *See* Escrow Agreement at 2.

Confirmation Order and stood at the center of the issues addressed and resolved by them.[69]

72.    A confirmed plan "becomes a legally binding agreement" and a "creditor's rights are governed exclusively by the terms of that plan." *In re NVF Co.*, 309 B.R. 698, 701 (Bankr. D. Del. 2004) (*quoting In re Montgomery Ward Holding Corp.*, 306 B.R. at 494-95); *see also In re W.R. Grace & Co.*, 2018 WL 4441461, *6 (Bankr. D. Del. Sept. 17, 2018) ("The Confirmation Order substitutes a contractual right of payment on the terms of the Plan" thereby binding a tax claim to the plan's interest rate, rather than the pre-petition rate).[70]    Moreover, a "Confirmation Order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation." *Id.* at *5 (*citing Donaldson v. Bernstein*, 104 F.3d 547, 554 (3d Cir. 1997)).

73.    Yucaipa's "new claim" post-confirmation was therefore limited to any rights to the WT Escrow, or its purported rights with respect to the "Yucaipa Fee Reserve" (defined in Paragraph 16 of the Confirmation Order),[71] upon a "Final Order."  Yuciapa's argument that

---

[69]    Yuciapa's contention that its Proofs of Claim somehow survived discharge is inconsistent with Section 524(a)(2) of the Bankruptcy Code, whereby discharge "operates as an injunction against," among other things, seeking to "recover or offset any [discharged] debt[.]" Moreover, non-binding, out-of-circuit cases, holding setoff post-discharge *may* be permitted are inapposite. In addition to being inconsistent with Section 524(a)(2), those cases turn on notions of equity and fairness that are absent in this case, and in light of the fact that Yucaipa's treatment was *specifically* addressed in the Plan and Confirmation Order.

[70]    *See also In re Frontier Insurance Grp., Inc.*, 585 B.R. 685, 693 (Bankr. S.D.N.Y. 2018) ("a chapter 11 plan is a new contract between the debtor and its creditors…"), *aff'd*, 598 B.R. 87 (S.D.N.Y. 2018); *In re Western Integrated Networks, LLC*, 329 B.R. 334, 341 (Bankr. D. Colo. 2005) ("After confirmation, it is the confirmed plan, not the Bankruptcy Code, which controls the relationship between the reorganized debtor and its creditors."); *In re Pettibone Corp.*, 134 B.R. 349, 351-52 (Bankr. N.D. Ill. 1994) ("A plan of reorganization is a contract which binds a debtor and its creditors."); *In re Ernst.*, 45 B.R. 700, 702 (Bankr. D. Minn. 1985) ("The plan is essentially a new and binding contract, sanctioned by the Court, between a debtor and his preconfirmation creditors."); 11 U.S.C. §1141(a) ("[T]he provisions of a confirmed plan bind . . . any creditor.").

[71]    Yucaipa asserted a claim to the Yucaipa Fee Reserve in the Delaware Court of Chancery against, among others, the First Lien Agents alleging it was entitled to the approximately $16.5 million in claimed expenses under the First Lien Credit Agreement in a lawsuit captioned *Yucaipa American Alliance Fund I, LP v. SBDRE LLC*, C.A. 9151-VCP (Del. Ch.).   On October 31, 2014,

Section 3.6 of the Plan somehow preserved a setoff or recoupment claim asserted in its pre-confirmation Proofs of Claim misses the mark.  Section 3.6 of the Plan preserves any such rights Yucaipa may have with respect to its *new, specified post-confirmation claim.*

74.    Yucaipa's reliance on Section 3.7(e) of the Plan to argue that it preserved its purported setoff and recoupment rights in the Proofs of Claim is also misplaced.  That provision does not, and cannot, revive a dormant reservation of rights that was never asserted (and which was expressly abandoned) during nearly a decade of litigation on Yucaipa's claims in the Adversary Proceedings or create *new* rights by way of setoff or recoupment post-confirmation. Rather, Section 3.7(e) recognizes that the Plan and Confirmation Order could not effect or prejudice rights, claims and defenses of Yucaipa, the Debtors, the Unsecured Creditors' Committee, the Lenders, and two former directors of Allied (Gendregske and Brian Cullen) relating to "any litigation, contested matter, adversary proceeding (or any appeal from any order entered in any of the foregoing)…"  *See* Plan §3.7(e).

75.    Notably, Yucaipa's Motion also omits the *proviso* in Section 3.7(e) that "the Plan and Confirmation Order ***may be used*** in any litigation, contested matter, or adversary proceeding seeking to enforce the terms of this Plan."  That is precisely what the Litigation Trustee does here, by arguing that the Plan's treatment of Yucaipa should not be upended through belated arguments that its Proofs of Claim somehow survived the Plan and Confirmation Order.  They did not.

### B.    The Relief Sought Would Lead to a Nonsensical and Unworkable Result

76.    Under the express terms of the Plan, all of Allied's old securities, including all promissory notes, have been "deemed automatically cancelled and surrendered and…of no further

---

the Chancery Court granted in part, and denied in part, defendants' motion to dismiss, and stayed the remaining claims pending resolution of the Adversary Proceedings.

force," and Debtors' obligations thereunder were discharged.  (*See* Plan §§5.4, 7.7, 10.7(a)).[72] Notwithstanding this fact, Yucaipa posits that its Proofs of Claim—to approximately $196.6 million—survived the Plan and Confirmation Order and should be honored.  This conclusion leads to absurd results that were never intended by the parties.

77.    *First*, the Litigation Trustee was appointed to assume the Litigation Claims on the Effective Date.  If Yucaipa is correct that it retained a right to setoff or recoup over $196 million in debt—notwithstanding the delineated treatment it was provided under the Plan—it follows that the Litigation Trustee's assumption of the Estate's breach of contract and fraudulent transfer claims against Yucaipa were a nullity from day one.  There could never be a recovery on those claims in excess of Yucaipa's purported offset.  The logical consequence of Yucaipa's position is that the litigants and this Court wasted over 5 ½ years addressing breach of contract and fraudulent transfer claims with no prospect of recovery, and the Court drafted a pointless 117-page summary judgment opinion awarding the Litigation Trustee a Judgment she could never recover.  This was clearly not what the Plan contemplated, nor did Yucaipa *ever* suggest otherwise until filing this Setoff Motion after Judge Sontchi's retirement.

---

[72]    *See* Plan §5.4. Plan Section 10.7(a)—"Discharge of the Debtors"—provides that "[e]xcept as otherwise provided herein or in the Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtors or any of its assets or properties and, regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, retained, or distributed pursuant to the Plan on account of such Claims.  Upon the Effective Date, (i) the Debtors shall be deemed discharged and released under Bankruptcy Code Section 1141(d)(1)(A) from any and all Claims, including but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Bankruptcy Code Section 502, whether or not (A) a Proof of Claim based upon such debt is filed or deemed filed under Bankruptcy Code Section 501, (B) a Claim based upon such debt is Allowed under Bankruptcy Code Section 502, (C) a Claim based upon such debt is or has been disallowed by order of the Bankruptcy Court, or (D) the holder of a Claim based upon such debt accepted the Plan, and (ii) all Interests shall be terminated."

78.    *Second*, Yucaipa's purported right to setoff or recoup would directly contravene the ratable sharing provisions of the Credit Agreements.   Section 2.17 of the Credit Agreements (entitled "Ratable Sharing") provide:

> The Lenders hereby agree among themselves that **if any of them shall . . . through the exercise of any right of set-off** or banker's lien, by counterclaim or cross action or by the enforcement of any right under the Credit Documents **or otherwise**… receive payment or reduction of a proportion of the aggregate amount of principal, interest, amounts payable in respect of Letters of Credit,[73] fees and other amounts then due and owing to such Lender hereunder or under the other Credit Documents (collectively, the "Aggregate Amounts Due" to such Lender) which is greater than the proportion received by any other Lender in respect of the Aggregate Amounts Due to such other Lender, **then the Lender receiving such proportionately greater payment shall** (a) notify Administrative Agent and each other Lender of the receipt of such payment and (b) **apply a portion of such payment to purchase participations...in the Aggregate Amounts Due to the other Lenders so that all such recoveries of Aggregate Amounts Due shall be shared by all Lenders in proportion to the Aggregate Amounts Due to them**…

79.    The Setoff Motion conspicuously omits this provision.  It also ignores that the setoff or recoupment it seeks would require Yucaipa to share its disproportional windfall with *all* lenders under the Credit Agreements, completely sidestepping the Court-ordered Litigation Proceeds Waterfall designed to distribute recoveries from the claims pursued by the Litigation Trustee.

80.    *Third*, Yucaipa acquired its First Lien Debt in bad faith breach of the First Lien Credit Agreement by, among other things, acquiring far more debt than it was permitted to hold. Under the Third Amendment, Yucaipa was capped at acquiring $50 million of Term Loans—loans that were supposed to be stripped of any voting rights—and was restricted from suing or filing for other remedies.[74]   Yucaipa's treatment under the Plan, including its escrowed allocation of 55.2%,

---

[73]    Section 2.17 of the Second Lien Credit Agreement omits the language relating to the Letters of Credit, because there were no Second Lien Letters of Credit.

[74]    *See* Summary Judgment Opinion at 12-13 (summarizing the Third Amendment to the First Lien Credit Agreement); *see also* D.I. 822 (Summary Judgment Hearing) at 59:25-60:15 (Yucaipa's Counsel: "[I]n hindsight we know the fourth amendment was *void ab initio*, so when Yucaipa acquired more than the third amendment allowed, that was a breach of the contract.").

reflects a compromise that dealt explicitly with these disputed issues. An award of post-confirmation setoff or recoupment to Yucaipa would disrupt and unwind the carefully-crafted provisions of the Plan defining Yucaipa's pro rata share at 55%, specifying Yucaipa's treatment in detail, and setting out the circumstances under which funds to Yucaipa can be distributed.

81.    Remarkably, Yucaipa's effort to upend the Plan through this Setoff Motion reflects yet *another* breach of the First Lien Credit Agreement. Under the operative Third Amendment, Yucaipa (as a "Restricted Sponsor Affiliate") "irrevocably and voluntarily waive[d]…any right to, make any election, give any consent, commence any action <u>or file any motion</u>, claim, obligation, notice or application <u>or take any other action in any Insolvency or Liquidation Proceeding without the prior written consent of all Lenders other than [Yucaipa]</u>." Further, Yucaipa granted the Administrate Agent "an irrevocable power of attorney coupled with an interest, and its proxy, for the purpose of exercising any and all rights and taking any and all actions available to [Yucaipa] as a Lender hereunder in connection with...any Insolvency or Liquidation Proceeding…"[75]

82.    Yucaipa' attempt to assert supposed setoff or recoupment rights that effectively undo the Plan and Confirmation Order—by way of a Setoff Motion that it is contractually prohibited from making—should not be permitted.

## CONCLUSION

For these reasons, the Litigation Trustee respectfully requests that the Court deny Yucaipa's Setoff Motion.

---

[75]    Third Amendment at §2.7(e), adding language to §10.5 of the First Lien Credit Agreement.

Respectfully submitted,

Dated:  September 30, 2022

**FOX ROTHSCHILD LLP**

*/s/ Seth A. Niederman*
Seth A. Niederman (DE Bar No. 4588)
919 N. Market Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 654-7444
sniederman@foxrothschild.com

**JOSEPH HAGE AARONSON LLC**
Gregory P. Joseph
Gila S. Singer
485 Lexington Avenue, 30th Floor
New York, NY 10017
Telephone: (212) 407-1200
gjoseph@jhany.com

**ZAIGER LLC**
Jeffrey H. Zaiger
Judd A. Linden
2187 Atlantic Street, 9th Floor
Stamford, CT 06902
Telephone: (917) 572-7701
jzaiger@zaigerllc.com

**COHEN & GRESSER LLP**
Douglas J. Pepe
800 Third Avenue
New York, NY 10022
Telephone: (212) 957-7605
dpepe@cohengresser.com

*Counsel for Catherine E. Youngman, Litigation Trustee and Plan Administrator*

31