## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>ASHINC CORPORATION, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 12-11564 (MFW)<br>(Jointly Administered) |

### DECLARATION OF RAYMOND SZYMANSKI

RAYMOND SZYMANSKI, being duly sworn, deposes and says:

1.   I am a representative of Black Diamond Commercial Finance, L.L.C., the Co-Administrative Agent of the *Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement*, dated as of March 30, 2007 (as amended, the "**First Lien Credit Agreement**"). I submit this Declaration in support of the Litigation Trustee's Response in Opposition to Yucaipa's Motion for Order Authorizing and Effecting Setoff of Mutual Obligations or in the Alternative, Effecting Recoupment.

2.   The information contained in this Declaration is of my own personal knowledge and, if called as a witness, I could and would testify competently thereto.

3.   In connection with the *Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of Assets of the Debtors Outside the Ordinary Course of Business, (B) Authorizing the Sale of Assets Free and Clear of all Liens, Claims, Encumbrances and Interests, (C) Authorizing the Assumption and Sale and Assignment of Certain Executory Contracts and Unexpired Leases, and (D) Granting Related Relief,*[1] an escrow account was established at Wilmington Trust to hold Yucaipa's "Disputed Pro Rata Share" of the JCT Sale proceeds (the

---

[1]   D.I. 1837 (the "**JCT Sale Order**").

"**WT Escrow**") pending its distribution in accordance with the terms of the JCT Sale Order and the Modified First Amended Joint Chapter 11 Plan of Reorganization dated December 3, 2015 (the "**Plan**").[2]

4.  Attached as **Exhibit A** is a true and correct copy of the Escrow Agreement by and among the Debtors, First Lien Agents, Yucaipa, and Wilmington Trust (as Escrow Agent) dated December 27, 2013.

5.  As of August 31, 2022, the funds held pursuant to the Escrow Agreement at Wilmington Trust total approximately $34.8 million

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 30, 2022

                                                  _____
                                                  Raymond Szymanski

---

[2]  *See* JCT Sale Order, ¶ 13; D.I. 3360-1 (Plan) § 3.3(a).

# Exhibit A

EXECUTION VERSION

## ESCROW AGREEMENT

**THIS AGREEMENT** is made as of this 27th day of December, 2013, by and among (a) Allied Systems Holdings, Inc. (on behalf of itself and each of the other "Debtors" as defined below; collectively, the "Debtors"); (b) Black Diamond Commercial Finance, L.L.C. ("BDCF") and Spectrum Commercial Finance, LLC ("SCF"), solely in their capacity as Co-Administrative Agents under the Credit Agreement (as defined below; the "First Lien Agents");[1] (c) Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P. (collectively, "Yucaipa"); and (d) WILMINGTON TRUST, NATIONAL ASSOCIATION ("Escrow Agent"). The Debtors, the First Lien Agents, Yucaipa and the Escrow Agent shall each be referred to herein as a "Party" and collectively as the "Parties."

WHEREAS, reference is made to that certain Amended and Restated First Lien Super-Priority Debtor In Possession and Exit Credit and Guaranty Agreement, dated as of May 15, 2007 (as amended, the "Credit Agreement"), by and among ALLIED SYSTEMS HOLDINGS, INC. (formerly known as Allied Holdings, Inc.), a Delaware corporation ("Holdings"), ALLIED SYSTEMS, LTD. (L.P.), a Georgia limited partnership ("Systems" and, together with Holdings, the "Borrowers"), and CERTAIN SUBSIDIARIES OF THE BORROWERS, the Lenders party thereto from time to time, GOLDMAN SACHS CREDIT PARTNERS L.P., as Lead Arranger and as Syndication Agent and THE CIT GROUP/BUSINESS CREDIT, INC., as Administrative Agent (together with its permitted successors in such capacity) and as Collateral Agent. Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Credit Agreement.

WHEREAS, involuntary petitions under Chapter 11 of the Bankruptcy Code were filed against Holdings and Systems on May 17, 2012. On June 12, 2012, Holdings and Systems consented to the entry of orders for relief, and certain of their subsidiaries (collectively with Holdings and Systems, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Certain of the Debtors also filed proceedings in the Ontario Superior Court of Justice on June 12, 2012 under Part IV of the *Companies' Creditors Arrangement Act*. Since June, 2012, the Debtors have continued to operate their businesses and manage their properties as debtors in possession.

WHEREAS, on December 3, 2012, BDCM Opportunity Fund II, LP., Black Diamond CLO 2005-1 LTD, Spectrum Investment Partners, L.P. and American Money Management Corporation, acting in their purported capacity as Requisite Lenders, appointed Black Diamond Commercial Finance, L.L.C. and Spectrum Commercial Finance, LLC, as Co-Administrative Agents, and Black Diamond Commercial Finance, L.L.C. as Collateral Agent.

---

[1] Yucaipa contests BDCF's and SCF's authority to serve as First Lien Agents, and reserves all rights with respect thereto and the impact of any such determination by a court of competent jurisdiction might have relative to that issue.

DOC ID - 20783600.9                               1

EXECUTION VERSION

WHEREAS, on February 1, 2013, the Official Committee of Unsecured Creditors (the "Committee") filed an adversary proceeding (the "Committee Challenge Action") against Yucaipa and numerous other defendants which seeks, *inter alia*, on behalf of the Debtors' estates, to recharacterize and/or subordinate the Obligations held by Yucaipa under the First Lien Credit Agreement (the "Yucaipa First Lien Obligations"). In addition to the Committee Challenge Action, certain first lien lenders have asserted direct claims against Yucaipa and other potential defendants challenging the validity and/or enforceability of the Yucaipa First Lien Obligations (collectively, the "Lender Challenge Claims", and together with the Committee Challenge Action, the "Yucaipa Litigation Claims"). The amount of any Yucaipa First Lien Obligations that are recharacterized, subordinated or otherwise reduced or disallowed by a final non-appealable order of a court of competent jurisdiction on account of any Yucaipa Litigation Claim shall be referred to herein as the "Yucaipa Disallowed First Lien Obligations". Yucaipa has contested the allegations and claims set forth in the Yucaipa Litigation Claims.

WHEREAS, on September 17, 2013, the United States Bankruptcy Court for the District of Delaware entered that certain Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of Assets of the Debtors Outside the Ordinary Course of Business, (B) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrance and Interests, (C) Authorizing the Assumption and Sale and Assignment of Certain Executory Contracts and Unexpired Leases, and (D) Granting Related Relief (the "Sale Order"), which provides for and approves the purchase by Jack Cooper Holdings Corp. ("JCT") of substantially all of the assets of the Debtors.

WHEREAS, pursuant to the Sale Order, the Bankruptcy Court authorized and approved the establishment of this Escrow in order to hold that portion of the Sale Proceeds allocable to Yucaipa's Disputed Pro Rata Share (as defined in the Sale Order) of the Obligations (equal to 55.2% thereof) pending the entry of a final non-appealable order of a court of competent jurisdiction entered in connection with the Yucaipa Litigation Claims (an "Allowance Order") finding that the Disputed First Lien Obligations (as defined in the Sale Order) (in whole or in part) do not constitute valid and enforceable Obligations as a result of, *inter alia*, recharacterization, subordination or disallowance, all as set forth more fully in the Sale Order.

**NOW, THEREFORE,** in consideration of the premises, and further consideration of the covenants set forth hereafter, it is hereby agreed mutually as follows:

**I.**     **Designation as Escrow Agent.**

Subject to the terms and conditions hereof, the Parties (other than Escrow Agent) hereby appoint Wilmington Trust, National Association as Escrow Agent and Wilmington Trust, National Association hereby accepts such appointment.

**II.**     **Deposit of Escrow Funds.**

(a) In connection with the consummation of the transactions contemplated by the Sale Order (the "JCT Sale") the Debtors shall instruct JCT to wire transfer immediately available funds to an account (the "Escrow Account") established with the Escrow Agent in an amount equal to Yucaipa's

EXECUTION VERSION

Disputed Pro Rata Share (which shall be 55.2% of the amounts distributable to the First Lien Lenders in accordance with the Credit Documents and the Sale Order on account of the Obligations) (the "Initial Cash Consideration"). The Debtors shall further instruct JCT to wire transfer immediately available funds to the Escrow Account equal to Yucaipa's Disputed Pro Rata Share (which shall be 55.2% of the amounts distributable to the First Lien Lenders in accordance with the Credit Documents and the Sale Order on account of the Obligations) of any additional cash consideration paid by JCT (the "Additional Cash Consideration"). Finally, the First Lien Agents shall wire transfer immediately available funds to the Escrow Account equal to Yucaipa's Disputed Pro Rata Share (which shall be 55.2% of the amounts distributable to the First Lien Lenders in accordance with the Credit Documents and the Sale Order on account of the Obligations) of (i) any Initial Cash Consideration or Additional Cash Consideration received from JCT and reserved by the First Lien Agents (such as, without limitation, reserves established on account of costs and expenses of any First Lien Lender and/or the First Lien Agents) that is subsequently released by the First Lien Agents for distribution to the First Lien Lenders on account of the Obligations, and (ii) any amounts that are paid to a third-party by the First Lien Agents, subsequently disgorged or returned to the First Lien Agents, and released by the First Lien Agents for distribution to the First Lien Lenders on account of the Obligations. All amounts deposited to the Escrow Account in respect of Yucaipa's Disputed Pro Rata Share shall be referred to herein as the "Reserved Funds".

(b) Escrow Agent will hold the Reserved Funds in the Escrow Account, together with all investments thereof and all interest accumulated thereon and proceeds therefrom, in escrow upon the terms and conditions set forth in this Escrow Agreement and shall not disburse funds from the Escrow Account except as provided herein.

(c) Escrow Agent shall invest the Reserved Funds pursuant to mutual written directions of the First Lien Agents and Yucaipa, and in the absence of such directions, in the U.S. Government Portfolio (Service Class shares) of the Wilmington family of mutual funds or any other mutual funds for which Escrow Agent or any affiliate of Escrow Agent may serve as investment advisor or other service provider. The Parties acknowledge that shares in this mutual fund are not obligations of Wilmington Trust, National Association or any of its affiliates, are not deposits and are not insured by the FDIC. Escrow Agent or its affiliate may be compensated by the mutual fund for services rendered in its capacity as investment advisor, or other service provider, such as provider of shareholder servicing and distribution services, and such compensation is both described in detail in the prospectus for the fund, and is in addition to the compensation, if any, paid to Wilmington Trust, National Association in its capacity as Escrow Agent hereunder.

### III.    Disbursement of Escrow Account.

The Reserved Funds held in the Escrow Account shall be distributed to either (a) Yucaipa, or (b) the First Lien Agents, upon (i) the written agreement of the First Lien Agents and Yucaipa, or (ii) the entry of, and in accordance with the terms and conditions of, any Allowance Order, provided, however, that any proposed distribution must comply with the requirements of the following paragraph. In addition, Reserved Funds representing reserves released by the First Lien Agents pursuant to Section II(a) hereof may be returned to the First Lien Agents to the extent the

First Lien Agents seek to recover such released reserves from all other First Lien Lenders in accordance with their respective pro rata shares and the Credit Documents.

Any Party seeking distribution of all or any portion of the Reserved Funds shall provide written notice of such request to the Escrow Agent and each other Party to this Agreement, together with all documentation supporting such request (including, as applicable, an executed copy of the written agreement between the First Lien Agents and Yucaipa, and the Allowance Order or a notice from the First Lien Agents seeking return of released reserves), a certification that such Party is entitled to such distribution and the basis therefor, and wire transfer instructions (a "Distribution Request").  The Escrow Agent shall make the distribution requested in any such Distribution Request unless, within five (5) Business Days after the Escrow Agent's receipt of such Distribution Request, the Escrow Agent shall have received a written objection thereto from another Party (which objection shall be served upon each other Party hereto, including the Party submitting the Distribution Request) setting forth, in reasonable detail, the basis for such objection (a "Distribution Objection").  In the event the Escrow Agent receives a Distribution Objection, the Escrow Agent shall (a) not make the distribution contemplated by the Distribution Request, and (b) shall continue to hold the Reserved Funds, pending either (i) entry of an order of a court of competent jurisdiction, or (ii) receipt of joint written instructions from the Party submitting the Distribution Request and the Party submitting the Distribution Objection.

Notwithstanding anything contained herein to the contrary, in the event a Distribution Request is submitted, Escrow Agent is authorized (but not required) to seek confirmation of such instructions by telephone call-back, and the Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons designated in the instructions.  The persons and telephone numbers for call-backs may be changed only in a writing actually received and acknowledged by the Escrow Agent.  The Parties to this Escrow Agreement acknowledge that such security procedure is commercially reasonable.  Escrow Agent shall disburse the Reserved Funds pursuant to this Section III by wire transfer.

**IV.    Authority of Escrow Agent and Limitation of Liability.**

(a) In acting hereunder, Escrow Agent shall have only such duties as are specified herein and no implied duties shall be read into this Agreement, and Escrow Agent shall not be liable for any act done, or omitted to be done, by it in the absence of its gross negligence or willful misconduct.

(b) Escrow Agent may act in reliance upon any writing or instrument or signature which it, in good faith, believes to be genuine, and may assume the validity and accuracy of any statement or assertion contained in such a writing or instrument and may assume that any person purporting to give any writing, notice, advice or instruction in connection with the provisions hereof has been duly authorized to do so.

(c) Escrow Agent shall be entitled to consult with legal counsel in the event that a question or dispute arises with regard to the construction of any of the provisions hereof, and shall incur no

liability and shall be fully protected in acting in accordance with the advice or opinion of such counsel.

(d) Escrow Agent shall not be required to use its own funds in the performance of any of its obligations or duties or the exercise of any of its rights or powers, and shall not be required to take any action which, in Escrow Agent's sole and absolute judgment, could involve it in expense or liability unless furnished with security and indemnity which it deems, in its sole and absolute discretion, to be satisfactory.

(e) The First Lien Agents shall pay to Escrow Agent compensation for its services hereunder in the amount of $3,500.00 per annum. In the event Escrow Agent renders any extraordinary services in connection with the Escrow Account at the request of the Parties, Escrow Agent shall be entitled to additional compensation therefor in accordance with Schedule A hereto. Escrow Agent shall have a first lien against the Escrow Account to secure the obligations of the Parties with respect to the payment of the compensation contemplated by this paragraph. The terms of this paragraph shall survive termination of this Agreement.

(f) The Parties (excluding the Escrow Agent) jointly and severally, agree to indemnify Escrow Agent, its directors, officers, employees and agents (collectively, the "Indemnified Parties"), and hold the Indemnified Parties harmless from any and against all liabilities, losses, actions, suits or proceedings at law or in equity, and any other expenses, fees or charges of any character or nature, including, without limitation, attorney's fees and expenses, which an Indemnified Party may incur or with which it may be threatened by reason of acting as or on behalf of Escrow Agent under this Agreement or arising out of the existence of the Escrow Account, except to the extent the same shall be caused by Escrow Agent's gross negligence or willful misconduct. Escrow Agent shall have a first lien against the Escrow Account to secure the obligations of the Parties hereunder. The terms of this paragraph shall survive termination of this Agreement.

(g) In the event Escrow Agent receives conflicting instructions hereunder, Escrow Agent shall be fully protected in refraining from acting until such conflict is resolved to the satisfaction of Escrow Agent.

(h) Escrow Agent may resign as Escrow Agent, and, upon its resignation, shall thereupon be discharged from any and all further duties and obligations under this Agreement by giving notice in writing of such resignation to the Parties to this Agreement, which notice shall specify a date upon which such resignation shall take effect. Upon the resignation of Escrow Agent, the First Lien Agents and Yucaipa shall, within sixty (60) business days after receiving the foregoing notice from Escrow Agent, designate a substitute escrow agent (the "Substitute Escrow Agent"), which Substitute Escrow Agent shall, upon its designation and notice of such designation to Escrow Agent, succeed to all of the rights, duties and obligations of Escrow Agent hereunder. In the event the First Lien Agents and Yucaipa shall not have delivered to Escrow Agent a written designation of Substitute Escrow Agent within the aforementioned sixty (60) day period, together with the consent to such designation by the Substitute Escrow Agent, the Escrow Agent may apply to a court of competent jurisdiction to appoint a Substitute Escrow Agent, and the costs of obtaining such appointment shall be reimbursable from the Escrow Funds.

EXECUTION VERSION

**V.     Notices.**

Except as otherwise provided herein, any notice, instruction or instrument to be delivered hereunder shall be in writing and shall be effective upon receipt at the addresses set forth on the signature page hereof or at such other address specified in writing by the addressee, or if to the Escrow Agent, upon receipt via facsimile or telecopier transmission, at the number set forth on the signature page hereof, or at such other number specified by Escrow Agent.

**VI.    Amendment.**

This Escrow Agreement may not be amended, modified, supplemented or otherwise altered except by an instrument in writing signed by the parties hereto.

**VII.   Termination.**

This Agreement will terminate upon the disbursement of all funds in the Escrow Account, as provided above, by the Escrow Agent.

**VIII.  Tax Reporting.**

The Parties hereto, other than the Escrow Agent, agree that, for tax reporting purposes, all interest and other income earned from the investment of amounts in the Escrow Account ("Taxable Income") in any tax year shall be allocated to the Debtors (collectively, "Taxpayer").  Upon execution of this Escrow Agreement, Taxpayer shall provide Escrow Agent with its certified tax identification number ("TIN") on an executed Internal Revenue Service Form ("IRS") W-9 or other applicable IRS Form.  Taxpayer agrees to report all Taxable Income allocable to it on its federal and other applicable tax returns.  Taxpayer acknowledges and agrees that, in the event its TIN is not certified to the Escrow Agent, and/or it does not make all certifications set forth in IRS Form W-9 or other applicable IRS Form, applicable tax laws may require withholding of a portion of any income earned with respect to amounts in the Escrow Account that are allocable to it.

**IX.    Anti-Terrorism/Anti-Money Laundering Laws.**

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT - To help the United States government fight the funding of terrorism or money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens a new account.  What this means for the parties to this Agreement:  the Escrow Agent will ask for your name, address, date of birth, and other information that will allow the Escrow Agent to identify you (*e.g.*, your social security number or tax identification number.)  The Escrow Agent may also ask to see your driver's license or other identifying documents (*e.g.*, passport, evidence of formation of corporation, limited liability company, limited partnership, etc., certificate of good standing.)

Each party to this Agreement hereby agrees to provide the Escrow Agent, prior to the establishment of the Escrow Account, with the information identified above pertaining to it by completing the form attached as Exhibit A and returning it to the Escrow Agent. Exhibit A includes one form for individuals and another form for entities.

## X. Governing Law.

This is a Delaware contract and shall be governed by Delaware law in all respects, and the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") shall have exclusive jurisdiction regarding this Escrow Agreement and disputes by any party relating thereto.

## XI. Counterparts.

This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original, and such counterparts together shall constitute and be one and the same instrument.

## XII. Successor Escrow Agent.

Any business entity into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any entity resulting from any merger, conversion or consolidation to which the Escrow Agent shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Escrow Agent, shall be the successor of the Escrow Agent hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto.

[This space is intentionally left blank.]

EXECUTION VERSION

**IN WITNESS WHEREOF**, the parties hereto have caused their names to be hereto subscribed by their respective Presidents or Vice Presidents as of the day and year first above written.

ALLIED SYSTEMS HOLDINGS, INC., on behalf of itself and the other Debtors

By: /s/ [signature]
Title: SVP

Address:
2302 Parklake Drive
Building 15, Suite 600
Atlanta, Georgia 30345
Fax No.: 404-370-4206
Tel.No.: 404-687-5756
Email: scott.macaulay@alliedautomotive.com
Attention: Chief Financial Officer

WILMINGTON TRUST, NATIONAL ASSOCIATION,
as Escrow Agent

By: _____
Title:

Address:
1100 North Market Street
Wilmington, Delaware 19890

Fax No.: (302) 636-4145
Tel. No.: (302) 636-6466
Email: jfeil@wilmingtontrust.com
Attention: Joe Feil

YUCAIPA AMERICAN ALLIANCE FUND I, L.P.

By: _____
Title:

Address:
9130 West Sunset Boulevard
Los Angeles, California 90069
Fax No.: (310) 789-1791
Tel.No.: _____
Email: derex.walker@yucaipaco.com
Attention: Derex Walker
Email: legal@yucaipaco.com
Attention: Robert Bermingham

YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P.

By: _____
Title:

Address:
9130 West Sunset Boulevard
Los Angeles, California 90069
Fax No.: (310) 789-1791
Tel.No.: _____
Email: derex.walker@yucaipaco.com
Attention: Derex Walker
Email: legal@yucaipaco.com
Attention: Robert Bermingham

EXECUTION VERSION

**IN WITNESS WHEREOF**, the parties hereto have caused their names to be hereto subscribed by their respective Presidents or Vice Presidents as of the day and year first above written.

ALLIED SYSTEMS HOLDINGS, INC., on behalf of itself and the other Debtors

By:_____
Title:

Address:
2302 Parklake Drive
Building 15, Suite 600
Atlanta, Georgia 30345
Fax No.:
Tel.No.:
Email: scott.macaulay@alliedautomotive.com
Attention: Chief Financial Officer

WILMINGTON TRUST, NATIONAL ASSOCIATION, as Escrow Agent

By: *[signature]*
Title: Joseph B. Feil
Vice President

Address:
1100 North Market Street
Wilmington, Delaware 19890

Fax No.: (302) 636-4145
Tel. No.: (302) 636-6466
Email: jfeil@wilmingtontrust.com
Attention: Joe Feil

YUCAIPA AMERICAN ALLIANCE FUND I, L.P.

By:_____
Title:

Address:
9130 West Sunset Boulevard
Los Angeles, California 90069
Fax No.: (310) 789-1791
Tel.No.:
Email: derex.walker@yucaipaco.com
Attention: Derex Walker
Email: legal@yucaipaco.com
Attention: Robert Bermingham

YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P.

By:_____
Title:

Address:
9130 West Sunset Boulevard
Los Angeles, California 90069
Fax No.: (310) 789-1791
Tel.No.:
Email: derex.walker@yucaipaco.com
Attention: Derex Walker
Email: legal@yucaipaco.com
Attention: Robert Bermingham

8

EXECUTION VERSION

**IN WITNESS WHEREOF**, the parties hereto have caused their names to be hereto subscribed by their respective Presidents or Vice Presidents as of the day and year first above written.

| | |
|---|---|
| ALLIED SYSTEMS HOLDINGS, INC., on behalf of itself and the other Debtors | WILMINGTON TRUST, NATIONAL ASSOCIATION, as Escrow Agent |
| By:_____<br>Title: | By:_____<br>Title: |
| Address:<br>2302 Parklake Drive<br>Building 15, Suite 600<br>Atlanta, Georgia 30345<br>Fax No.: _____<br>Tel.No.: _____<br>Email: scott.macaulay@alliedautomotive.com<br>Attention: Chief Financial Officer | Address:<br>1100 North Market Street<br>Wilmington, Delaware 19890<br><br>Fax No.: (302) 636-4145<br>Tel. No.: (302) 636-6466<br>Email: jfeil@wilmingtontrust.com<br>Attention: Joe Feil |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P.<br>By: /s/ signature<br>Title: Vice President and Secretary | YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P.<br>By: /s/ signature<br>Title: Vice President and Secretary |
| Address:<br>9130 West Sunset Boulevard<br>Los Angeles, California 90069<br>Fax No.: (310) 789-1791<br>Tel.No.: (310) 228-2894<br>Email: derex.walker@yucaipaco.com<br>Attention: Derex Walker<br>Email: legal@yucaipaco.com<br>Attention: Robert Bermingham | Address:<br>9130 West Sunset Boulevard<br>Los Angeles, California 90069<br>Fax No.: (310) 789-1791<br>Tel.No.: (310) 228-2894<br>Email: derex.walker@yucaipaco.com<br>Attention: Derex Walker<br>Email: legal@yucaipaco.com<br>Attention: Robert Bermingham |

EXECUTION VERSION

BLACK DIAMOND COMMERCIAL
FINANCE, L.L.C., as Co-Administrative
Agent

By: _____
Title:              M.D.

Address:
100 Field Drive
Lake Forest, Illinois 60045-2596
Fax No.: (847) 615-9064
Tel.No.: (847) 582-9138
Email: hgravenhorst@bdcf.com
Attention: Hugo Gravenhorst

SPECTRUM COMMERCIAL FINANCE
LLC, as Co-Administrative Agent

By: _____
Title:

Address:
1253 Springfield Avenue, Suite 201
Springfield, New Jersey 07974

Fax No.: _____
Tel.No.: _____
Email: jschaffer@spectrumgp.com
Attention: Jeffrey Schaffer

EXECUTION VERSION

BLACK DIAMOND COMMERCIAL
FINANCE, L.L.C., as Co-Administrative
Agent

By:_____
Title:

Address:
100 Field Drive
Lake Forest, Illinois 60045-2596
Fax No.: (847) 615-9064
Tel.No.: (847) 582-9138
Email: hgravenhorst@bdcf.com
Attention: Hugo Gravenhorst

SPECTRUM COMMERCIAL FINANCE
LLC, as Co-Administrative Agent

By:_____
Title: MANAGING MEMBER

Address:
1253 Springfield Avenue, Suite 201
Springfield, New Jersey 07974

Fax No.: 212 983 2822
Tel.No.: 212 617 9555
Email: jschaffer@spectrumgp.com
Attention: Jeffrey Schaffer

9

## SCHEDULE A

# SCHEDULE OF FEES
# ESCROW AGENT for
# Allied Systems Holdings, Inc. Escrow

**Acceptance Fee:**                                                                                      **Waived**

This is a one-time fee payable at the time of closing for initial services including examination of the Agreement, acceptance of the account, execution and delivery of the Agreement, and establishment of the necessary records.

*IMPORTANT INFORMATION ABOUT OPENING A NEW ACCOUNT*

*The USA Patriot Act of 2001 requires financial institutions to obtain, verify and record information to confirm the identity of the individual or entity that opens an account. What this means for you: before you open an account, we will ask for your name, address, date of birth (if you are an individual), and other information that will allow us to identify you. For entities opening new accounts, we will ask you for documentation that may include annual reports, certified articles of incorporation, government issued business licenses or partnership agreements.*

**Escrow Agent Annual Administration Fee:**                                              **$3,500.00**

This is an annual fee payable at the time of closing, and annually thereafter, for ordinary services of the Escrow Agent, including normal account administration and monthly statement generation. This charge is not prorated for the first year or any subsequent year.

**Extraordinary Administration Fees:**

Senior Level Relationship Manager                                                            $490/hour

Extraordinary administration fees may be charged for services beyond those contemplated by the Escrow Agent Agreement. You will be informed in advance of Wilmington Trust's performance of services that are considered extraordinary.

**Out-of-pocket Expenses**
Out of pocket expenses are billed at cost. Examples may include retention of a tax professional to assist with tax reporting requirements, postage, envelopes, special delivery services, copying, etc.

DOC ID - 20783600.9